UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| LYNNE BARTRON and CHARLES BROWN, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>       v.<br><br>VISA INC., VISA U.S.A. INC., VISA INTERNATIONAL SERVICE ASSOCIATION, and PLUS SYSTEM, INC.<br>     595 Market Street<br>     San Francisco, CA  94105-2802<br><br>     and<br><br>MASTERCARD INCORPORATED and MASTERCARD INTERNATIONAL INCORPORATED d/b/a Mastercard Worldwide<br>     2000 Purchase Street<br>     Purchase, NY  10577,<br><br>                           Defendants. | C.A. No. |

## CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page(s)**

I.   NATURE OF THE ACTION ...........................................................................1

II.  JURISDICTION AND VENUE ......................................................................1

III. PARTIES .......................................................................................................2

    A.   Indirect Purchaser Plaintiffs............................................................2

    B.   Defendants ........................................................................................3

    C.   Non-Party Co-Conspirators ............................................................4

IV.  TRADE AND INTERSTATE COMMERCE ...................................................4

V.   FACTUAL BACKGROUND ..........................................................................5

    A.   PIN-Debit Cards and ATM Transactions ........................................5

    B.   Sponsoring Financial Institutions ...................................................6

    C.   The Horizontal "ATM Restraints"...................................................7

VI.  HARM TO COMPETITION ...........................................................................8

VII. RELEVANT MARKETS ...............................................................................10

    A.   Relevant Product Market ...............................................................10

    B.   Relevant Geographic Market .........................................................10

VIII. DEFENDANTS' MARKET POWER .............................................................11

IX.  CLASS ALLEGATIONS ...............................................................................11

X.   CLAIMS FOR RELIEF .................................................................................18

    FIRST CLAIM FOR RELIEF  SHERMAN ACT, SECTION 1, 15 U.S.C. § 1
    (*Per Se* or Rule of Reason Agreement to Fix Prices) .........................................18

    SECOND CLAIM FOR RELIEF  VIOLATIONS OF STATE ANTITRUST
    AND RESTRAINT OF TRADE LAWS ...............................................................20

    THIRD CLAIM FOR RELIEF  VIOLATIONS OF STATE CONSUMER
    PROTECTION AND  UNFAIR COMPETITION LAWS.................................40

REQUEST FOR RELIEF ........................................................................................................52

JURY DEMAND ...................................................................................................................53

Indirect Purchaser Lynne Bartron and Charles Brown ("Plaintiffs") bring this action on behalf of all others similarly situated in the United States.  Plaintiffs, by and through their attorneys, allege as information and belief as follows:

## I.      NATURE OF THE ACTION

1.      This action challenges the establishment and enforcement by Visa and MasterCard of a uniform agreement among nearly every payment card-issuing bank in the United States to fix prices for automated teller machine ("ATM") services, to suppress interbrand competition between ATM networks, and to constrain operators of ATMs from exercising autonomous judgment in their business decisions.  The agreements, unlawful *per se*, result in supra-competitive fees to Plaintiffs, consumers of ATM services, unduly suppress the volume of ATM services available to Plaintiffs, and unreasonably restrain commerce.

2.      This suit seeks damages for the antitrust injury inflicted by Defendants' antitrust violation on Plaintiffs and the class of similarly situated ATM card users.  The suit also seeks an injunction pursuant to Section 16 of the Sherman Act, 15 U.S.C. § 16, enjoining Defendants from continuing to observe or enforce the unlawful rules and operating regulations and any similar restraint on competition in the market for ATM services.

## II.      JURISDICTION AND VENUE

3.      Indirect Purchaser Plaintiffs bring this action under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain injunctive relief against all Defendants.

4.      Indirect Purchaser Plaintiffs also bring this action pursuant to state antitrust, unfair competition and consumer protection laws to recover damages, restitution, disgorgement, costs of suit, including reasonable attorneys' fees, for the injuries that Indirect Purchaser

Plaintiffs and all others similarly situated sustained as a result of Defendants' violations of those laws.

5.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 over Indirect Purchaser Plaintiffs' claims under Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act.  The Court has supplemental jurisdiction over Indirect Purchaser Plaintiffs' state law claims under 28 U.S.C. § 1367.  The Indirect Purchaser Plaintiffs' state law claims are so related to their claims under Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act that they form part of the same case or controversy.

6.      This Court also has subject matter jurisdiction over the state law claims pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a state different from any Defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs."  This Court also has jurisdiction under 28 U.S.C. § 1332(d) because "one or more members of the class is a citizen of a state within the United States and one or more of the Defendants is a citizen or subject of a foreign state."

7.      Venue is proper in this District under Section 12 of the Clayton Act, 15 U.S.C. § 22 and 28 U.S.C. § 1391, because each Defendant is either an alien corporation, transacts business in this District, or is otherwise found within this District.

### III.    PARTIES

**A.      Indirect Purchaser Plaintiffs**

8.      Plaintiff, Lynne Bartron is a resident of San Francisco and has paid at least one ATM fee in the past 4 years.

- 2 -

9.      Plaintiff, Charles Brown is a resident of Washington, D.C. who has paid MasterCard banks a fee for using their ATM machines.

**B.      Defendants**

10.     Defendant, VISA INC., is a Delaware corporation with its principal place of business in San Francisco, California.  VISA INC. has offices, transacts business, or is found in the District of Columbia.

11.     Defendant, VISA U.S.A. INC., is a Delaware corporation with its principal place of business in San Francisco, CA owned and controlled by VISA INC.

12.     Defendant, VISA INTERNATIONAL SERVICE ASSOCIATION, is a Delaware corporation with its principal place of business in San Francisco, CA owned and controlled by VISA INC.

13.     Defendant, PLUS SYSTEM, INC., is a Delaware corporation with its principal place of business in San Francisco, CA owned and controlled by VISA INC.

14.     Defendant, MASTERCARD INCORPORATED, is a Delaware corporation with its principal place of business in Purchase, New York.  MASTERCARD INCORPORATED has offices, transacts business, or is found in the District of Columbia.

15.     Defendant, MASTERCARD INTERNATIONAL INCORPORATED, is a Delaware non-stock (membership) corporation with its principal place of business in Purchase, New York owned and controlled by MASTERCARD INCORPORATED.

16.     The acts charged in this complaint as having been done by Defendants and their co-conspirators were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' business or affairs and the acts charged in this complaint continue to the present day.

- 3 -

C.      **Non-Party Co-Conspirators**

17.     Defendants are descendants of bankcard associations formerly jointly owned and

operated by a majority of the retail banks in the United States.  Visa, Inc. became a publicly held

corporation after an initial public offering of its stock began trading on the New York Stock

Exchange on March 18, 2008.  MasterCard Inc. became a publicly held corporation after an

initial public offering of its stock began trading on the exchange on May 24, 2006.  Nonetheless,

banks continue to hold non-equity membership interests in Defendants' subsidiaries and the

largest among them also hold equity interests and seats on the Defendants' boards of directors.

The Defendants continue to refer to their bank customers as "members" of Visa and MasterCard

and continue to operate principally for the benefit of their member banks.  The unreasonable

restraints of trade in this case are horizontal agreements among the issuers of Visa and

MasterCard products to adhere to rules and operating regulations that require ATM access fees to

be fixed at a certain level.  These restraints originated in the rules of the former bankcard

associations agreed to by the banks themselves.  By perpetuating this arrangement, the banks

collectively have ceded power and authority to Visa and MasterCard to design, implement, and

enforce a horizontal price-fixing restraint in which they are knowing participants.  In short, the

violation in this case is a horizontal agreement among every bank that issues Visa- or

MasterCard-branded payment cards – including every principal U.S. bank – organized and

supervised by the Defendants as ringleaders and enforcers for the purpose of fixing the surcharge

that consumers pay for ATM services.

## IV.      TRADE AND INTERSTATE COMMERCE

18.     The Defendants' PIN debit payment cards, issued by the nation's banks and other

depository institutions, are utilized in an enormous volume of ATM transactions involving a

substantial dollar amount of commerce and are marketed, sold and used in the flow of interstate

commerce.  A "PIN debit" payment card is any card that requires entry of a "personal

identification number," a cardholder's unique 4-digit code, to authenticate a debit transaction at

the point of the transaction.

19.     Visa provides ATM services for cards branded with the Visa, Visa Electron,

Interlink, and PLUS service marks at ATMs and terminals connected to the Visa, PLUS, and

Interlink networks.  In 2007, U.S. cardholders used Visa's PIN-based platform to access

$395 billion in cash.

20.     MasterCard provides ATM services for cards branded with the MasterCard,

Maestro or Cirrus service marks at ATMs and terminals participating in the MasterCard

Worldwide Network.  Excluding Cirrus- and Maestro-branded cards, cardholders used

MasterCard-branded cards to access $202 billion in cash in the U.S. in 2007.

## V.     FACTUAL BACKGROUND

### A.     PIN-Debit Cards and ATM Transactions

21.     ATM transactions are initiated by use of a PIN-debit card.  PIN-debit cards include

"pay now" cards, which allow a cardholder to effect an automatic debit from a checking, demand

deposit, or other financial account.  PIN-debit cards also include "pay later" cards, such as credit,

deferred debit, or charge cards, which require payment within an agreed upon period of time.

Finally, PIN-debit cards may be "pay before" cards, which are pre-funded up to a certain monetary

value.  So defined, a PIN-debit card may be capable also of signature-debit or credit transactions.

Nonetheless, all ATM transactions are PIN-debit transactions and only cards with PIN-debit

capability may be used in an ATM.  For purposes of this complaint any payment card that can be

used in an ATM is referred to as a "PIN-debit card."

22.     A PIN debit cardholder can obtain cash, monitor account balances, or transfer balances at an ATM.  Some ATMs also accept deposits or dispense items of value other than cash, such as stamps or travelers checks.

23.     ATM services are available to PIN debit cardholders from both bank and non-bank ATMs.  Typically, banks charge their customers for ATM services by levying a fee on the account associated with the card.  Consumers pay for ATM services from banks of which they are not customers and from non-bank ATM operators by paying a surcharge levied at the point of the transaction (an "access fee").  A cardholder assessed an access fee may also be charged a "foreign ATM fee" by the card issuing bank.

24.     An overwhelming majority of cards used for ATM transactions are Visa- or MasterCard-branded bank account-linked PIN-debit cards.  As Visa states on page 17 of its Form 10-K filed with the U.S. Securities and Exchange Commission for the fiscal year ended September 30, 2010, "[i]n the debit card market segment, Visa and MasterCard are the primary global brands."  Some ATM transactions using Visa- and MasterCard-branded PIN-debit cards may be completed over alternative networks designed originally for electronic funds transfers ("ETFs").  Visa- and MasterCard-branded cards that offer access to an alternative PIN-debit network indicate as much on the reverse side of the card, which bears a service mark belonging to the alternative network, such as STAR, NYCE Payment Network LLC, ACCEL/Exchange Network, Credit Union 24, CO-OP Financial Services, Shazam Inc., Jeanie, or TransFund.

**B.     Sponsoring Financial Institutions**

25.     To accept a Visa- or MasterCard-branded PIN debit card the ATM operator must have access to the Defendants' PIN-based networks.  As members of Visa or MasterCard, card-issuing U.S. banks are granted access to the Defendants' PIN-based networks for bank operated ATMs.  By contrast, "non-banks," such as independent ATM operators and firms that provide

- 6 -

the equipment and physical infrastructure for the authentication, clearing, or settlement of transactions ("processors"), are not Visa or MasterCard members.  Before being granted access to the networks, therefore, a non-bank first must be sponsored by a "sponsoring financial institution," or must affiliate itself with a sponsored entity.  Sponsoring institutions are Visa or MasterCard member banks that specialize in providing ISOs with access to the Visa and MasterCard PIN-based networks.

## C.     The Horizontal "ATM Restraints"

26.     The member banks of Visa and MasterCard, and in particular the sponsoring institutions, have ceded broad power to Visa and MasterCard to determine a) the conditions under which Visa- and MasterCard-branded PIN-debit cards may be used for ATM transactions, and b) the terms under which ATM operators may access the Visa and MasterCard PIN-debit networks.  Visa, MasterCard and their member banks have misused this power to fix the access fee for any transaction at a given ATM or terminal to be no less than the amount charged at that ATM or terminal for a Visa or MasterCard transaction, irrespective of whether the transaction is actually completed over Visa or MasterCard's PIN-debit network and without regard to any cost saving to the ATM operator of obtaining service from one of the alternative PIN-based networks.

27.     The Visa Plus System, Inc. Operating Regulations set forth the following restraint on the exercise of discretion by ATM operators to charge an access fee they deem commercially appropriate:

### 4.10A  Imposition of Access Fee

An ATM Acquirer may impose an Access Fee if:

- It imposes an Access Fee on all other Financial Transactions through other shared networks at the same ATM;

> - The Access Fee is not greater than the Access Fee amount on all other Interchange Transactions through other shared networks at the same ATM ….

28.     Similarly, MasterCard's Cirrus Worldwide Operating Rules (September 15, 2010) applicable to the United States Region (Chapter 20) sets forth the same restraint on the exercise of discretion by ATM operators to set access fees as they deem commercially appropriate:

**7.13.1.2  Non-Discrimination Regarding ATM Access Fees**

> An Acquirer must not charge an ATM Access Fee in connection with a Transaction that is greater than the amount of any ATM Access Fee charged by that Acquirer in connection with the transactions of any other network accepted at that terminal.

## VI.     HARM TO COMPETITION

29.     The foregoing provisions (hereinafter, the "ATM restraints") suppress competition from PIN-based payment networks that compete with Visa and MasterCard's networks by implementing a uniform horizontal agreement among U.S. banks to fix ATM access fees in a manner that ensures that the access fee for a transaction carried over a competing network is not less than the access fee charged for a transaction carried over Visa or MasterCard's network.  While couched in terms of a ceiling on ATM access fees, the ATM restraints actually operate to prohibit discounting by competing ATM operators.  The "ceiling" price is the "floor" price due to the ATM restraints.  The ATM restraints, therefore, effectuate horizontal price fixing that is unlawful *per se*.

30.     The ATM restraints harm competition in numerous ways.  The ATM restraints deprive separately owned and in other respects autonomous profit-making businesses – bank and non-bank ATM operators – of the power to make decisions on output or price that deviate from the agreed upon rules.  By eliminating or severely restricting independent decision-making by ATM operators, the ATM restraints establish a non-competitive price-setting arrangement that

- 8 -

prohibits discounting and prevents ATM operators from setting profit-maximizing prices and from other pricing behavior characteristic of a competitive market.  ATM operators may not offer a discount or any other benefit to persuade consumers to complete their transactions over competing, lower cost PIN-based networks, nor may an ATM operator offer a rebate that might circumvent the fixed access fee that complies with the Defendants' rules.  By restricting their ability to attract customers to lower cost ATM services through lower prices, the ATM restraints put a competitive straightjacket on ATM operators and injure Plaintiffs.

31.     The ATM restraints result in supra-competitive ATM fees and duplicative and exploitative foreign ATM fees that inflate ATM fees and discourage consumers from consuming them, lowering output and artificially constraining growth in ATM deployment.  But for the ATM restraints, retail prices for ATM services would be lower, the quantity of ATM services demanded would be greater, and economic output would increase.

32.     In a reasonably competitive market, ATM operators would set access fees at a level reflecting the cost of obtaining the network services and other inputs necessary to complete the transaction.  ATM operators would set access fees lower for transactions routed through lower-cost ATM networks relative to access fees for transactions routed through higher-cost networks.  Competition between ATM operators would pass these lower costs on to Plaintiffs.  However, the ATM restraints fix and maintain access fees at the same level irrespective of which network completes the transaction or what those services actually cost.  By preventing ATM operators from charging an access fee that reflects the lower cost of competing networks the ATM restraints shelter the Defendants from natural and beneficial price competition that otherwise would be exerted by the other participants in the market.  By preventing ATM operators from passing on cost savings to consumers in the form of lower prices, signaling the

availability of more efficient, higher quality, or lower priced services, Visa and MasterCard escape the competitive discipline that would otherwise be brought to bear on them by competing PIN-based networks.

33.     Because the ATM restraints break the essential economic link that would exist in a reasonably competitive market between the price a consumer is charged for a service and the cost to the retailer of providing it, they extinguish the incentive of cardholders to demand, and providers of ATM services to provide, lower-cost, more efficient services.  By disrupting the ordinary give and take of the marketplace, the ATM restraints suppress competition with rival networks at the point of the transaction, where ATM operators interact directly with consumers, most of whom carry PIN-debit cards capable of initiating ATM transactions over more than one network.  Alternative PIN-debit networks are less costly.  The ATM restraints prevent ATM operators from offering their customers a discount or benefit for completing a transaction over a network that is less costly to the ATM operator, so consumers cannot be rewarded for using a lower cost and more efficient network.

## VII.     RELEVANT MARKETS

### A.      Relevant Product Market

34.     The relevant product market is the market for ATM services.  No cost-effective alternative to ATM services exists and there are few substitutes.  Accordingly, a sufficient number of PIN-debit cardholders would not switch away from ATMs to make a small but significant price increase in those services unprofitable.  The market for ATM services is a separate and distinct relevant product market for the purposes of 15 U.S.C. § 1.

### B.      Relevant Geographic Market

35.     The 50 states of the United States and its districts and territories comprise the relevant geographic market.

- 10 -

## VIII.   DEFENDANTS' MARKET POWER

36.     Through their contracts and agreements with U.S. banks Visa and MasterCard directly wield market power in the relevant market.  Visa and MasterCard implement and enforce the ATM restraints and require compliance with them in their contracts, agreements, rules and undertakings with member banks, which, in turn, secure compliance by their customers and suppliers.  Visa and MasterCard directly exercise their market power through these arrangements to suppress interbrand competition in the relevant market.

37.     Defendants' direct exercise of market power constrains all of the participants in the ATM industry, including ATM acquirers (member banks that operate ATMs or ISO-sponsoring institutions), processors and technology providers (including the administrators of ATM access fees), and registered ISOs and their affiliates – including the ATM ISOs and affiliates.  Defendants actively monitor and vigorously enforce the ATM restraints and participants in the ATM services market must accept and agree to the ATM restraints as a condition of transacting business over Defendants' PIN-based networks.  Parties that do not adhere to the ATM restraints are penalized or denied access to the network.

38.     Visa and MasterCard maintain their market power in light of the insurmountable barriers to entry faced by a potential competitor that might seek to achieve comparable consumer acceptance of its PIN-debit card, while at the same time the ATM restraints effectively foreclose competitive ATM networks from competing to carry a larger share of ATM transactions.

## IX.     CLASS ALLEGATIONS

39.     Indirect Purchaser Plaintiffs bring this action on their own behalf and on behalf of a class of persons pursuant to Federal Rules of Civil Procedure 23.  The Class is defined as follows:

010275-11  480124 V1

All persons residing in the United States who paid an ATM fee imposed by Defendants and their member banks at any time on or after October 1, 2007.

Excluded from the class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state, or local governmental entities, any judicial officers presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

40.     Plaintiffs will seek certification of the following subclasses (collectively, the "State Classes") for damages for claims under the antitrust statutes and/or consumer protection statutes of each of the following jurisdictions:

a.     **Arizona Indirect Purchaser Class**:  All persons and entities who, as residents of Arizona, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

b.     **California Indirect Purchaser Class**:  All persons and entities who, as residents of California, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

c.     **District of Columbia Indirect Purchaser Class**:  All persons and entities who, as residents of the District of Columbia, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

d.     **Florida Indirect Purchaser Class**:  All persons and entities who, as residents of Florida, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

e.      **Hawaii Indirect Purchaser** Class:  All persons and entities who, as residents of Hawaii, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

f.      **Illinois Indirect Purchaser Class**:  All persons and entities who, as residents of Illinois, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

g.      **Iowa Indirect Purchaser Class**:  All persons and entities who, as residents of Iowa, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

h.      **Kansas Indirect Purchaser Class**:  All persons and entities who, as residents of Kansas, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

i.      **Maine Indirect Purchaser Class**:  All persons and entities who, as residents of Maine, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

j.      **Massachusetts Indirect Purchaser Class**:  All persons and entities who, as residents of Massachusetts, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

k.      **Michigan Indirect Purchaser Class**:  All persons and entities who, as residents of Michigan, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

- 13 -

l.      **Minnesota Indirect Purchaser Class**:  All persons and entities who, as residents of Minnesota, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

m.      **Missouri Indirect Purchaser Class**:  All persons and entities who, as residents of Missouri, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

n.      **Mississippi Indirect Purchaser Class**:  All persons and entities who, as residents of Mississippi, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

o.      **Montana Indirect Purchaser Class**:  All persons and entities who, as residents of Montana, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

p.      **Nebraska Indirect Purchaser Class**:  All persons and entities who, as residents of Nebraska, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

q.      **Nevada Indirect Purchaser Class**:  All persons and entities who, as residents of Nevada, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

r.      **New Hampshire Indirect Purchaser Class**:  All persons and entities who, as residents of New Hampshire, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

s.      **New Mexico Indirect Purchaser Class**:  All persons and entities who, as residents of New Mexico, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

t.      **New York Indirect Purchaser Class**:  All persons and entities who, as residents of New York, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

u.      **North Carolina Indirect Purchaser Class**:  All persons and entities who, as residents of North Carolina, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

v.      **North Dakota Indirect Purchaser Class**:  All persons and entities who, as residents of North Dakota, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

w.      **Oregon Indirect Purchaser Class**:  All persons and entities who, as residents of Oregon, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

x.      **South Carolina Indirect Purchaser Class**:  All persons and entities who, as residents of South Carolina, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

y.      **South Dakota Indirect Purchaser Class**:  All persons and entities who, as residents of South Dakota, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

z.      **Tennessee Indirect Purchaser Class**:  All persons and entities who, as residents of Tennessee, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

aa.     **Utah Indirect Purchaser Class**:  All persons and entities who, as residents of Utah, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

bb.     **Vermont Indirect Purchaser Class**:  All persons and entities who, as residents of Vermont, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

cc.     **West Virginia Indirect Purchaser Class**:  All persons and entities who, as residents of West Virginia, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

dd.     **Wisconsin Indirect Purchaser Class**:  All persons and entities who, as residents of Wisconsin, paid an ATM fee on or after October 1, 2007, imposed by Defendants and their member banks.

41.     The persons in the Class and State Classes are so numerous that individual joinder of all members is impracticable under the circumstances of this case.  Although the precise number of such persons is unknown, the exact size of the Class and State Classes is easily ascertainable, as each class member can by identified by using Defendants' records.  Plaintiffs are informed and believe that there are many thousands of Class and State Class members.

42.     Indirect Purchaser Plaintiffs' claims are typical of the claims of the Class and State Classes in that Indirect Purchaser Plaintiffs are indirect purchasers of ATM services, all

Class members were damaged by the same wrongful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

43.     Plaintiffs bring this action under Fed. R. Civ. P., 23(a), (b)(l)(A), (2) and (3), on behalf of themselves and the Class.

44.     Defendants' relationships with the members of the Class and Defendants' anticompetitive conduct are substantially uniform and the antitrust violation alleged herein affects Plaintiffs in substantially the same manner.  Consequently, common questions of law and fact will predominate over any individual questions of law and fact. Among the questions of law and fact common to the Class are:

        a.      Whether Defendants have established rules precluding discounting;

        b.      Whether Visa and MasterCard possess and exercise market power in the relevant markets alleged in this complaint;

        c.      Whether the ATM restraints cause supracompetitive fees paid by consumers in the ATM market;

        d.      Whether Defendants' ATM restraints are unlawful under Section 1 of the Sherman Act;

        e.      The proper measure of damages and the amount thereof sustained by Plaintiffs and the Class as a result of the violations alleged herein;

        f.      Whether Plaintiffs and the Class are entitled to injunctive relief under Section 16 of the Sherman Act.

45.     Plaintiffs have claims that are typical of the claims of the class and have no interests adverse to or in conflict with the class.  Plaintiffs are represented by counsel competent

and experienced in the payment industry and in prosecution of class action and antitrust litigation and will fairly and adequately protect the interests of the Class.

46.     There is no foreseeable difficulty managing this action as a class action. Common questions of law and fact exist with respect to all members of the Class and predominate over any questions solely affecting individual members.  A class action is superior to any other method for the fair and efficient adjudication of this legal dispute because joinder of all members is impracticable, if not impossible.  The damages suffered by most of the members of the Class are small in relation to the expense and burden of individual litigation and therefore impractical for such members of the class to individually attempt to redress the antitrust violation alleged herein.

47.     The anticompetitive conduct of Defendants alleged herein has imposed a common antitrust injury on the members of the class.

48.     Defendants have acted, continue to act, refused to act, and continue to refuse to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## X.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### SHERMAN ACT, SECTION 1, 15 U.S.C. § 1
### (*Per Se* or Rule of Reason Agreement to Fix Prices)

49.     Through the ATM restraints, Defendants have implemented and managed a horizontal agreement to fix prices for ATM services and to protect and shield the Defendants' ATM networks from competition from competing networks.  Each Defendant's ATM restraint independently restrains competition among networks and violates Section 1 of the Sherman Act apart from the existence of the other Defendant's ATM restraints.

- 18 -

50.     Each Defendant's ATM restraints constitutes an agreement that unreasonably restrains competition in the market for ATM services in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  The agreements have and will continue to restrain trade in interstate commerce by fixing the price of ATM access fees in a manner that prevents Plaintiffs from using lower-cost ATM network services and protecting Defendants from competition from rivals.  By unlawfully insulating Defendants' ATM networks from competition, the agreements increase the costs of card acceptance to ATM operators, increase consumer access fees and foreign ATM fees above reasonably competitive levels, reduce output and the number of ATM terminals deployed, harm the competitive process, raise barriers to entry and expansion, and retard innovation and investment.

51.     The ATM restraints are not reasonably necessary to accomplish any pro-competitive goal and no pro-competitive benefits result from them.  Any efficiency benefit is outweighed by anticompetitive harm and less restrictive alternatives exist by which Defendants could reasonably achieve the same or greater efficiency.

52.     As a result of these violations of Plaintiffs and the Class have paid supra-competitive fees for ATM transactions in an amount not presently known, but which is tens of millions of dollars, prior to trebling.

53.     As a result of these violations of Section 1 of the Sherman Act, Plaintiffs, the Class, face irreparable injury.  The violations and the effects thereof are continuing and will continue unless the injunctive relief requested herein is granted. Plaintiffs, the putative class, and the association plaintiff have no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**

**VIOLATIONS OF STATE ANTITRUST AND RESTRAINT OF TRADE LAWS**

54.     Indirect Purchaser Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

55.     Indirect Purchaser Plaintiffs allege the following violations of state antitrust and restraint of trade laws.

56.     <u>Arizona</u>:  By reason of the foregoing, Defendants have violated Arizona Revised Statutes, §§ 44-1401 *et seq*.  The Arizona Indirect Purchaser Class alleges as follows:

a.     Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Arizona; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) members of the Arizona Indirect Purchaser Class were deprived of free and open competition; and (4)  members of the Arizona Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions;

b.     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, members of the Arizona Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Arizona Revised Statutes §§ 44-1401, *et seq*.  Accordingly, the members of the Arizona Indirect Purchaser Class seek all forms of relief available under Arizona Revised Statutes §§ 44-1401, *et seq*.

57.   <u>California</u>:  By reason of the foregoing, Defendants have violated California

Business and Professions Code, §§ 16700, *et seq.*  The California Indirect Purchaser Class

alleges as follows:

a.   Defendants' contract, combination, trust or conspiracy was entered in,

carried out, effectuated and perfected within the State of California, and Defendants' conduct

within California injured all members of the Class throughout the United States.  Therefore, this

claim for relief under California law is brought on behalf of the California Indirect Purchaser

Class.

b.   Beginning at a time currently unknown to the California Indirect

Purchaser Class, but at least as early as October 1, 2007, and continuing thereafter at least up to

the filing of this complaint, Defendants and their co-conspirators entered into and engaged in a

continuing unlawful trust in restraint of the trade and commerce described above in violation of

section 16720, California Business and Professions Code.  Defendants, and each of them, have

acted in violation of section 16720 to fix, raise, stabilize, and maintain prices of, and allocate

markets for ATM Transactions at supra-competitive levels.

c.   The aforesaid violations of section 16720, California Business and

Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of

action among the Defendants and their co-conspirators, the substantial terms of which were to

fix, raise, maintain, and stabilize the prices of, and to allocate markets for ATM Transactions.

d.   For the purpose of forming and effectuating the unlawful trust, the

Defendants and their co-conspirators have done those things which they combined and conspired

to do, including but not in any way limited to, the acts, practices and course of conduct set forth

above fixing, raising, stabilizing, and pegging the price of ATM Transactions.

- 21 -

e.      The combination and conspiracy alleged herein has had, *inter alia*, the following effects:  (1) price competition in the sale of ATM Transactions has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for ATM Transactions have been fixed, raised, stabilized, and pegged at artificially high, noncompetitive levels in the State of California; and (3) those who purchased ATM Transactions directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

f.      As a direct and proximate result of Defendants' unlawful conduct, the members of the California Indirect Purchaser Class have been injured in their business and property in that they paid more for ATM Transactions than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, the California Indirect Purchaser Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to section 16750(a) of the California Business and Professions Code.

58.     District of Columbia:  By reason of the foregoing, Defendants have violated District of Columbia Code Annotated §§ 28-4501, *et seq*.  District of Columbia Plaintiff on behalf of the District of Columbia Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout the District of Columbia; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) members of the District of Columbia Indirect Purchaser Class were deprived of free and open

competition; and (4) members of the District of Columbia Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

       b.      During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

       c.      As a direct and proximate result of Defendants' unlawful conduct, the District of Columbia Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

       d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Annotated §§ 28-4502, *et seq*. Accordingly, the District of Columbia Indirect Purchaser Class seek all forms of relief available under District of Columbia Code Annotated §§ 28-4503, *et seq*.

      59.    <u>Hawaii</u>:  By reason of the foregoing, Defendants have violated Hawaii Revised Statutes, §§ 480-1, *et seq*.  The Hawaii Indirect Purchaser Class alleges as follows:

       a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Hawaii; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Hawaii; (3) members of the Hawaii Indirect Purchaser Class were deprived of free and open competition; and (4) members of the Hawaii Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

       b.      During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct,

members of the Hawaii Indirect Purchaser Class have been injured in their business and property

and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in

restraint of trade in violation of Hawaii Revised Statutes §§ 480-1, *et seq.*  Accordingly, the

members of the Hawaii Indirect Purchaser Class seek all forms of relief available under Hawaii

Revised Statutes §§ 480-1, *et seq.*

60.     <u>Illinois</u>:  By reason of the foregoing, Defendants have violated the Illinois

Antitrust Act, Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, *et seq.*  The Illinois

Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects:

(1) price competition for ATM Transactions was restrained, suppressed, and eliminated

throughout Illinois; (2) prices for ATM Transactions were raised, fixed, maintained and

stabilized at artificially high levels throughout Illinois; (3) members of the Illinois Indirect

Purchaser Class were deprived of free and open competition; and (4) members of the Illinois

Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM

Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected

Illinois commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the

Illinois Indirect Purchaser Class have been injured in their business and property and are

threatened with further injury.

- 24 -

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, *et seq*. Accordingly, the Illinois Indirect Purchaser Class seek all forms of relief available under Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, *et seq.*

61.      <u>Iowa</u>:  By reason of the foregoing, Defendants have violated Iowa Code §§ 553.1, *et seq*.  The Iowa Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Iowa; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) the Iowa Indirect Purchaser Class were deprived of free and open competition; and (4) the Iowa Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the Iowa Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq*.  Accordingly, the Iowa Indirect Purchaser Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq*.

62.      <u>Kansas</u>:  By reason of the foregoing, Defendants have violated Kansas Statutes, §§ 50-101, *et seq*.  The Kansas Indirect Purchaser Class alleges as follows:

- 25 -

a.      Defendants' combinations or conspiracies had the following effects:
(1) price competition for ATM Transactions was restrained, suppressed, and eliminated
throughout Kansas; (2) prices for ATM Transactions were raised, fixed, maintained and
stabilized at artificially high levels throughout Kansas; (3) the Kansas Indirect Purchaser Class
were deprived of free and open competition; and (4) the Kansas Indirect Purchaser Class paid
supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected
Kansas commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the
Kansas Indirect Purchaser Class have been injured in their business and property and are
threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in
restraint of trade in violation of Kansas Statutes §§ 50-101, *et seq*. Accordingly, the Kansas
Indirect Purchaser Class seek all forms of relief available under Kansas Statutes §§ 50-101,
*et seq*.

63.     <u>Maine</u>:  By reason of the foregoing, Defendants have violated the Maine Revised
Statutes, 10 M.R.S. §§ 1101, *et seq*.  The Maine Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects:
(1) price competition for ATM Transactions was restrained, suppressed, and eliminated
throughout Maine; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized
at artificially high levels throughout Maine; (3) the Maine Indirect Purchaser Class were
deprived of free and open competition; and (4) the Maine Indirect Purchaser Class paid supra-
competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the Maine Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Revised Statutes 10, §§ 1101, *et seq*. Accordingly, the Maine Indirect Purchaser Class seek all relief available under Maine Revised Statutes 10, §§ 1101, *et seq*.

64.     Michigan:  By reason of the foregoing, Defendants have violated Michigan Compiled Laws §§ 445.773, *et seq*.  The Michigan Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Michigan; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) the Michigan Indirect Purchaser Class were deprived of free and open competition; and (4) the Michigan Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the Michigan Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

- 27 -

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Compiled Laws §§ 445.773, *et seq.*  Accordingly, the Michigan Indirect Purchaser Class seek all relief available under Michigan Compiled Laws §§ 445.73, *et seq.*

65.     Minnesota:  By reason of the foregoing, Defendants have violated Minnesota Statutes §§ 325D.49, *et seq.*  The Minnesota Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Minnesota; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) the Minnesota Indirect Purchaser Class were deprived of free and open competition; and (4) the Minnesota Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the Minnesota Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Statutes §§ 325D.49, *et seq.*  Accordingly, the Minnesota Indirect Purchaser Class seek all relief available under Minnesota Statutes §§ 325D.49, *et seq.*

66.     Mississippi:  By reason of the foregoing, Defendants have violated Mississippi Code §§ 75-21-1, *et seq.*  The Mississippi Indirect Purchaser Class alleges as follows:

- 28 -

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Mississippi; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) the Mississippi Indirect Purchaser Class were deprived of free and open competition; and (4) the Mississippi Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the Mississippi Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code §§ 75-21-1, *et seq.*

e.      Accordingly, the Mississippi Indirect Purchaser Class seek all relief available under Mississippi Code § 75-21-1, *et seq.*

67.     <u>Nebraska</u>:  By reason of the foregoing, Defendants have violated Nebraska Revised Statutes §§ 59-801, *et seq.*  The Nebraska Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Nebraska; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) the Nebraska Indirect Purchaser Class were deprived of free and open competition; and (4) the Nebraska Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

- 29 -

b.       During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

c.       As a direct and proximate result of Defendants' unlawful conduct, the Nebraska Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.       By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation Nebraska Revised Statutes §§ 59-801, *et seq.*  Accordingly, the Nebraska Indirect Purchaser Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

68.       <u>Nevada</u>:  By reason of the foregoing, Defendants have violated Nevada Revised Statutes §§ 598A.010, *et seq.*  The Nevada Indirect Purchaser Class alleges as follows:

a.       Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Nevada; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) the Nevada Indirect Purchaser Class were deprived of free and open competition; and (4) the Nevada Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.       During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

c.       As a direct and proximate result of Defendants' unlawful conduct, the Nevada Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Revised Statutes §§ 598A.010, *et seq*. Accordingly, the Nevada Indirect Purchaser Class seek all relief available under Nevada Revised Statutes §§ 598A.010, *et seq*.

69.      <u>New Hampshire</u>:  By reason of the foregoing, Defendants have violated New Hampshire Revised Statutes §§ 356:1, *et seq*.  The New Hampshire Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout New Hampshire; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) the New Hampshire Indirect Purchaser Class were deprived of free and open competition; and (4) the New Hampshire Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the New Hampshire Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*.  Accordingly, the New Hampshire Indirect Purchaser Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

- 31 -

70.     <u>New Mexico</u>:  By reason of the foregoing, Defendants have violated New Mexico

Statutes §§ 57-1-1, *et seq*.  The New Mexico Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects:

(1) price competition for ATM Transactions was restrained, suppressed, and eliminated

throughout New Mexico; (2) prices for ATM Transactions were raised, fixed, maintained and

stabilized at artificially high levels throughout New Mexico; (3) the New Mexico Indirect

Purchaser Class were deprived of free and open competition; and (4) the New Mexico Indirect

Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected

New Mexico commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the

New Mexico Indirect Purchaser Class have been injured in their business and property and are

threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of New Mexico Statutes §§ 57-1-1, *et seq*.  Accordingly, the New

Mexico Indirect Purchaser Class seek all relief available under New Mexico Statutes §§ 57-1-1,

*et seq*.

71.     <u>New York</u>:  By reason of the foregoing, Defendants have violated New York

General Business Laws §§ 340, *et seq*.  The New York Indirect Purchaser Class alleges as

follows:

a.      Defendants' combinations or conspiracies had the following effects:

(1) price competition for ATM Transactions was restrained, suppressed, and eliminated

throughout New York; (2) prices for ATM Transactions were raised, fixed, maintained and

stabilized at artificially high levels throughout New York; (3) the New York Indirect Purchaser

Class were deprived of free and open competition; and (4) the New York Indirect Purchaser

Class paid supra-competitive, artificially inflated prices for ATM Transactions.

      b.      During the Class Period, Defendants' illegal conduct substantially affected

New York commerce.

      c.      As a direct and proximate result of Defendants' unlawful conduct, the

New York Indirect Purchaser Class have been injured in their business and property and are

threatened with further injury.

      d.      By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of New York General Business Laws §§ 340, *et seq.*  Accordingly,

the New York Indirect Purchaser Class seek all relief available under New York General

Business Laws §§ 340, *et seq*.

      72.      <u>North Carolina</u>:  By reason of the foregoing, Defendants have violated North

Carolina General Statutes §§ 75-1, *et seq*.  The North Carolina Indirect Purchaser Class alleges

as follows:

      a.      Defendants' combinations or conspiracies had the following effects:

(1) price competition for ATM Transactions was restrained, suppressed, and eliminated

throughout North Carolina; (2) prices for ATM Transactions were raised, fixed, maintained and

stabilized at artificially high levels throughout North Carolina; (3) the North Carolina Indirect

Purchaser Class were deprived of free and open competition; and (4) the North Carolina Indirect

Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

      b.      During the Class Period, Defendants' illegal conduct substantially affected

North Carolina commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the North Carolina Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina General Statutes §§ 75-1, *et seq.* Accordingly, the North Carolina Indirect Purchaser Class seek all relief available under North Carolina General Statutes §§ 75-1, *et seq.*

73.     <u>North Dakota</u>:  By reason of the foregoing, Defendants have violated North Dakota Century Code §§ 51-08.1-01, *et seq.* The North Dakota Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout North Dakota; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) the North Dakota Indirect Purchaser Class were deprived of free and open competition; and (4) the North Dakota Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the North Dakota Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Century Code §§ 51-08.1-01, *et seq.* Accordingly,

- 34 -

the North Dakota Indirect Purchaser Class seek all relief available under North Dakota Century Code §§ 51-08.1-01, *et seq.*

74.  Oregon:  By reason of the foregoing, Defendants have violated Oregon Revised Statutes §§ 646.705, *et seq.*  The Oregon Indirect Purchaser Class allege as follows:

a.  Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Oregon; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) the Oregon Indirect Purchaser Class were deprived of free and open competition; and (4) the Oregon Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, the Oregon Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.*  Accordingly, the Oregon Indirect Purchaser Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

75.  South Dakota:  By reason of the foregoing, Defendants have violated South Dakota Codified Laws §§ 37-1-3.1, *et seq.*  The South Dakota Indirect Purchaser Class alleges as follows:

- 35 -

a.      Defendants' combinations or conspiracies had the following effects:
(1) price competition for ATM Transactions was restrained, suppressed, and eliminated
throughout South Dakota; (2) prices for ATM Transactions were raised, fixed, maintained and
stabilized at artificially high levels throughout South Dakota; (3) the South Dakota Indirect
Purchaser Class were deprived of free and open competition; and (4) the South Dakota Indirect
Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct had a substantial
effect on South Dakota commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the
South Dakota Indirect Purchaser Class have been injured in their business and property and are
threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in
restraint of trade in violation of South Dakota Codified Laws §§ 37-1-3.1, *et seq*.  Accordingly,
the South Dakota Indirect Purchaser Class seek all relief available under South Dakota Codified
Laws §§ 37-1-3.1, *et seq*.

76.     Tennessee: By reason of the foregoing, Defendants have violated Tennessee Code
§§ 47-25-101, *et seq*.  The Tennessee Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects:
(1) price competition for ATM Transactions was restrained, suppressed, and eliminated
throughout Tennessee; (2) prices for ATM Transactions were raised, fixed, maintained and
stabilized at artificially high levels throughout Tennessee; (3) the Tennessee Indirect Purchaser
Class were deprived of free and open competition; and (4) the Tennessee Indirect Purchaser
Class paid supra-competitive, artificially inflated prices for ATM Transactions.

- 36 -

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce as products containing ATM Transactions were sold in Tennessee.

c.      As a direct and proximate result of Defendants' unlawful conduct, the Tennessee Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code §§ 47-25-101, *et seq*.  Accordingly, the Tennessee Indirect Purchaser Class seek all relief available under Tennessee Code §§ 47-25-101, *et seq*.

77.      Utah:  By reason of the foregoing, Defendants have violated Utah Code §§ 76-10-911, *et seq*.  The Utah Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Utah; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) the Utah Indirect Purchaser Class were deprived of free and open competition; and (4) the Utah Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the Utah Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

- 37 -

010275-11  480124 V1

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of violated Utah Code §§ 76-10-911, *et seq.*  Accordingly, the Utah Indirect Purchaser Class seek all relief available under violated Utah Code §§ 76-10-911, *et seq.*

78.     <u>Vermont</u>:  By reason of the foregoing, Defendants have violated Vermont Stat. Ann. 9 §§ 2453, *et seq.*  The Vermont Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Vermont; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) the Vermont Indirect Purchaser Class were deprived of free and open competition; and (4) the Vermont Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the Vermont Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.*  Accordingly, the Vermont Indirect Purchaser Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

79.     <u>West Virginia</u>:  By reason of the foregoing, Defendants have violated West Virginia Code §§ 47-18-1, *et seq.*  The West Virginia Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated

- 38 -

throughout West Virginia; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) the West Virginia Indirect Purchaser Class were deprived of free and open competition; and (4) the West Virginia Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the West Virginia Indirect Purchaser Class has been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*.  Accordingly, the West Virginia Indirect Purchaser Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

80.     <u>Wisconsin</u>:  By reason of the foregoing, Defendants have violated Wisconsin Statutes §§ 133.01, *et seq*.  The Wisconsin Indirect Purchaser Class alleges as follows:

a.      Defendants' combinations or conspiracies had the following effects: (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Wisconsin; (2) prices for ATM Transactions were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) the Wisconsin Indirect Purchaser Class were deprived of free and open competition; and (4) the Wisconsin Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

- 39 -

c.      As a direct and proximate result of Defendants' unlawful conduct, Wisconsin Plaintiff and the Wisconsin Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Statutes §§ 133.01, *et seq.* Accordingly, the Wisconsin Indirect Purchaser Class seek all relief available under Wisconsin Statutes §§ 133.01, *et seq.*

### THIRD CLAIM FOR RELIEF

### VIOLATIONS OF STATE CONSUMER PROTECTION AND UNFAIR COMPETITION LAWS

81.      Indirect Purchaser Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

82.      Indirect Purchaser Plaintiffs allege the following violations of state consumer protection and unfair competition laws in the alternative.

83.      Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

84.      <u>California</u>:  By reason of the foregoing, Defendants have violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* California Plaintiff on behalf of the California Indirect Purchaser Class alleges as follows:

a.      Defendants committed acts of unfair competition, as defined by section 17200, *et seq.*, by engaging in a conspiracy to fix and stabilize the price of ATM Transactions as described above.

b.      The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as described above, constitute a common and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices with the meaning of section 17200, *et seq*., including, but not limited to (1) violation of Section 1 of the Sherman Act; (2) violation of the Cartwright Act.

c.      Defendants' acts, omissions, misrepresentations, practices and nondisclosures are unfair, unconscionable, unlawful and/or fraudulent independently of whether they constitute a violation of the Sherman Act or the Cartwright Act.

d.      Defendants' acts or practices are fraudulent or deceptive within the meaning of section 17200, *et seq.*

e.      Defendants' conduct was carried out, effectuated, and perfected within the state of California.  Defendants maintained offices in California where their employees engaged in communications, meetings and other activities in furtherance of defendants' conspiracy.

f.      By reason of the foregoing, California Plaintiff and the California Indirect Purchaser Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as result of such business acts and practices described above.

85.     <u>Florida</u>:  By reason of the foregoing, Defendants have violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*  The Florida Indirect Purchaser Class alleges as follows:

a.      Defendants' unlawful conduct had the following effects:  (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Florida; (2) prices for ATM Transactions were raised, fixed, maintained, and stabilized at

artificially high levels throughout Florida; (3) the Florida Indirect Purchaser Class were deprived

of free and open competition; and (4) the Florida Indirect Purchaser Class paid supra-

competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected

Florida commerce and consumers.

c.      As a direct and proximate result of defendants' unlawful conduct, the

Florida Indirect Purchaser Class have been injured and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of Fla. Stat. §§ 501.201, *et seq.*, and, accordingly, the Florida Indirect

Purchaser Class seek all relief available under that statute.

86.     <u>Hawaii</u>:  By reason of the foregoing, Defendants have violated Hawaii Revised

Statutes Annotated §§ 480-1, *et seq.*  The Hawaii Indirect Purchaser Class alleges as follows:

a.      Defendants' unlawful conduct had the following effects:  (1) price

competition for ATM Transactions was restrained, suppressed, and eliminated throughout

Hawaii; (2) prices for ATM Transactions were raised, fixed, maintained, and stabilized at

artificially high levels throughout Hawaii; (3) The Hawaii Indirect Purchaser Class were

deprived of free and open competition; and (4) the Hawaii Indirect Purchaser Class paid supra-

competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected

Hawaii commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, the

Hawaii Indirect Purchaser Class have been injured and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Revised Statutes Annotated §§ 480-1, *et seq*., and, accordingly, the Hawaii Indirect Purchaser Class seek all relief available under that statute.

87.     <u>Massachusetts</u>:  By reason of the foregoing, Defendants have violated the Massachusetts Consumer and Business Protection Act, M.G.L. c. 93A, § 1, *et seq.*  The Massachusetts Indirect Purchaser Class allege as follows:

a.      Defendants were engaged in trade or commerce as defined by M.G.L. c. 93A, § 1.

b.      Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and noncompetitive levels, the prices at which ATM Transactions were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from the the Massachusetts Indirect Purchaser Class.

c.      Defendants' unlawful conduct had the following effects:  (1) price competition for ATM Transactions was restrained, suppressed, and eliminated throughout Massachusetts; (2) the prices of ATM Transactions were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) the Massachusetts Indirect Purchaser Class were deprived of free and open competition; and (4) the Massachusetts Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions and ATM Transactions.

d.      As a direct and proximate result of defendants' unlawful conduct, the Massachusetts Indirect Purchaser Class were injured and are threatened with further injury.

- 43 -

e.      Each of the Defendants or their representatives have been served with a

demand letter in accordance with M.G.L. c. 93A, § 1, or such service of a demand letter was

unnecessary due to the defendant not maintaining a place of business within the Commonwealth

of Massachusetts or not keeping assets within the Commonwealth.  More than thirty days has

passed since such demand letters were served, and each Defendant served has failed to make a

reasonable settlement offer.

f.      By reason of the foregoing, Defendants engaged in unfair competition and

unfair or deceptive acts or practices, in violation of M.G.L. c. 93A, § 2.  Defendants' and their

co-conspirators' violations of Chapter 93A were knowing or willful, entitling the Massachusetts

Indirect Purchaser Class to multiple damages.

88.     Missouri:  By reason of the foregoing, Defendants have violated Missouri's

Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020.  The Missouri Indirect

Purchaser Class allege as follows:

a.      The Missouri Indirect Purchaser Class purchased ATM Transactions for

personal, family, or household purposes.

b.      Defendants engaged in the conduct described herein in connection with

the sale of ODD in trade or commerce in a market that includes Missouri.

c.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain,

at artificial and non-competitive levels, the prices at which ATM Transactions were sold,

distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was

unlawful under federal and state law, violated public policy, was unethical, oppressive and

unscrupulous, and caused substantial injury to the members of the Missouri Indirect Purchaser

Class.

d.        Defendants concealed, suppressed, and omitted to disclose material facts to the Missouri Indirect Purchaser Class concerning defendants' unlawful activities and artificially inflated prices for ATM Transactions.  The concealed, suppressed, and omitted facts would have been important to the Missouri Indirect Purchaser Class as they related to the cost of ATM Transactions they purchased.

e.        Defendants misrepresented the real cause of price increases and/or the absence of price reductions in ATM Transactions by making public statements that were not in accord with the facts.

f.        Defendants' statements and conduct concerning the price of ATM Transactions were deceptive as they had the tendency or capacity to mislead the Missouri Indirect Purchaser Class to believe that they were purchasing ATM Transactions and ATM Transactions at prices established by a free and fair market.  Defendants' unlawful conduct had the following effects:  (1) ATM Transaction price competition was restrained, suppressed, and eliminated throughout Missouri; (2) ATM Transaction prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) the Missouri Indirect Purchaser Class were deprived of free and open competition; and (4) the Missouri Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

g.        The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

h.        As a direct and proximate result of the above-described unlawful practices, the Missouri Indirect Purchaser Class suffered ascertainable loss of money or property.

i.        Accordingly, the Missouri Indirect Purchaser Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which

- 45 -

prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

89.     <u>Montana</u>:  By reason of the foregoing, Defendants have violated Montana's Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103 *et seq.* The Montana Indirect Purchaser Class alleges as follows:

a.      Defendants' unlawful conduct had the following effects:  (1) ATM Transaction price competition was restrained, suppressed, and eliminated throughout Montana; (2) ATM Transaction prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) the Montana Indirect Purchaser Class were deprived of free and open competition; and (4) the Montana Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, the Montana Indirect Purchaser Class have been injured and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana's Unfair Trade Practices and Consumer Protection Act, Mont. Code, §§ 30-14-103 *et seq.* and, accordingly, the Montana Indirect Purchaser Class seek all relief available under that statute.

90.   <u>Nebraska</u>:  By reason of the foregoing, Defendants have violated Nebraska's

Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq*.  The Nebraska Indirect Purchaser

Class alleges as follows:

a.      Defendants' unlawful conduct had the following effects:  (1) ATM

Transaction price competition was restrained, suppressed, and eliminated throughout Nebraska;

(2) ATM Transactions prices were raised, fixed, maintained, and stabilized at artificially high

levels throughout Nebraska; (3) the Nebraska Indirect Purchaser Class were deprived of free and

open competition; and (4) the Nebraska Indirect Purchaser Class paid supra-competitive,

artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected

Nebraska commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, the

Nebraska Indirect Purchaser Class have been injured and are threatened with further injury.

d.      Defendants' actions and conspiracy have had a substantial impact on the

public interests of Nebraska and its residents.

e.      Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et*

*seq*.  and, accordingly, the Nebraska Indirect Purchaser Class seek all relief available under that

statute.

91.   <u>New Hampshire</u>:  By reason of the foregoing, Defendants have violated New

Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:2, *et seq*.  The New

Hampshire Indirect Purchaser Class alleges as follows:

- 47 -

a.      Defendants' unlawful conduct had the following effects:  (1) ATM Transaction price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) ATM Transaction prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) the New Hampshire Indirect Purchaser Class were deprived of free and open competition; and (4) the New Hampshire Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, the New Hampshire Indirect Purchaser Class have been injured and are threatened with further injury.

d.      Defendants' actions and conspiracy have had a substantial impact on the public interests of New Hampshire and its residents.

e.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:2, *et seq.*  and, accordingly, the New Hampshire Indirect Purchaser Class seek all relief available under that statute.

92.      New York:  By reason of the foregoing, Defendants have violated New York's General Business Law, N.Y. Gen. Bus. Law § 349, *et seq.*  The New York Indirect Purchaser Class alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and noncompetitive levels, the

- 48 -

prices at which ATM Transactions were sold, distributed or obtained in New York and took efforts to conceal their agreements from the New York Indirect Purchaser Class.

b.  The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

c.  Defendants made certain statements about ATM Transactions that they knew would be seen by New York residents and these statements either omitted material information that rendered the statements they made materially misleading or affirmatively misrepresented the real cause of price increases for ATM Transactions.

d.  Defendants' unlawful conduct had the following effects:  (1) ATM Transaction price competition was restrained, suppressed, and eliminated throughout New York; (2) ATM Transactions prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) the New York Indirect Purchaser Class were deprived of free and open competition; and (4) the New York Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

e.  During the Class Period, Defendants' illegal conduct substantially affected New York commerce and consumers.

f.  During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed ATM Transactions in New York.

- 49 -

g.      The New York Indirect Purchaser Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury.  Without prejudice to their contention that Defendants' unlawful conduct was willful and knowing, the New York Indirect Purchaser Class do not seek in this action to have those damages trebled pursuant to N.Y. Gen. Bus. Law § 349(h).

93.     <u>South Carolina</u>:  By reason of the foregoing, Defendants have violated South Carolina's Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq*.  The South Carolina Indirect Purchaser Class alleges as follows:

a.      The South Carolina Indirect Purchaser Class Defendants' unlawful conduct had the following effects:  (1) ATM Transaction price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) ATM Transaction prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3)  the South Carolina Indirect Purchaser Class were deprived of free and open competition; and (4) the South Carolina Indirect Purchaser Class paid supra-competitive, artificially inflated prices for ATM Transactions.

b.      During the Class Period, Defendants' illegal conduct substantially affected South Carolina commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, the South Carolina Indirect Purchaser Class have been injured and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of South Carolina Revised Statutes Annotated §§ 480-1, *et seq*., and, accordingly, the South Carolina Indirect Purchaser Class seek all relief available under that statute.

94.     <u>Vermont</u>:  By reason of the foregoing, Defendants have violated Vermont's

Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*  The Vermont Indirect Purchaser Class

alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce

in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at

artificial and noncompetitive levels, the prices at which ATM Transactions were sold,

distributed, or obtained in Vermont.

b.      Defendants deliberately failed to disclose material facts to the Vermont

Indirect Purchaser Class concerning Defendants' unlawful activities and artificially inflated

prices for ATM Transactions.  Defendants owed a duty to disclose such facts, and considering

the relative lack of sophistication of the average, non-business consumer, Defendants breached

that duty by their silence.  Defendants misrepresented to all consumers during the Class Period

that Defendants' ODD prices were competitive and fair.

c.      Defendants' unlawful conduct had the following effects:  (1) ATM

Transaction price competition was restrained, suppressed, and eliminated throughout Vermont;

(2) ATM Transaction prices were raised, fixed, maintained, and stabilized at artificially high

levels throughout Vermont; (3) the Vermont Indirect Purchaser Class were deprived of free and

open competition; and (4) the Vermont Indirect Purchaser Class paid supra-competitive,

artificially inflated prices for ATM Transactions.

d.      As a direct and proximate result of the Defendants' violations of law, the

Vermont Indirect Purchaser Class suffered an ascertainable loss of money or property as a result

of Defendants' use or employment of unconscionable and deceptive commercial practices as set

forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

          e.     Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of ATM Transactions, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing ATM Transactions at prices born by a free and fair market.  Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. Stat. Ann. § 2451, *et seq*., and, accordingly, the Vermont Indirect Purchaser Class seek all relief available under that statute.

## REQUEST FOR RELIEF

        WHEREFORE, plaintiffs pray that final judgment be entered against each defendant granting the following relief:

        A.     A declaration that this action may be maintained as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure be given to all members of the plaintiff class;

        B.     A finding that the combinations and agreements alleged in the complaint be adjudged and decreed to be unreasonable restraints of trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

        C.     An injunctive order and decree requiring each defendant to eliminate the ATM restraints and be prohibited from otherwise enforcing them;

        D.     An injunctive order and decree that each defendant be permanently enjoined from fixing or specifying the access fee for ATM transactions or implementing other rules or policies having a similar purpose or effect in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

E. An order prohibiting each defendant from prohibiting or preventing reasonable means for cardholders to choose the network over which their ATM transactions will take place and to fund and undertake programs to inform consumers and ATM operators of their rights respecting cardholders' and ATM operators' choice of network routing;

F. The Plaintiffs and each member of the Class recover three-fold their damages as provided by the state laws as alleged herein, or restitution to Plaintiffs and the Class for injuries under state law;

G. The Plaintiffs and the Class recover their costs of this suit, including reasonable attorneys' fees, as provided by law; and

H. The Plaintiffs and the Class be granted such other relief as may be appropriate as the court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues triable of right by a jury.

DATED:  October 17, 2011

By _John W. Kern_

  John W. Kern (D.C. Bar # 413262)
  1201 Fifteenth Street, N.W.
  Suite 400
  Washington, D.C. 20005-2842
  Telephone:  (202) 207-1151
  jklaw@comcast.net

- 53 -

Steve W. Berman
Anthony D. Shapiro
George W. Sampson
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com
george@hbsslaw.com

Stuart M. Paynter (D.C. Bar # 226147)
THE PAYNTER LAW FIRM PLLC
1200 G Street N.W., Suite 800
Washington, DC  20005
Telephone:  (202) 626-4486
Facsimile:   (866) 734-0622
stuart@smplegal.com

Attorneys for Plaintiffs