**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW MACKMIN, *et al.*, | |
| *Plaintiffs*, | Civil Action No. 1:11-cv-1831-RJL |
| *v.* | Assign Date: 8/4/2015 |
| VISA INC., *et al.*, | Description: Antitrust – Class Action |
| *Defendants*. | |

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**
**OF SETTLEMENTS WITH THE BANK OF AMERICA, CHASE, AND WELLS**
**FARGO DEFENDANTS AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, on a date to be determined by the Court, at the E. Barrett Prettyman Courthouse, 333 Constitution Avenue NW, Washington, D.C. 20001, the *Mackmin* Plaintiffs will and hereby do move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order:

(1)     preliminarily approving the proposed class action settlements with Bank of America, National Association; NB Holdings Corporation; Bank of America Corporation; Chase Bank USA, N.A.; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; Wells Fargo & Company; and Wells Fargo Bank, N.A.;

(2)     provisionally certifying the proposed Settlement Class;

(3)     directing notice to the proposed Settlement Class in connection with the class action settlements, and approving the proposed forms and manner of notice;

(4)     appointing plaintiffs Andrew Mackmin and Sam Osborn as representatives for the proposed Settlement Class for the purposes of disseminating notice;

(5)     appointing Hagens Berman Sobol Shapiro LLP, Quinn Emanuel Urquhart & Sullivan, LLP, and Mehri & Skalet, PLLC as Settlement Class Counsel;

(6)     authorizing retention of A.B. Data, Ltd. as Settlement Administrator; and

(7)     scheduling a hearing to determine whether the proposed settlements are fair, reasonable, and adequate under Rule 23(e)(2) and whether the proposed Settlement Class should be certified.

The motion is based upon this notice, the attached memorandum of points and authorities and the exhibits attached thereto, the accompanying declarations of Steve W. Berman and Linda V. Young, the pleadings and other papers on file in this action, such matters over which the

010275-11/1339068 V1

Court may take judicial notice, and such arguments that may be presented at or before the hearing.

DATED this 5th day of October, 2020.          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   */s/ Steve W. Berman*
     Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Ben M. Harrington (*pro hac vice*)
Benjamin J. Siegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3034
benh@hbsslaw.com
bens@hbsslaw.com

Stephen R. Neuwirth (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
Viola Trebicka (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Steven A. Skalet
(D.C. Bar No. 359804)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
sskalet@findjustice.com

*Interim Co-Lead Counsel for*
*Mackmin Consumer Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANDREW MACKMIN, *et al.*,<br><br>    *Plaintiffs*,<br><br>*v.*<br><br>VISA INC., *et al.*,<br><br>    *Defendants*. | Civil Action No. 1:11-cv-1831-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH THE BANK OF AMERICA, CHASE, AND WELLS FARGO DEFENDANTS AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ...................................................................................................3

     A.     Procedural History ...................................................................................3

     B.     The Settlement Negotiations and Summary of the Settlement Terms....................4

          1.     The Settlement Negotiations...................................................................4

          2.     The Settlement Consideration and Release of Claims................................6

     C.     Notice and Implementation of the Settlements........................................................8

III.    LEGAL STANDARD.........................................................................................11

IV.     THE COURT SHOULD APPROVE THE BANK DEFENDANT SETTLEMENTS.....................................................................................................13

     A.     Factors #1 and #5—the Proposed Settlements Were the Result of Arm's-Length Negotiations Conducted by Experienced Counsel and Aided by An Experienced Mediator ...............................................................................14

     B.     Factors #2 and #3—the Proposed Settlements Provide Substantial Value to the Settlement Class, Particularly in Light of the Stage of the Litigation ............15

     C.     All Other Factors Identified in Rule 23(e)(2) Are Met...........................................18

          1.     Rule 23(e)(2)(A) & (B)—the Proposed Settlement Class Has Been Adequately Represented and the Settlements Were Negotiated at Arm's Length .............................................................................................19

          2.     Rule 23(e)(2)(C)—the Relief Provided for the Class Is Adequate ............19

          3.     Rule 23(e)(2)(D)—the Proposal Treats Members of the Proposed Class Equitably ....................................................................................22

V.      THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ................................23

     A.     The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)...........24

          1.     Numerosity...............................................................................................24

          2.     Commonality............................................................................................24

          3.     Typicality .................................................................................................25

010275-11/1339068 V1

         4.      Adequacy of Representation ..................................................................26

    B.     The Proposed Settlement Class Satisfies the Requirements of Rule 23(b) ..........27

         1.      Predominance ....................................................................................28

         2.      Superiority .........................................................................................29

VI.    THE COURT SHOULD APPOINT INTERIM CO-LEAD COUNSEL AS
SETTLEMENT CLASS COUNSEL ....................................................................30

VII.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 ....................................30

    A.     The Proposed Notice Plan Is the Best Notice Practicable ....................................31

    B.     The Proposed Notice Forms Contain the Rule 23 Requirements and are
Plain and Easy to Understand ................................................................................35

VIII.  PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL ...........................36

IX.    CONCLUSION ...........................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abraha v. Colonial Parking, Inc.*,
  2020 WL 4432250 (D.D.C. July 31, 2020)......................................................13, 14, 19

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
  276 F.R.D. 364 (C.D. Cal. 2011).........................................................................30

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014)......................................................28

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...................................................................................28, 29

*In re Ampicillin Antitrust Litig.*,
  526 F. Supp. 494 (D.D.C. 1981).........................................................................11

*In re Auto. Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d 336 (E.D. Pa. 2007) ...............................................................17

*In re Baan Co. Secs. Litig.*,
  284 F. Supp.2d 62 (D.D.C. 2003).......................................................................13

*Bissonette v. Enter. Leasing Companywest*,
  2014 U.S. Dist. LEXIS 132634 (D. Nev. Sept. 19, 2014) ......................................35

*Bynum v. D.C.*,
  412 F. Supp. 2d 73 (D.D.C. 2006) .....................................................................21

*Bynum v. Dist. of Columbia*,
  214 F.R.D. 27 (D.D.C. 2003).................................................................24, 25, 26

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2015 WL 9266493 (N.D. Cal. Dec. 17, 2015)......................................................18

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 3648478 (N.D. Cal. July 7, 2016).........................................................16

*Cohen v. Warner Chilcott Pub. Ltd. Co.*,
  522 F. Supp. 2d 105 (D.D.C. 2007) .......................................................... *passim*

*Connor v. Automated Accounts, Inc.*,
  202 F.R.D. 265 (E.D. Wash. 2001)......................................................................28

- iii -

*In re Corrugated Container Antitrust Litig.*,
   1981 WL 2093 (S.D. Tex. June 4, 1981) ...............................................................17

*In re Domestic Airline Travel Anititrust Litig.*,
   322 F. Supp. 3d 64 (D.D.C. 2018) ...............................................................31, 33, 34

*Edwards v. Nat'l Milk Producers*,
   2017 WL 3623734 (N.D. Cal. June 26, 2017) ......................................................21

*In re Fed. Nat'l Mortg. Assoc. Secs., Derivative, &"ERISA" Litig.*,
   4 F. Supp. 3d 94 (D.D.C. 2013) (Leon, J.)............................................................14

*Freeport Partners, L.L.C. v. Allbritton*,
   2006 WL 627140 (D.D.C. Mar. 13, 2006)............................................................13

*In re GSE Bonds Antitrust Litig.*,
   2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ......................................................16

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ......................................................22

*High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) ...............................................................29

*Johnson v. Dist. of Columbia*,
   248 F.R.D. 46 (D.D.C. 2008).................................................................................25

*Lightfoot v. Dist. of Columbia*,
   246 F.R.D. 326 (D.D.C. 2007)...............................................................................26

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014)...........................................................................34

*Lindsay v. Gov't. Emps. Ins. Co.*,
   251 F.R.D. 51 (D.D.C. 2008)..................................................................................25

*In re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. Pa. June 2, 2004) .........................................................17

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ....................................................................18

*In re Linerboard Antitrust Litig.*,
   296 F. Supp. 2d 568 (E.D. Pa. 2003) ....................................................................16

*Little v. Wash. Metro. Area Transit Auth.*,
   313 F. Supp. 3d 27 (D.D.C. 2018) ........................................................................23

*Mayfield v. Barr,*
    985 F.2d 1090 (D.C. Cir. 1993) ...................................................................12, 13

*In re Med. X-Ray Film Antitrust Litig.,*
    1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ........................................................16

*Meijer Inc. v. Warner Chilcott Holdings Co. III, Ltd.,*
    565 F. Supp. 2d 49 (D.D.C. 2008) .........................................................12, 13, 14, 17

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.,*
    No. 05 Civ. 2195, Dkt. 172 (D.D.C. Jan. 2, 2008) ...............................................11

*In re NASDAQ Market-Makers Antitrust Litig.,*
    169 F.R.D. 493 (S.D.N.Y. 1996) ......................................................................28

*In re Nifedipine Antitrust Litig.,*
    246 F.R.D. 365 (D.D.C. 2007) ..........................................................................28

*Osborn v. Visa Inc.,*
    797 F.3d 1057 (2015) ........................................................................................3

*Pigford v. Glickford,*
    206 F.3d 1212 (D.C. Cir. 2000) .........................................................................11

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
    584 F. Supp. 2d 697 (M.D. Pa. 2008) ...............................................................15

*Prince v. Aramark Corp.,*
    No. 16-cv-1477, Dkt. 33 (D.D.C. Mar. 14, 2017) ..............................................12

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
    177 F.R.D. 216 (D.N.J. 1997) ...........................................................................35

*In re Qualcomm Antitrust Litig.,*
    17-MD-02773-LHK, Dkt. 815 (N.D. Cal. Dec. 6, 2018) ....................................34

*Radosti v. Envision EMI, LLC,*
    717 F. Supp. 2d 37 (D.D.C. 2010) ...........................................................13, 14, 29

*Richardson v. L'Oreal USA,*
    951 F. Supp. 2d 104 (D.D.C. 2013) .................................................................2, 12

*Ross v. Trex Co., Inc.,*
    2013 WL 791229 (N.D. Cal. Mar. 4, 2013) ......................................................35

*In re Shopping Carts Antitrust Litig.,*
    1983 U.S. Dist. LEXIS 11555 (S.D.N.Y. Nov. 18, 1983) ..................................17

010275-11/1339068 V1

*In re Static Random Access (SRAM) Antitrust Litig.*,
   2008 WL 4447592 (N. D. Cal. Sept. 29, 2008) ....................................................30

*Stephens v. US Airways Group, Inc.*,
   102 F. Supp. 3d 222 (D.D.C. 2015) ...................................................................17

*Stewart v. Rubin*,
   948 F. Supp. 1077 (D.D.C. 1996) ......................................................................23

*In re TFL-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ....................................................22

*Thomas v. Albright*,
   139 F.3d 227 (D.C. Cir. 1998) ...................................................................23, 29

*Thorpe v. D.C.*,
   303 F.R.D. 120 (D.D.C. 2014) ..........................................................................24

*Trombley v. Nat'l City Bank*,
   826 F. Supp. 2d 179 (D.D.C. 2011) ...................................................................17

*United States v. Dist. of Columbia*,
   933 F. Supp. 42 (D.D.C. 1996) ...............................................................11, 12, 13

*United States v. MTU Am. Inc.*,
   105 F. Supp. 3d 60 (D.D.C. 2015) .....................................................................13

*In re Urethane Antitrust Litig.*,
   2016 WL 4060156 (D. Kan. July 29, 2016) ........................................................21

*Visa Inc. v. Osborn*,
   137 S. Ct. 289 (2016) .........................................................................................3

*Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.*,
   266 F. Supp. 2d 44 (D.D.C. 2003) ..................................................................2, 11

*In re Vitamin C Antitrust Litig.*,
   2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .....................................................17

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) .........................................................................28

*In re Vitamins Antitrust Class Actions*,
   215 F.3d 26 (D.C. Cir. 2000) ............................................................................11

*In re Vitamins Antitrust Litig.*,
   1999 WL 1335318 (D.D.C. 1999) ........................................................................2

- vi -

*In re Vitamins Antitrust Litig.*,
  2001 WL 34312839 (D.D.C. July 16, 2001)..............................................................21

*In re Vitamins Antitrust Litig.*,
  2001 WL 856292 (D.D.C. July 25, 2001)..................................................................12

*In re Vitamins Antitrust Litig.*,
  305 F. Supp. 2d 100 (D.D.C. 2004)....................................................................12, 14

*Wagner v. Taylor*,
  836 F.2d 578 (D.C. Cir. 1987)..................................................................................26

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..................................................................................................24

*In re Zynga Inc. Secs. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)..........................................................15

## OTHER AUTHORITIES

4 Newberg on Class Actions § 13.13 (5th ed. 2014) ....................................................12

Manual for Complex Litigation (Fourth) § 21.62 (1st ed. 2004)..................................13

Manual for Complex Litigation (Fourth) § 21.631 (1st ed. 2004)................................22

Manual for Complex Litigation (Fourth) § 21.632 (1st ed. 2004)...........................11, 12

Manual for Complex Litigation (Fourth) § 21.634 (1st ed. 2004)................................11

Manual for Complex Litigation (Fourth) § 30.41 (1st ed. 2004)..................................11

Fed. R. Civ. P. 23 ................................................................................................ *passim*

## I.      INTRODUCTION

Plaintiffs, on their own behalf and on behalf of all others similarly situated, respectfully submit this memorandum in support of their motion for preliminary approval of the settlements ("Settlements") reached with the Bank of America Defendants, the Chase Defendants, and the Wells Fargo Defendants (collectively, the "Bank Defendants").[1] The proposed Settlements, pursuant to which the Bank Defendants have collectively agreed to provide $66.74 million in cash payments to Plaintiffs, will resolve this case against the Bank Defendants.[2] The Settlements were reached after years of litigation in this Court (the original complaint was filed in 2011), the D.C. Circuit Court of Appeals, and the Supreme Court, as well as through hard-fought, arm's-length negotiations by experienced counsel before one of the nation's foremost mediators. These are the first settlements in any of the three cases before this Court regarding ATM surcharges.

The total settlement amount of $66.74 million, and the settlement amounts for each of the bank settlements—Bank of America ($26,420,000), Wells Fargo ($20,820,000), and Chase ($19,500,000)—represent *57.5%* of the *maximum* single damages estimated for class transactions at these banks' ATMs. That percentage demonstrates the strength of Plaintiffs' case and the settlements obtained. The Settlements also leave non-settling Defendants Visa and MasterCard (the "Non-Settling Defendants") jointly and severally liable for the remainder of Plaintiffs' damages and secure cooperation from the Bank Defendants in the notice process and litigation. The proposed Settlements are an excellent result for the Class. They thus "fall[] within the range

---

[1] The "Bank of America Defendants" are Bank of America, National Association; NB Holdings Corporation; and Bank of America Corporation. The "Chase Defendants" are Chase Bank USA, N.A.; JPMorgan Chase & Co.; and JPMorgan Chase Bank, N.A. The "Wells Fargo Defendants" are Wells Fargo & Company and Wells Fargo Bank, N.A.

[2] Copies of the Settlement Agreements with each Bank Defendant group are attached as Exhibits A, C, and E to the Declaration of Steve W. Berman ("Berman Decl."), concurrently submitted herewith. All capitalized terms herein shall have the same meaning they have in the Settlement Agreements.

of possible judicial approval"[3] and are "sufficiently within the range of reasonableness"[4] such that notice to the propose Settlement Class and a hearing on final approval is warranted.

Plaintiffs propose a comprehensive notice program designed by experienced Settlement Administrator A.B. Data, Ltd. *See* Declaration of Linda V. Young In Support of Plaintiffs' Motion ("Young Decl.") & attached exhibits, concurrently submitted herewith. Direct notice will include individual email notice to tens of millions of potential Settlement Class Members. The proposed notice campaign also will have a state-of-the-art publication notice program, including notice via digital and social media, national print media, and earned media. There will be a case-specific toll-free telephone number, and a case-specific website that will provide access to additional information about the settlements and notice program, and provide a mechanism for members of the proposed Settlement Class to make claims online. The class notice forms are plain and easy to understand, and contain all of the information required by Rule 23(c)(2)(B).

Accordingly, Plaintiffs respectfully request an order: (1) preliminarily approving the Settlements; (2) provisionally certifying the proposed Settlement Class; (3) appointing Hagens Berman Sobol Shapiro LLP, Quinn Emanuel Urquhart & Sullivan, LLP, and Mehri & Skalet, PLLC ( collectively "Interim Co-Lead Counsel") as Settlement Class Counsel; (4) directing notice to the proposed Settlement Class and approving the proposed manner and form of notice; (5) appointing Andrew Mackmin and Sam Osborn (the "Class Representatives") as representatives for the proposed Settlement Class for the purposes of disseminating notice; (6) authorizing retention of A.B. Data, Ltd. as Settlement Administrator; and (7) scheduling a hearing to determine whether the Settlements are fair, reasonable, and adequate under Rule

---

[3] *Richardson v. L'Oreal USA*, 951 F. Supp. 2d 104, 107 (D.D.C. 2013); *In re Vitamins Antitrust Litig.*, 1999 WL 1335318, at *5 (D.D.C. 1999).

[4] *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.*, 266 F. Supp. 2d 44, 44 (D.D.C. 2003).

23(e)(2) and whether the proposed Settlement Class should be certified (the "Final Fairness Hearing").

## II.    BACKGROUND

### A.    Procedural History

In October 2011, Plaintiffs filed this action on behalf of themselves and a putative class of consumers who overpaid for surcharges levied on "off-us" transactions throughout the nation at bank ATMs. *See* Dkt. 1. The Bank Defendants and their co-defendants, Visa and MasterCard, moved to dismiss the case, which Interim Co-Lead Counsel, on Plaintiffs' behalf, briefed and argued. The judge previously assigned to this case granted that motion (Dkt. 55) and denied Plaintiffs' subsequent motion to amend their complaint (Dkt. 71). Interim Co-Lead Counsel appealed that order and both briefed and argued the issue to the D.C. Circuit Court of Appeals. Those efforts resulted in a complete reversal, and findings that Plaintiffs plausibly stated all elements of their antitrust claims against Defendants. *See Osborn v. Visa Inc.*, 797 F.3d 1057 (2015). Defendants then petitioned for and obtained *certiorari* to the Supreme Court. However, in merits briefing, Interim Co-Lead Counsel explained that, "[a]fter having persuaded [the Supreme Court] to grant certiorari" on a specific issue, Defendants chose instead "to rely on a different argument" in the merits briefing. The Supreme Court agreed, subsequently dismissing the case on the basis that the writ of *certiorari* had been improvidently granted. *See Visa Inc. v. Osborn*, 137 S. Ct. 289 (2016) (Mem.).

Upon remand to this Court, Plaintiffs, via Interim Co-Lead Counsel, aggressively pursued Plaintiffs' claims. Counsel negotiated several discovery and other related protocols, served extensive document requests and interrogatories, and negotiated the scope of Defendants' productions via numerous in-person, telephonic, and written communications. Berman Decl., ¶ 3. These initial efforts lasted several months and further efforts to obtain full productions from the

settling Bank Defendants continued far into discovery. Interim Co-Lead Counsel attended not only multiple meet and confers with Defendants' counsel, but also regularly traveled to and presented Plaintiffs' positions at this Court's "Gang of 8" discovery conferences. *Id*.

As a result of these efforts, Defendants and 19 subpoenaed third parties collectively produced over 800,000 documents. Plaintiffs also received over 3 terabytes of transactional data, the full extent of which took years to obtain. *Id.*, ¶ 4. Plaintiffs filed 4 motions to compel productions from three third parties and, after extensive briefing and argument, three of those motions were transferred to this Court pursuant to Rule 45(f) and granted. *Id.* Plaintiffs withdrew their fourth motion to compel after the subpoenaed party agreed to produce requested materials. *Id.* Interim Co-Lead Counsel extensively reviewed documents produced by parties and third parties, and analyzed the transactional data with the help of their experts, a process that took years and cost millions of dollars. *Id.* Interim Co-Lead Counsel also took and participated in over 35 depositions, moved for class certification, recently completed class certification expert discovery, and have submitted a reply brief in support of their motion for class certification against the Non-Settling Defendants. *Id.*

The two Class Representatives—Andrew Mackmin and Sam Osborn—have also vigorously represented the Settlement Class in this litigation. Each prepared extensively for and had his deposition taken in the case. Both also participated in responding to discovery from Defendants, and each was consulted about and approved the proposed Settlements. *Id.*, ¶ 5; *see also* Dkt. 177-14, 177-15.

**B.      The Settlement Negotiations and Summary of the Settlement Terms**

   **1.      The Settlement Negotiations**

Interim Co-Lead Counsel and counsel for the Bank Defendants first discussed potential settlement in January 2018, in a mediation before Layn Phillips, one of the nation's foremost

- 4 -

mediators. At that time, before any major discovery had occurred, the parties were unable to reach resolution. Berman Decl., ¶ 6. In mid-2019, after the parties engaged in the substantial discovery described above, including discovery strongly supporting Plaintiffs' case, the Chase Defendants and Plaintiffs began to discuss settlement again. *Id*.

In the midst of these discussions, Plaintiffs filed their motion for class certification on September 20, 2019, supported by the expert report of Professor Dennis W. Carlton. *See* Dkt. 177-13, 177-113. In their Motion, Plaintiffs showed, among other thing, that Defendants' adoption of so-called non-discrimination rules" ("NDRs") in 1996—more than ten years before the Class period began in fall 2007—reduced price competition and increased costs to ATM operators across the ATM industry. Professor Carlton demonstrated that, as would be expected, this industry-wide elevation in marginal costs resulted in an industry-wide elevation in surcharges (*i.e.*, consumer prices), which all or virtually all Class members paid and were injured as a result. *See* Dk. 177-13 at 29-45 (discussing Professor Carlton's conclusions).

After numerous discussions about the scope of the settlement negotiations, and with Defendants' opposition to Plaintiffs' class certification motion due in the beginning of 2020, Plaintiffs and the Chase Defendants agreed to have another mediation session with Judge Phillips, and did so in December 2019. Berman Decl., ¶ 7. That full-day mediation resulted in a settlement that Plaintiffs and the Chase Defendants subsequently memorialized in a binding term sheet agreement. *Id*. Plaintiffs subsequently offered similar settlement terms to the other Bank Defendants, each of whom accepted Plaintiffs' offer and similarly memorialized their agreements in binding term sheets. *Id*.

The parties then engaged in numerous negotiation sessions regarding long-form settlement agreements. Those negotiations included specifics about the information and

assistance the Bank Defendants would provide to Plaintiffs regarding, *inter alia*, class notice and the payment of settlement funds to members of the proposed Settlement Class. *Id*., ¶ 8. That process, which took many months, resulted in the long-form Settlement Agreements attached as Exhibits A, C, and E to the Berman Declaration. Throughout, Bank Defendants' counsel, who are highly experienced and capable, vigorously advocated their clients' positions in the settlement negotiations. *Id*., ¶ 9. Interim Co-Lead Counsel, who were well-informed of the facts and issues concerning liability and damages and the relative strengths and weaknesses of each side's litigation position, as well as the importance of obtaining cooperation and assistance from the Bank Defendants, vigorously advocated Plaintiffs' positions. *Id*.

### 2.     The Settlement Consideration and Release of Claims

Pursuant to the Settlement Agreements, the Bank Defendants will collectively make cash payments of $66.74 million, with the Bank of America Defendants paying $26,420,000, the Wells Fargo Defendants paying $20,820,000, and the Chase Defendants paying $19,500,000. The Bank Defendants will also assist the process of providing notice and payment of settlement funds to members of the proposed Settlement Class, including by:

- Providing information reasonably available to help Interim Co-Lead Counsel identify potential members of the proposed Settlement Class, including contact information for those individuals or entities;

- Making reasonable and good faith efforts to cooperate with Plaintiffs' claims administrator and other third party service providers with respect to notice, claims processing, and claims distribution by providing information regarding the Bank Defendants' respective ability to facilitate notice and direct payments to members of the proposed Settlement Class.

*Id.*, Exs. A, C & E ¶ 10(b). Prominent among the cooperation is that the Bank Defendants collectively agreed to produce email addresses for approximately 50 to 125 million potential members of the proposed Settlement Class for use in the direct notice program. Berman Decl., ¶

- 6 -

13.[5] The Bank Defendants also agreed to assist in the litigation by authenticating and otherwise establishing the admissibility of their documents for use in this case. *Id.*, Exs. A, C & E ¶ 10(a). In addition, the Bank Defendants have stipulated to certification of the Settlement Class, which is substantively identical to the litigation class definition proposed in Plaintiffs' motion for class certification. *Compare id.*, Exs. A, C & E ¶ 3(a), *with* Dkt. 177-13 at 2. Each proposed Settlement Class is identical, with the Settlement Class defined as:

> All individuals and entities that paid an unreimbursed ATM Access Fee directly to any Bank Defendant or Alleged Bank Co-Conspirator for a Foreign ATM Transaction using an ATM card issued by a financial institution in the United States to withdraw cash at an ATM located in the United States at any time from October 1, 2007 to the date of the Preliminary Approval Order.

Berman Decl., Exs. A, C & E ¶ 3(a).[6] In exchange for the consideration described above, members of the proposed Settlement Class for each Bank Defendant group will release the respective Bank Defendants from any and all claims that were or could have been alleged in this Action. *Id.*, ¶ 9.[7] Claims against the Non-Settling Defendants (Visa and MasterCard) are not released by the settlements. Plaintiffs' individual and putative class damages shall remain in the case against the Non-Settling Defendants, who remain jointly and severally liable for all damages from the unlawful scheme, minus an offset for the settlement amounts.

---

[5] As explained in the accompanying Berman Declaration, this estimate is based on information from the Bank Defendants prior to production of their data. The banks are in the process of producing that data, after which the administrators will have a more precise understanding of the number of email addresses they have. Berman Decl., ¶ 13.

[6] Specifically excluded from the Settlement Classes are Defendants; Released Parties; the officers, directors, or employees of any Defendant or Released Party; any entity in which any Defendant or Released Party has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or Released Party and any person acting on their behalf. Also excluded from the Settlement Class are any federal, state, or local governmental entities, Class Lead Counsel, and any judicial officer presiding over the Action and the members of his/her immediate family and judicial staff. Berman Decl., Exs. A, C & E ¶ 3(a).

[7] The full text of the proposed release, including the limitations thereof, is set forth in the Settlement Agreements. Berman Decl., Exs. A, C & E ¶¶ 2(ff)-(hh), ¶ 2(rr), ¶ 9.

- 7 -

Paragraph 15 of the Settlement Agreements describes certain conditions which would permit each or both of the parties to terminate the settlement. One condition is the circumstance where a minimum threshold number of potential members of the proposed Settlement Class, who but for their exclusion would likely have been eligible to receive a distribution from the Settlement Fund, timely and validly exclude themselves from the proposed Settlement Class pursuant to the procedures approved by the Court. *Id*., ¶ 15(b). That "minimum threshold number" is specified in Confidential Supplemental Agreements that have been submitted to the Court under seal concurrently with this filing. Berman Decl., Exs. B, D & F (confidential supplements to each bank settlement agreement); *see Mackmin* Plaintiffs' Unopposed Motion For Leave to File Under Seal, concurrently submitted herewith.

## C.    Notice and Implementation of the Settlements

Plaintiffs have attached hereto a declaration from the Settlement Administrator, A.B. Data, Ltd., that includes proposed class notices and a sample claim form, and proposes a comprehensive notice program. *See* Young Decl., ¶¶ 2, 13, 27, Exs. A (detailed Notice Plan), D (proposed Email Notice), E (proposed Website Notice), and G (proposed Claim Form). To develop a notice plan for the target audience, A.B. Data used MRI-Simmons 2019 Doublebase data, which is employed by advertising agencies and other marketing professional to understand the demographics, interests, and activities of a targeted group of people and aids in the proper selection of media to reach that target audience. After the target audience was identified for potential members of the proposed Settlement Class, A.B. Data used the MRI database to determine the best vehicles to deliver notice of the settlements to the target audience. *Id.*, ¶¶ 6-9, Ex. A at 5-8. Based on this information, the Settlement Administrator plans to provide notice by a combination of direct email notice, digital media, social media, and national print and earned

media to efficiently reach members of the proposed Settlement Class, which is estimated to have between 175 and 215 million members. *Id.*; Berman Decl., ¶ 14.

For direct notice, A.B. Data will prepare and send notice via email to an estimated 50 to 125 million potential members of the Settlement Class, whose information, including email addresses, will be provided by the Bank Defendants. Young Decl., ¶¶ 10-13, Ex. A at 7; Berman Decl., ¶ 13. The content of the direct notice emails will be the Email Notice attached to the Young Declaration. *See* Young Decl., ¶ 13, Ex. D. The more detailed long-form notice will be available for download on the case-specific website ("Website Notice"). *Id.*, ¶ 13, Ex. E.

The notice campaign will also include targeted digital banner and newsfeed ads to be placed on websites and applications across multiple devices, including desktop, tablet, and mobile devices. The Settlement Administrator explains that the digital and social media campaign will use a variety of campaign optimization techniques to reach potential members of the proposed Settlement Class, including banners ads in Spanish on websites specifically serving Spanish speakers. *Id.*, ¶¶ 14-21, Ex. A at 19-22. Examples of the digital ads that will be used to target members of the Settlement Class are attached to the Settlement Administrator's declaration. *See id.*, ¶ 15, Ex. F. The digital and social media ad campaign, including utilization of a multitude of digital networks and social media, will run for 60 days to ensure ample time to deliver the targeted impressions and drive potential members of the proposed Settlement Class to the case website. *Id.*, ¶¶ 14-21, Ex. A at 19-22. Digital advertising will allow the viewer to click on a banner or newsfeed advertisement and instantly be directed to the website. *Id.*, ¶ 14, Ex. A at 29.

To reach older members of the proposed Settlement Class, as well as those who may be infrequent users of digital and social media, the Email Notice, formatted as a 1/3-page ad, will be

published in *People* magazine. *Id.*, ¶ 22, Ex. A at 7, 19-25. A.B. Data also will disseminate a news release via *PR Newswire*'s US1 Newsline distribution list to announce the settlements. The news release will be translated and published to *PR Newswire*'s U.S. Hispanic media contacts and Hispanic news websites. News about the settlements will also be sent via Twitter to the followers of *PR Newswire* and A.B. Data. *Id.*, ¶ 23, Ex. A at 7, 26-27.

A.B. Data will establish a case-specific toll-free telephone number and a case-specific website, with the domain reserved as www.ATMClassAction.com. *Id.*, ¶¶ 24-26. Both will be used to communicate with potential members of the proposed Settlement Class and assist them in understanding the terms of the settlements and their rights. The case website will serve particularly important purposes. The Website Notice, which contains a detailed summary of the terms of the Settlements, will be posted prominently. The website will also provide, among other things, a summary of the case, all relevant documents, important dates, and any pertinent updates concerning the litigation or the settlement process. *Id.*

As explained in the notice documents, members of the proposed Settlement Class will be able to submit their claims on the case website, which we expect will be the primary way claims will be made. *Id.*, ¶¶ 26-27. Members of the proposed Settlement Class also will be able to submit paper claim forms to the Settlement Administrator. *Id.*, ¶ 27. The proposed Claim Form is attached as Exhibit G to the Settlement Administrator's declaration. *Id.*, ¶ 27. The Bank Defendants will permit use of a portion of the settlement funds toward notice and administration costs, with costs to be split among the Settling Defendants. Berman Decl., Exs. A, C & E ¶ 12(e)(2).

The notice documents will inform Settlement Class Members that the settlement funds will be distributed *pro rata* based on the number of claims submitted. Young Decl., Ex. E, ¶ 8.

- 10 -

Plaintiffs also propose providing claimants with digital payment options such as PayPal or a virtual debit card, which will provide Settlement Class Members with convenient access to their settlement funds while greatly reducing the transaction costs associated with mailing paper checks to millions of claimants. Young Decl., ¶ 28, Ex. G at 1. However, claimants also will have the option to request and receive a paper check. *Id.*

## III.    LEGAL STANDARD

"Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation." Manual for Complex Litigation (Fourth) § 21.632, at 414 (1st ed. 2004) ("Manual"). At the second stage of the approval process, the court conducts a formal fairness hearing at which "the proponents of the settlement must show that the proposed settlement is 'fair, reasonable and adequate.'" *Id.* § 21.634, at 414; *see also In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000); *Pigford v. Glickford*, 206 F.3d 1212, 1215 (D.C. Cir. 2000); *United States v. Dist. of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996).

Under these standards, the court reviews the proposed settlement at the preliminary approval stage to determine whether it is "sufficiently within the range of reasonableness so that notice of the propose[d] settlements should be given." *Vista Healthplan, Inc.*, 266 F. Supp. 2d at 44; *see also Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, No. 05 Civ. 2195, Dkt. 172 at 1 (D.D.C. Jan. 2, 2008) (granting preliminary approval of class settlement because it was "sufficiently fair, reasonable and adequate to authorize dissemination of notice to the class"); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 496 (D.D.C. 1981); Manual at § 30.41.

Courts "will generally grant preliminary approval of a class action settlement if it appears to fall 'within the range of possible approval' and 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of

segments of the class, or excessive compensation for attorneys.'" *Richardson*, 951 F. Supp. 2d at 106; *accord In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (same); Manual at § 21.632; 4 Newberg on Class Actions § 13.13 at 310 (5th ed. 2014) ("[T]he goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase.").

Additionally, "'[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.'" *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004) ("*Vitamins II*") (citing Manual at § 30.42). "Thus the function of the reviewing court is not to substitute its judgment for that of the parties to the decree, but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." *Dist. of Columbia*, 933 F. Supp. at 46-47.

While the court generally has discretion to decide whether to approve or reject a proposed settlement, *see Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993), the court's decision "is constrained by the 'principle of preference' favoring and encouraging settlement in appropriate cases." *Vitamins II*, 305 F. Supp. 2d at 103. This preferential treatment is a matter of public policy in this Circuit, which strongly favors and encourages settlements, particularly in class actions and other complex matters, to avoid the inherent costs, delays, and risks of continued litigation. As a court in this District stated in an opinion granting preliminary approval of a class settlement, "[t]here is a longstanding judicial attitude favoring class action settlements." *Prince v. Aramark Corp.*, No. 16-cv-1477, Dkt. 33 at 9 (D.D.C. Mar. 14, 2017); *see also Meijer Inc. v.*

*Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49, 54 (D.D.C. 2008); *Mayfield*, 985

F.2d at 1092; *United States v. MTU Am. Inc.*, 105 F. Supp. 3d 60, 63 (D.D.C. 2015) ("Settlement

is highly favored, as '[n]ot only the parties, but the general public as well, benefit from the

saving of time and money that results from the voluntary settlement of litigation.'") (quoting

*Citizens for a Better Environ. v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983)); *Freeport

Partners, L.L.C. v. Allbritton*, 2006 WL 627140, at *8 (D.D.C. Mar. 13, 2006) ("Public policy in

this Circuit favors settlement of class actions.").

**IV.     THE COURT SHOULD APPROVE THE BANK DEFENDANT SETTLEMENTS**

The determination of a settlement's fairness "calls for a comparative analysis of the

treatment of the class members vis-a-vis each other and vis-a-vis similar individuals with similar

claims who are not in the class." Manual at § 21.62. This inquiry should "avoid protracted

examination of the parties' legal rights," and instead focus on the settlement's "'overall fairness

to beneficiaries and consistency with the public interest.'" *Dist. of Columbia*, 933 F. Supp. at 46-

47 (citing *Gorsuch*, 718 F.2d at 1126).

In evaluating the fairness of a proposed class settlement, courts within this Circuit

consider a range of factors, including: "[1] whether the settlement is the result of arms-length

negotiations; [2] the terms of the settlement in relation to the strength of the case; [3] the stage of

the litigation proceedings at the time of settlement; [4] the reaction of the class; and [5] the

opinion of experienced counsel." *Abraha v. Colonial Parking, Inc.*, 2020 WL 4432250, at *7

(D.D.C. July 31, 2020); *accord Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 54 (D.D.C.

2010) (citing *Vitamins II*, 305 F. Supp. 2d at 104); *In re Baan Co. Secs. Litig.*, 284 F. Supp. 2d

62, 64-67 (D.D.C. 2003). As discussed in more detail below, the proposed Settlements satisfy each of these factors.[8]

## A.     Factors #1 and #5—the Proposed Settlements Were the Result of Arm's-Length Negotiations Conducted by Experienced Counsel and Aided by An Experienced Mediator

The parties' negotiations were hard-fought over a period of many months. Berman Decl., ¶¶ 7-8. Bank Defendants' counsel, who are highly experienced and capable, vigorously advocated their client's positions in the settlement negotiations. *Id.*, ¶ 9. Interim Co-Lead Counsel were well-informed of the facts and issues concerning liability and damages and the relative strengths and weaknesses of each side's litigation position. *Id.* Interim Co-Lead Counsel have decades of experience litigating complex antitrust cases and have negotiated settlements in a wide range of cases. *See* Dkt. 96-1, at 8-18. They used their specific case knowledge and their experience in other cases to negotiate extremely valuable initial settlements on behalf of the proposed Settlement Class in a complex, challenging case.

In granting approval to a class settlement several years ago, this Court stated that "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Fed. Nat'l Mortg. Assoc. Secs., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 102 (D.D.C. 2013) (Leon, J.). The Court further stated that "[t]he opinion of experienced counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Id.* at 107 (internal quotation marks and citation omitted); *accord Vitamins II*, 305 F. Supp. 2d at 104; *Radosti*, 717 F. Supp. 2d at 56; *Meijer*, 565 F. Supp. 2d at 55; *Cohen*

---

[8] The reaction of the class cannot be evaluated yet, which is factor 4 in the list provided in the text. Plaintiffs will report on that factor in their motion for final approval, which they will file after notice to the Settlement Class. *See Abraha*, 2020 WL 4432250, at *9 (agreeing at preliminary approval that this is the correct approach).

*v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007). That the settlements were reached after multiple mediation sessions further supports preliminary approval. *See In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (use of mediator "support[ed] the conclusion that the Plaintiff was appropriately informed in negotiating a settlement").

Interim Co-Lead Counsel respectfully submit that the arms'-length manner in which they reached the Settlements with the aid of one of the nation's top mediators, as well as their informed opinion that the Settlements are in the best interests of the members of the proposed Settlement Class, strongly support preliminary approval.

**B.    Factors #2 and #3—the Proposed Settlements Provide Substantial Value to the Settlement Class, Particularly in Light of the Stage of the Litigation**

Plaintiffs have a strong case and the settlement values reflect that. Based on the preliminary estimates provided by Plaintiffs' damages expert in their motion for class certification, each of the bank settlements—Bank of America ($26,420,000), Wells Fargo ($20,820,000), and Chase ($19,500,000), totaling $66.74 million—represents ***57.5%*** of the ***maximum*** single damages estimated for class transactions at the ATMs of these banks. Berman Dec., ¶ 15.[9]

This percentage is well within, and compared to some cases considerably above, percentage ranges approved in prior class action settlements. *See, e.g., In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) (in price-fixing action, finally approving settlement where "cash portion of the settlement represents approximately 35%

---

[9] The 57.5% estimate is based on the damages methodology of the three offered at class certification that yields the *largest* damages estimates (referred to as Approach 3). If one were to look at the other two methods, Approach 1 and Approach 2, the settlements would represent approximately 115% and 77% of the single damages estimated for class transactions at the Settling Banks' ATMs, respectively. Berman Decl., ¶ 15.

- 15 -

of single damages attributable to the Settling Defendants' sales during the Class period," in part because the "cash consideration of the settlement is well within the range of settlements approved in other class action cases in this circuit," and citing prior cases); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581-82 (E.D. Pa. 2003) (granting final approval to settlement amounts equal to "36 percent of the damages attributable to the sales of Settling Defendants" during the class period, and finding that "the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund in light of all the attendant risks of litigation . . . counsel in favor of approval of the Settlement Agreement"); *see also In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *4 (S.D.N.Y. Dec. 16, 2019) (preliminarily approving settlement where settlement amount "represents 32.6% to 63.9% of [the settling defendant's] proportionate share of the preliminary single damages estimate"); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016) (approving of settlements equaling 20% of single damages, and citing survey of 71 settled cartel cases which showed that the weighted mean—weighting settlements according to their sales—was 19% of possible single damages recovery); *In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *6 (E.D.N.Y. Aug. 7, 1998) (finally approving settlements that equaled 17% of "best possible recovery" and citing prior decision approving settlements of 6.4-11% out of potential recovery).

Obtaining $66.74 million in settlements from the Bank Defendants now is particularly valuable in light of the attendant risks of continued litigation. While Plaintiffs believe their case against the Bank Defendants is strong, there are still many hurdles to overcome in this complex antitrust action: class certification, summary judgment, trial, and appeals all offer potential stumbling blocks and considerable delay to Plaintiffs securing a recovery for the Settlement

- 16 -

Class. *See Meijer*, 565 F. Supp. 2d at 55 ("complex antitrust litigation is rife with uncertainties, risks, and delays"); *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) ("Federal antitrust cases are complicated, lengthy, and bitterly fought, as well as costly." (internal quotation marks and citation omitted)).[10]

Relatively prompt payment in light of the challenges inherent in litigating class actions, particularly in antitrust cases, weighs in favor of approving these settlements. *See, e.g., Stephens v. US Airways Group, Inc.*, 102 F. Supp. 3d 222, 227 (D.D.C. 2015) ("'[T]he delay in providing relief to the class if this case were to be litigated is a factor strongly supporting the compromise reached by the parties.'") (quoting *Luevano v Luevano v. Campbell*, 93 F.R.D. 68, 89 (D.D.C. 1981)); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 195 (D.D.C. 2011) (same); *In re Shopping Carts Antitrust Litig.*, 1983 U.S. Dist. LEXIS 11555 (S.D.N.Y. Nov. 18, 1983) (recognizing that compromise is particularly favored in antitrust litigation, which is notoriously difficult and unpredictable).

Importantly, the settlements preserve Plaintiffs' ability to recover the entire amount of damages against the Non-Settling Defendants—Visa and MasterCard—based on joint and several liability in this antitrust conspiracy case (minus an offset for the settlement amounts). *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981) (noting that partial settlements preserved plaintiffs' ability to seek the entire amount of damages from non-settling defendants, which weighed in favor of settlement approval). Thus, not only do the

---

[10] Other courts have similarly recognized that the "antitrust class action is arguably the most complex action to prosecute." *See In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *10 (E.D. Pa. June 2, 2004) (quoting *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000)) (internal quotation marks omitted); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007) (the "antitrust class action is arguably the most complex action to prosecute[;] [t]he legal and factual issues involved are always numerous and uncertain in outcome") (internal quotation marks and citation omitted).

settlements themselves represent a substantial recovery, they also do not reduce the litigation

class's potential total recovery, apart from a dollar-for-dollar offset for the settlement amounts.

Meanwhile, the case continues against Visa and MasterCard.

Moreover, and relatedly, as so-called "ice-breaker" settlements in this conspiracy action,

the Bank Defendant settlements have the potential to "bring other defendants to the point of

serious negotiations." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003)

(noting "that this settlement has significant value as an 'ice-breaker' settlement—it is the first

settlement in the litigation—and should increase the likelihood of future settlements"); *see also*

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17,

2015) ("this settlement provides increased value in another pending class action suit in this case

by creating added incentive for the remaining defendants to settle or allowing greater recovery

for the Plaintiffs at trial"). This exerts significant pressure on the Non-Settling Defendants, given

they are now by themselves jointly and severally liable for the entirety of the putative litigation

class's damages.

These settlements' value to the proposed Settlement Class as "ice-breakers" is enhanced

by the cooperation the Bank Defendants will provide in connection with administration of the

settlements, including the notice plan, as well as at trial in this case. That cooperation is thus

valuable both to the Settlement Class and the substantively identical proposed litigation class.

## C.   All Other Factors Identified in Rule 23(e)(2) Are Met

In 2018, Rule 23 of the Federal Rule of Civil Procedures was amended to, among other

things, provide a list of factors in Rule 23(e)(2) to "focus" the determination of whether a

proposed settlement is fair, reasonable, and adequate on "the primary considerations that should

always matter to the decision whether to approve the proposal." *See* Fed. R. Civ. P. 23(e)(2) &

2018 advisory committee notes. These factors are whether (A) "the class representatives and

- 18 -

class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate"; and (D) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

Amended Rule 23(e)(1)(B) indicates that preliminary approval should be granted, and thus notice directed to a settlement class, if the court concludes that the moving parties "likely will be able to" satisfy the Rule 23(e)(2) factors at final approval. Many of these amended Rule 23(e)(2) factors have significant overlap with the traditional five factors considered in this District. In fact, the five-factor test, *alone*, has been applied in preliminary approval orders post-2018. *See, e.g.*, *Abraha*, 2020 WL 4432250, at *7. In an abundance of caution, however, Plaintiffs explain in this subsection why the new Rule 23(e)(2) factors are met here.

### 1. Rule 23(e)(2)(A) & (B)—the Proposed Settlement Class Has Been Adequately Represented and the Settlements Were Negotiated at Arm's Length

As explained above, counsel and the class representatives have vigorously advocated for the putative class and negotiated the Bank Settlements at arm's length (including with the aid of one of the country's top mediators), showing that Rule 23(e)(2)'s subsections (A) & (B) will likely be satisfied at final approval.

### 2. Rule 23(e)(2)(C)—the Relief Provided for the Class Is Adequate

Rule 23(e)(2)(C) asks the Court consider whether the relief provided for the proposed Settlement Class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C)(i-iv). Consideration of these factors support preliminary approval of the Settlements.

- 19 -

***The costs, risks, and delay of trial and appeal.*** Plaintiffs discussed the Rule 23(e)(2)(C)(i) factors in Section IV.B, *supra*. The proposed $66.74 million in total monetary payments and the other relief provided for the proposed Settlement Class, including cooperation in the notice program and ongoing litigation against the Non-Settling Defendants, represents a strong recovery, taking into account the already-incurred and potential costs, risk, and delay associated with class certification, trial, and appeal, particularly as ice-breaker settlements in this joint and several liability conspiracy action.

***The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims***. To facilitate the filing of legitimate claims and the efficient processing of those claims, claimants will be able to make claims on the settlement website, and potential members of the proposed Settlement Class will also have the opportunity to fill out and mail paper claim forms. The claim form itself is straightforward, asking potential members of the proposed Settlement Class to provide their names and contact information, as well as information in response to a targeted list of questions related to their ATM transactions. Young Decl., ¶ 27, Ex. G. Plaintiffs propose providing members of the Settlement Class with 180 days to submit claims, to provide sufficient time to members of the Settlement Class. *Id.*, Ex. E at 1 (identifying proposed time period to submit claims).

Plaintiffs propose to distribute the settlement funds to claimants *pro rata* based on the number of approved claims submitted. *Id.*, ¶ 27, Ex. E, ¶ 8. Plaintiffs also propose providing claimants with digital payment options such as PayPal, or a virtual debit card, which will provide Settlement Class Members with settlements funds in an easy-to-use format that will greatly reduce the transaction costs associated with printing and mailing paper checks to millions of claimants. *Id.*, ¶ 28. Courts have recognized that digital payment options are a cost-effective

means of distributing funds to class members. *See, e.g.*, *Edwards v. Nat'l Milk Producers*, 2017 WL 3623734, at \*2 (N.D. Cal. June 26, 2017) (granting final approval of class action settlement where cash claimants would "receive an electronic notification via email that will permit them to choose an online account, *e.g.*, an Amazon, PayPal, or Google Wallet account, into which money be can distributed," "in order to maximize the settlement funds going to class members, and minimize administrative expenses and uncashed checks"). However, claimants also will have the option to request and receive a paper check, if that is what they prefer. Young Decl., ¶ 28. Under no circumstances, will settlement funds revert to the Bank Defendants after distribution to members of the proposed Settlement Class. Berman Decl., Exs. A, C & E ¶ 13(e).

*Attorney's fees.* The proposed Email Notice and Website Notice informs Settlement Class Members that counsel will make a request for attorneys' fees of up to 33% of the common settlement fund, as well as reimbursement of certain costs counsel has advanced. Young Decl., Exs. D, E, ¶ 17. An attorneys' fee award of 33%—which is the maximum amount that will be requested—would be reasonable in comparison to other fees awarded in this District and elsewhere in settlements in complex class actions. *See, e.g.*, *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at \*9 (D.D.C. July 16, 2001) (in antitrust class action, awarding attorneys' fees equal to 33.7% of settlement fund); *Bynum v. D.C.*, 412 F. Supp. 2d 73, 81 (D.D.C. 2006) (awarding 1/3 (33.3%) of settlement funds in attorneys' fees to class counsel); *see also In re Urethane Antitrust Litig.*, 2016 WL 4060156, at \*6-8 (D. Kan. July 29, 2016) (awarding 33.33% fee from common fund). Interim Co-Lead Counsel will file a motion for attorneys' fees, costs, and service awards, specifying the amount requested, which will be posted on the case website, so that members of the proposed Settlement Class can review and respond if they wish to do so.

***Any agreement required to be identified under Rule 23(e)(3).*** The sole agreements

required to be disclosed under Rule 23(e)(3) are the Confidential Supplements described in

Section II.B.2, *supra*. *See* Berman Decl., Exs. B, D & F (confidential supplements to each

settlement agreement). These types of agreements are common in class action settlements and

are allowed to remain confidential because "knowledge of the specific number of opt outs that

will vitiate a settlement might encourage third parties to solicit class members to opt out."

Manual § 21.631; *see also Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, *7 (N.D. Cal. Sept.

4, 2018) (citing several decisions and holding: "There are compelling reasons to keep this

information confidential in order to prevent third parties from utilizing it for the improper

purpose of obstructing the settlement and obtaining higher payouts. The parties cite to several

other courts that have reached a similar conclusion."). There are no other agreements to disclose

under Rule 23(e)(3).

### 3.     Rule 23(e)(2)(D)—the Proposal Treats Members of the Proposed Class Equitably

The settlement agreements and proposal presented by Plaintiffs in this motion treat class

members equitably relative to one another. As explained above, Plaintiffs propose to distribute

the settlement funds to claimants *pro rata* based on the number of approved claims submitted.

"*Pro rata*" distribution plans have "been used in many antitrust cases." *See In re TFL-LCD (Flat

Panel) Antitrust Litig.*, 2011 WL 7575004, at *4 (N.D. Cal. Dec. 27, 2011) (approving a *pro rata*

plan and citing several cases for this holding, including *In re Vitamins Antitrust Litig.*, 2000 WL

1737867, at *6 (D.D.C. Mar. 31, 2000)).

Plaintiffs plan to request, subject to this Court's approval, service awards for the class

representatives up to $10,000 per award. *See* Berman Decl., Exs. A, C & E ¶ 11(f). Such a

request and award would be in recognition of the service the class representatives have provided

to the proposed Settlement Class, and in this District, "Courts routinely compensate named plaintiffs for the services provided and the risks incurred during class action litigation." *See Little v. Wash. Metro. Area Transit Auth.*, 313 F. Supp. 3d 27, 39 (D.D.C. 2018). Plaintiffs' request for service awards will be included in a motion for attorneys' fees, costs, and service awards, which members of the proposed Settlement Class may object to if they oppose the requested award.

### V.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

After determining whether to approve a settlement, at the preliminary approval stage, the Court must determine whether it is likely to certify the settlement class for purposes of judgment on the proposal. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii); *see also Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998) ("A 'settlement-only class certification' does . . . depend upon compliance with all of the requirements of Rule 23(a) and (b)."). The proposed settlement class must satisfy the Rule 23(a) requirements referred to as "numerosity, commonality, typicality, and adequacy of representation." *Cohen*, 522 F. Supp. 2d at 113. Additionally, the proposed class must meet one of the Rule 23(b) requirements. Here, Plaintiffs seek certification of the proposed settlement class pursuant to Rule 23(b)(3), which requires a showing of "predominance and superiority." *Id.*

However, the Court need not apply the Rule 23 requirements as stringently as it would in reviewing an opposed class certification motion. "[I]f the case is surely going to be settled, then the 'district court need not inquire whether the case, if tried, would present intractable management problems.'" *Thomas*, 139 F.3d at 234 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *see also Stewart v. Rubin*, 948 F. Supp. 1077, 1091 (D.D.C. 1996) (recognizing that "manageability and efficiency of a class action settlement is quite different than that in a litigated case").

Each of Rule 23's requirements is satisfied here.

**A.      The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)**

Federal Rule of Civil Procedure 23(a) provides that a class may be certified when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Settlement Class satisfies each of these requirements.

**1.      Numerosity**

Courts in this District "have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members." *Cohen*, 522 F. Supp. 2d at 114 (citing cases); *see also Thorpe v. D.C.*, 303 F.R.D. 120, 144 (D.D.C. 2014). The Settlement Class easily meets this standard, as it is estimated that approximately 175 to 215 million individuals fall within the class definition. Berman Decl., ¶ 14. Therefore, the proposed Settlement Class is sufficiently numerous to satisfy Rule 23(a).

**2.      Commonality**

Rule 23(a) next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied where "'there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Cohen*, 522 F. Supp. 2d at 114 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001)). The Rule does not require commonality of all issues; rather, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation marks and alterations omitted); *see also Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003) ("[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all

- 24 -

proposed class members."). Furthermore, "a single factual dissimilarity does not suffice to defeat the commonality requirement." *Id.* at 33. Commonality is readily satisfied when "the most crucial issues . . . are common to every member of the proposed class." *See Lindsay v. Gov't. Emps. Ins. Co.*, 251 F.R.D. 51, 55 (D.D.C. 2008).

There are a significant number of common legal and factual questions for the members of the proposed Settlement Class, including:

- Whether Defendants engaged in a combination or conspiracy with their co-conspirators to fix, raise, maintain, and/or stabilize the prices for surcharges levied on off-us transactions at bank-operated ATMs;

- Whether the purpose and/or effect of the acts and omissions alleged was to restrain trade, or to affect, fix, control, and/or maintain the prices for surcharges at bank-operated ATMs;

- The existence and duration of the agreements alleged to fix, raise, maintain, and/or stabilize the surcharges levied on off-us transactions at bank-operated ATMs;

- Whether Defendants violated Section 1 of the Sherman Act (15 U.S.C. § 1); and

- Whether, and to what extent, the conduct of Defendants caused injury to Plaintiffs and members of the proposed Settlement Class, and, if so, the appropriate measure of damages.

These legal and factual questions are common to each member of the proposed Settlement Class. This easily satisfies the requirements of Rule 23(a)(2).

### 3.  Typicality

Rule 23(a) also mandates that claims of the class representatives be typical of those of the class. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is satisfied 'if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability.'" *Cohen*, 522 F. Supp. 2d at 115 (quoting *Lorazepam*, 202 F.R.D. at 27); *see also Johnson v. Dist. of Columbia*, 248 F.R.D. 46, 53 (D.D.C. 2008). The typicality requirement "has been liberally

- 25 -

construed by courts." *Bynum*, 214 F.R.D. at 34. "[T]ypicality is not destroyed merely by factual variations." *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987); *see also Bynum*, 214 F.R.D. at 34 ("[F]actual variations between the claims of class representatives and the claims of other class members . . . do not negate typicality."). Instead, typicality "refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff" and "is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Lightfoot v. Dist. of Columbia*, 246 F.R.D. 326, 338 (D.D.C. 2007) (internal quotation marks omitted).

Typicality is satisfied here. The claims of the Class Representatives—Andrew Mackmin and Sam Osborn—arise out of the same course of conduct as the claims of the members of the proposed Settlement Class: the payment or surcharges on off-us transactions at bank-operated ATMs. *See* Dkt. 177-1 at 21. Furthermore, the claims of the Class Representatives' and members of the proposed Settlement Class are premised on the same legal theories. The claims of the Class Representatives are therefore typical of the claims of the members of the proposed Settlement Class they represent.

### 4. Adequacy of Representation

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts generally recognize two criteria for determining adequacy: "'(1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Cohen*, 522 F. Supp. 2d at 115 (quoting *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

- 26 -

As addressed above, the claims of the Class Representatives are consistent with those of other class members. There are no conflicts between the Class Representatives and the proposed Settlement Class as a whole, meaning the representatives provide adequate representation of the Class as a whole.

Additionally, the Class Representatives have vigorously prosecuted this action, including by retaining Interim Co-Lead Counsel, who are well-qualified to represent the interests of the Settlement Class and conducted a thorough review of the case against the Bank Defendants before engaging in settlement negotiations. Berman Decl., ¶¶ 3-5; Dkt. 96-1. Interim Co-Lead Counsel—Hagens Berman Sobol Shapiro LLP, Quinn Emanuel Urquhart & Sullivan, LLP, and Mehri & Skalet, PLLC—have extensive experience in antitrust cases. *See* Dkt. 96-1, at 8-18. Interim Co-Lead Counsel litigated this case through initial motions to dismiss, appellate review of the decisions on the early dispositive motion practice up to the Supreme Court and back, fact discovery (including the review hundreds of thousands of documents and dozens of depositions), and opening class certification briefing, all before negotiating these settlements. Through this vigorous litigation and negotiation, Interim Co-Lead Counsel have established that they are focused on pursuing the best interests of the proposed Settlement Class. Adequacy of representation is therefore satisfied.

**B.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)**

Plaintiffs are moving to certify the proposed Settlement Class under Rule 23(b)(3), which allows for certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The requirements of predominance and superiority are both satisfied here.

- 27 -

### 1.       Predominance

"[I]n general, predominance is met 'when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position.'" *Cohen*, 522 F. Supp. 2d at 116 (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)). The court's analysis "turns on whether there is sufficient common evidence of a resulting injury and the amount of that injury." *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365, 369 (D.D.C. 2007). However, the predominance requirement does not simply require a mathematical accounting of whether common or individualized questions are more numerous. Instead, it requires a qualitative assessment. It is not bean counting. If the most substantial issues in controversy will be resolved by reliance primarily upon common proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3) envisions. *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *35 (E.D.N.Y. Oct. 15, 2014). In other words, even a single issue "of central importance to the case and common to all class member claims … can cause class litigation to be appropriate." *Connor v. Automated Accounts, Inc.*, 202 F.R.D. 265, 271 (E.D. Wash. 2001) (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996)).

Indeed, "[p]redominance is a test readily met in certain cases alleging … violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996) ("the existence of a conspiracy is the predominant issue in price fixing cases"); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) ("[C]ourts have frequently held that the predominance requirement is satisfied [in price-fixing cases] because the existence and effect of the conspiracy are the prime issues in the case and are common across the class." (citing cases)).

- 28 -

Here, common issues clearly predominate. Determining liability requires a common inquiry into Defendants' adoption of the pricing restraints that are the subject of this case—the so-called "NDRs"—and, if the Court rules those restraints are subject to the rule of reason, what effect they had on competition. *See* Dkt. 177-1 at 25-27. The classwide impact of the NDRs also will be established with common proof, including Defendants' own admissions and expert analysis based on a common methodology using the documents and data produced in this case. *See id.* at 29-51. The Court need not consider manageability issues as part of the predominance inquiry for purposes of a settlement class, *Thomas*, 139 F.3d at 234, and there are no significant manageability issues in this case anyway. *Accord Radosti*, 717 F. Supp. 2d at 54 ("Because the class is being certified for purposes of settlement only, the Court need not consider whether the case, if tried, would present intractable management problems.").

## 2.    Superiority

The superiority question requires the court to ask whether a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The court's determination should focus on whether the settlement will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

Here, it would be inefficient to litigate the predominating common issues in countless individual proceedings, rather than on a class basis. *See High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1228-29 (N.D. Cal. 2013) ("[T]he nature of Defendants' alleged overarching conspiracy and the desirability of concentrating the litigation in one proceeding weigh heavily in favor of finding that class treatment is superior. . . ."). Additionally, a class action is also superior because "[i]n antitrust cases such as this, the damages of individual direct purchasers are likely to

- 29 -

be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress." *In re Static Random Access (SRAM) Antitrust Litig.*, 2008 WL 4447592, at *7 (N. D. Cal. Sept. 29, 2008); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364, 375 (C.D. Cal. 2011). This action provides a single forum to adjudicate the rights of millions of ATM consumers, and thus affords an efficient resolution of this controversy.

## VI.     THE COURT SHOULD APPOINT INTERIM CO-LEAD COUNSEL AS SETTLEMENT CLASS COUNSEL

Rule 23(c)(1)(B) states that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) states that "[i]n appointing class counsel, the court (i) must consider: [1] the work counsel has done in identifying or investigating potential claims in the action; [2] counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; [3] counsel's knowledge of the applicable law; and [4] the resources that counsel will commit to representing the class." All factors weigh in favor of appointing Hagens Berman Sobol Shapiro LLP, Quinn Emanuel Urquhart & Sullivan, LLP, and Mehri & Skalet, PLLC as Settlement Class Counsel. As noted, the Court already has appointed all three firms as Interim Co-Lead Counsel to manage this litigation. Dkt. 96. These firms have and continue to be willing and able to vigorously prosecute this action and to devote all necessary resources to obtain the best possible result for members of the proposed Settlement Class.

## VII.     THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23

A court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For a proposed Rule 23(b)(3) Settlement Class, the court must also "direct to class members the best

- 30 -

notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).[11] A class notice "is adequate and satisfies Rule 23 and due process if it 'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Domestic Airline*, 322 F. Supp. 3d at 68 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005)). Plaintiffs propose a state-of-the-art notice program designed by experienced notice and claims administrator, A.B. Data.

A.      **The Proposed Notice Plan Is the Best Notice Practicable**

The proposed notice program satisfies Rule 23 and due process because it will reach a broad audience and is the best notice practicable under the circumstances. The notice plan includes several principal components, which are also summarized in Section II.C, *supra*.

*First*, pursuant to requirements in the Settlement Agreements, Plaintiffs are collecting email addresses for an estimated *50 to 125 million* potential members of the Settlement Class from the account databases of the Settling Banks. Young Decl., ¶ 10; Berman Decl., ¶ 13.[12] A.B. Data will provide direct email notice to these individuals by sending them the Email Notice. *See* Young Decl., ¶¶ 10-13, Ex. D. The Email Notice will also direct members of the proposed Settlement Class to the case website, which will include extensive information about the

---

[11] *See also In re Domestic Airline Travel Anititrust Litig.*, 322 F. Supp. 3d 64, 68 (D.D.C. 2018) ("The Due Process Clause also gives unnamed class members the right to notice of a class action settlement but does not require actual notice to all class members who may be bound by the litigation. . . . Notice need only be reasonably calculated to reach the class in order to satisfy due process." (internal citations omitted)).

[12] This range is a preliminary estimate based on the pre-data production information provided by the banks. After the administrators receive the customer data provided the Bank Defendants, and analyze it, they will have a more precise estimate of the number of emails they have for potential Settlement Class Members. Berman Decl., ¶ 13.

settlements, including the more detailed long-form notice, which will be available for download as well.[13] *Id.*, ¶¶ 10-13, Exs. D, E.

*Second*, plaintiffs propose a robust digital and social media notice campaign, specifically targeted to reach a broad range of audiences most likely to include members of the proposed Settlement Class. Young Decl., ¶¶ 14-21, Ex. A at 19-22. Digital banner and newsfeed ads will run on websites and applications across multiple devices, including desktop, tablet, and mobile devices. They are estimated to generate approximately 500 million impressions over a 60-day period to ensure ample time to deliver the targeted impressions and drive potential members of the proposed Settlement Class to the website. *Id.*

*Third*, to reach an older audience and potential members of the proposed Settlement Class who only lightly use digital or social media, the Email Notice will be placed in *People* magazine, which has a weekly audience of more than 38 million readers. *Id.*, ¶ 22. *Fourth*, in the "earned media" portion of the campaign, A.B. Data will disseminate a news release to be distributed via *PR Newswire* to the news desks of approximately 10,000 newsrooms, including those of print, broadcast, and digital websites in the U.S. *Id.*, ¶ 23.

*Fifth*, Plaintiffs will establish a case-specific website (ATMClassAction.com) and toll-free phone number. On the website, members of the proposed Settlement Class will be able to file claims using easy-to-follow steps. They will also see additional, detailed information about the case, including answers to frequently asked questions, important case documents, and contact information for both Settlement Class Counsel and the Settlement Administrator. *Id.*, ¶¶ 24-28, Ex. G (Claim Form). Members of the proposed Settlement Class will also be able to have

---

[13] A.B. Data will implement certain best practices when disseminating the Email Notice, such as not using email attachments and certain trigger words to avoid SPAM and junk filters, to maximize deliverability. Young Decl., ¶ 12.

specific questions answered through the toll-free telephone number. *Id.*, ¶¶ 24-25. Based on the proposed Notice Plan, A.B. Data estimates that 80% of the Settlement Class will be reached, an average of 3.4 times. *Id.*, ¶ 30.

The proposed Notice Plan satisfies the requirements of Rule 23 and due process. *Id.*, ¶ 30. As discussed above, 50 to 125 million potential members of the proposed Settlement Class will receive direct notice by email, which is a most efficient way to directly notice a substantial portion of the Settlement Class. This method is also explicitly endorsed by the 2018 Amendments to Rule 23, which explain that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed R. Civ. P. 23(c)(2)(B).[14] Indeed, courts in this District reviewing notice programs immediately prior to the changes to Rule 23 recognized that individual notice by email, in combination with robust publication notice, as proposed here, may be the best way to provide notice to large settlement classes. *See Domestic Airline*, 322 F. Supp. 3d at 69-72 (approving of proposed settlement program by publication notice and individual notice by email, even where physical mailing addresses were available).[15] As the court in *Domestic Airline* explained:

> No single formula can be derived which will anticipate the myriad of circumstances that may confront class action litigants attempting to identify absentee class members of a 23(b)(3) action and resolve whether the effort is reasonable. . . . . Instead, this Court must examine the available information and possible methods of identification before deciding what amounts to reasonable efforts under the circumstances. The Court must balance between protecting class members and making Rule 23 workable, with consideration of the circumstances,

---

[14] *See also* Fed. R. Civ. P. 23, Notes of Advisory Comm., Subdivision (c)(2) (2018) (discussing technological changes that may provide opportunities for better notice).

[15] *See also Domestic Airline*, 322 F. Supp. 3d at 70 (citing, among other cases: *In re Livingsocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 8 (D.D.C. 2013) (involving a class of 10.9 million persons contesting gift certificates sold via the internet, in which notice was given through e-mail); *In re Sony PS3 "Other OS" Litig.*, 2017 WL 5598726 (N.D. Cal. Nov. 21, 2017) (involving breach of contract claims by purchasers of computer entertainment consoles, where dissemination of settlement information was to be completed by giving notice "to Class Members via email for those Class members for whom an email address is available")).

size of the class, and cost of providing notice compared to the total settlement
fund.

*Id.* at 70-71 (internal citation and quotation marks omitted).

Here, as in *Domestic Airline*, the combination of "e-mail and publication" notice (*id.* at
71), is the best notice practicable. The proposed Settlement Class is estimated to contain between
175 and 215 million members, larger than the 84-153 million prospective class members in
*Domestic Airline*. *Id.* at 71. The proposed notice program, which includes providing individual
notice by email plus publication notice, is estimated to cost between $1 million to $1.15 million,
while that notice program plus providing individual notice also by mail, would likely exceed $4
million, or up to four times more. Young Decl., ¶ 29. The millions in additional expense to
provide individual notice to this large class by mail versus email only would cut into the total
settlement value of $66.74 million, unjustifiably reducing the amounts available to members of
the proposed Settlement Class, especially "considering that [as proposed here, like in *Domestic
Airline*] the e-email notification will be supplemental by publication through print and media
outlets and numerous websites, databases and online services." *Domestic Airline*, 322 F. Supp.
3d at 72.

In addition to *Domestic Airline* and the cases cited therein, other courts have approved
notice programs that do not include direct mailed notice, or even without any direct notice at all,
when that is impractical, recognizing that notice plans should be tailored to the facts and
designed to reach class members in the best manner practicable under the circumstances. *See,
e.g., In re Qualcomm Antitrust Litig.*, 17-MD-02773-LHK, Dkt. 815 (N.D. Cal. Dec. 6, 2018)
(for nationwide class of 233 million to 260 million members, approving notice plan consisting of
publication notice campaign but, unlike as proposed here, **with no individual notice component**,
whether mail or electronic); *see also Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238 (N.D. Cal.

- 34 -

2014) ("[O]ur law has long recognized that direct notice to every class member is not always possible. What Rule 23 and the Due Process Clause require is 'the best notice that is practicable under the circumstances[.]'"); *Ross v. Trex Co., Inc.*, 2013 WL 791229, at *1 (N.D. Cal. Mar. 4, 2013) ("Courts have consistently recognized that due process does not require that every class member receive actual notice. . . . Due Process does not entitle a class member to 'actual notice,' but rather to the best notice practicable, reasonably calculated under the circumstances to apprise him of the pendency of the class action and give him a chance to be heard.").[16]

A further indication that the proposed notice plan meets the requirements of Rule 23 and due process is the Settlement Administrator's estimate that it will reach approximately 80% of potential members of the Settlement Class. This is consistent with the recommendations by the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, which considers reach exceeding 70% to be reasonable. Young Decl., ¶ 30.

**B.     The Proposed Notice Forms Contain the Rule 23 Requirements and are Plain and Easy to Understand**

Rule 23(c)(2)(B) requires that the class notice must include particular content in "plain, easily understood language." The Email Notice (Young Decl., Ex. D) and Website Notice (*id.*, Ex. E) are plain and easy to understand and contain that content, specifically the following information: (1) "the nature of the action" (*id.*, Ex. D at opening paragraph, *id.*, Ex. E at 1, ¶ 2); (2) the definition of the proposed Settlement Class (*id.*, Ex. D at "Am I included," *id.*, Ex. E, ¶ 6); (3) "the class claims, issues, or defenses" (*id.*, Ex. D at opening paragraph, *id.*, Ex. E at 1, ¶ 2)

---

[16] *See also Bissonette v. Enter. Leasing Companywest*, 2014 U.S. Dist. LEXIS 132634 (D. Nev. Sept. 19, 2014) ("Under this 'best notice practicable' standard, courts retain considerable discretion to tailor notice to the relevant circumstances. . . ."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) ("Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties").

(4) "that a class member may enter an appearance through an attorney if the member so desires" (*id.*, Ex. D at "What are my rights?", *id.*, Ex. E, ¶ 16); (5) "that the court will exclude from the class any member who requests exclusion" (*id.*, Ex. D at "What are my rights?", *id.*, Ex. E, ¶¶ 18-21); (6) "the time and manner for requesting exclusion" (*id.*, Ex. D at "What are my rights?", *id.*, Ex. E  at 1, ¶ 18); (7) and "the binding effect of a class judgment on members under Rule 23(c)(3)" (*id.*, Ex. D at "What are my rights?", *id.*, Ex. E, ¶ 14). *See* Fed. R. Civ. P. 23(c)(2)(B) (identifying seven requirements).

## VIII.   PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL

Finally, Plaintiffs respectfully propose the following schedule for remaining events and submissions related to the Settlements.[17]

| Event | Proposed Deadline |
|---|---|
| Entry of order granting preliminary approval and directing notice to the class regarding the Settlement Agreements | X |
| Notice campaign to begin, including email, digital and social media, national print and earned media, and case website | X + 28 days |
| Claims period to begin | X + 28 days |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | X + 105 days (14 days before objection deadline) |
| Last day for objections and requests for exclusion from the Settlement Class | X + 119 days (91 days from notice) |
| Last day for motions in support of final approval of settlements | X + 133 days (14 days after objection deadline) |
| Final Approval Hearing | At least X + 168 days (At least 35 days after final approval motion, at convenience of the Court) |
| Close of claims period | X + 180 days |

---

[17] This proposed schedule is contingent on timely production of customer data by the Bank Defendants, specifically that it occur prior to an order granting preliminary approval of the Settlements and directing notice to the class. Plaintiffs can update the Court on this matter at hearing on this Motion and/or in writing.

## IX.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant the attached proposed Order, which (1) preliminarily approves the proposed class action settlements with Bank of America, Wells Fargo, and Chase; (2) provisionally certifies the proposed Settlement Class; (3) appoints Hagens Berman Sobol Shapiro LLP, Quinn Emanuel Urquhart & Sullivan, LLP, and Mehri & Skalet, PLLC as Settlement Class Counsel; (4) directs notice to the proposed Settlement Class in the manner and form of notice proposed by Plaintiffs; (5) appoints Andrew Mackmin and Sam Osborn as representatives for the proposed Settlement Class for the purposes of disseminating notice; (6) authorizes retention of A.B. Data, Ltd. as the Settlement Administrator; and (7) schedules a hearing to determine whether the proposed Settlements are fair, reasonable, and adequate under Rule 23(e)(2) and whether the Settlement Class should be certified.

DATED this 5th day of October, 2020.        Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: ___*/s/ Steve W. Berman*_____
     Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Ben M. Harrington (*pro hac vice*)
Benjamin J. Siegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3034
benh@hbsslaw.com
bens@hbsslaw.com

- 37 -

Stephen R. Neuwirth (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
Viola Trebicka (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Steven A. Skalet
(D.C. Bar No. 359804)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
sskalet@findjustice.com

*Interim Co-Lead Counsel for*
*Mackmin Consumer Plaintiffs*

- 38 -