# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANDREW MACKMIN, *et al.*,

       *Plaintiffs*,

v.

VISA INC., *et al.*,

       *Defendants*.

Civil Action No. 1:11-cv-1831-RJL
Assign Date: 8/4/2015
Description: Antitrust – Class Action

**DECLARATION OF STEVE W. BERMAN IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH
THE BANK OF AMERICA, CHASE, AND WELLS FARGO DEFENDANTS AND TO
<u>DIRECT NOTICE TO THE SETTLEMENT CLASS</u>**

I, Steve W. Berman, declare under penalty of perjury under the laws of the United States as follows:

1.      I am an attorney duly licensed to practice before all of the courts of the State of Washington, and my *pro hac vice* application was approved by this Court. I am the Managing partner of the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman"). I submit this Declaration in Support of the *Mackmin* Plaintiffs' Motion For Preliminary Approval of Settlements With The Bank of America, Chase, and Wells Fargo Defendants and To Direct Notice To The Settlement Class.[1] I have full knowledge of the matters stated herein and could and would testify thereto.

2.      My firm, Hagens Berman, alongside Quinn Emanuel Urquhart & Sullivan, LLP and Mehri & Skalet, PLLC, are counsel of record for the *Mackmin* Plaintiffs ("Plaintiffs"), having been appointed Interim Co-Lead Counsel by this Court.

3.      Plaintiffs, via Interim Co-Lead Counsel, have aggressively pursued Plaintiffs' claims. Counsel negotiated several discovery and other related protocols, served extensive document requests and interrogatories, and negotiated the scope of Defendants' productions via numerous in-person, telephonic, and written communications. These initial efforts lasted several months and further efforts to obtain full productions from the settling Bank Defendants continued far into discovery. Interim Co-Lead Counsel attended not only multiple meet and

---

[1] The Bank of America Defendants, the Chase Defendants, and the Wells Fargo Defendants are referred to herein collectively as the "Bank Defendants" or "Settling Defendants." The "Bank of America Defendants" are Bank of America, National Association; NB Holdings Corporation; and Bank of America Corporation.  The "Chase Defendants" are Chase Bank USA, N.A.; JPMorgan Chase & Co.; and JPMorgan Chase Bank, N.A.  The "Wells Fargo Defendants" are Wells Fargo & Company and Wells Fargo Bank, N.A.

- 1 -

confers with Defendants' counsel, but also regularly traveled to and presented Plaintiffs' positions in this Court's "Gang of 8" discovery conferences.

4.      As a result of these efforts, Defendants and 19 subpoenaed third parties collectively produced over 800,000 documents. Plaintiffs also received over 3 terabytes of transactional data, the full extent of which took years to obtain. Plaintiffs filed 4 motions to compel productions from three third parties and, after extensive briefing and argument, three of those motions were transferred to this Court pursuant to Rule 45(f) and granted. Plaintiffs withdrew their fourth motion to compel after the subpoenaed party agreed to produce requested materials. Interim Co-Lead Counsel extensively reviewed documents produced by parties and third parties, and analyzed the transactional data with the help of their experts, a process that took years and cost millions of dollars. Interim Co-Lead Counsel also took and participated in over 35 depositions, moved for class certification, recently completed class certification expert discovery, and have submitted a reply brief in support of their motion for class certification against the Non-Settling Defendants (Visa and MasterCard).

5.      The two Class Representatives—Andrew Mackmin and Sam Osborn—have also vigorously represented the Settlement Class in this litigation. Each prepared extensively for and had his deposition taken in the case. Both also participated in responding to discovery from Defendants, and each was consulted about and approved the proposed Settlements.

6.      Interim Co-Lead Counsel and counsel for the Bank Defendants first discussed potential settlement in January 2018, in a mediation before Layn Phillips, one of the nation's foremost mediators. At that time, before any major discovery had occurred, the parties were unable to reach resolution. In mid-2019, after the parties engaged in the substantial discovery

described above, including discovery strongly supporting Plaintiffs' case, the Chase Defendants and Plaintiffs began to discuss settlement again.

7.      Plaintiffs filed their motion for class certification on September 20, 2019, supported by the expert report of Professor Dennis W. Carlton. After numerous discussions about the scope of the settlement negotiations, and with Defendants' opposition to Plaintiffs' class certification motion due in the beginning of 2020, Plaintiffs and the Chase Defendants agreed to have another mediation session with Judge Phillips, and did so in December 2019. That full-day mediation resulted in a settlement that Plaintiffs and the Chase Defendants subsequently memorialized in a binding term sheet agreement. Plaintiffs subsequently offered similar settlement terms to the other Bank Defendants, each of whom accepted Plaintiffs' offer and similarly memorialized their agreements in binding term sheets.

8.      The parties then engaged in numerous negotiation sessions regarding long-form settlement agreements. Those negotiations included specifics about the information and assistance the Bank Defendants would provide to Plaintiffs regarding, *inter alia*, notice and the payment of settlement funds to members of the proposed Settlement Class. That process, which took many months, resulted in long-form Settlement Agreements with each of the Bank Defendants.

9.      Throughout, Bank Defendants' counsel, who are highly experienced and capable, vigorously advocated their clients' positions in the settlement negotiations. Interim Co-Lead Counsel, who were well-informed of the facts and issues concerning liability and damages and the relative strengths and weaknesses of each side's litigation position in this complex, challenging case, as well as the importance of obtaining cooperation and assistance from the Bank Defendants, vigorously advocated Plaintiffs' positions.

- 3 -

10.     Attached as **<u>Exhibit A</u>** to this Declaration is a true and correct copy of Plaintiffs' Settlement Agreement With The Bank of America Defendants.  **<u>Exhibit B</u>** to this Declaration is a true and correct copy of the Confidential Supplement to Plaintiffs' Settlement Agreement With The Bank of America Defendants, which has been filed under seal for the Court's *in camera* inspection.

11.     Attached as **<u>Exhibit C</u>** to this Declaration is a true and correct copy of Plaintiffs' Settlement Agreement With The Chase Defendants. **<u>Exhibit D</u>** to this Declaration is a true and correct copy of the Confidential Supplement to Plaintiffs' Settlement Agreement With The Chase Defendants, which has been filed under seal for the Court's *in camera* inspection.

12.     Attached as **<u>Exhibit E</u>** to this Declaration is a true and correct copy of Plaintiffs' Settlement Agreement With The Wells Fargo Defendants. **<u>Exhibit F</u>** to this Declaration is a true and correct copy of the Confidential Supplement to Plaintiffs' Settlement Agreement With The Wells Fargo Defendants, which has been filed under seal for the Court's *in camera* inspection.

13.     Pursuant to the cooperation provisions in the Bank Settlement Agreements, the Settling Defendants are in the process of pulling contact information, including any available email addresses, for account holders who are potential members of the Settlement Class. Chase has reported that its databases include a unique identifier (known as the Enterprise Customer Identifier Number or ECI) for 39 million potential members of the Settlement Class who had one or more ATM transactions at non-Chase ATMs during the Settlement Class Period. Chase's best estimate is that it has physical addresses for essentially all 39 million ECIs (all but 2,632), and email addresses for approximately 35 million. Bank of America estimates that it has 64 million unique accounts with at least one ATM transaction at a non-Bank of America ATM during the Settlement Class Period. Bank of America anticipates it will have the last known mailing address

- 4 -

for each of these accounts, and a valid email address for approximately 75 percent. Wells Fargo has represented that, without completely pulling the data (which it is doing), it cannot reasonably estimate the number of Wells Fargo account holders with potential Settlement Class transactions, or the percentage of these account holders for which Wells Fargo maintains contact information. Based on the foregoing information, Plaintiffs' best estimate at this point is that, collectively, the Bank Defendants will provide email addresses for between 50 and 125 million potential members of the Settlement Class. The precise number will depend on several factors, including but not limited to: (a) Wells Fargo's totals; (b) the accuracy of Bank of America's and Chase's estimates; (c) the number of potential members of the Settlement Class with multiple accounts at Bank of America (and, potentially, Wells Fargo); and (d) the number of potential members of the Settlement Class with accounts at more than one of the Bank Defendants.

14.    Each proposed Settlement Class is identical, with the Settlement Class defined as all individuals and entities that paid an unreimbursed ATM Access Fee directly to any Bank Defendant or Alleged Bank Co-Conspirator for a Foreign ATM Transaction using an ATM card issued by a financial institution in the United States to withdraw cash at an ATM located in the United States at any time from October 1, 2007 to the date of the Preliminary Approval Order. Specifically excluded from the Settlement Classes are Defendants; Released Parties; the officers, directors, or employees of any Defendant or Released Party; any entity in which any Defendant or Released Party has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or Released Party and any person acting on their behalf. Also excluded from the Settlement Class are any federal, state, or local governmental entities, Class Lead Counsel, and any judicial officer presiding over the Action and the members of his/her immediate family and judicial staff. According to Plaintiffs' class certification economic expert, Professor Carlton,

a  conservative estimate of the range for the number of members of the Settlement Class is approximately 175 to 215 million.

15.     Based on the preliminary estimates provided by Plaintiffs' class certification damages expert in their motion for class certification, each of the bank settlements—Bank of America ($26,420,000), Wells Fargo ($20,820,000), and Chase ($19,500,000), totaling $66.74 million—represents ***57.5%*** of the maximum single damages estimated for class transactions at the ATMs of these banks. The 57.5% estimate is based on the damages methodology of the three offered at class certification that yields the *largest* damages estimates (referred to as Approach 3). If one were to look at the other two methods, Approach 1 and Approach 2, the settlements would represent approximately 115% and 77% of the single damages estimated for class transactions at the Settling Banks' ATMs, respectively.

16.     The foregoing percentages were derived in the following manner. As a portion of the total class transactions estimated for the purposes of the class certification expert report by Professor Carlton, the number of class transactions at Bank of America ATMs is approximately 574.1 million, at Wells Fargo ATMs approximately 452.4 million, and at Chase ATMs approximately 423.8 million. Under Approach 3 (which yields the largest damages estimate), the per transaction overcharge for class transactions in the class certification expert report is estimated to be $.08. Under Approach 3, therefore, the total maximum single damages for class transactions at Bank of America ATMs is 574.1 million X $.08 = $45,928,000. Thus, the settlement amount with Bank of America, $26,420,000, is approximately 57.5% of $45,928,000. Applying the same formula to the 452.4 million class transactions at Wells Fargo ATMs (452.4 million X $.08, the Approach 3 estimated per transaction overcharge) yields maximum single damages for class transactions at Wells Fargo ATMs of $36,192,000, and the Wells Fargo

- 6 -

settlement amount of $20,820,000 is 57.5% of that total. Finally, applying the same formula to the 423.8 million class transactions at Chase ATMs (423.8 million X $.08, the Approach 3 estimated per transaction overcharge) yields maximum single damages for class transactions at Chase ATMs of $33,904,000, and the Chase settlement amount of $19,500,000 is 57.5% of that total. Again, the foregoing shows that the settlement amounts are 57.5% of the maximum single damages estimated for class transactions at the ATMs of these banks under Approach 3, which is the damages methodology of the three offered at class certification that yields the *largest* damages estimates. The difference between Approach 3 and the other approaches (i.e., damages calculations) is that Approaches 1 and 2 estimate lower per transaction overcharges, $.04 and $.06, respectively. Using these lower per transaction overcharge estimates in the formula described in this paragraph, which applies the per transaction overcharge to the class transactions at the Settling Defendants' ATMs, ultimately shows that the settlement amounts represent approximately 115% and 77% of the single damages estimated for class transactions at the Settling Banks' ATMs under Approach 1 and Approach 2, respectively.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 5th day of October, 2020, at Seattle, Washington.

*/s/ Steve W. Berman*
STEVE W. BERMAN

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW MACKMIN, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:11-cv-01831 (RJL) |
| VISA INC., et al., | |
| Defendants. | |

**STIPULATION AND AGREEMENT OF SETTLEMENT WITH BANK OF AMERICA, N.A.; NB HOLDINGS CORP.; BANK OF AMERICA CORP.**

# TABLE OF CONTENTS

1.   RECITALS ....................................................................................................................1

2.   DEFINITIONS.............................................................................................................3

3.   SETTLEMENT CLASS CERTIFICATION ....................................................................10

4.   GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT
     AGREEMENT............................................................................................................11

5.   FINAL JUDGMENT AND ORDER OF DISMISSAL AGAINST THE
     SETTLING DEFENDANTS .........................................................................................12

6.   PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING .........14

7.   EFFECTIVE DATE OF SETTLEMENT ........................................................................17

8.   CLAIMS ADMINISTRATOR ......................................................................................18

9.   SCOPE AND EFFECT OF SETTLEMENT ...................................................................19

10.  COOPERATION .........................................................................................................20

11.  FEE AND EXPENSE APPLICATION .........................................................................21

12.  THE SETTLEMENT FUND .......................................................................................23

13.  ADMINISTRATION OF THE SETTLEMENT ..............................................................25

14.  TAXES.......................................................................................................................26

15.  TERMINATION OF SETTLEMENT.............................................................................28

16.  MISCELLANEOUS ...................................................................................................30

1.      **RECITALS**

This Stipulation and Agreement of Settlement ("Settlement Agreement") is made and entered into on August 17, 2020 ("Execution Date"), between Class Plaintiffs (as defined herein), for themselves individually and on behalf of each Settlement Class Member in the Action (each, as defined herein), and defendants Bank of America, N.A.; NB Holdings Corp.; Bank of America Corp. (collectively, "Bank of America"), by and through Class Lead Counsel and Bank of America's Counsel (each, as defined herein). This Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), with respect to Bank of America, upon and subject to the terms and conditions herein.

WHEREAS, on November 23, 2015, Class Plaintiffs filed a Second Amended Class Action Complaint ("SAC" or "Complaint");

WHEREAS, Class Plaintiffs are prosecuting the Action on their own behalf and on behalf of a putative class against Defendants, including Bank of America;

WHEREAS, Class Plaintiffs have alleged, among other things, that Bank of America participated in an unlawful conspiracy to restrain trade, pursuant to which Bank of America and its alleged co-conspirators, including the other Defendants, as well as unnamed co-conspirators, agreed, among other things, to so-called Non-Discrimination Rules that allegedly had the effect of increasing the amount of ATM Access Fees (as defined herein) paid by the Settlement Class (as defined herein), in violation of the Sherman Act, 15 U.S.C. § l, *et seq.*;

WHEREAS, Class Plaintiffs have contended that they are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the SAC, arising from Bank of America's (and the other Defendants') alleged conduct;

WHEREAS, Bank of America has denied and continues to deny each and all of the claims made by Class Plaintiffs in the Action and of liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action;

WHEREAS, Class Plaintiffs, for themselves individually and on behalf of each Settlement Class Member, and Bank of America agree that neither this Settlement Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Bank of America or of the truth of any of the claims or allegations alleged in the Action;

WHEREAS, Class Plaintiffs and Settling Defendants have engaged in extensive discovery regarding the facts pertaining to Class Plaintiffs' claims and Settling Defendants' defenses;

WHEREAS, Class Lead Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that: (1) it is in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein, including the value of the Settlement Amount (as defined herein) to be paid by Bank of America under this Settlement Agreement and the cooperation to be provided to Class Plaintiffs by Bank of America under this Settlement Agreement, are obtained for the Settlement Class; and (2) the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Settlement Class;

WHEREAS, Bank of America, while continuing to deny that it is liable for any of the claims asserted against it in the Action, has nevertheless agreed to enter into this Settlement Agreement to avoid the further risk, expense, inconvenience, and distraction of burdensome and

2

protracted litigation, and thereby to put fully to rest this controversy, to avoid the risks inherent in complex litigation, and to obtain complete dismissal of the SAC as to Bank of America and a release of claims as set forth herein; and

WHEREAS, this Settlement Agreement is the product of arm's-length negotiations between Class Lead Counsel and Bank of America's Counsel under the guidance and oversight of former U.S. District Judge Layn R. Phillips as Mediator, and this Settlement Agreement embodies all of the terms and conditions of the settlement agreed upon between Bank of America and Class Plaintiffs, both for themselves individually and on behalf of the Settlement Class;

NOW, THEREFORE, in consideration of the covenants, terms, and releases in this Settlement Agreement, it is agreed, by and among Class Plaintiffs (for themselves individually and on behalf of the Settlement Class and each member thereof) and Bank of America, by and through Class Lead Counsel and Bank of America's Counsel, that, subject to the approval of the Court (as defined herein), the Action be settled, compromised, and dismissed with prejudice as to Bank of America and the other Released Parties (as defined herein) only, without costs, except as stated herein, and releases be extended, as set forth in this Settlement Agreement.

## 2.   DEFINITIONS

As used in this Settlement Agreement, the following capitalized terms have the meanings specified below:

(a)     "Action" means *Mackmin et al. v. Visa Inc. et al.*, Case No. 1:11-cv-01831 (RJL), which is currently pending in the United States District Court for the District of Columbia.

(b)     "Alleged Bank Co-Conspirator" has the same definition as in the SAC.

3

(c)     "ATM" means an automated teller machine, which allows Cardholders to complete an ATM Transaction.

(d)     "ATM Access Fee" means the fee assessed by an ATM operator to a Cardholder for completing a Foreign ATM Transaction.

(e)     "ATM Card" means an access device, usually a card, enabling the holder, among other things, to conduct an ATM Transaction.

(f)     "ATM Transaction" means any actual or attempted use of an ATM, including to withdraw cash, deposit funds, transfer funds, or check account balances.

(g)     "Authorized Claimant" means any Settlement Class Member who will be entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Distribution approved by the Court.

(h)     "Bank" means any bank, credit union, or other financial institution, including its affiliates, subsidiaries, agents, representatives, employees, officers, and directors.

(i)     "Bank Defendant" means JPMorgan Chase & Co.; Chase Bank USA, N.A.; and JPMorgan Chase Bank, N.A.; Bank of America, N.A.; NB Holdings Corp.; Bank of America Corp.; Wells Fargo & Co.; and Wells Fargo Bank, N.A.

(j)     "Bank of America" means Bank of America, N.A.; NB Holdings Corp.; and Bank of America Corp.

(k)     "Bank of America's Counsel" means Morrison & Foerster LLP.

(l)     "Cardholder" means any Person that owns, possesses, or controls an ATM Card.

4

(m)     "Claims Administrator" means the third party to be retained by Class Lead Counsel and approved by the Court to manage and administer the process by which each member of the Settlement Class is notified of the Settlement Agreement and paid from the Net Settlement Fund.

(n)      "Class Lead Counsel" means Hagens Berman Sobol Shapiro LLP, Quinn Emanuel Urquhart & Sullivan LLP, and Mehri & Skalet PLLC.

(o)     "Class Notice" means the proposed form of, method for, and the date of dissemination of notice of the Settlement Agreement to the Settlement Class.

(p)     "Class Plaintiffs" means Andrew Mackmin and Sam Osborn.

(q)      "Court" means the United States District Court for the District of Columbia.

(r)     "Defendants" means JPMorgan Chase & Co.; Chase Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Visa Inc.; Visa U.S.A. Inc.; Visa International Service Association; Plus System, Inc.; Mastercard Inc.; Mastercard International Inc. d/b/a Mastercard Worldwide; Bank of America, N.A.; NB Holdings Corp.; Bank of America Corp.; Wells Fargo & Co.; and Wells Fargo Bank, N.A.; and any other Person or Persons who are named as defendants in the Action at any time up to and including the date a Preliminary Approval Order is entered.

(s)      "Effective Date of Settlement" has the meaning given to it in paragraph 7.

(t)     "Escrow Agent" means Huntington National Bank.

(u)     "Execution Date" means the date of the execution of this Settlement Agreement by counsel for all Parties thereto.

(v)     "Fairness Hearing" means the hearing to be held by the Court to determine whether the settlement set forth in this Settlement Agreement shall receive final approval pursuant to Fed. R. Civ. P. 23.

(w)     "Fee and Expense Application" has the meaning given to it in paragraph 11.

(x)     "Fee and Expense Award" has the meaning given to it in paragraph 11.

(y)     "Final Approval Order" has the meaning given to it in paragraph 5.

(z)     "Final Judgment and Order of Dismissal" has the meaning given to it in paragraph

(aa)     "Foreign ATM Transaction" means an ATM Transaction in which the Cardholder uses an ATM which is owned by an entity different from the entity that issued the ATM Card used for that ATM Transaction.

(bb)     "Mediator" means former U.S. District Judge Layn R. Phillip.

(cc)     "Net Settlement Fund" has the meaning given to it in paragraph 12.

(dd)      "Parties" means, collectively, Class Plaintiffs (on behalf of themselves and the Settlement Class) and the Settling Defendants.

(ee)     "Person" means an individual or entity, and his, her, or its spouses, heirs, predecessors, successors, representatives, or assignees.

(ff)     "Plan of Distribution" means a plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Settlement Class Members after payment

of expenses of notice and administration of the settlement, Taxes and tax expenses, and such attorneys' fees, costs, service awards, interest, and other expenses as may be awarded by the Court.

(gg)    "Preliminary Approval Order" means an order of the Court that preliminarily approves the settlement set forth in this Settlement Agreement and that approves the form of Class Notice and preliminarily approves a proposed Plan of Distribution.

(hh)    "Released Claims" means, in consideration of payment of the Settlement Amount into the Settlement Fund as specified in paragraph 12 of this Settlement Agreement, and for other valuable consideration, any and all manner of claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several) by the Releasing Parties against the Released Parties to the fullest extent permitted by law, including all unasserted and "Unknown Claims," as defined below, both arising from transactions at ATMs owned or operated by financial institutions and the factual predicates of the Action, from the beginning of time and continuing into the future without end.

(ii)    "Released Party" or "Released Parties" means Bank of America, N.A.; NB Holdings Corp.; and Bank of America Corp. and each entity's past, present, and future, direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in Securities and Exchange Commission Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934, as amended), divisions, predecessors, successors, and each of their

7

respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns.  Released Parties do not include any of the other Defendants.

(jj)     "Releasing Parties" means, individually and collectively, Class Plaintiffs and each Settlement Class Member, on behalf of themselves and any of their respective past, present or future officers, directors, stockholders, agents, employees, legal or other representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns, whether or not they object to the settlement set forth in this Settlement Agreement, and whether or not they make a claim for payment from the Net Settlement Fund.

(kk)     "Request for Exclusion" has the meaning given to it in paragraph 6.

(ll)     "SAC" or "Complaint" means the Second Amended Class Action Complaint filed with the Court in the Action on November 23, 2015.

(mm)   "Settlement Agreement" means this Stipulation and Agreement of Settlement.

(nn)    "Settlement Amount" means the sum of Twenty-Six Million Four Hundred Twenty Thousand Dollars ($26,420,000), payable in lawful money of the United States.

(oo)    "Settlement Class" has the meaning given to it in paragraph 3(a).

(pp)    "Settlement Class Member" means a Person who is a member of the Settlement Class and has not timely and validly excluded himself, herself, or itself in accordance with the procedures to be established by the Court.

8

(qq)    "Settlement Fund" means the escrow account established pursuant to paragraph 12 of this Settlement Agreement, including all monies held therein in accordance with the terms of this Settlement Agreement.

(rr)    "Settling Defendants" means Bank of America, N.A.; NB Holdings Corp.; and Bank of America Corp.

(ss)    "Taxes" has the meaning given to it in paragraph 14.

(tt)    "Unknown Claims" means any and all Released Claims against the Released Parties which any of the Releasing Parties does not know or suspect to exist in his, her, or its favor as of the Effective Date of Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that by operation of the Final Judgment and Order of Dismissal, upon the Effective Date of Settlement, Releasing Parties shall have expressly waived, and each Settlement Class Member shall be deemed to have waived, and by operation of the Final Judgment and Order of Dismissal shall have expressly waived, the provisions, rights and benefits of Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542.

Any of the Releasing Parties may hereafter discover facts other than or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the

Released Claims. Nevertheless, Class Plaintiffs shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date of Settlement, shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever settled and released, any and all Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Class Plaintiffs acknowledge, and Settlement Class Members shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

3.     **SETTLEMENT CLASS CERTIFICATION**

(a)     The Parties hereby stipulate solely for settlement purposes that the requirements of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3) are satisfied and, subject to Court approval, the following Settlement Class shall be certified as to Bank of America solely for settlement purposes: "All individuals and entities that paid an unreimbursed ATM Access Fee directly to any Bank Defendant or Alleged Bank Co-Conspirator for a Foreign ATM Transaction using an ATM card issued by a financial institution in the United States to withdraw cash at an ATM located in the United States at any time from October 1, 2007 to the date of the Preliminary Approval Order." Specifically excluded from the Settlement Class are Defendants; Released Parties; the officers, directors, or employees of any Defendant or Released Party; any entity in which any Defendant or Released Party has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or Released Party and any person acting on their behalf. Also excluded from the Settlement Class are any federal, state, or local governmental entities, Class Lead Counsel, and any judicial officer presiding over the Action and the members of his/her immediate family and judicial staff.

(b)     The Parties' agreement as to certification of the Settlement Class is solely for purposes of effectuating a settlement and for no other purpose.  Bank of America retains all of its objections, arguments, and defenses with respect to class certification, and reserves all rights to contest class certification, if the settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to close.  The Parties acknowledge that there has been no stipulation to any class or certification of any class for any purpose other than effectuating the settlement, and that if the settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to close, this agreement as to certification of the Settlement Class becomes null and void *ab initio,* and this Settlement Agreement or any other settlement-related statement may not be cited regarding certification of the Settlement Class, or in support of an argument for certifying a class for any purpose related to this proceeding.

## 4.     GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT

The Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms of this Settlement Agreement.  This includes Bank of America serving notice on those entities required to receive notice pursuant to 28 U.S.C. § 1715.

5.      **FINAL JUDGMENT AND ORDER OF DISMISSAL AGAINST THE SETTLING DEFENDANTS**

(a)      Class Plaintiffs shall seek a Final Approval Order and a Final Judgment and Order of Dismissal against the Settling Defendants, the proposed text of which Class Plaintiffs and Settling Defendants shall agree upon.  The Final Approval Order and Final Judgment and Order of Dismissal submitted for Court approval will include, at a minimum, terms:

(i)      certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) solely for the purpose of the settlement;

(ii)      as to the Action, approving fully and finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

(iii)      finding that the notice given to Settlement Class Members constitutes the best notice practicable under the circumstances and complies in all respects with the valid, due, and sufficient notice requirements of Federal Rule of Civil Procedure 23, and meets the requirements of due process;

(iv)      as to Released Parties, directing that the Action be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs;

(v)      discharging and releasing the Released Parties from the Released Claims, regardless of whether any such Releasing Party executes and delivers a proof of claim, and

without respect to any rights afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws;

(vi)    permanently barring and enjoining Class Plaintiffs or any Settlement Class Member from (A) instituting or prosecuting any other action against any of the Released Parties as to any of the Released Claims, or (B) assisting any third party in commencing or maintaining any suit against any Released Party related in any way to any of the Released Claims;

(vii)    reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including all future proceedings concerning the administration, interpretation, consummation, and enforcement of this settlement, to the Court; and

(viii)    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Released Parties shall be final and entered forthwith.

(b)    The Final Judgment and Order of Dismissal shall become final when (i) the Court has entered a final order certifying the Settlement Class for settlement purposes and approving this Settlement Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to Released Parties against all Settlement Class Members and without costs other than those provided for in this Settlement Agreement, and (ii) the time for appeal from the Court's approval of this Settlement Agreement and entry of a final judgment as to Released Parties described in (i) hereof has expired or, if appealed, approval of this Settlement Agreement and the final judgment as to Released Parties have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no

longer subject to further appeal or review.  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

(c)      As of the Execution Date, Plaintiffs and Settling Defendants shall be bound by the Settlement Agreement's terms and this Settlement Agreement shall not be rescinded except in accordance with the terms of this Settlement Agreement.

## 6.      PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING

(a)      As soon as reasonably possible following the Execution Date, Class Lead Counsel shall submit to the Court, and Bank of America shall support, a motion requesting entry of a Preliminary Approval Order.  That motion shall:

(i)      seek preliminary certification of the Settlement Class solely for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3);

(ii)      request preliminary approval of the settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23;

(iii)      seek the appointment of Class Plaintiffs as representatives of the Settlement Class, and Class Lead Counsel as interim counsel for the Settlement Class under Fed. R. Civ. P. 23(g);

(iv)      request authorization to disseminate notice of the settlement and final judgment contemplated by this Settlement Agreement to all potential Settlement Class Members. The motion shall include: (1) a proposed form of, method for, and date of dissemination of notice; and (2) a proposed Preliminary Approval Order. Notice of the settlement shall be as provided in the motion and as approved by the Court, with all

expenses paid from the Settlement Fund, subject to the provisions of this Settlement Agreement. The motion shall recite and ask the Court to find that the method of the notice of settlement to all Settlement Class Members who can be identified upon reasonable effort constitutes valid, due, and sufficient notice to the Settlement Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process. The Claims Administrator will also establish and maintain a dedicated settlement website, from which each Settlement Class Member can view and download relevant documents;

  (v)  seek appointment of the Claims Administrator;

  (vi)  seek appointment of Huntington National Bank as Escrow Agent;

  (vii)  request that the Court, pending final determination of whether the Settlement Agreement should be approved, stay all proceedings in the Action against Bank of America until the Court renders a final decision on approval of the settlement set forth in this Settlement Agreement;

  (viii)  request that the Court, pending final determination of whether the Settlement Agreement should be approved, temporarily enjoin each Class Plaintiff and each Settlement Class Member, either directly, representatively, or in any other capacity, from prosecuting in any forum any Released Claim against any of the Released Parties; and

  (ix)  attach a proposed form of order, the proposed text of which Class Lead Counsel shall provide to Bank of America at least five business days prior to the submission

to the Court of the motion requesting entry of a Preliminary Approval Order.  Class Lead

Counsel will consider in good faith any suggestions from Bank of America regarding the

proposed form of order.  The form of order will include such provisions as are typical in

such orders, including: (1) setting a date for the Fairness Hearing; (2) a provision indicating

that, if final approval of the settlement is not obtained, the settlement is null and void, and

the Parties will revert to their positions *ex ante* (as of the Execution Date) without prejudice

to their rights, claims, or defenses; (3) stating the substantial litigation risks that the

Settlement Class faced in the Action; (4) stating the procedures, which shall be consistent

with paragraph 6(d), for Persons falling within the definition of the Settlement Class to

exclude themselves from the Settlement Class; (5) requiring that all members of the

Settlement Class be bound by all final determinations in the Action concerning the

settlement, whether favorable or unfavorable to the members of the Settlement Class; and

(6) stating that Bank of America has denied and continues to deny each and all of the claims

made by Class Plaintiffs in the Action and of liability against it arising out of any of the

conduct, statements, acts, or omissions alleged, or that could have been alleged, in the

Action.

(b)     Class Notice shall apprise each member of the Settlement Class of his, her, or its

right to exclude themselves from, or object to, the settlement.

(c)     Settling Defendants shall be responsible for providing all notices required by the

Settlement Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

(d)     Any Person falling within the definition of the Settlement Class may request to be

excluded from the Settlement Class ("Request for Exclusion") in accordance with procedures

approved by the Court (which, at a minimum, will require a signed writing or substantially similar submission from each individual or entity requesting exclusion that clearly states (i) the individual's or entity's identity with particularity and (ii) his/her/its decision to request exclusion from the Settlement Class in this Action). Within five (5) business days after the end of the period to request exclusion from the Settlement Class, Class Lead Counsel will cause copies of all Requests for Exclusion from the Settlement Class to be provided to counsel for Settling Defendants.  With respect to any potential Settlement Class Member who requests exclusion from the Settlement Class, Settling Defendants reserve all of their legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Settlement Class Member is a member of the Settlement Class and/or has standing to bring any claim.

(e)     The Parties to this Settlement Agreement contemplate and agree that, prior to final approval of the settlement, Class Plaintiffs will request a Court hearing at which the Court will consider the final approval of this Settlement Agreement ("Fairness Hearing").

## 7.     EFFECTIVE DATE OF SETTLEMENT

(a)     The "Effective Date of Settlement" shall be the date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events:

(i)     the Settlement Amount has been contributed to the Settlement Fund pursuant to this Settlement Agreement;

(ii)     entry of the Preliminary Approval Order;

(iii)    final approval by the Court of the settlement set forth in this Settlement Agreement, following Class Notice and the Fairness Hearing;

(iv)    no Party has exercised his, her, or its rights to terminate this Settlement Agreement pursuant to paragraph 15, and all periods for any Party to exercise such rights have expired; and

(v)    entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becomes final pursuant to paragraph 5(b).

(b)    Notwithstanding any other provision herein, any proceeding or order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to the Plan of Distribution and/or Fee and Expense Application, shall not in any way delay or preclude the Effective Date of Settlement.

## 8.    CLAIMS ADMINISTRATOR

(a)    Pursuant to the Preliminary Approval Order, and subject to Court approval, Class Lead Counsel shall engage a qualified Claims Administrator.  The Claims Administrator will assist with the settlement claims process as set forth herein.

(b)    The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the Plan of Distribution.

(c)    The Claims Administrator also shall assist in the development of the Plan of Distribution and the resolution of any disputes that may be raised by Settlement Class Members regarding the amount which they are owed under the Plan of Distribution.

9.    **SCOPE AND EFFECT OF SETTLEMENT**

(a)    The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition of: (i) the Action against Bank of America; and (ii) any and all Released Claims as against all Released Parties.

(b)    Upon the Effective Date of Settlement, each of the Releasing Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have fully, finally, and forever waived, released, relinquished, and discharged (1) all Released Claims against the Released Parties, and (2) any rights to the protections afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws; (ii) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (iii) agrees and covenants not to sue, either directly, representatively, or in any other capacity, any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit against any of the Released Parties related in any way to any Released Claims.

(c)    The releases provided in this Settlement Agreement shall become effective immediately upon occurrence of the Effective Date of Settlement without the need for any further action, notice, condition, or event.

(d)    The Parties shall seek entry by the Court of an order, in the Final Judgment and Order of Dismissal or otherwise, to the extent not prohibited by law, barring claims by any Person against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise.

(e)     In the event that this Settlement Agreement is terminated pursuant to paragraph 15, or any condition for the final approval of this Settlement Agreement is not satisfied, the release and covenant not to sue provisions of this paragraph shall be null and void and unenforceable.

## 10.     COOPERATION

(a)     Bank of America and Bank of America's Counsel agree to use reasonable efforts, in response to a reasonable number of requests for the same, to provide written declarations (or other forms of authentication that Bank of America may agree to in good faith, including testimony at deposition or trial, if necessary for the prosecution of the Action) for the purposes of authenticating, or admitting into evidence the content of, documents or information produced in the Action by Bank of America.

(b)     Bank of America will, to the extent permitted by law and the terms of applicable agreements between potential Settlement Class Members and Bank of America, furnish certain information reasonably available to it to assist in the identification of potential Settlement Class Members, including contact information for those individuals. Bank of America further agrees to employ reasonable and good faith efforts to cooperate with Class Plaintiffs to ensure the timely production of this information, as well as to determine the specific information to be provided and the format of that information. Any confidentiality or security concerns Bank of America may have in connection with providing such information will be addressed by Class Plaintiffs in good faith, including by allowing Bank of America to condition its provision of the information upon its approval of the data security and privacy practices of the Claims Administrator handling its information. In turn, Bank of America will respond in good faith to reasonable inquiries or requests from the Claims Administrator or Class Plaintiffs that may arise in connection with the notice, claims, or distribution process. Bank of America agrees to employ reasonable and good faith

20

efforts to cooperate with the Claims Administrator and other third party service providers with respect to notice, claims processing, and claims distribution by providing information concerning its capacity to (i) facilitate those third party service providers' efforts to provide notice and (ii) distribute payments directly to identified Settlement Class Members who hold depository accounts at Bank of America. To the extent any disagreements arise as to the information Bank of America agrees to provide under this paragraph, the Parties will first attempt to meet and confer in good faith to reach a resolution. If, following a good faith meet and confer process, the Parties cannot reach a resolution, the Parties agree they will submit the dispute to the Court for resolution in accordance with applicable law. Nothing in this paragraph, identifying cooperation that Bank of America shall provide to the third party administrator, is intended to cause Bank of America to assume the role or responsibilities of the Claims Administrator. Similarly, nothing in this paragraph is intended to waive any party's rights to seek to impose or oppose any additional obligations with respect to notice, claims, or distribution of the Settlement Amount.

(c)     Except as expressly provided herein, no further discovery shall be allowed to be directed by Class Lead Counsel, Class Plaintiffs, or Settlement Class Members to Bank of America, including any discovery regarding the merits of the Action or in connection with processing claims.

## 11.     FEE AND EXPENSE APPLICATION

(a)     Class Lead Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them from the Settlement Fund of (1) an award of attorneys' fees; plus (2) reimbursement of expenses paid by Class Lead Counsel in connection with prosecuting the Action; plus (3) any interest earned in the escrow account on such attorneys'

fees and expenses (until paid) at the same rate and for the same periods as earned by the Settlement Fund, as appropriate, and as may be awarded by the Court (the "Fee and Expense Award").

(b)      The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund to an account designated by Class Lead Counsel within thirty (30) days after the granting of the Fee and Expense Award. It may be disbursed during the pendency of any appeals which may be taken from the judgment to be entered by the Court finally approving this Settlement Agreement and/or approving the Fee and Expense Award.

(c)      Class Lead Counsel shall allocate the attorneys' fees among themselves in a manner that they believe in good faith reflects the respective contributions of such counsel to the prosecution and settlement of this Action.

(d)      In the event that the order making the Fee and Expense Award is reversed or modified, then Class Lead Counsel shall, within ten (10) business days from receiving notice from Bank of America's Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund the Fee and Expense Award or any portion thereof previously paid to them plus interest thereon at the same rate as earned by the account into which the balance of the Settlement Fund is deposited.

(e)      The procedure for, and the allowance or disallowance by the Court of, the application by Class Lead Counsel for attorneys' fees, costs, and expenses to be paid out of the Settlement Fund are not part of this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, the pendency

of any such application, or any appeal from any such order shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving the settlement.

(f)     Bank of America agrees not to oppose a request for a service award to each of the two Class Plaintiffs, up to a maximum of US $10,000 per award or such lesser amount as may be proposed by the Class Plaintiffs to the Court, to be drawn exclusively from the Settlement Fund.

## 12.     THE SETTLEMENT FUND

(a)     The Settlement Fund shall be established as an escrow account at Huntington National Bank and administered by the Escrow Agent, subject to the continuing jurisdiction of the Court.  The Settlement Fund shall be administered pursuant to this Settlement Agreement and subject to the Court's continuing supervision and control.  No monies shall be paid from the Settlement Fund without the specific authorization of Class Lead Counsel, based on prior approval by the Court. Class Lead Counsel will form an appropriate escrow agreement in conformance with this Settlement Agreement.

(b)     Bank of America shall cause the payment of $26,420,000 to be transferred to the Escrow Agent within twelve (12) business days following entry of the Preliminary Approval Order, provided that within two (2) days following entry of the Preliminary Approval Order, Class Lead Counsel shall provide Bank of America with such information as Bank of America may require to complete the wire transfer.  These funds, together with any interest earned thereon, shall constitute the Settlement Fund.

(c)     In all events, the Released Parties shall have no liability, obligation, or responsibility for the costs of or provision of notice, including the identification of potential members of the Settlement Class, beyond those set forth in in paragraphs 10(b) and 12(b) above,

23

and paragraph 12(e)(ii) below; for the solicitation, review, or evaluation of proofs of claim; for the administration of the settlement or disbursement of the Settlement Fund; or for any other costs, including any attorneys' fees and expenses or any taxes or tax-related costs relating to the Action, any Released Claim, or the Settlement Fund. The Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a United States Treasury Fund or a bank account that is either: (i) fully insured by the Federal Deposit Insurance Corporation; or (ii) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.

(d)    All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and the Plan of Distribution approved by the Court.

(e)    The Settlement Fund shall be applied as follows:

(i)    to pay the Fee and Expense Award, if and to the extent allowed by the Court;

(ii)    to use, if approved by the Court, up to $750,000 of the Settlement Amount for payment of any Court-approved costs and expenses in connection with providing Class Notice and the administration of the settlement, including, without limitation, locating members of the Settlement Class, soliciting Settlement Class Members' claims, assisting

24

with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, and processing any claim and/or release forms.  If necessary, additional amounts can be used for notice and administration expenses upon the further written agreement of the Parties and approval by the Court, and Bank of America agrees to exercise good faith regarding any additional amounts and not to object to reasonable requests to the Court for such additional amounts; in the event Bank of America declines to agree to a request for additional amounts, Class Plaintiffs shall be permitted to apply directly to the Court for approval without Bank of America's written agreement to the amounts requested (and Bank of America reserves its right to oppose such an application);

  (iii) to pay the Taxes and tax expenses described in paragraph 14 herein;

  (iv) to pay any other Court-approved fees and expenses; and

  (v) to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Settlement Class Members as allowed by the Court.

 (f) With the object of reducing the costs of Class Notice, Class Lead Counsel shall use their reasonable best efforts to coordinate the provision of Class Notice pertaining to this Settlement Agreement with the provision of notice for any other settlements that may be reached in this Action.

## 13. ADMINISTRATION OF THE SETTLEMENT

 (a) The Claims Administrator shall process this settlement based upon the orders of the Court and this Settlement Agreement, and, after entry of relevant order(s) of the Court, distribute the Net Settlement Fund in accordance with such orders and this Settlement Agreement.

(b)     Except for their obligation to fund the settlement or cause it to be funded as detailed in this Settlement Agreement, Bank of America shall have no liability, obligation, or responsibility for the administration of the settlement or disbursement of the Net Settlement Fund.

(c)     The Net Settlement Fund shall be distributed by the Claims Administrator to, or for the account of, Settlement Class Member claimants, as the case may be, only after the Effective Date of Settlement.

(d)     Class Plaintiffs and Settlement Class Members shall look solely to the Settlement Fund as full, final and complete satisfaction of all Released Claims.  Except as set forth in paragraph 12(b), Bank of America shall have no obligation under this Settlement Agreement or the settlement to pay or cause to be paid any amount of money, and Bank of America shall have no obligation to pay or reimburse any fees, expenses, costs, liability, losses, Taxes, or damages whatsoever alleged or incurred by Class Plaintiffs, by any Settlement Class Member, or by any Releasing Parties, including, but not limited to, by their attorneys, experts, advisors, agents, or representatives, with respect to the Action and Released Claims.  Class Plaintiffs and Settlement Class Members acknowledge that as of the Effective Date of Settlement, the releases given herein shall become effective immediately by operation of the Final Judgment and Order of Dismissal and shall be permanent, absolute, and unconditional.

(e)     Any funds that remain in the Net Settlement Fund after distribution of the Net Settlement Fund in accordance with the Plan of Distribution shall not revert to Bank of America.

14.     **TAXES**

(a)     The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulations § 1.468B-l, and agree not to take any position

26

for tax purposes inconsistent therewith.  In addition, Class Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. The Settlement Fund, less any amounts incurred for notice, administration, and/or Taxes (as defined below), plus any accrued interest thereon, shall be returned to Bank of America, as provided in paragraph 15, if the settlement does not become effective for any reason, including by reason of a termination of this Settlement Agreement pursuant to paragraph 15.

(b)    For the purpose of 26 U.S.C. § 468B and the Treasury regulations thereunder, Class Lead Counsel shall be designated as the "administrator" of the Settlement Fund.  Class Lead Counsel shall timely and properly file, or cause to be filed, all income, informational, and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulations § l.468B-2(k)).  Such returns shall be consistent with this paragraph 14 and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

(c)    All: (i) taxes or other similar imposts or charges (including any estimated taxes, interest, penalties, or additions to tax) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" within the meaning of Treasury Regulations § 1.468B-1 (or any relevant equivalent for state tax purposes); and (ii) other taxes or tax expenses imposed on or in connection with the Settlement Fund (collectively, "Taxes"), shall

promptly be paid out of the Settlement Fund by the Escrow Agent without prior order from the Court. The Escrow Agent shall also be obligated to, and shall be responsible for, withholding from distribution to Settlement Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes. The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph 14.

(d)     Neither the Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of the Escrow Agent, Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement Fund or otherwise; (ii) the Plan of Distribution; (iii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (iv) any losses suffered by, or fluctuations in the value of, the Settlement Fund; or (v) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns. The Escrow Agent shall indemnify and hold harmless the Parties out of the Settlement Fund from and against any claims, liabilities, or losses relating to the matters addressed in the preceding sentence.

**15.     TERMINATION OF SETTLEMENT**

(a)     Class Plaintiffs, through Class Lead Counsel, and Bank of America, through Bank of America's Counsel, shall, in each of their separate discretions, have the right to terminate the settlement set forth in this Settlement Agreement by providing written notice of their election to do so to all other Parties hereto within thirty (30) days of the date on which the following occurs: (1) If the Court, in a final order, declines to enter the Preliminary Approval Order, the Final Approval Order, or the Final Judgment and Order of Dismissal (denying it in its entirety or in any

28

material respect), or (2) if the Court enters the Final Approval Order and the Final Judgment and Order of Dismissal and appellate review is sought and, on such review, the Final Approval Order or the Final Judgment and Order of Dismissal is finally vacated, modified, or reversed; provided, however, that the Parties agree to act in good faith to secure final approval of this settlement, and to attempt to address in good faith concerns regarding the settlement identified by the Court and/or any court of appeal.  Notwithstanding this paragraph, the Court's determination as to the Fee and Expense Application and/or any plan of distribution, or any determination on appeal from any such orders, shall not provide grounds for termination of this Settlement Agreement or settlement.

(b)     Bank of America may also terminate this Settlement Agreement if a minimum threshold number of potential members of the Settlement Class, who but for their exclusion would likely have been eligible to receive a distribution from the Settlement Fund, timely and validly exclude themselves from the Settlement Class pursuant to the procedures approved by the Court. The minimum threshold number will be identified in a confidential supplement between the Parties ("Confidential Supplement"), which shall be submitted to the Court via a sealed writing.  Any application to terminate under this paragraph must be made in writing within thirty (30) days following the deadline for Persons to exclude themselves from the Settlement Class.

(c)     Except as otherwise provided herein, in the event the Settlement Agreement is terminated in accordance herewith, is vacated, or is not approved, or in the event the Effective Date of Settlement fails to occur for any reason, then the Parties to this Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement and any related orders had not been entered (subject to seeking whatever revisions to the pretrial schedule as may be necessary to protect the rights of the Parties), and any

portion of the Settlement Fund previously paid by or on behalf of Bank of America, together with any interest earned thereon (and, if applicable, re-payment of any Fee and Expense Award referred to in paragraph 11 above), less Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable, shall be returned to Bank of America within ten (10) business days from the date of the event causing such termination.  At the request of Bank of America's Counsel, the Escrow Agent shall apply for any tax refund owed on the Settlement Fund and pay the proceeds to Bank of America.

(d)     Bank of America and Bank of America's Counsel represent that they will not direct Bank of America employees or agents, or any other persons, to encourage the submission of requests for exclusion from the Settlement Class.

## 16.   MISCELLANEOUS

(a)     The Parties to this Settlement Agreement intend the settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Class Plaintiffs and/or any Settlement Class Member against the Released Parties with respect to the Action and the Released Claims.  Accordingly, Class Plaintiffs and Bank of America agree not to assert in any judicial proceeding that the Action was brought by Class Plaintiffs or defended by Bank of America in bad faith or without a reasonable basis.  The Parties further agree not to assert in any judicial proceeding that any Party violated Fed. R. Civ. P. 11.  The Parties agree that the amount paid and the other terms of the settlement were negotiated at arm's-length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel and the Mediator.

(b)       This Settlement Agreement does not settle or compromise any claim by Class Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent Complaint, against any Defendant or alleged co-conspirator other than the Released Parties. All rights against such other Defendants or alleged co-conspirators are specifically reserved by Class Plaintiffs and the Settlement Class, including, but not limited to, the damages related to ATM Transactions at Bank of America's ATMs or completed by Bank of America's cardholders, which shall not be removed from the Action.  For the avoidance of doubt, entering this Settlement Agreement is not intended to release any other Defendants or alleged co-conspirators from liability (including joint and several liability to the full extent of the law) for any damages.

(c)       The Settlement Amount to be paid by Bank of America pursuant to this Settlement Agreement shall be treated as strictly confidential, unless Bank of America has an independent obligation to disclose the Settlement Amount or disclosure is jointly agreed to by Bank of America and Class Plaintiffs, until such time as a motion requesting entry of the Preliminary Approval Order has been filed with the Court. The sole exception to the confidentiality required by this paragraph is that the Parties have agreed that Bank of America may report the Settlement Amount to the other Bank Defendants.

(d)       The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

(e)       The administration and consummation of the settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain

jurisdiction for the purpose of entering orders relating to the Fee and Expense Application and the Plan of Distribution, and enforcing the terms of this Settlement Agreement.

(f)   For the purpose of construing or interpreting this Settlement Agreement, Class Plaintiffs and Bank of America agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

(g)   This Settlement Agreement and the Confidential Supplement shall constitute the entire agreement between Class Plaintiffs and Bank of America pertaining to the settlement of the Action against Bank of America and supersedes any and all prior and contemporaneous undertakings of Class Plaintiffs and Bank of America in connection therewith.  All terms of this Settlement Agreement are contractual and not mere recitals.  The terms of this Settlement Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Settlement Class Members.

(h)   This Settlement Agreement may be modified or amended only by a writing executed by Class Plaintiffs, through Class Lead Counsel, and Bank of America, through Bank of America's Counsel, subject (if after preliminary or final approval by the Court) to approval by the Court.  Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court.

(i)   Nothing in this Settlement Agreement constitutes an admission by any Released Party as to the veracity of or merits of any allegations or claims made in the Action, the validity of any defenses that could be asserted by Bank of America, or the appropriateness of certification

32

of any class other than the Settlement Class under Fed. R. Civ. P. 23 solely for settlement purposes. This Settlement Agreement is without prejudice to the rights of Bank of America to: (i) challenge the Court's certification of any class, including the Settlement Class, in the Action should the Settlement Agreement not be approved or implemented for any reason; and/or (ii) oppose any certification or request for certification in any other proposed or certified class action.

(j)     All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice-of-law principles.

(k)     Bank of America, Class Plaintiffs, their respective counsel, and the Settlement Class Members hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Columbia, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.

(l)     The Parties acknowledge that the Settlement Class includes both customers and non-customers of Bank of America, and that this Settlement Agreement makes no determination as to which Settlement Class Members are entitled to distribution from the Settlement Fund, or as to the formula for determining the amounts to be distributed.

(m)     Any proposed plan of distribution is not a necessary term of this Settlement Agreement and it is not a condition of this Settlement Agreement that any particular plan of distribution be approved.  The Plan of Distribution is a matter separate and apart from the settlement between the Parties and any decision by the Court concerning a particular plan of distribution shall not affect the validity or finality of the proposed settlement, including the scope of the release.

33

(n)     This Settlement Agreement may be executed in counterparts by Class Plaintiffs and Bank of America, and a facsimile or PDF signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

(o)     Class Plaintiffs and Bank of America acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so.  Therefore, Class Plaintiffs, Bank of America, and their respective counsel agree that they will not seek to set aside any part of this Settlement Agreement on the grounds of mistake.  Moreover, Class Plaintiffs and Bank of America and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

(p)     Each of the undersigned attorneys represents that he/she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval; and the undersigned Class Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Class Plaintiffs.  Each of the undersigned attorneys shall use his/her best efforts to effectuate this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the date first herein written above.

*On behalf of Class Plaintiffs and the*
*Settlement Class:*

_____

STEVE W. BERMAN
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue
Suite 2000
Seattle, WA 98101
Telephone: 206-623-7292
Facsimile: 206-623-0594
steve@hbsslaw.com


_____

STEPHEN NEUWIRTH
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
Telephone: 212-849-7165
Facsimile: 212-849-7100
stephenneuwirth@quinnemanul.com


_____

STEVEN A. SKALET
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
sskalet@findjustice.com

*On behalf of Bank of America:*

_____

MICHAEL B. MILLER
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: 212-468-8000
Facsimile: 212-468-7900
mbmiller@mofo.com

# Exhibit B

# FILED UNDER SEAL

# Exhibit C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW MACKMIN, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:11-cv-01831 (RJL) |
| VISA INC., et al., | |
| Defendants. | |

**STIPULATION AND AGREEMENT OF SETTLEMENT WITH JPMORGAN CHASE & CO.; CHASE BANK USA, N.A.; AND JPMORGAN CHASE BANK, N.A.**

## TABLE OF CONTENTS

1.    RECITALS ...................................................................................................................1

2.    DEFINITIONS .............................................................................................................3

3.    SETTLEMENT CLASS CERTIFICATION ..................................................................10

4.    GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT
      AGREEMENT ...........................................................................................................11

5.    FINAL JUDGMENT AND ORDER OF DISMISSAL AGAINST THE
      SETTLING DEFENDANTS .......................................................................................11

6.    PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING .........14

7.    EFFECTIVE DATE OF SETTLEMENT ......................................................................17

8.    CLAIMS ADMINISTRATOR ....................................................................................18

9.    SCOPE AND EFFECT OF SETTLEMENT ..................................................................19

10.   COOPERATION ........................................................................................................20

11.   FEE AND EXPENSE APPLICATION ........................................................................21

12.   THE SETTLEMENT FUND .......................................................................................23

13.   ADMINISTRATION OF THE SETTLEMENT .............................................................25

14.   TAXES ......................................................................................................................26

15.   TERMINATION OF SETTLEMENT ...........................................................................28

16.   MISCELLANEOUS ...................................................................................................30

## 1.    RECITALS

This Stipulation and Agreement of Settlement ("Settlement Agreement") is made and entered into on August 12, 2020 ("Execution Date"), between Class Plaintiffs (as defined herein), for themselves individually and on behalf of each Settlement Class Member in the Action (each, as defined herein), and defendants JPMorgan Chase & Co.; Chase Bank USA, N.A.; and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan"), by and through Class Lead Counsel and JPMorgan's Counsel (each, as defined herein). This Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), with respect to JPMorgan, upon and subject to the terms and conditions herein.

WHEREAS, on November 23, 2015, Class Plaintiffs filed a Second Amended Class Action Complaint ("SAC" or "Complaint");

WHEREAS, Class Plaintiffs are prosecuting the Action on their own behalf and on behalf of a putative class against Defendants, including JPMorgan;

WHEREAS, Class Plaintiffs have alleged, among other things, that JPMorgan participated in an unlawful conspiracy to restrain trade, pursuant to which JPMorgan and its alleged co-conspirators, including the other Defendants, as well as unnamed co-conspirators, agreed, among other things, to so-called Non-Discrimination Rules that allegedly had the effect of increasing the amount of ATM Access Fees (as defined herein) paid by the Settlement Class (as defined herein), in violation of the Sherman Act, 15 U.S.C. § l, *et seq.*;

WHEREAS, Class Plaintiffs have contended that they are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the SAC, arising from JPMorgan's (and the other Defendants') alleged conduct;

WHEREAS, JPMorgan has denied and continues to deny each and all of the claims made by Class Plaintiffs in the Action and of liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action;

WHEREAS, Class Plaintiffs, for themselves individually and on behalf of each Settlement Class Member, and JPMorgan agree that neither this Settlement Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by JPMorgan or of the truth of any of the claims or allegations alleged in the Action;

WHEREAS, Class Plaintiffs and Settling Defendants have engaged in extensive discovery regarding the facts pertaining to Class Plaintiffs' claims and Settling Defendants' defenses;

WHEREAS, Class Lead Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that: (1) it is in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein, including the value of the Settlement Amount (as defined herein) to be paid by JPMorgan under this Settlement Agreement and the cooperation to be provided to Class Plaintiffs by JPMorgan under this Settlement Agreement, are obtained for the Settlement Class; and (2) the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Settlement Class;

WHEREAS, JPMorgan, while continuing to deny that it is liable for any of the claims asserted against it in the Action, has nevertheless agreed to enter into this Settlement Agreement to avoid the further risk, expense, inconvenience, and distraction of burdensome and protracted litigation, and thereby to put fully to rest this controversy, to avoid the risks inherent in complex

2

litigation, and to obtain complete dismissal of the SAC as to JPMorgan and a release of claims as set forth herein; and

WHEREAS, this Settlement Agreement is the product of arm's-length negotiations between Class Lead Counsel and JPMorgan's Counsel under the guidance and oversight of former U.S. District Judge Layn R. Phillips as Mediator, and this Settlement Agreement embodies all of the terms and conditions of the settlement agreed upon between JPMorgan and Class Plaintiffs, both for themselves individually and on behalf of the Settlement Class;

NOW, THEREFORE, in consideration of the covenants, terms, and releases in this Settlement Agreement, it is agreed, by and among Class Plaintiffs (for themselves individually and on behalf of the Settlement Class and each member thereof) and JPMorgan, by and through Class Lead Counsel and JPMorgan's Counsel, that, subject to the approval of the Court (as defined herein), the Action be settled, compromised, and dismissed with prejudice as to JPMorgan and the other Released Parties (as defined herein) only, without costs, except as stated herein, and releases be extended, as set forth in this Settlement Agreement.

## 2.    DEFINITIONS

As used in this Settlement Agreement, the following capitalized terms have the meanings specified below:

(a)    "Action" means *Mackmin et al. v. Visa Inc. et al.*, Case No. 1:11-cv-01831 (RJL), which is currently pending in the United States District Court for the District of Columbia.

(b)    "Alleged Bank Co-Conspirator" has the same definition as in the SAC.

(c)    "ATM" means an automated teller machine, which allows Cardholders to complete an ATM Transaction.

3

(d)　　"ATM Access Fee" means the fee assessed by an ATM operator to a Cardholder for completing a Foreign ATM Transaction.

(e)　　"ATM Card" means an access device, usually a card, enabling the holder, among other things, to conduct an ATM Transaction.

(f)　　"ATM Transaction" means any actual or attempted use of an ATM, including to withdraw cash, deposit funds, transfer funds, or check account balances.

(g)　　"Authorized Claimant" means any Settlement Class Member who will be entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Distribution approved by the Court.

(h)　　"Bank" means any bank, credit union, or other financial institution, including its affiliates, subsidiaries, agents, representatives, employees, officers, and directors.

(i)　　"Bank Defendant" means JPMorgan Chase & Co.; Chase Bank USA, N.A.; and JPMorgan Chase Bank, N.A.; Bank of America, N.A.; NB Holdings Corp.; Bank of America Corp.; Wells Fargo & Co.; and Wells Fargo Bank, N.A.

(j)　　"Cardholder" means any Person that owns, possesses, or controls an ATM Card.

(k)　　"Claims Administrator" means the third party to be retained by Class Lead Counsel and approved by the Court to manage and administer the process by which each member of the Settlement Class is notified of the Settlement Agreement and paid from the Net Settlement Fund.

(l)　　"Class Lead Counsel" means Hagens Berman Sobol Shapiro LLP, Quinn Emanuel Urquhart & Sullivan LLP, and Mehri & Skalet PLLC.

4

(m)     "Class Notice" means the proposed form of, method for, and the date of dissemination of notice of the Settlement Agreement to the Settlement Class.

(n)     "Class Plaintiffs" means Andrew Mackmin and Sam Osborn.

(o)      "Court" means the United States District Court for the District of Columbia.

(p)     "Defendants" means JPMorgan Chase & Co.; Chase Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Visa Inc.; Visa U.S.A. Inc.; Visa International Service Association; Plus System, Inc.; Mastercard Inc.; Mastercard International Inc. d/b/a Mastercard Worldwide; Bank of America, N.A.; NB Holdings Corp.; Bank of America Corp.; Wells Fargo & Co.; and Wells Fargo Bank, N.A.; and any other Person or Persons who are named as defendants in the Action at any time up to and including the date a Preliminary Approval Order is entered.

(q)      "Effective Date of Settlement" has the meaning given to it in paragraph 7.

(r)     "Escrow Agent" means Huntington National Bank.

(s)     "Execution Date" means the date of the execution of this Settlement Agreement by counsel for all Parties thereto.

(t)     "Fairness Hearing" means the hearing to be held by the Court to determine whether the settlement set forth in this Settlement Agreement shall receive final approval pursuant to Fed. R. Civ. P. 23.

(u)     "Fee and Expense Application" has the meaning given to it in paragraph 11.

(v)     "Fee and Expense Award" has the meaning given to it in paragraph 11.

(w)　　"Final Approval Order" has the meaning given to it in paragraph 5.

(x)　　"Final Judgment and Order of Dismissal" has the meaning given to it in paragraph 5.

(y)　　"Foreign ATM Transaction" means an ATM Transaction in which the Cardholder uses an ATM which is owned by an entity different from the entity that issued the ATM Card used for that ATM Transaction.

(z)　　"JPMorgan" means JPMorgan Chase & Co.; Chase Bank USA, N.A.; and JPMorgan Chase Bank, N.A.

(aa)　　"JPMorgan's Counsel" means Skadden, Arps, Slate, Meagher & Flom LLP.

(bb)　　"Mediator" means former U.S. District Judge Layn R. Phillips.

(cc)　　"Net Settlement Fund" has the meaning given to it in paragraph 12.

(dd)　　"Parties" means, collectively, Class Plaintiffs (on behalf of themselves and the Settlement Class) and the Settling Defendants.

(ee)　　"Person" means an individual or entity, and his, her, or its spouses, heirs, predecessors, successors, representatives, or assignees.

(ff)　　"Plan of Distribution" means a plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Settlement Class Members after payment of expenses of notice and administration of the settlement, Taxes and tax expenses, and such attorneys' fees, costs, service awards, interest, and other expenses as may be awarded by the Court.

(gg)    "Preliminary Approval Order" means an order of the Court that preliminarily approves the settlement set forth in this Settlement Agreement and that approves the form of Class Notice and preliminarily approves a proposed Plan of Distribution.

(hh)    "Released Claims" means, in consideration of payment of the Settlement Amount into the Settlement Fund as specified in paragraph 12 of this Settlement Agreement, and for other valuable consideration, any and all manner of claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several) by the Releasing Parties against the Released Parties to the fullest extent permitted by law, including all unasserted and "Unknown Claims," as defined below, both arising from transactions at ATMs owned or operated by financial institutions and the factual predicates of the Action, from the beginning of time and continuing into the future without end.

(ii)    "Released Party" or "Released Parties" means JPMorgan Chase & Co.; Chase Bank USA, N.A.; and JPMorgan Chase Bank, N.A. and each entity's past, present, and future, direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in Securities and Exchange Commission Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934, as amended), divisions, predecessors, successors, and each of their respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns.  Released Parties do not include any of the other Defendants.

7

(jj)    "Releasing Parties" means, individually and collectively, Class Plaintiffs and each Settlement Class Member, on behalf of themselves and any of their respective past, present or future officers, directors, stockholders, agents, employees, legal or other representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns, whether or not they object to the settlement set forth in this Settlement Agreement, and whether or not they make a claim for payment from the Net Settlement Fund.

(kk)    "Request for Exclusion" has the meaning given to it in paragraph 6.

(ll)    "SAC" or "Complaint" means the Second Amended Class Action Complaint filed with the Court in the Action on November 23, 2015.

(mm)   "Settlement Agreement" means this Stipulation and Agreement of Settlement.

(nn)    "Settlement Amount" means the sum of Nineteen Million Five Hundred Thousand Dollars ($19,500,000), payable in lawful money of the United States.

(oo)    "Settlement Class" has the meaning given to it in paragraph 3(a).

(pp)    "Settlement Class Member" means a Person who is a member of the Settlement Class and has not timely and validly excluded himself, herself, or itself in accordance with the procedures to be established by the Court.

(qq)    "Settlement Fund" means the escrow account established pursuant to paragraph 12 of this Settlement Agreement, including all monies held therein in accordance with the terms of this Settlement Agreement.

(rr)    "Settling Defendants" means J.P. Morgan Chase & Co.; Chase Bank USA, N.A.; and JPMorgan Chase Bank, N.A.

(ss)    "Taxes" has the meaning given to it in paragraph 14.

(tt)    "Unknown Claims" means any and all Released Claims against the Released Parties which any of the Releasing Parties does not know or suspect to exist in his, her, or its favor as of the Effective Date of Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that by operation of the Final Judgment and Order of Dismissal, upon the Effective Date of Settlement, Releasing Parties shall have expressly waived, and each Settlement Class Member shall be deemed to have waived, and by operation of the Final Judgment and Order of Dismissal shall have expressly waived, the provisions, rights and benefits of Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542.

Any of the Releasing Parties may hereafter discover facts other than or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims.  Nevertheless, Class Plaintiffs shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date of Settlement, shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully,

finally, and forever settled and released, any and all Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Class Plaintiffs acknowledge, and Settlement Class Members shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

## 3.    SETTLEMENT CLASS CERTIFICATION

(a)    The Parties hereby stipulate solely for settlement purposes that the requirements of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3) are satisfied and, subject to Court approval, the following Settlement Class shall be certified as to JPMorgan solely for settlement purposes: "All individuals and entities that paid an unreimbursed ATM Access Fee directly to any Bank Defendant or Alleged Bank Co-Conspirator for a Foreign ATM Transaction using an ATM card issued by a financial institution in the United States to withdraw cash at an ATM located in the United States at any time from October 1, 2007 to the date of the Preliminary Approval Order." Specifically excluded from the Settlement Class are Defendants; Released Parties; the officers, directors, or employees of any Defendant or Released Party; any entity in which any Defendant or Released Party has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or Released Party and any person acting on their behalf.  Also excluded from the Settlement Class are any federal, state, or local governmental entities, Class Lead Counsel, and any judicial officer presiding over the Action and the members of his/her immediate family and judicial staff.

(b)    The Parties' agreement as to certification of the Settlement Class is solely for purposes of effectuating a settlement and for no other purpose.  JPMorgan retains all of its objections, arguments, and defenses with respect to class certification, and reserves all rights to

contest class certification, if the settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to close.  The Parties acknowledge that there has been no stipulation to any class or certification of any class for any purpose other than effectuating the settlement, and that if the settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to close, this agreement as to certification of the Settlement Class becomes null and void *ab initio,* and this Settlement Agreement or any other settlement-related statement may not be cited regarding certification of the Settlement Class, or in support of an argument for certifying a class for any purpose related to this proceeding.

4. **GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT**

The Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms of this Settlement Agreement.  This includes JPMorgan serving notice on those entities required to receive notice pursuant to 28 U.S.C. § 1715.

5. **FINAL JUDGMENT AND ORDER OF DISMISSAL AGAINST THE SETTLING DEFENDANTS**

(a)     Class Plaintiffs shall seek a Final Approval Order and a Final Judgment and Order of Dismissal against the Settling Defendants, the proposed text of which Class Plaintiffs and

Settling Defendants shall agree upon.  The Final Approval Order and Final Judgment and Order of Dismissal submitted for Court approval will include, at a minimum, terms:

      (i)      certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) solely for the purpose of the settlement;

      (ii)      as to the Action, approving fully and finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

      (iii)      finding that the notice given to Settlement Class Members constitutes the best notice practicable under the circumstances and complies in all respects with the valid, due, and sufficient notice requirements of Federal Rule of Civil Procedure 23, and meets the requirements of due process;

      (iv)      as to Released Parties, directing that the Action be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs;

      (v)      discharging and releasing the Released Parties from the Released Claims, regardless of whether any such Releasing Party executes and delivers a proof of claim, and without respect to any rights afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws;

      (vi)      permanently barring and enjoining Class Plaintiffs or any Settlement Class Member from (A) instituting or prosecuting any other action against any of the Released Parties as to any of the Released Claims, or (B) assisting any third party in commencing or

maintaining any suit against any Released Party related in any way to any of the Released Claims;

(vii)    reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including all future proceedings concerning the administration, interpretation, consummation, and enforcement of this settlement, to the Court; and

(viii)    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Released Parties shall be final and entered forthwith.

(b)    The Final Judgment and Order of Dismissal shall become final when (i) the Court has entered a final order certifying the Settlement Class for settlement purposes and approving this Settlement Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to Released Parties against all Settlement Class Members and without costs other than those provided for in this Settlement Agreement, and (ii) the time for appeal from the Court's approval of this Settlement Agreement and entry of a final judgment as to Released Parties described in (i) hereof has expired or, if appealed, approval of this Settlement Agreement and the final judgment as to Released Parties have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

(c)      As of the Execution Date, Plaintiffs and Settling Defendants shall be bound by the Settlement Agreement's terms and this Settlement Agreement shall not be rescinded except in accordance with the terms of this Settlement Agreement.

## 6.      PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING

(a)      As soon as reasonably possible following the Execution Date, Class Lead Counsel shall submit to the Court, and JPMorgan shall support, a motion requesting entry of a Preliminary Approval Order.  That motion shall:

(i)      seek preliminary certification of the Settlement Class solely for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3);

(ii)      request preliminary approval of the settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23;

(iii)      seek the appointment of Class Plaintiffs as representatives of the Settlement Class, and Class Lead Counsel as interim counsel for the Settlement Class under Fed. R. Civ. P. 23(g);

(iv)      request authorization to disseminate notice of the settlement and final judgment contemplated by this Settlement Agreement to all potential Settlement Class Members. The motion shall include: (1) a proposed form of, method for, and date of dissemination of notice; and (2) a proposed Preliminary Approval Order. Notice of the settlement shall be as provided in the motion and as approved by the Court, with all expenses paid from the Settlement Fund, subject to the provisions of this Settlement Agreement. The motion shall recite and ask the Court to find that the method of the notice

of settlement to all Settlement Class Members who can be identified upon reasonable effort constitutes valid, due, and sufficient notice to the Settlement Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process. The Claims Administrator will also establish and maintain a dedicated settlement website, from which each Settlement Class Member can view and download relevant documents;

(v)     seek appointment of the Claims Administrator;

(vi)     seek appointment of Huntington National Bank as Escrow Agent;

(vii)     request that the Court, pending final determination of whether the Settlement Agreement should be approved, stay all proceedings in the Action against JPMorgan until the Court renders a final decision on approval of the settlement set forth in this Settlement Agreement;

(viii)     request that the Court, pending final determination of whether the Settlement Agreement should be approved, temporarily enjoin each Class Plaintiff and each Settlement Class Member, either directly, representatively, or in any other capacity, from prosecuting in any forum any Released Claim against any of the Released Parties; and

(ix)     attach a proposed form of order, the proposed text of which Class Lead Counsel shall provide to JPMorgan at least five business days prior to the submission to the Court of the motion requesting entry of a Preliminary Approval Order. Class Lead Counsel will consider in good faith any suggestions from JPMorgan regarding the proposed

form of order.  The form of order will include such provisions as are typical in such orders, including: (1) setting a date for the Fairness Hearing; (2) a provision indicating that, if final approval of the settlement is not obtained, the settlement is null and void, and the Parties will revert to their positions *ex ante* (as of the Execution Date) without prejudice to their rights, claims, or defenses; (3) stating the substantial litigation risks that the Settlement Class faced in the Action; (4) stating the procedures, which shall be consistent with paragraph 6(d), for Persons falling within the definition of the Settlement Class to exclude themselves from the Settlement Class; (5) requiring that all members of the Settlement Class be bound by all final determinations in the Action concerning the settlement, whether favorable or unfavorable to the members of the Settlement Class; and (6) stating that JPMorgan has denied and continues to deny each and all of the claims made by Class Plaintiffs in the Action and of liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action.

(b)     Class Notice shall apprise each member of the Settlement Class of his, her, or its right to exclude themselves from, or object to, the settlement.

(c)     Settling Defendants shall be responsible for providing all notices required by the Settlement Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

(d)     Any Person falling within the definition of the Settlement Class may request to be excluded from the Settlement Class ("Request for Exclusion") in accordance with procedures approved by the Court (which, at a minimum, will require a signed writing or substantially similar submission from each individual or entity requesting exclusion that clearly states (i) the individual's or entity's identity with particularity and (ii) his/her/its decision to request exclusion

from the Settlement Class in this Action). Within five (5) business days after the end of the period to request exclusion from the Settlement Class, Class Lead Counsel will cause copies of all Requests for Exclusion from the Settlement Class to be provided to counsel for Settling Defendants. With respect to any potential Settlement Class Member who requests exclusion from the Settlement Class, Settling Defendants reserve all of their legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Settlement Class Member is a member of the Settlement Class and/or has standing to bring any claim.

(e)     The Parties to this Settlement Agreement contemplate and agree that, prior to final approval of the settlement, Class Plaintiffs will request a Court hearing at which the Court will consider the final approval of this Settlement Agreement ("Fairness Hearing").

## 7.   EFFECTIVE DATE OF SETTLEMENT

(a)     The "Effective Date of Settlement" shall be the date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events:

(i)     the Settlement Amount has been contributed to the Settlement Fund pursuant to this Settlement Agreement;

(ii)     entry of the Preliminary Approval Order;

(iii)     final approval by the Court of the settlement set forth in this Settlement Agreement, following Class Notice and the Fairness Hearing;

(iv)     no Party has exercised his, her, or its rights to terminate this Settlement Agreement pursuant to paragraph 15, and all periods for any Party to exercise such rights have expired; and

(v)     entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becomes final pursuant to paragraph 5(b).

(b)     Notwithstanding any other provision herein, any proceeding or order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to the Plan of Distribution and/or Fee and Expense Application, shall not in any way delay or preclude the Effective Date of Settlement.

## 8.     CLAIMS ADMINISTRATOR

(a)     Pursuant to the Preliminary Approval Order, and subject to Court approval, Class Lead Counsel shall engage a qualified Claims Administrator.  The Claims Administrator will assist with the settlement claims process as set forth herein.

(b)     The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the Plan of Distribution.

(c)     The Claims Administrator also shall assist in the development of the Plan of Distribution and the resolution of any disputes that may be raised by Settlement Class Members regarding the amount which they are owed under the Plan of Distribution.

9.      **SCOPE AND EFFECT OF SETTLEMENT**

(a)      The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition of: (i) the Action against JPMorgan; and (ii) any and all Released Claims as against all Released Parties.

(b)      Upon the Effective Date of Settlement, each of the Releasing Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have fully, finally, and forever waived, released, relinquished, and discharged (1) all Released Claims against the Released Parties, and (2) any rights to the protections afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws; (ii) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (iii) agrees and covenants not to sue, either directly, representatively, or in any other capacity, any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit against any of the Released Parties related in any way to any Released Claims.

(c)      The releases provided in this Settlement Agreement shall become effective immediately upon occurrence of the Effective Date of Settlement without the need for any further action, notice, condition, or event.

(d)      The Parties shall seek entry by the Court of an order, in the Final Judgment and Order of Dismissal or otherwise, to the extent not prohibited by law, barring claims by any Person against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise.

(e)     In the event that this Settlement Agreement is terminated pursuant to paragraph 15, or any condition for the final approval of this Settlement Agreement is not satisfied, the release and covenant not to sue provisions of this paragraph shall be null and void and unenforceable.

## 10.   COOPERATION

(a)     JPMorgan and JPMorgan's Counsel agree to use reasonable efforts, in response to a reasonable number of requests for the same, to provide written declarations (or other forms of authentication that JPMorgan may agree to in good faith, including testimony at deposition or trial, if necessary for the prosecution of the Action) for the purposes of authenticating, or admitting into evidence the content of, documents or information produced in the Action by JPMorgan.

(b)     JPMorgan will, to the extent permitted by law and the terms of applicable agreements between potential Settlement Class Members and JPMorgan, furnish certain information reasonably available to it to assist in the identification of potential Settlement Class Members, including contact information for those individuals. JPMorgan further agrees to employ reasonable and good faith efforts to cooperate with Class Plaintiffs to ensure the timely production of this information, as well as to determine the specific information to be provided and the format of that information. Any confidentiality or security concerns JPMorgan may have in connection with providing such information will be addressed by Class Plaintiffs in good faith, including by allowing JPMorgan to condition its provision of the information upon its approval of the data security and privacy practices of the Claims Administrator handling its information. In turn, JPMorgan will respond in good faith to reasonable inquiries or requests from the Claims Administrator or Class Plaintiffs that may arise in connection with the notice, claims, or distribution process. JPMorgan agrees to employ reasonable and good faith efforts to cooperate with the Claims Administrator and other third party service providers with respect to notice, claims

processing, and claims distribution by providing information concerning its capacity to (i) facilitate those third party service providers' efforts to provide notice and (ii) distribute payments directly to identified Settlement Class Members who hold depository accounts at JPMorgan. To the extent any disagreements arise as to the information JPMorgan agrees to provide under this paragraph, the Parties will first attempt to meet and confer in good faith to reach a resolution. If, following a good faith meet and confer process, the Parties cannot reach a resolution, the Parties agree they will submit the dispute to the Court for resolution in accordance with applicable law. Nothing in this paragraph, identifying cooperation that JPMorgan shall provide to the third party administrator, is intended to cause JPMorgan to assume the role or responsibilities of the Claims Administrator. Similarly, nothing in this paragraph is intended to waive any party's rights to seek to impose or oppose any additional obligations with respect to notice, claims, or distribution of the Settlement Amount.

(c)     Except as expressly provided herein, no further discovery shall be allowed to be directed by Class Lead Counsel, Class Plaintiffs, or Settlement Class Members to JPMorgan, including any discovery regarding the merits of the Action or in connection with processing claims.

## 11.     FEE AND EXPENSE APPLICATION

(a)     Class Lead Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them from the Settlement Fund of (1) an award of attorneys' fees; plus (2) reimbursement of expenses paid by Class Lead Counsel in connection with prosecuting the Action; plus (3) any interest earned in the escrow account on such attorneys' fees and expenses (until paid) at the same rate and for the same periods as earned by the Settlement Fund, as appropriate, and as may be awarded by the Court (the "Fee and Expense Award").

(b)      The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund to an account designated by Class Lead Counsel within thirty (30) days after the granting of the Fee and Expense Award. It may be disbursed during the pendency of any appeals which may be taken from the judgment to be entered by the Court finally approving this Settlement Agreement and/or approving the Fee and Expense Award.

(c)      Class Lead Counsel shall allocate the attorneys' fees among themselves in a manner that they believe in good faith reflects the respective contributions of such counsel to the prosecution and settlement of this Action.

(d)      In the event that the order making the Fee and Expense Award is reversed or modified, then Class Lead Counsel shall, within ten (10) business days from receiving notice from JPMorgan's Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund the Fee and Expense Award or any portion thereof previously paid to them plus interest thereon at the same rate as earned by the account into which the balance of the Settlement Fund is deposited.

(e)      The procedure for, and the allowance or disallowance by the Court of, the application by Class Lead Counsel for attorneys' fees, costs, and expenses to be paid out of the Settlement Fund are not part of this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, the pendency of any such application, or any appeal from any such order shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving the settlement.

(f)     JPMorgan agrees not to oppose a request for a service award to each of the two Class Plaintiffs, up to a maximum of US $10,000 per award or such lesser amount as may be proposed by the Class Plaintiffs to the Court, to be drawn exclusively from the Settlement Fund.

## 12.    THE SETTLEMENT FUND

(a)     The Settlement Fund shall be established as an escrow account at Huntington National Bank and administered by the Escrow Agent, subject to the continuing jurisdiction of the Court.  The Settlement Fund shall be administered pursuant to this Settlement Agreement and subject to the Court's continuing supervision and control.  No monies shall be paid from the Settlement Fund without the specific authorization of Class Lead Counsel, based on prior approval by the Court. Class Lead Counsel will form an appropriate escrow agreement in conformance with this Settlement Agreement.

(b)     JPMorgan shall cause the payment of $19,500,000 to be transferred to the Escrow Agent within twelve (12) business days following entry of the Preliminary Approval Order, provided that within two (2) days following entry of the Preliminary Approval Order, Class Lead Counsel shall provide JPMorgan with such information as JPMorgan may require to complete the wire transfer.   These funds, together with any interest earned thereon, shall constitute the Settlement Fund.

(c)     In all events, the Released Parties shall have no liability, obligation, or responsibility for the costs of or provision of notice, including the identification of potential members of the Settlement Class, beyond those set forth in in paragraphs 10(b) and 12(b) above, and paragraph 12(e)(ii) below; for the solicitation, review, or evaluation of proofs of claim; for the administration of the settlement or disbursement of the Settlement Fund; or for any other costs,

including any attorneys' fees and expenses or any taxes or tax-related costs relating to the Action, any Released Claim, or the Settlement Fund. The Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a United States Treasury Fund or a bank account that is either: (i) fully insured by the Federal Deposit Insurance Corporation; or (ii) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature.  All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.

(d)     All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and the Plan of Distribution approved by the Court.

(e)     The Settlement Fund shall be applied as follows:

(i)     to pay the Fee and Expense Award, if and to the extent allowed by the Court;

(ii)     to use, if approved by the Court, up to $750,000 of the Settlement Amount for payment of any Court-approved costs and expenses in connection with providing Class Notice and the administration of the settlement, including, without limitation, locating members of the Settlement Class, soliciting Settlement Class Members' claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, and processing any claim and/or release forms.  If necessary,

24

additional amounts can be used for notice and administration expenses upon the further written agreement of the Parties and approval by the Court, and JPMorgan agrees to exercise good faith regarding any additional amounts and not to object to reasonable requests to the Court for such additional amounts; in the event JPMorgan declines to agree to a request for additional amounts, Class Plaintiffs shall be permitted to apply directly to the Court for approval without JPMorgan's written agreement to the amounts requested (and JPMorgan reserves its right to oppose such an application);

(iii)    to pay the Taxes and tax expenses described in paragraph 14 herein;

(iv)    to pay any other Court-approved fees and expenses; and

(v)    to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Settlement Class Members as allowed by the Court.

(f)    With the object of reducing the costs of Class Notice, Class Lead Counsel shall use their reasonable best efforts to coordinate the provision of Class Notice pertaining to this Settlement Agreement with the provision of notice for any other settlements that may be reached in this Action.

## 13.    ADMINISTRATION OF THE SETTLEMENT

(a)    The Claims Administrator shall process this settlement based upon the orders of the Court and this Settlement Agreement, and, after entry of relevant order(s) of the Court, distribute the Net Settlement Fund in accordance with such orders and this Settlement Agreement.

(b)     Except for their obligation to fund the settlement or cause it to be funded as detailed in this Settlement Agreement, JPMorgan shall have no liability, obligation, or responsibility for the administration of the settlement or disbursement of the Net Settlement Fund.

(c)     The Net Settlement Fund shall be distributed by the Claims Administrator to, or for the account of, Settlement Class Member claimants, as the case may be, only after the Effective Date of Settlement.

(d)     Class Plaintiffs and Settlement Class Members shall look solely to the Settlement Fund as full, final and complete satisfaction of all Released Claims.  Except as set forth in paragraph 12(b), JPMorgan shall have no obligation under this Settlement Agreement or the settlement to pay or cause to be paid any amount of money, and JPMorgan shall have no obligation to pay or reimburse any fees, expenses, costs, liability, losses, Taxes, or damages whatsoever alleged or incurred by Class Plaintiffs, by any Settlement Class Member, or by any Releasing Parties, including, but not limited to, by their attorneys, experts, advisors, agents, or representatives, with respect to the Action and Released Claims.  Class Plaintiffs and Settlement Class Members acknowledge that as of the Effective Date of Settlement, the releases given herein shall become effective immediately by operation of the Final Judgment and Order of Dismissal and shall be permanent, absolute, and unconditional.

(e)     Any funds that remain in the Net Settlement Fund after distribution of the Net Settlement Fund in accordance with the Plan of Distribution shall not revert to JPMorgan.

## 14.    TAXES

(a)     The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulations § 1.468B-l, and agree not to take any position

26

for tax purposes inconsistent therewith.  In addition, Class Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. The Settlement Fund, less any amounts incurred for notice, administration, and/or Taxes (as defined below), plus any accrued interest thereon, shall be returned to JPMorgan, as provided in paragraph 15, if the settlement does not become effective for any reason, including by reason of a termination of this Settlement Agreement pursuant to paragraph 15.

(b)     For the purpose of 26 U.S.C. § 468B and the Treasury regulations thereunder, Class Lead Counsel shall be designated as the "administrator" of the Settlement Fund.  Class Lead Counsel shall timely and properly file, or cause to be filed, all income, informational, and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulations § l.468B-2(k)).  Such returns shall be consistent with this paragraph 14 and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

(c)     All: (i) taxes or other similar imposts or charges (including any estimated taxes, interest, penalties, or additions to tax) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" within the meaning of Treasury Regulations § 1.468B-1 (or any relevant equivalent for state tax purposes); and (ii) other taxes or tax expenses imposed on or in connection with the Settlement Fund (collectively, "Taxes"), shall

promptly be paid out of the Settlement Fund by the Escrow Agent without prior order from the Court. The Escrow Agent shall also be obligated to, and shall be responsible for, withholding from distribution to Settlement Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes. The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph 14.

(d)     Neither the Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of the Escrow Agent, Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement Fund or otherwise; (ii) the Plan of Distribution; (iii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (iv) any losses suffered by, or fluctuations in the value of, the Settlement Fund; or (v) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns. The Escrow Agent shall indemnify and hold harmless the Parties out of the Settlement Fund from and against any claims, liabilities, or losses relating to the matters addressed in the preceding sentence.

## 15.    TERMINATION OF SETTLEMENT

(a)     Class Plaintiffs, through Class Lead Counsel, and JPMorgan, through JPMorgan's Counsel, shall, in each of their separate discretions, have the right to terminate the settlement set forth in this Settlement Agreement by providing written notice of their election to do so to all other Parties hereto within thirty (30) days of the date on which the following occurs: (1) If the Court, in a final order, declines to enter the Preliminary Approval Order, the Final Approval Order, or the Final Judgment and Order of Dismissal (denying it in its entirety or in any material respect), or (2)

if the Court enters the Final Approval Order and the Final Judgment and Order of Dismissal and appellate review is sought and, on such review, the Final Approval Order or the Final Judgment and Order of Dismissal is finally vacated, modified, or reversed; provided, however, that the Parties agree to act in good faith to secure final approval of this settlement, and to attempt to address in good faith concerns regarding the settlement identified by the Court and/or any court of appeal. Notwithstanding this paragraph, the Court's determination as to the Fee and Expense Application and/or any plan of distribution, or any determination on appeal from any such orders, shall not provide grounds for termination of this Settlement Agreement or settlement.

(b)     JPMorgan may also terminate this Settlement Agreement if a minimum threshold number of potential members of the Settlement Class, who but for their exclusion would likely have been eligible to receive a distribution from the Settlement Fund, timely and validly exclude themselves from the Settlement Class pursuant to the procedures approved by the Court. The minimum threshold number will be identified in a confidential supplement between the Parties ("Confidential Supplement"), which shall be submitted to the Court via a sealed writing. Any application to terminate under this paragraph must be made in writing within thirty (30) days following the deadline for Persons to exclude themselves from the Settlement Class.

(c)     Except as otherwise provided herein, in the event the Settlement Agreement is terminated in accordance herewith, is vacated, or is not approved, or in the event the Effective Date of Settlement fails to occur for any reason, then the Parties to this Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement and any related orders had not been entered (subject to seeking whatever revisions to the pretrial schedule as may be necessary to protect the rights of the Parties), and any

29

portion of the Settlement Fund previously paid by or on behalf of JPMorgan, together with any interest earned thereon (and, if applicable, re-payment of any Fee and Expense Award referred to in paragraph 11 above), less Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable, shall be returned to JPMorgan within ten (10) business days from the date of the event causing such termination. At the request of JPMorgan's Counsel, the Escrow Agent shall apply for any tax refund owed on the Settlement Fund and pay the proceeds to JPMorgan.

(d)     JPMorgan and JPMorgan's Counsel represent that they will not direct JPMorgan employees or agents, or any other persons, to encourage the submission of requests for exclusion from the Settlement Class.

## 16.     MISCELLANEOUS

(a)     The Parties to this Settlement Agreement intend the settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Class Plaintiffs and/or any Settlement Class Member against the Released Parties with respect to the Action and the Released Claims. Accordingly, Class Plaintiffs and JPMorgan agree not to assert in any judicial proceeding that the Action was brought by Class Plaintiffs or defended by JPMorgan in bad faith or without a reasonable basis. The Parties further agree not to assert in any judicial proceeding that any Party violated Fed. R. Civ. P. 11. The Parties agree that the amount paid and the other terms of the settlement were negotiated at arm's-length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel and the Mediator.

(b)      This Settlement Agreement does not settle or compromise any claim by Class Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent Complaint, against any Defendant or alleged co-conspirator other than the Released Parties. All rights against such other Defendants or alleged co-conspirators are specifically reserved by Class Plaintiffs and the Settlement Class, including, but not limited to, the damages related to ATM Transactions at JPMorgan's ATMs or completed by JPMorgan's cardholders, which shall not be removed from the Action.  For the avoidance of doubt, entering this Settlement Agreement is not intended to release any other Defendants or alleged co-conspirators from liability (including joint and several liability to the full extent of the law) for any damages.

(c)      The Settlement Amount to be paid by JPMorgan pursuant to this Settlement Agreement shall be treated as strictly confidential, unless otherwise jointly agreed to by JPMorgan and Class Plaintiffs, until such time as a motion requesting entry of the Preliminary Approval Order has been filed with the Court. The sole exception to the confidentiality required by this paragraph is that the Parties have agreed that JPMorgan may report the Settlement Amount to the other Bank Defendants.

(d)      The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

(e)      The administration and consummation of the settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders relating to the Fee and Expense Application and the Plan of Distribution, and enforcing the terms of this Settlement Agreement.

(f)     For the purpose of construing or interpreting this Settlement Agreement, Class Plaintiffs and JPMorgan agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

(g)     This Settlement Agreement and the Confidential Supplement shall constitute the entire agreement between Class Plaintiffs and JPMorgan pertaining to the settlement of the Action against JPMorgan and supersedes any and all prior and contemporaneous undertakings of Class Plaintiffs and JPMorgan in connection therewith.  All terms of this Settlement Agreement are contractual and not mere recitals.  The terms of this Settlement Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Settlement Class Members.

(h)     This Settlement Agreement may be modified or amended only by a writing executed by Class Plaintiffs, through Class Lead Counsel, and JPMorgan, through JPMorgan's Counsel, subject (if after preliminary or final approval by the Court) to approval by the Court. Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court.

(i)     Nothing in this Settlement Agreement constitutes an admission by any Released Party as to the veracity of or merits of any allegations or claims made in the Action, the validity of any defenses that could be asserted by JPMorgan, or the appropriateness of certification of any class other than the Settlement Class under Fed. R. Civ. P. 23 solely for settlement purposes.  This Settlement Agreement is without prejudice to the rights of JPMorgan to: (i) challenge the Court's

certification of any class, including the Settlement Class, in the Action should the Settlement Agreement not be approved or implemented for any reason; and/or (ii) oppose any certification or request for certification in any other proposed or certified class action.

(j)     All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice-of-law principles.

(k)     JPMorgan, Class Plaintiffs, their respective counsel, and the Settlement Class Members hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Columbia, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.

(l)     The Parties acknowledge that the Settlement Class includes both customers and non-customers of JPMorgan, and that this Settlement Agreement makes no determination as to which Settlement Class Members are entitled to distribution from the Settlement Fund, or as to the formula for determining the amounts to be distributed.

(m)     Any proposed plan of distribution is not a necessary term of this Settlement Agreement and it is not a condition of this Settlement Agreement that any particular plan of distribution be approved.  The Plan of Distribution is a matter separate and apart from the settlement between the Parties and any decision by the Court concerning a particular plan of distribution shall not affect the validity or finality of the proposed settlement, including the scope of the release.

(n)     This Settlement Agreement may be executed in counterparts by Class Plaintiffs and JPMorgan, and a facsimile or PDF signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

(o)     Class Plaintiffs and JPMorgan acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so.   Therefore, Class Plaintiffs, JPMorgan, and their respective counsel agree that they will not seek to set aside any part of this Settlement Agreement on the grounds of mistake.   Moreover, Class Plaintiffs and JPMorgan and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

(p)     Each of the undersigned attorneys represents that he/she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval; and the undersigned Class Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Class Plaintiffs.   Each of the undersigned attorneys shall use his/her best efforts to effectuate this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the date first herein written above.

*On behalf of Class Plaintiffs and the Settlement Class:*

_____

STEVE W. BERMAN
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue
Suite 2000
Seattle, WA 98101
Telephone: 206-623-7292
Facsimile: 206-623-0594
steve@hbsslaw.com

*On behalf of JPMorgan:*

_____

BORIS BERSHTEYN
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: 212-735-3000
Facsimile: 212-735-2000
boris.bershteyn@skadden.com

_____

STEPHEN NEUWIRTH
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
Telephone: 212-849-7165
Facsimile: 212-849-7100
stephenneuwirth@quinnemanul.com

_____

STEVEN A. SKALET
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
sskalet@findjustice.com

35

# Exhibit D

# FILED UNDER SEAL

# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW MACKMIN, et al.,

Plaintiffs,

v.

Case No. 1:11-cv-01831 (RJL)

VISA INC., et al.,

Defendants.

**STIPULATION AND AGREEMENT OF SETTLEMENT WITH WELLS FARGO &
COMPANY AND WELLS FARGO BANK, N.A.**

# TABLE OF CONTENTS

1.   RECITALS ..................................................................................................................1

2.   DEFINITIONS.............................................................................................................3

3.   SETTLEMENT CLASS CERTIFICATION ...............................................................10

4.   GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT
     AGREEMENT .............................................................................................................11

5.   FINAL JUDGMENT AND ORDER OF DISMISSAL AGAINST THE
     SETTLING DEFENDANTS ........................................................................................11

6.   PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING .........14

7.   EFFECTIVE DATE OF SETTLEMENT .....................................................................17

8.   CLAIMS ADMINISTRATOR .....................................................................................18

9.   SCOPE AND EFFECT OF SETTLEMENT ................................................................19

10.  COOPERATION ..........................................................................................................20

11.  FEE AND EXPENSE APPLICATION ........................................................................21

12.  THE SETTLEMENT FUND ........................................................................................23

13.  ADMINISTRATION OF THE SETTLEMENT ...........................................................25

14.  TAXES.........................................................................................................................26

15.  TERMINATION OF SETTLEMENT ...........................................................................28

16.  MISCELLANEOUS .....................................................................................................30

11895030v.1

1.     **RECITALS**

This Stipulation and Agreement of Settlement ("Settlement Agreement") is made and entered into on August 12, 2020 ("Execution Date"), between Class Plaintiffs (as defined herein), for themselves individually and on behalf of each Settlement Class Member in the Action (each, as defined herein), and defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells Fargo"), by and through Class Lead Counsel and  Wells Fargo's Counsel (each, as defined herein). This Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), with respect to Wells Fargo, upon and subject to the terms and conditions herein.

WHEREAS, on November 23, 2015, Class Plaintiffs filed a Second Amended Class Action Complaint ("SAC" or "Complaint");

WHEREAS, Class Plaintiffs are prosecuting the Action on their own behalf and on behalf of a putative class against Defendants, including Wells Fargo;

WHEREAS, Class Plaintiffs have alleged, among other things, that Wells Fargo participated in an unlawful conspiracy to restrain trade, pursuant to which Wells Fargo and its alleged co-conspirators, including the other Defendants, as well as unnamed co-conspirators, agreed, among other things, to so-called Non-Discrimination Rules that allegedly had the effect of increasing the amount of ATM Access Fees (as defined herein) paid by the Settlement Class (as defined herein), in violation of the Sherman Act, 15 U.S.C. § l, *et seq.*;

WHEREAS, Class Plaintiffs have contended that they are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the SAC, arising from Wells Fargo's (and the other Defendants') alleged conduct;

WHEREAS, Wells Fargo has denied and continues to deny each and all of the claims made by Class Plaintiffs in the Action and of liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action;

WHEREAS, Class Plaintiffs, for themselves individually and on behalf of each Settlement Class Member, and Wells Fargo agree that neither this Settlement Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Wells Fargo or of the truth of any of the claims or allegations alleged in the Action;

WHEREAS, Class Plaintiffs and Settling Defendants have engaged in extensive discovery regarding the facts pertaining to Class Plaintiffs' claims and Settling Defendants' defenses;

WHEREAS, Class Lead Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that: (1) it is in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein, including the value of the Settlement Amount (as defined herein) to be paid by Wells Fargo under this Settlement Agreement and the cooperation to be provided to Class Plaintiffs by Wells Fargo under this Settlement Agreement, are obtained for the Settlement Class; and (2) the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Settlement Class;

WHEREAS, Wells Fargo, while continuing to deny that it is liable for any of the claims asserted against it in the Action, has nevertheless agreed to enter into this Settlement Agreement to avoid the further risk, expense, inconvenience, and distraction of burdensome and protracted litigation, and thereby to put fully to rest this controversy, to avoid the risks inherent in complex

litigation, and to obtain complete dismissal of the SAC as to Wells Fargo and a release of claims as set forth herein; and

WHEREAS, this Settlement Agreement is the product of arm's-length negotiations between Class Lead Counsel and Wells Fargo's Counsel under the guidance and oversight of former U.S. District Judge Layn R. Phillips as Mediator, and this Settlement Agreement embodies all of the terms and conditions of the settlement agreed upon between Wells Fargo and Class Plaintiffs, both for themselves individually and on behalf of the Settlement Class;

NOW, THEREFORE, in consideration of the covenants, terms, and releases in this Settlement Agreement, it is agreed, by and among Class Plaintiffs (for themselves individually and on behalf of the Settlement Class and each member thereof) and Wells Fargo, by and through Class Lead Counsel and Wells Fargo's Counsel, that, subject to the approval of the Court (as defined herein), the Action be settled, compromised, and dismissed with prejudice as to Wells Fargo and the other Released Parties (as defined herein) only, without costs, except as stated herein, and releases be extended, as set forth in this Settlement Agreement.

2.   **DEFINITIONS**

As used in this Settlement Agreement, the following capitalized terms have the meanings specified below:

(a)   "Action" means *Mackmin et al. v. Visa Inc. et al.*, Case No. 1:11-cv-01831 (RJL), which is currently pending in the United States District Court for the District of Columbia.

(b)   "Alleged Bank Co-Conspirator" has the same definition as in the SAC.

(c)   "ATM" means an automated teller machine, which allows Cardholders to complete an ATM Transaction.

3

(d)     "ATM Access Fee" means the fee assessed by an ATM operator to a Cardholder for completing a Foreign ATM Transaction.

(e)     "ATM Card" means an access device, usually a card, enabling the holder, among other things, to conduct an ATM Transaction.

(f)     "ATM Transaction" means any actual or attempted use of an ATM, including to withdraw cash, deposit funds, transfer funds, or check account balances.

(g)     "Authorized Claimant" means any Settlement Class Member who will be entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Distribution approved by the Court.

(h)     "Bank" means any bank, credit union, or other financial institution, including its affiliates, subsidiaries, agents, representatives, employees, officers, and directors.

(i)      "Bank Defendant" means JPMorgan Chase & Co.; Chase Bank USA, N.A.; and JPMorgan Chase Bank, N.A.; Bank of America, N.A.; NB Holdings Corp.; Bank of America Corp.; Wells Fargo & Co.; and Wells Fargo Bank, N.A.

(j)     "Cardholder" means any Person that owns, possesses, or controls an ATM Card.

(k)     "Claims Administrator" means the third party to be retained by Class Lead Counsel and approved by the Court to manage and administer the process by which each member of the Settlement Class is notified of the Settlement Agreement and paid from the Net Settlement Fund.

(l)      "Class Lead Counsel" means Hagens Berman Sobol Shapiro LLP, Quinn Emanuel Urquhart & Sullivan LLP, and Mehri & Skalet PLLC.

11895030v.1

(m) "Class Notice" means the proposed form of, method for, and the date of dissemination of notice of the Settlement Agreement to the Settlement Class.

(n) "Class Plaintiffs" means Andrew Mackmin and Sam Osborn.

(o) "Court" means the United States District Court for the District of Columbia.

(p) "Defendants" means JPMorgan Chase & Co.; Chase Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Visa Inc.; Visa U.S.A. Inc.; Visa International Service Association; Plus System, Inc.; Mastercard Inc.; Mastercard International Inc. d/b/a Mastercard Worldwide; Bank of America, N.A.; NB Holdings Corp.; Bank of America Corp.; Wells Fargo & Co.; and Wells Fargo Bank, N.A.; and any other Person or Persons who are named as defendants in the Action at any time up to and including the date a Preliminary Approval Order is entered.

(q) "Effective Date of Settlement" has the meaning given to it in paragraph 7.

(r) "Escrow Agent" means Huntington National Bank.

(s) "Execution Date" means the date of the execution of this Settlement Agreement by counsel for all Parties thereto.

(t) "Fairness Hearing" means the hearing to be held by the Court to determine whether the settlement set forth in this Settlement Agreement shall receive final approval pursuant to Fed. R. Civ. P. 23.

(u) "Fee and Expense Application" has the meaning given to it in paragraph 11.

(v) "Fee and Expense Award" has the meaning given to it in paragraph 11.

5

(w)     "Final Approval Order" has the meaning given to it in paragraph 5.

(x)     "Final Judgment and Order of Dismissal" has the meaning given to it in paragraph 5.

(y)     "Foreign ATM Transaction" means an ATM Transaction in which the Cardholder uses an ATM which is owned by an entity different from the entity that issued the ATM Card used for that ATM Transaction.

(z)      "Mediator" means former U.S. District Judge Layn R. Phillips.

(aa)    "Net Settlement Fund" has the meaning given to it in paragraph 12.

(bb)     "Parties" means, collectively, Class Plaintiffs (on behalf of themselves and the Settlement Class) and the Settling Defendants.

(cc)    "Person" means an individual or entity, and his, her, or its spouses, heirs, predecessors, successors, representatives, or assignees.

(dd)    "Plan of Distribution" means a plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Settlement Class Members after payment of expenses of notice and administration of the settlement, Taxes and tax expenses, and such attorneys' fees, costs, service awards, interest, and other expenses as may be awarded by the Court.

(ee)    "Preliminary Approval Order" means an order of the Court that preliminarily approves the settlement set forth in this Settlement Agreement and that approves the form of Class Notice and preliminarily approves a proposed Plan of Distribution.

(ff)     "Released Claims" means, in consideration of payment of the Settlement Amount into the Settlement Fund as specified in paragraph 12 of this Settlement Agreement, and for other valuable consideration, any and all manner of claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several) by the Releasing Parties against the Released Parties to the fullest extent permitted by law, including all unasserted and "Unknown Claims," as defined below, both arising from transactions at ATMs owned or operated by financial institutions and the factual predicates of the Action, from the beginning of time and continuing into the future without end.

(gg)     "Released Party" or "Released Parties" means Wells Fargo & Company and Wells Fargo Bank, N.A. and each entity's past, present, and future, direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in Securities and Exchange Commission Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934, as amended), divisions, predecessors, successors, and each of their respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns.  Released Parties do not include any of the other Defendants.

(hh)     "Releasing Parties" means, individually and collectively, Class Plaintiffs and each Settlement Class Member, on behalf of themselves and any of their respective past, present or future officers, directors, stockholders, agents, employees, legal or other representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators,

7

purchasers, predecessors, successors, and assigns, whether or not they object to the settlement set forth in this Settlement Agreement, and whether or not they make a claim for payment from the Net Settlement Fund.

(ii)     "Request for Exclusion" has the meaning given to it in paragraph 6.

(jj)     "SAC" or "Complaint" means the Second Amended Class Action Complaint filed with the Court in the Action on November 23, 2015.

(kk)     "Settlement Agreement" means this Stipulation and Agreement of Settlement.

(ll)     "Settlement Amount" means the sum of Twenty Million Eight Hundred Twenty Thousand Dollars ($20,820,000), payable in lawful money of the United States.

(mm)   "Settlement Class" has the meaning given to it in paragraph 3(a).

(nn)     "Settlement Class Member" means a Person who is a member of the Settlement Class and has not timely and validly excluded himself, herself, or itself in accordance with the procedures to be established by the Court.

(oo)     "Settlement Fund" means the escrow account established pursuant to paragraph 12 of this Settlement Agreement, including all monies held therein in accordance with the terms of this Settlement Agreement.

(pp)     "Settling Defendants" means Wells Fargo & Company and Wells Fargo Bank, N.A.

(qq)     "Taxes" has the meaning given to it in paragraph 14.

(rr)    "Unknown Claims" means any and all Released Claims against the Released Parties which any of the Releasing Parties does not know or suspect to exist in his, her, or its favor as of the Effective Date of Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that by operation of the Final Judgment and Order of Dismissal, upon the Effective Date of Settlement, Releasing Parties shall have expressly waived, and each Settlement Class Member shall be deemed to have waived, and by operation of the Final Judgment and Order of Dismissal shall have expressly waived, the provisions, rights and benefits of Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542.

Any of the Releasing Parties may hereafter discover facts other than or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims.  Nevertheless, Class Plaintiffs shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date of Settlement, shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever settled and released, any and all Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Class Plaintiffs acknowledge, and Settlement Class Members shall be deemed to have

9

acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

(ss)   "Wells Fargo" means Wells Fargo & Company and Wells Fargo Bank, N.A.

(tt)   "Wells Fargo's Counsel" means Patterson Belknap Webb & Tyler LLP.

## 3.   SETTLEMENT CLASS CERTIFICATION

(a)   The Parties hereby stipulate solely for settlement purposes that the requirements of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3) are satisfied and, subject to Court approval, the following Settlement Class shall be certified as to Wells Fargo solely for settlement purposes: "All individuals and entities that paid an unreimbursed ATM Access Fee directly to any Bank Defendant or Alleged Bank Co-Conspirator for a Foreign ATM Transaction using an ATM card issued by a financial institution in the United States to withdraw cash at an ATM located in the United States at any time from October 1, 2007 to the date of the Preliminary Approval Order." Specifically excluded from the Settlement Class are Defendants; Released Parties; the officers, directors, or employees of any Defendant or Released Party; any entity in which any Defendant or Released Party has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or Released Party and any person acting on their behalf.  Also excluded from the Settlement Class are any federal, state, or local governmental entities, Class Lead Counsel, and any judicial officer presiding over the Action and the members of his/her immediate family and judicial staff.

(b)   The Parties' agreement as to certification of the Settlement Class is solely for purposes of effectuating a settlement and for no other purpose.  Wells Fargo retains all of its objections, arguments, and defenses with respect to class certification, and reserves all rights to

contest class certification, if the settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to close.  The Parties acknowledge that there has been no stipulation to any class or certification of any class for any purpose other than effectuating the settlement, and that if the settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to close, this agreement as to certification of the Settlement Class becomes null and void *ab initio,* and this Settlement Agreement or any other settlement-related statement may not be cited regarding certification of the Settlement Class, or in support of an argument for certifying a class for any purpose related to this proceeding.

## 4.    GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT

The Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms of this Settlement Agreement.  This includes Wells Fargo serving notice on those entities required to receive notice pursuant to 28 U.S.C. § 1715.

## 5.    FINAL JUDGMENT AND ORDER OF DISMISSAL AGAINST THE SETTLING DEFENDANTS

(a)    Class Plaintiffs shall seek a Final Approval Order and a Final Judgment and Order of Dismissal against the Settling Defendants, the proposed text of which Class Plaintiffs and

Settling Defendants shall agree upon. The Final Approval Order and Final Judgment and Order of Dismissal submitted for Court approval will include, at a minimum, terms:

(i)      certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) solely for the purpose of the settlement;

(ii)     as to the Action, approving fully and finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

(iii)    finding that the notice given to Settlement Class Members constitutes the best notice practicable under the circumstances and complies in all respects with the valid, due, and sufficient notice requirements of Federal Rule of Civil Procedure 23, and meets the requirements of due process;

(iv)     as to Released Parties, directing that the Action be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs;

(v)      discharging and releasing the Released Parties from the Released Claims, regardless of whether any such Releasing Party executes and delivers a proof of claim, and without respect to any rights afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws;

(vi)     permanently barring and enjoining Class Plaintiffs or any Settlement Class Member from (A) instituting or prosecuting any other action against any of the Released Parties as to any of the Released Claims, or (B) assisting any third party in commencing or

maintaining any suit against any Released Party related in any way to any of the Released Claims;

(vii)    reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including all future proceedings concerning the administration, interpretation, consummation, and enforcement of this settlement, to the Court; and

(viii)    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Released Parties shall be final and entered forthwith.

(b)    The Final Judgment and Order of Dismissal shall become final when (i) the Court has entered a final order certifying the Settlement Class for settlement purposes and approving this Settlement Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to Released Parties against all Settlement Class Members and without costs other than those provided for in this Settlement Agreement, and (ii) the time for appeal from the Court's approval of this Settlement Agreement and entry of a final judgment as to Released Parties described in (i) hereof has expired or, if appealed, approval of this Settlement Agreement and the final judgment as to Released Parties have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no

longer subject to further appeal or review.  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

(c)      As of the Execution Date, Plaintiffs and Settling Defendants shall be bound by the Settlement Agreement's terms and this Settlement Agreement shall not be rescinded except in accordance with the terms of this Settlement Agreement.

## 6.    PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING

(a)      As soon as reasonably possible following the Execution Date, Class Lead Counsel shall submit to the Court, and Wells Fargo shall support, a motion requesting entry of a Preliminary Approval Order.  That motion shall:

(i)      seek preliminary certification of the Settlement Class solely for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3);

(ii)      request preliminary approval of the settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23;

(iii)      seek the appointment of Class Plaintiffs as representatives of the Settlement Class, and Class Lead Counsel as interim counsel for the Settlement Class under Fed. R. Civ. P. 23(g);

(iv)      request authorization to disseminate notice of the settlement and final judgment contemplated by this Settlement Agreement to all potential Settlement Class Members. The motion shall include: (1) a proposed form of, method for, and date of dissemination of notice; and (2) a proposed Preliminary Approval Order. Notice of the settlement shall be as provided in the motion and as approved by the Court, with all

14

expenses paid from the Settlement Fund, subject to the provisions of this Settlement Agreement. The motion shall recite and ask the Court to find that the method of the notice of settlement to all Settlement Class Members who can be identified upon reasonable effort constitutes valid, due, and sufficient notice to the Settlement Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process. The Claims Administrator will also establish and maintain a dedicated settlement website, from which each Settlement Class Member can view and download relevant documents;

(v)     seek appointment of the Claims Administrator;

(vi)     seek appointment of Huntington National Bank as Escrow Agent;

(vii)     request that the Court, pending final determination of whether the Settlement Agreement should be approved, stay all proceedings in the Action against Wells Fargo until the Court renders a final decision on approval of the settlement set forth in this Settlement Agreement;

(viii)     request that the Court, pending final determination of whether the Settlement Agreement should be approved, temporarily enjoin each Class Plaintiff and each Settlement Class Member, either directly, representatively, or in any other capacity, from prosecuting in any forum any Released Claim against any of the Released Parties; and

(ix)     attach a proposed form of order, the proposed text of which Class Lead Counsel shall provide to Wells Fargo at least five business days prior to the submission to

15

the Court of the motion requesting entry of a Preliminary Approval Order. Class Lead Counsel will consider in good faith any suggestions from Wells Fargo regarding the proposed form of order. The form of order will include such provisions as are typical in such orders, including: (1) setting a date for the Fairness Hearing; (2) a provision indicating that, if final approval of the settlement is not obtained, the settlement is null and void, and the Parties will revert to their positions *ex ante* (as of the Execution Date) without prejudice to their rights, claims, or defenses; (3) stating the substantial litigation risks that the Settlement Class faced in the Action; (4) stating the procedures, which shall be consistent with paragraph 6(d), for Persons falling within the definition of the Settlement Class to exclude themselves from the Settlement Class; (5) requiring that all members of the Settlement Class be bound by all final determinations in the Action concerning the settlement, whether favorable or unfavorable to the members of the Settlement Class; and (6) stating that Wells Fargo has denied and continues to deny each and all of the claims made by Class Plaintiffs in the Action and of liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action.

(b)     Class Notice shall apprise each member of the Settlement Class of his, her, or its right to exclude themselves from, or object to, the settlement.

(c)     Settling Defendants shall be responsible for providing all notices required by the Settlement Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

(d)     Any Person falling within the definition of the Settlement Class may request to be excluded from the Settlement Class ("Request for Exclusion") in accordance with procedures

approved by the Court (which, at a minimum, will require a signed writing or substantially similar submission from each individual or entity requesting exclusion that clearly states (i) the individual's or entity's identity with particularity and (ii) his/her/its decision to request exclusion from the Settlement Class in this Action). Within five (5) business days after the end of the period to request exclusion from the Settlement Class, Class Lead Counsel will cause copies of all Requests for Exclusion from the Settlement Class to be provided to counsel for Settling Defendants.  With respect to any potential Settlement Class Member who requests exclusion from the Settlement Class, Settling Defendants reserve all of their legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Settlement Class Member is a member of the Settlement Class and/or has standing to bring any claim.

(e)     The Parties to this Settlement Agreement contemplate and agree that, prior to final approval of the settlement, Class Plaintiffs will request a Court hearing at which the Court will consider the final approval of this Settlement Agreement ("Fairness Hearing").

## 7.     EFFECTIVE DATE OF SETTLEMENT

(a)     The "Effective Date of Settlement" shall be the date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events:

(i)     the Settlement Amount has been contributed to the Settlement Fund pursuant to this Settlement Agreement;

(ii)     entry of the Preliminary Approval Order;

(iii)    final approval by the Court of the settlement set forth in this Settlement Agreement, following Class Notice and the Fairness Hearing;

(iv)    no Party has exercised his, her, or its rights to terminate this Settlement Agreement pursuant to paragraph 15, and all periods for any Party to exercise such rights have expired; and

(v)    entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becomes final pursuant to paragraph 5(b).

(b)    Notwithstanding any other provision herein, any proceeding or order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to the Plan of Distribution and/or Fee and Expense Application, shall not in any way delay or preclude the Effective Date of Settlement.

## 8.    CLAIMS ADMINISTRATOR

(a)    Pursuant to the Preliminary Approval Order, and subject to Court approval, Class Lead Counsel shall engage a qualified Claims Administrator.  The Claims Administrator will assist with the settlement claims process as set forth herein.

(b)    The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the Plan of Distribution.

(c)    The Claims Administrator also shall assist in the development of the Plan of Distribution and the resolution of any disputes that may be raised by Settlement Class Members regarding the amount which they are owed under the Plan of Distribution.

9.      **SCOPE AND EFFECT OF SETTLEMENT**

(a)      The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition of: (i) the Action against Wells Fargo; and (ii) any and all Released Claims as against all Released Parties.

(b)      Upon the Effective Date of Settlement, each of the Releasing Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have fully, finally, and forever waived, released, relinquished, and discharged (1) all Released Claims against the Released Parties, and (2) any rights to the protections afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws; (ii) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (iii) agrees and covenants not to sue, either directly, representatively, or in any other capacity, any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit against any of the Released Parties related in any way to any Released Claims.

(c)      The releases provided in this Settlement Agreement shall become effective immediately upon occurrence of the Effective Date of Settlement without the need for any further action, notice, condition, or event.

(d)      The Parties shall seek entry by the Court of an order, in the Final Judgment and Order of Dismissal or otherwise, to the extent not prohibited by law, barring claims by any Person against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise.

11895030v.1

(e)     In the event that this Settlement Agreement is terminated pursuant to paragraph 15, or any condition for the final approval of this Settlement Agreement is not satisfied, the release and covenant not to sue provisions of this paragraph shall be null and void and unenforceable.

## 10.    COOPERATION

(a)     Wells Fargo and Wells Fargo's Counsel agree to use reasonable efforts, in response to a reasonable number of requests for the same, to provide written declarations (or other forms of authentication that Wells Fargo may agree to in good faith, including testimony at deposition or trial, if necessary for the prosecution of the Action) for the purposes of authenticating, or admitting into evidence the content of, documents or information produced in the Action by Wells Fargo.

(b)     Wells Fargo will, to the extent permitted by law and the terms of applicable agreements between potential Settlement Class Members and Wells Fargo, furnish certain information reasonably available to it to assist in the identification of potential Settlement Class Members, including contact information for those individuals. Wells Fargo further agrees to employ reasonable and good faith efforts to cooperate with Class Plaintiffs to ensure the timely production of this information, as well as to determine the specific information to be provided and the format of that information. Any confidentiality or security concerns Wells Fargo may have in connection with providing such information will be addressed by Class Plaintiffs in good faith, including by allowing Wells Fargo to condition its provision of the information upon its approval of the data security and privacy practices of the Claims Administrator handling its information. In turn, Wells Fargo will respond in good faith to reasonable inquiries or requests from the Claims Administrator or Class Plaintiffs that may arise in connection with the notice, claims, or distribution process. Wells Fargo agrees to employ reasonable and good faith efforts to cooperate with the Claims Administrator and other third party service providers with respect to notice, claims

20

processing, and claims distribution by providing information concerning its capacity to (i) facilitate those third party service providers' efforts to provide notice and (ii) distribute payments directly to identified Settlement Class Members who hold depository accounts at Wells Fargo. To the extent any disagreements arise as to the information Wells Fargo agrees to provide under this paragraph, the Parties will first attempt to meet and confer in good faith to reach a resolution. If, following a good faith meet and confer process, the Parties cannot reach a resolution, the Parties agree they will submit the dispute to the Court for resolution in accordance with applicable law. Nothing in this paragraph, identifying cooperation that Wells Fargo shall provide to the third party administrator, is intended to cause Wells Fargo to assume the role or responsibilities of the Claims Administrator. Similarly, nothing in this paragraph is intended to waive any party's rights to seek to impose or oppose any additional obligations with respect to notice, claims, or distribution of the Settlement Amount.

(c)     Except as expressly provided herein, no further discovery shall be allowed to be directed by Class Lead Counsel, Class Plaintiffs, or Settlement Class Members to Wells Fargo, including any discovery regarding the merits of the Action or in connection with processing claims.

## 11.     FEE AND EXPENSE APPLICATION

(a)     Class Lead Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them from the Settlement Fund of (1) an award of attorneys' fees; plus (2) reimbursement of expenses paid by Class Lead Counsel in connection with prosecuting the Action; plus (3) any interest earned in the escrow account on such attorneys' fees and expenses (until paid) at the same rate and for the same periods as earned by the Settlement Fund, as appropriate, and as may be awarded by the Court (the "Fee and Expense Award").

(b)     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund to an account designated by Class Lead Counsel within thirty (30) days after the granting of the Fee and Expense Award. It may be disbursed during the pendency of any appeals which may be taken from the judgment to be entered by the Court finally approving this Settlement Agreement and/or approving the Fee and Expense Award.

(c)     Class Lead Counsel shall allocate the attorneys' fees among themselves in a manner that they believe in good faith reflects the respective contributions of such counsel to the prosecution and settlement of this Action.

(d)     In the event that the order making the Fee and Expense Award is reversed or modified, then Class Lead Counsel shall, within ten (10) business days from receiving notice from Wells Fargo's Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund the Fee and Expense Award or any portion thereof previously paid to them plus interest thereon at the same rate as earned by the account into which the balance of the Settlement Fund is deposited.

(e)     The procedure for, and the allowance or disallowance by the Court of, the application by Class Lead Counsel for attorneys' fees, costs, and expenses to be paid out of the Settlement Fund are not part of this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, the pendency of any such application, or any appeal from any such order shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving the settlement.

11895030v.1

(f)     Wells Fargo agrees not to oppose a request for a service award to each of the two Class Plaintiffs, up to a maximum of US $10,000 per award or such lesser amount as may be proposed by the Class Plaintiffs to the Court, to be drawn exclusively from the Settlement Fund.

## 12.     THE SETTLEMENT FUND

(a)     The Settlement Fund shall be established as an escrow account at Huntington National Bank and administered by the Escrow Agent, subject to the continuing jurisdiction of the Court.  The Settlement Fund shall be administered pursuant to this Settlement Agreement and subject to the Court's continuing supervision and control.  No monies shall be paid from the Settlement Fund without the specific authorization of Class Lead Counsel, based on prior approval by the Court. Class Lead Counsel will form an appropriate escrow agreement in conformance with this Settlement Agreement.

(b)     Wells Fargo shall cause the payment of $20,820,000 to be transferred to the Escrow Agent within twelve (12) business days following entry of the Preliminary Approval Order, provided that within two (2) days following entry of the Preliminary Approval Order, Class Lead Counsel shall provide Wells Fargo with such information as Wells Fargo may require to complete the wire transfer.  These funds, together with any interest earned thereon, shall constitute the Settlement Fund.

(c)     In all events, the Released Parties shall have no liability, obligation, or responsibility for the costs of or provision of notice, including the identification of potential members of the Settlement Class, beyond those set forth in in paragraphs 10(b) and 12(b) above, and paragraph 12(e)(ii) below; for the solicitation, review, or evaluation of proofs of claim; for the administration of the settlement or disbursement of the Settlement Fund; or for any other costs,

including any attorneys' fees and expenses or any taxes or tax-related costs relating to the Action, any Released Claim, or the Settlement Fund. The Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a United States Treasury Fund or a bank account that is either: (i) fully insured by the Federal Deposit Insurance Corporation; or (ii) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature.  All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.

(d)     All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and the Plan of Distribution approved by the Court.

(e)     The Settlement Fund shall be applied as follows:

(i)      to pay the Fee and Expense Award, if and to the extent allowed by the Court;

(ii)     to use, if approved by the Court, up to $750,000 of the Settlement Amount for payment of any Court-approved costs and expenses in connection with providing Class Notice and the administration of the settlement, including, without limitation, locating members of the Settlement Class, soliciting Settlement Class Members' claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, and processing any claim and/or release forms.

If necessary, additional amounts can be used for notice and administration expenses upon the further written agreement of the Parties and approval by the Court, and Wells Fargo agrees to exercise good faith regarding any additional amounts and not to object to reasonable requests to the Court for such additional amounts; in the event Wells Fargo declines to agree to a request for additional amounts, Class Plaintiffs shall be permitted to apply directly to the Court for approval without Wells Fargo's written agreement to the amounts requested (and Wells Fargo reserves its right to oppose such an application);

(iii)    to pay the Taxes and tax expenses described in paragraph 14 herein;

(iv)    to pay any other Court-approved fees and expenses; and

(v)    to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Settlement Class Members as allowed by the Court.

(f)    With the object of reducing the costs of Class Notice, Class Lead Counsel shall use their reasonable best efforts to coordinate the provision of Class Notice pertaining to this Settlement Agreement with the provision of notice for any other settlements that may be reached in this Action.

## 13.    ADMINISTRATION OF THE SETTLEMENT

(a)    The Claims Administrator shall process this settlement based upon the orders of the Court and this Settlement Agreement, and, after entry of relevant order(s) of the Court, distribute the Net Settlement Fund in accordance with such orders and this Settlement Agreement.

(b)    Except for their obligation to fund the settlement or cause it to be funded as detailed in this Settlement Agreement, Wells Fargo shall have no liability, obligation, or responsibility for the administration of the settlement or disbursement of the Net Settlement Fund.

(c)    The Net Settlement Fund shall be distributed by the Claims Administrator to, or for the account of, Settlement Class Member claimants, as the case may be, only after the Effective Date of Settlement.

(d)    Class Plaintiffs and Settlement Class Members shall look solely to the Settlement Fund as full, final and complete satisfaction of all Released Claims.  Except as set forth in paragraph 12(b), Wells Fargo shall have no obligation under this Settlement Agreement or the settlement to pay or cause to be paid any amount of money, and Wells Fargo shall have no obligation to pay or reimburse any fees, expenses, costs, liability, losses, Taxes, or damages whatsoever alleged or incurred by Class Plaintiffs, by any Settlement Class Member, or by any Releasing Parties, including, but not limited to, by their attorneys, experts, advisors, agents, or representatives, with respect to the Action and Released Claims.  Class Plaintiffs and Settlement Class Members acknowledge that as of the Effective Date of Settlement, the releases given herein shall become effective immediately by operation of the Final Judgment and Order of Dismissal and shall be permanent, absolute, and unconditional.

(e)    Any funds that remain in the Net Settlement Fund after distribution of the Net Settlement Fund in accordance with the Plan of Distribution shall not revert to Wells Fargo.

14.    **TAXES**

(a)    The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulations § 1.468B-l, and agree not to take any position

26

for tax purposes inconsistent therewith.  In addition, Class Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. The Settlement Fund, less any amounts incurred for notice, administration, and/or Taxes (as defined below), plus any accrued interest thereon, shall be returned to Wells Fargo, as provided in paragraph 15, if the settlement does not become effective for any reason, including by reason of a termination of this Settlement Agreement pursuant to paragraph 15.

(b)     For the purpose of 26 U.S.C. § 468B and the Treasury regulations thereunder, Class Lead Counsel shall be designated as the "administrator" of the Settlement Fund.  Class Lead Counsel shall timely and properly file, or cause to be filed, all income, informational, and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulations § l.468B-2(k)).  Such returns shall be consistent with this paragraph 14 and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

(c)     All: (i) taxes or other similar imposts or charges (including any estimated taxes, interest, penalties, or additions to tax) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" within the meaning of Treasury Regulations § 1.468B-1 (or any relevant equivalent for state tax purposes); and (ii) other taxes or tax expenses imposed on or in connection with the Settlement Fund (collectively, "Taxes"), shall

27

promptly be paid out of the Settlement Fund by the Escrow Agent without prior order from the Court. The Escrow Agent shall also be obligated to, and shall be responsible for, withholding from distribution to Settlement Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes. The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph 14.

(d)       Neither the Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of the Escrow Agent, Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement Fund or otherwise; (ii) the Plan of Distribution; (iii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (iv) any losses suffered by, or fluctuations in the value of, the Settlement Fund; or (v) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns. The Escrow Agent shall indemnify and hold harmless the Parties out of the Settlement Fund from and against any claims, liabilities, or losses relating to the matters addressed in the preceding sentence.

## 15.    TERMINATION OF SETTLEMENT

(a)       Class Plaintiffs, through Class Lead Counsel, and Wells Fargo, through Wells Fargo's Counsel, shall, in each of their separate discretions, have the right to terminate the settlement set forth in this Settlement Agreement by providing written notice of their election to do so to all other Parties hereto within thirty (30) days of the date on which the following occurs: (1) If the Court, in a final order, declines to enter the Preliminary Approval Order, the Final Approval Order, or the Final Judgment and Order of Dismissal (denying it in its entirety or in any

material respect), or (2) if the Court enters the Final Approval Order and the Final Judgment and Order of Dismissal and appellate review is sought and, on such review, the Final Approval Order or the Final Judgment and Order of Dismissal is finally vacated, modified, or reversed; provided, however, that the Parties agree to act in good faith to secure final approval of this settlement, and to attempt to address in good faith concerns regarding the settlement identified by the Court and/or any court of appeal.  Notwithstanding this paragraph, the Court's determination as to the Fee and Expense Application and/or any plan of distribution, or any determination on appeal from any such orders, shall not provide grounds for termination of this Settlement Agreement or settlement.

(b)     Wells Fargo may also terminate this Settlement Agreement if a minimum threshold number of potential members of the Settlement Class, who but for their exclusion would likely have been eligible to receive a distribution from the Settlement Fund, timely and validly exclude themselves from the Settlement Class pursuant to the procedures approved by the Court. The minimum threshold number will be identified in a confidential supplement between the Parties ("Confidential Supplement"), which shall be submitted to the Court via a sealed writing.  Any application to terminate under this paragraph must be made in writing within thirty (30) days following the deadline for Persons to exclude themselves from the Settlement Class.

(c)     Except as otherwise provided herein, in the event the Settlement Agreement is terminated in accordance herewith, is vacated, or is not approved, or in the event the Effective Date of Settlement fails to occur for any reason, then the Parties to this Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement and any related orders had not been entered (subject to seeking whatever revisions to the pretrial schedule as may be necessary to protect the rights of the Parties), and any

29

portion of the Settlement Fund previously paid by or on behalf of Wells Fargo, together with any interest earned thereon (and, if applicable, re-payment of any Fee and Expense Award referred to in paragraph 11 above), less Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable, shall be returned to Wells Fargo within ten (10) business days from the date of the event causing such termination.  At the request of Wells Fargo's Counsel, the Escrow Agent shall apply for any tax refund owed on the Settlement Fund and pay the proceeds to Wells Fargo.

(d)     Wells Fargo and Wells Fargo's Counsel represent that they will not direct Wells Fargo employees or agents, or any other persons, to encourage the submission of requests for exclusion from the Settlement Class.

## 16.   MISCELLANEOUS

(a)     The Parties to this Settlement Agreement intend the settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Class Plaintiffs and/or any Settlement Class Member against the Released Parties with respect to the Action and the Released Claims.  Accordingly, Class Plaintiffs and Wells Fargo agree not to assert in any judicial proceeding that the Action was brought by Class Plaintiffs or defended by Wells Fargo in bad faith or without a reasonable basis.  The Parties further agree not to assert in any judicial proceeding that any Party violated Fed. R. Civ. P. 11.  The Parties agree that the amount paid and the other terms of the settlement were negotiated at arm's-length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel and the Mediator.

(b)     This Settlement Agreement does not settle or compromise any claim by Class Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent Complaint, against any Defendant or alleged co-conspirator other than the Released Parties. All rights against such other Defendants or alleged co-conspirators are specifically reserved by Class Plaintiffs and the Settlement Class, including, but not limited to, the damages related to ATM Transactions at Wells Fargo's ATMs or completed by Wells Fargo's cardholders, which shall not be removed from the Action.  For the avoidance of doubt, entering this Settlement Agreement is not intended to release any other Defendants or alleged co-conspirators from liability (including joint and several liability to the full extent of the law) for any damages.

(c)     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

(d)     The administration and consummation of the settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders relating to the Fee and Expense Application and the Plan of Distribution, and enforcing the terms of this Settlement Agreement.

(e)     For the purpose of construing or interpreting this Settlement Agreement, Class Plaintiffs and Wells Fargo agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

(f)     This Settlement Agreement and the Confidential Supplement shall constitute the entire agreement between Class Plaintiffs and Wells Fargo pertaining to the settlement of the Action against Wells Fargo and supersedes any and all prior and contemporaneous undertakings of Class Plaintiffs and Wells Fargo in connection therewith.   All terms of this Settlement

31

Agreement are contractual and not mere recitals.  The terms of this Settlement Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Settlement Class Members.

(g)     This Settlement Agreement may be modified or amended only by a writing executed by Class Plaintiffs, through Class Lead Counsel, and Wells Fargo, through Wells Fargo's Counsel, subject (if after preliminary or final approval by the Court) to approval by the Court. Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court.

(h)     Nothing in this Settlement Agreement constitutes an admission by any Released Party as to the veracity of or merits of any allegations or claims made in the Action, the validity of any defenses that could be asserted by Wells Fargo, or the appropriateness of certification of any class other than the Settlement Class under Fed. R. Civ. P. 23 solely for settlement purposes. This Settlement Agreement is without prejudice to the rights of Wells Fargo to: (i) challenge the Court's certification of any class, including the Settlement Class, in the Action should the Settlement Agreement not be approved or implemented for any reason; and/or (ii) oppose any certification or request for certification in any other proposed or certified class action.

(i)     All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice-of-law principles.

(j)     Wells Fargo, Class Plaintiffs, their respective counsel, and the Settlement Class Members hereby irrevocably submit to the exclusive jurisdiction of the United States District Court

32

for the District of Columbia, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.

(k)     The Parties acknowledge that the Settlement Class includes both customers and non-customers of Wells Fargo, and that this Settlement Agreement makes no determination as to which Settlement Class Members are entitled to distribution from the Settlement Fund, or as to the formula for determining the amounts to be distributed.

(l)     Any proposed plan of distribution is not a necessary term of this Settlement Agreement and it is not a condition of this Settlement Agreement that any particular plan of distribution be approved.  The Plan of Distribution is a matter separate and apart from the settlement between the Parties and any decision by the Court concerning a particular plan of distribution shall not affect the validity or finality of the proposed settlement, including the scope of the release.

(m)     This Settlement Agreement may be executed in counterparts by Class Plaintiffs and Wells Fargo, and a facsimile or PDF signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

(n)     Class Plaintiffs and Wells Fargo acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so.  Therefore, Class Plaintiffs, Wells Fargo, and their respective counsel agree that they will not seek to set aside any part of this Settlement Agreement on the grounds of mistake.  Moreover, Class Plaintiffs and Wells Fargo and their respective counsel understand, agree, and expressly assume the risk that any fact may turn

33

out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

(o)     Each of the undersigned attorneys represents that he/she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval; and the undersigned Class Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Class Plaintiffs.  Each of the undersigned attorneys shall use his/her best efforts to effectuate this Settlement Agreement.

11895030v.1

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the date first herein written above.

*On behalf of Class Plaintiffs and the Settlement Class:*

*On behalf of Wells Fargo:*

_____

STEVE W. BERMAN
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue
Suite 2000
Seattle, WA 98101
Telephone: 206-623-7292
Facsimile: 206-623-0594
steve@hbsslaw.com

_____

WILLIAM F. CAVANAUGH, JR.
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: 212-336-2000
Facsimile: 212-336-2222
wfcavanaugh@pbwt.com

_____

STEPHEN NEUWIRTH
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
Telephone: 212-849-7165
Facsimile: 212-849-7100
stephenneuwirth@quinnemanul.com

_____

STEVEN A. SKALET
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
sskalet@findjustice.com

35

# Exhibit F

# FILED UNDER SEAL