Leave to file **GRANTED**
Judge Richard J. Leon

2|10|22

### UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

ANDREW MACKMIN, et al.,
*Plaintiffs*

v.

VISA, INC., et. al,
*Defendants.*

Civil Action No. 1:11-cv-1831-RJL
Assign Date: 8/4/2015
Description: Antitrust – Class Action

[Fed. R. Civ. Proc. 23(e), 23(h)]

Honorable Richard J. Leon

### CLASS MEMBER SHIYANG HUANG'S RESPONSE/OPPOSITION TO MOTION FOR SETTLEMENT APPROVAL [ECF NO. 250]:

### (1) OBJECTION TO EACH PLAINTIFF'S $10,000 SERVICE AWARD, AND

### (2) STATEMENT IN LIGHT OF D.C. CIRCUIT'S ORDER ON "QUESTIONABLE" CLASS CERTIFICATION, AND

### (3) STATEMENT TO PLAINITIFFS' ATTORNEY'S FEE REQUEST



RECEIVED
Mail Room

FEB - 7 2022

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

ARGUMENT ...................................................................................................2

    I.    *Stare decisis* demands that plaintiffs' Service Awards be denied under binding Supreme Court precedents ........................................................2

        A.    Supreme Court law is binding, even if it was from the 1800's ..2

        B.    Supreme Court precedents cannot be overruled by other courts 3

        C.    *Johnson v. NPAS Sols.* interpreted binding Supreme Court authorities that also binds this Court to deny service awards.....4

        D.    *Greenough* and *Pettus* were never overruled, and surely not overruled by footnote dicta in *China Agritech v. Resh*...............6

    II.    It is significant that the D.C. Circuit panel permitted defendants' Rule 23(f) appeal to review "questionable" class certification ....................9

    III.    The Court should heavily scritinize plaintiffs counsel's fee motion as class members' fiduciary.................................................................11

CONCLUSION ............................................................................................13

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Group, LLC,* 783 F.3d 1328 (D.C. Cir. 2015) ............................ 5

*Am. Trucking Assns., Inc. v. Smith*, 496 U.S. 167 (1990) ................................................... 9

*Boeing v. Van Gemert,* 444 U.S. 472 (1980) ....................................................................... 7

*Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663 (1974) ................................. 9

*Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, (1885) ................................ 6, 7

*China Agritech Inc. v. Resh,* 138 S. Ct. 1800 (2018) ......................................................... 8

*Creative Montessori Learning Ctr. v. Ashford Gear,* 662 F.3d 913 (7th Cir. 2011) ......... 6

*Ctr. for Bio. Diversity v. US Dept. of Interior,* 563 F.3d 466 (D.C. Cir. 2009) ................. 9

*Czyzewski v. Jevic Holding Corp.,* 137 S. Ct. 973 (2017) ................................................ 10

*Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326 (1980) .............................................. 7

*Dronenburg v. Zech,* 741 F.2d 1388 (D.C. Cir. 1984) ........................................................ 5

*Estelle v. Gamble*, 429 U.S. 97 (1976) ............................................................................... 2

*Gamble v. United States,* 139 S. Ct. 1960 (2019) .............................................................. 4

*Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147 (1980) ....................................................... 10

*Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000) ........................... 12

*Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190 (3d Cir. 2000) ................................... 14

*Hubbard v. Donahoe,* 958 F. Supp. 2d 116 (D.D.C. 2013) ...................................... 5, 13, 14

*In re GM Motors,* 55 F.3d 768 (3d Cir. 1995) ................................................................... 12

*In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988 (9th Cir. 2010) ...................... 12

*In re ODD,* No. 3:10-md-2143-RS, Dkt. 3067 (N.D. Cal. Oct. 18, 2021) ........................ 1

*In re Oracle Secs. Litig.,* 131 F.R.D. 688 (N.D. Cal. 1990) ............................................. 13

*In re Rail Freight Fuel Surcharge Antitrust Litig.,* 725 F.3d 244 (D.C. Cir. 2013) ......... 11

*In re Resistors Antitrust Litig.*, 2019 WL 5298143 (N.D. Cal. Sept. 6, 2019) ................. 14

*In re Sealed Case*, 151 F.3d 1059 (D.C. Cir. 1998) ......................................................... 9

*In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) ............................................. 13

*In re Visa, Inc.*, Nos. 21-8005, 21-8009 (D.C. Cir. Oct. 1, 2021) .................................... 11

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ........... 12

*Johnson v. NPAS Sols.*, 975 F.3d 1244 (11th Cir. 2020) ........................................... 6, 7, 8

*Kimble v. Marvel Ent'mt*, 576 U.S. 446 (2015) ............................................................... 8

*Muransky v. Godiva Chocolatier, vac'd en banc*, 939 F.3d 1278 (11th Cir. 2019) ............ 6

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ............................................................ 11

*Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020) ................................................... 2

*Phillips v. Klassen*, 502 F.2d 362 (D.C. Cir. 1974) .......................................................... 8

*Rasul v. Myers*, 563 F.3d 527 (D.C. Cir. 2009) ............................................................... 5

*Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002) .............................. 12, 14

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) ............... 6

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424 (S.D.N.Y. 2014) .................. 10

*Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1 (2000) ................................. 9

*State Oil Co. v. Khan*, 522 U.S. 3 (1997) ........................................................................ 8

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) ...................................... 13

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ..................................................... 12

*Trustees v. Greenough*, 105 U.S. 527 (1882) ............................................................... 6, 7

*United States v. City. of Miami*, 614 F.2d 1322 (5th Cir. 1980) ..................................... 12

*United States v. Torres*, 115 F.3d 1033 (D.C. Cir. 1997) ................................................ 6

*United States v. Williams*, 822 F.2d 1174 (D.C. Cir. 1987) ............................................. 9

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................... 10

*We the People Found., Inc. v. United States*, 485 F.3d 140 (D.C. Cir. 2007) .................... 5

*Williams v. Rohm & Haas Pension Plan,* 658 F.3d 629 (7th Cir. 2011)...........................13

*Wrenn v. Dist. of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) .................................................5

**Rules**

Fed. R. Civ. P. 23(h), 2003 Advisory Committee Notes....................................................11

Fed. R. Civ. Proc. 23(c)(1) ...................................................................................................8

*Rule 23 Committee Notes*—2018 amendment........................................................................1

Supreme Court Rule 14.1(a)..................................................................................................8

**Other Authorities**

Brief *Amicus Curiae* of Shiyang Huang, *Named Plaintiffs and Settlement Class Members v. Apple Inc.*, No. 21-15758, Dkt. 47 (9th Cir. Oct. 12, 2021)...............................10

Brief for Judge Alsup, *In re Logitech,* No. 19-70248, Dkt. 4-1 (9th Cir. Feb. 28, 2019).11

Brief for the United States, *Frank v. Gaos*, 2018 WL 3456069 (U.S. Jul. 16, 2018).......12

Brief of Hagens Berman, *In re Broiler Chicken Antitrust Litig.,* 1:16-cv-8637, Dkt. 5249 (N.D. Il. Dec. 6, 2021)............................................................................................4

Brief of Hagens Berman, *In re Lithium Ion Batteries Antitrust Litig.,* No. 4:13-md-2420, Dkt. 2671 (N.D. Cal. Nov. 30, 2020) ...........................................................4

Brief of Hagens Berman, *In re Optical Disk Drive Prods. Antitrust Litig.,* No. 3:10-md-2143, Dkt. 2980 (N.D. Cal. Mar. 23, 2021) ............................................................4

Brief of Plaintiffs-Appellees, *In re Apple Device Performance Litig.,* No. 21-15758, Dkt. 57 (9th Cir. Jan. 10, 2022)............................................................................................4

Fed. Judicial Ctr., Manual for Complex Litigation §21.61 (4th ed. 2004).......................14

Petition for a writ of Certiorari, *China Agritech Inc. v. Resh,* No. 17-432 www.scotusblog.com/wp-content/uploads/2017/10/17-432-petition.pdf...............9

Rule 23(f) Petition Reply, *In re Visa, Inc.,* No. 21-8005 (D.C. Cir. Sep. 7, 2021).....11, 12

Statement of Interest by the United States, *In re Apple Device Perf. Litig.,* 5:18-md-2827, ECF 575 (N.D. Cal. Dec. 2, 2020) ........................................................................2

*Yamagata v. Reckitt Benckiser LLC*, No. 3:17-cv3529-VC, Dkt. 236 (N.D. Cal. Oct. 21, 2021)...................................................................................................................1

## PRELIMINARY STATEMENT

Shiyang Huang is a class member. (claim number is 134281988). He is an "[e]xperienced class action objector" who has recovered $19 million back to class members.[1] A Chief District Judge commented that that Huang's "successful contentions certainly paralleled" experienced class action counsel ($18 million back to class members from Hagens Berman).[2] His other objection was covered by Reuters/Westlaw.[3]

Huang intends to appear in any future hearing set on this motion, if time permits. As class members are required to file objection via paper, *see* ECF Minute Order (Jan. 27, 2022), Huang notes that *Rule 23 Committee Notes*—2018 amendment requests this Court to "avoid unduly burdening class members who wish to object … a class member who is not represented by counsel may present objections that do not adhere to technical legal standards."[4] His *pro se* filings should be "liberally construed". *Estelle v. Gamble*,

---

[1] *See Yamagata v. Reckitt Benckiser LLC*, No. 3:17-cv-3529-VC, Dkt. 236 at 3 (N.D. Cal. Oct. 21, 2021) (counsel heavily relying on Huang's support of the Settlement)

[2] *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143-RS, Dkt. 3067 (N.D. Cal. Oct. 18, 2021) (awarding Huang $500 for his objection despite opposition from Hagens Berman). A copy of the Order is attached as Exhibit B.

[3] *See* Alison Frankel, *11th Circuit's strict new rule for data breach standing will figure in Equifax appeal.* WestLaw Today. https://reut.rs/2N5LZD9 (profiling Huang).

[4] U.S. Department of Justice warns that "Class counsel [often] discounts [objectors] as … disingenuous professionals … But … most consumer class members in this case and others like it do not have the time or the knowledge of legal process to file objections." *In re Apple Device Perf. Litig.*, 5:18-md-2827, ECF 575 at 7 (N.D. Cal. Dec. 2, 2020); Only "the merits of an objection are relevant". *Pearson*, 968 F.3d at 831 n.1.

429 U.S. 97, 106 (1976). He condemns and reserves his rights to disgorge from any objector(s) who display(s) "no intention of improving the settlement for the class [but] files her objection, appeals, [to] pocket[] a side payment[.]" *Pearson v. Target Corp.,* 968 F.3d 827, 832 (7th Cir. 2020). *See* Exhibit A (details satisfying all requirements for his objection here). Huang's policy is that he will **not** settle his objection for solely personal benefits but without class benefit. To honor his word here, he is willing to stipulate an injunction barring him from receiving *any* payment for this objection, unless ordered by a court. *See supra* n.1 (Huang's nominal $500 award was decided by a contested motion).

## SUMMARY OF ARGUMENTS

Huang files his Objection to chiefly focus on only one key issue pending here:[5]

**Every Named Plaintiffs' $10,000 service awards must be denied under *stare decisis*.**

Huang does not take a bright-line position to the two other issues below, but requests this Court to exercise heavy scrutiny to prevent the inherent conflicts of interest in a class-action settlement:

1. Plaintiffs' "questionable" class certification—as the D.C. Circuit concluded—warrants review under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

2. Similarly, this Court should exercise its fiduciary duty to the Class under Rule 23(e), Rule 23(h), and heavily scrutinize Plaintiffs attorney's fee request, in light of its adversarial nature to the Class recovery at the fee-setting stage.

---

[5] Huang **objects** to the pointless procedural requirements of listing history of "any comments" on class action settlements. That wasted Huang nearly two full hours to draft and is demonstrably pointless to the merits issues pending review.

## ARGUMENT

I. **STARE DECISIS** DEMANDS THAT PLAINTIFFS' SERVICE AWARDS BE DENIED UNDER BINDING SUPREME COURT PRECEDENTS

### A. Supreme Court law is binding, even if it was from the 1800's

Huang starts from a perhaps unremarkable premise: there is *no perishable date* on Supreme Court precedents until the Supreme Court overrules itself. "[A]nd the strength of the case for adhering to such decisions grows in proportion to their 'antiquity.'" *Gamble v. United States,* 139 S. Ct. 1960, 1981 (2019).

One might ask why Huang even starts from such a rather obvious principle?! Huang had to start from such a premise, because one might be astonished of how many Class Counsels still do not want to believe this principle, to this day.[4]

---

[4] Just take Hagens Berman as example: their recent filings still argue that "[t]he service awards ... were fully earned." *In re Optical Disk Drive Prods. Antitrust Litig.,* No. 3:10-md-2143, ECF No. 2980 at 2 n.11 (N.D. Cal. Mar. 23, 2021). *See also* Response to Objections, *In re Broiler Chicken Antitrust Litig.,* 1:16-cv-8637, ECF No. 5249 at 15-16 (N.D. Il. Dec. 6, 2021) ("service awards here are plainly "well within the usual norms of modest compensation paid to class representatives.") *In re Lithium Ion Batteries Antitrust Litig.,* No. 4:13-md-2420, ECF No. 2671 at 12 (N.D. Cal. Nov. 30, 2020) ("*Johnson* [*v. NPAS Sols.,* 975 F.3d 1244 (11th Cir. 2020)] is both an outlier and misapplied two cases from the 1880s."). Hagens Berman—if strange—is hardly untypical. *Cf.* Answering brief, *In re Apple Device Performance Litig.,* No. 21-15758, ECF No. 57 at 66 (9th Cir. Jan. 10, 2022) (preferring circuit law over "1800's era Supreme Court case law.")

The D.C. Circuit spilled enough ink in its published, circuit-binding opinion to describe how it expects itself and District of Columbia court, where its case are binding, to faithfully follow Supreme Court precedents. To pick just a few here:

- "We ... "must follow the binding Supreme Court precedent[.]"[5]

- "A panel of this court ... must adhere to the law of our circuit unless that law conflicts with a decision of the Supreme Court."[6]

- "We will not interpret our precedent in a way that is inconsistent with binding Supreme Court authority."[7]

- "[W]e doubt that a court of appeals ought to distinguish a Supreme Court precedent on the speculation that the Court might possibly have had something else in mind."[8]

### B. Supreme Court precedents cannot be overruled by other courts

But even these arguments might not be enough. What if Supreme Court precedents are too antiquated, expired, or simply rejected by, for example, a number of federal district courts and/or courts of appeals?[9] The Supreme Court decided that question too. "[I]t is [Supreme] Court's prerogative alone to overrule one of its precedents." *United States v. Hatter,* 532 U.S. 557, 567 (2001); *Bosse v.*

---

[5] *We the People Found., Inc. v. United States,* 485 F.3d 140, 144 (D.C. Cir. 2007).
[6] *Rasul v. Myers,* 563 F.3d 527, 529 (D.C. Cir. 2009).
[7] *Wrenn v. Dist. of Columbia,* 864 F.3d 650, 666 (D.C. Cir. 2017)
[8] *Dronenburg v. Zech,* 741 F.2d 1388, 1392 (D.C. Cir. 1984)
[9] *See, e.g., Hubbard v. Donahoe,* 958 F. Supp. 2d 116, 123 (D.D.C. 2013).

*Oklahoma*, 137 S. Ct. 1, 2 (2016). "Unless and until the Supreme Court overrules or narrows its decision in [a case], that case remains good law and is binding on lower courts." *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015). In sum, the D.C. Circuit would "'leave to [the Supreme Court] the prerogative of overruling its ... decisions[.]'" *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)). Only Supreme Court can reverse itself.

### C. *Johnson v. NPAS Sols.* interpreted binding Supreme Court authorities that also binds this Court to deny service awards

Now, Huang relies on *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, (1885). Although not binding to this Court, *Johnson v. NPAS Sols.*, 975 F.3d 1244, 1256-61 (11th Cir. 2020) interpreted *Greenough* and *Pettus* at length, so Huang avoids repeating *Johnson* more here. *Johnson* shows that Plaintiffs' $10,000 "service award" are forbidden by Supreme Court precedents. And it is inherently dangerous to assume silence-as-consent of robbing everybody a small quarter-dollar.[10] *See Creative*

---

[10] *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1197 n.10 (11th Cir.), *vacated for rehearing*, 939 F.3d 1278 (11th Cir. 2019) (noting Named Plaintiff's $10,000 award came from reducing everyone's recovery by 21 cents).

*Montessori Learning Ctrs. v. Ashford Gear, LLC,* 662 F.3d 913, 914 (7th Cir. 2011) (Posner, J.) ("class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf.")

But *Johnson* is correct in faithfully following Supreme Court precedents, *Trustees v. Greenough,* 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, (1885), rejecting calls that these Supreme Court precedents are now, somehow, "too old" to remain binding below.

Since *Johnson* already explained *Greenough* and *Pettus* in detail, 975 F.3d at 1256-57, Huang will jump straight to *Johnson*'s summary of Supreme Court law:

> We take the rule of *Greenough,* confirmed by *Pettus,* to be fairly clear: A plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses. It seems to us that the modern-day incentive award for a class representative is roughly analogous to a salary—in *Greenough*'s terms, payment for "personal services."

975 F.3d at 1258. The court concluded that "[i]f anything, we think that modern-day incentive awards present even more pronounced risks than the salary and expense reimbursements disapproved in *Greenough*." *Ibid.* "Whether … incentive award constitutes a salary, a bounty, or both, we think it clear that Supreme Court precedent prohibits it." *Id.* at 1258-59.

5

Thus, "service awards" of robbing absentee class members (Peters) $20,000 to pay two Named Plaintiffs (Pauls) cannot be allowed. With Rule 23 procedures, Named Plaintiffs—instead of having nobody to represent them—already piggybacked on absentee class members to economize attorney's fees and expenses. *Deposit Guaranty Nat. Bank v. Roper*, 445 US 326, 338-39 (1980); *Boeing v. Van Gemert*, 444 U.S. 472, 480 (1980) ("Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs.") But nowhere in the Supreme Court precedents allowed for an exclusive "Named Plaintiffs bonus", when class members are, instead, expecting Named Plaintiffs and their Counsel to be total fiduciaries as "representative party in a class action [who] "must adequately protect the interests of those he purports to represent." *Phillips v. Klassen*, 502 F.2d 362, 365 (D.C. Cir. 1974).

### D. *Greenough* and *Pettus* were never overruled, and surely not overruled by footnote dicta in *China Agritech v. Resh*

The latest attempts by some class counsel for undermining *Greenough, Pettus and Johnson* is by seizing on a mere dicta that "[t]he class representative might receive a share of class recovery above and beyond her individual claim." *China Agritech Inc. v. Resh,* 138 S. Ct. 1800, 1804 n.7 (2018). They preferably stretch *Resh* as far as <u>overruling</u> *Greenough* and *Pettus*. They are entirely wrong.

First, overruling any Supreme Court law is no small matter. And overruling statutory precedents—even if they are incorrect, antiquated, or else—requires "special justification"—over and above the belief "that the precedent was wrongly decided." *Kimble v. Marvel Ent'mt,* 576 U.S. 446, 456 (2015) (citation omitted). *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). More than *Johnson* recognized this: "[t]he Supreme Court has told us that it "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*[.]" 975 F.3d at 1260 n.12 (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000)). [11]

Next, *Resh* is mere dicta. "True, considered dicta of the Supreme Court has long been regarded as forceful, even though it is not binding." *Ctr. for Bio. Diversity v. US Dept. of Interior*, 563 F.3d 466, 481 (D.C. Cir. 2009). But there is a limit to stretching *dicta* as *sub silentio* overruling of two centuries-old Supreme

---

[11] *See also United States v. Williams*, 822 F.2d 1174, 1184 n.113 (D.C. Cir. 1987) ("we are not persuaded that [the Supreme Court] intended to overrule these well-embedded precedents *sub silentio*."); *In re Sealed Case*, 151 F.3d 1059, 1064 (D.C. Cir. 1998) ("it is rather implausible that the Supreme Court, in dicta — not to mention in a footnote — meant to overrule *sub silentio* the holdings in [cases]."); *Am. Trucking Assns., Inc. v. Smith*, 496 US 167, 190 (1990) ("In fact, it is little more than a proposal that we *sub silentio* overrule *Chevron Oil*."); *cf. Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680 (1974);

Court precedents, where "the strength of the case for adhering to such decisions [has] grow[n] in proportion to their 'antiquity.'" *Gamble,* 139 S. Ct. at 1981.

Lastly, Supreme Court Rules denies such a "*Resh* overruling" argument:

- "Only the questions set out in the petition, or fairly included therein, will be considered by the Court." Supreme Court Rule 14.1(a). But *Resh* petitioner's question presented was all about *tolling of statutory limitations,* www.scotusblog.com/wp-content/uploads/2017/10/17-432-petition.pdf, not about whether *Greenough* and *Pettus* must be overruled for being too old.

*   *   *

*Greenough* and *Pettus*—still binding precedents—foreclosed Named Plaintiffs' such disparate service awards for solely themselves. Named Plaintiffs' $20,000 reserve must be returned back to class members, because "a loss of even a small amount of money is ordinarily an "injury."" *Czyzewski v. Jevic Holding Corp.,* 137 S. Ct. 973, 983 (2017). *See also* generally Brief *Amicus Curiae* of Shiyang Huang, *In re Apple Device Performance Litig.,* No. 21-15758, ECF No. 47 (9th Cir. Oct. 12, 2021) (urging denial of service awards under *stare decisis*).

More than *stare decisis*, Service Awards risks Named Plaintiffs' ability to scrutinize class counsel. *Sakiko Fujiwara v. Sushi Yasuda Ltd.,* 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014) (criticizing Named Plaintiffs who were "placated with outsized service awards."); *Wal-Mart Stores v. Dukes,* 564 U.S. 338, 364 (2011)

(rejecting "perverse incentives for class representatives to place at risk potentially valid claims for monetary relief.")

## II.   IT IS SIGNIFICANT THAT THE D.C. CIRCUIT PANEL PERMITTED DEFENDANTS' RULE 23(F) APPEAL TO REVIEW "QUESTIONABLE" CLASS CERTIFICATION

Plaintiffs' class certification is likely defective, and this Court should *sua sponte* review it. *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1980) (citing Fed. R. Civ. Proc. 23(c)(1)). ("[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.") According to the D.C. Circuit's three-judge panel, Defendants "have shown that the district court's class certification decision was, at least, 'questionable' and is accompanied by a potential 'death-knell.'" *In re Visa, Inc.,* Nos. 21-8005, 21-8009 (D.C. Cir. Oct. 1, 2021) (citing *In re Rail Freight Fuel Surcharge Antitrust Litig.,* 725 F.3d 244, 250 (D.C. Cir. 2013)). While it does not bind any later merits panel disposition, *id.,* it still holds considerable weight as the law of the case. It warrants attention that Plaintiffs settled the case right around this time. Now-senior judge Alsup knows well about why and proposed the following:

> To avoid this prejudice to absent class members, it is better to clear away any doubts about certification, so that if certification is [decided], plaintiff's counsel can negotiate from strength with a certification win in hand. In this way, the claims of absent class members are compromised only on their merits without further discount due to the uncertainty over whether plaintiff's counsel will win class certification.

9

Brief for District Judge Alsup, *In re Logitech,* No. 19-70248, ECF No. 4-1, at 3 (9th Cir. Feb. 28, 2019). "The Rule 23 process would have flushed out any certification problems that might have steered plaintiff's counsel to accept less than a class deserves." *Ibid. Accord Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 852 n.30 (1999) ("with an already enormous fee within counsel's grasp, zeal for the client may relax sooner than it would in a case brought on behalf of one claimant.") Defendants noted their exposure up to **$9,000,000,000 ($9 billion)**. Reply in Support of Rule 23(f) Petition, *In re Visa, Inc.,* No. 21-8005, at 10 (D.C. Cir. Sep. 7, 2021). Yet, Plaintiffs settled for only a chunk change amount of **$67 million** (0.75 percent of $9 billion), while securing Defendants' consent in a deal to swallow up to **33% (some $22 million) as their own fees**. Thus, it is critical to know whether Plaintiffs settled because class certification remains "questionable."

Turning attention now to how Defendants have demonstrated class certification to be "questionable," Defendants argued that "[t]he Significant Number of Uninjured Members in Each Class Bars Class Certification Here[.]" *Id.* at 3. Huang will let Defendants' briefs speak for themselves, and he hereby attaches their Opening Petition and Reply Brief as **Exhibits C and D**. The Court should review whether D.C. Circuit's guidance confirms any issues in class certification. *Cf. TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2201, 2208 (2021) (standing is required for *every* class member). *See also id.* at 2202 n.4.

### III. THE COURT SHOULD HEAVILY SCRITINIZE PLAINTIFFS COUNSEL'S FEE MOTION AS CLASS MEMBERS' FIDUCIARY

A majority of circuits agree that this Court serves as a "fiduciary" to protect class members from exorbitant fee requests by Plaintiffs' counsel.[12] Yet, it will be rather difficult to ascertain what is a "reasonable" percentage award for counsel.

The D.C. Circuit's binding precedent asks that fees in a common-fund case should be awarded as a percentage-of-fund, in which the "percentage" should be "reasonable" to "approximate the market with reasonable accuracy." *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1265, 1269 (D.C. Cir. 1993). While most circuits employed a default percentage approach, the Seventh Circuit's approach is the closest to D.C. Circuit's "approximate the market" instruction. The Seventh Circuit requires district courts to "assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys." *Williams v. Rohm & Haas Pension Plan,* 658 F.3d 629, 635 (7th Cir. 2011). Their criteria for consideration include:

---

[12] Brief for the United States, *Frank v. Gaos,* No. 17-961, 2018 WL 3456069, at *4 (U.S. Jul. 16, 2018) (Solicitor General); *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 52 (2d Cir. 2000); *In re GM Motors,* 55 F.3d 768, 785 (3d Cir. 1995); *United States v. City of Miami,* 614 F.2d 1322, 1331 (5th Cir. 1980) (pre-1981 Fifth Circuit law also binds the Eleventh Circuit); *Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277, 279-80 (7th Cir. 2002); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 932 (8th Cir. 2005); *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 994 (9th Cir. 2010).

… data from securities suits where large investors have chosen to hire counsel up front… At about the same time some district judges started conducting auctions for the right to be lead counsel, and the outcome of these auctions provide [another] benchmark.

*In re Synthroid Mktg. Litig.,* 264 F.3d 712, 719 (7th Cir. 2001) (Easterbrook, J.) Those "a majority of common fund class action fee awards fall between twenty and thirty percent." *Swedish Hosp.,* 1 F.3d at 1272, true percentages can range wildly between "fifteen to forty-five percent" depending on facts of each case. *Hubbard,* 958 F. Supp. 2d at 126.  Though, under the market-approximation approach, it would be "inherently illogical for lawyers to undertake litigation on the basis of the risks and rewards they perceive at the beginning, yet be compensated on the basis of the risks and rewards the court perceives at the end of the litigation." *In re Oracle Secs. Litig.,* 131 F.R.D. 688, 692 (N.D. Cal. 1990) (Walker, J.)).

Huang emphasizes that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process." Fed. R. Civ. P. 23(h), 2003 Advisory Committee Notes. As a result, "the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge." *Reynolds,* 288 F.3d at 286 (citing *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 192 (3d Cir. 2000)). *Also see* Fed. Judicial Ctr., Manual for Complex Litigation § 21.61, at 310 (4th ed. 2004) (Manual) ("[T]he judge must adopt the role of a skeptical client[.]"); *Cf. Hubbard,* 958 F. Supp. 2d at 125 ("[T]he obvious lack of any market restraints on the amount of time spent causes

the Court to be highly skeptical of counsel's claim that the number of hours is reasonable.") *In re Resistors Antitrust Litig.*, 2019 WL 5298143, *2 (N.D. Cal. Sept. 6, 2019) (resisting to "award millions of dollars based on counsel's and the named plaintiff's say-so, especially when that money will be taken directly out of the hands of class members.") Huang also submits Hagens Berman's various disclosed bids elsewhere, as comparison for this Court's decision.

## CONCLUSION

Each Plaintiffs' $10,000 service awards must be denied under *stare decisis.*

Plaintiffs' "questionable" class certification warrants additional scrutiny.

This Court should exercise its fiduciary to class members and scrutinize Plaintiffs attorney's fee request in light of its adversarial nature to the Class.

Dated: January 27, 2022                    Respectfully Submitted,

Shiyang Huang
/s/ SHIYANG HUANG
2800 SW Engler Ct.
Topeka, KS 66614
314-669-1858
defectivesettlement@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2022, I filed the foregoing motion with this Court, and ECF will notify all participants in the case.

/s/ Shiyang Huang

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW MACKMIN, et al., *Plaintiffs* <br><br> v. <br><br> VISA, INC., et. al, <br><br> *Defendants.* | Civil Action No. 1:11-cv-1831-RJL <br> Assign Date: 8/4/2015 <br> Description: Antitrust – Class Action <br><br> [Fed. R. Civ. Proc. 23(e), 23(h)] <br><br> Honorable Richard J. Leon |

## HUANG'S SUPPLEMENTAL DISCLOSURE TO OBJECTION REQUIREMENTS

Objector Shiyang Huang submits the following in response to class notice requirement.

He OBJECTS to items (4) and (8) below as pointlessly burdensome and irrelevant to merits.

1. **An explanation of why you believe you are a Settlement Class Member;**

Huang is a class member because he used a Visa card and "paid an unreimbursed ATM Access Fee directly to any Bank Defendant or Bank Co-Conspirator for a Foreign ATM Transaction using an ATM card issued by a financial institution in the United States to withdraw cash at an ATM located in the United States at [some]time from October 1, 2007 to the date of the Preliminary Approval Order, which was on November 12, 2021." (class definition). Huang filed a claim under claim number 134281988.

2. **If you are objecting, a statement whether the objection applies only to the objector, or to a specific subset of the Class, or to the entire Class;**

His objection applies to the entire Class.

3. **All reasons for your objection or comment, stated with specificity;**

*See* Details stated in the main document.

4. **A statement identifying the number of class action settlements you have objected to or commented on in the last five years;**

**Class Counsel must be condemned for leveraging such requirement to deter objections to their fee requests. Huang OBJECTS to this requirement.** He reserves rights to **bill Class Counsel by the hour for complying with basically a discovery requirement. Huang spent more than 90 minutes completing this utterly pointless ask, plus updating this document for various reasons.** He, in good faith, did his best to comply with this tireless demand here, but he is an "experienced class action objector," (*see infra*), thus his best attempt to recollect his substantial involvement in class-action settlements might inadvertently exclude any cases that he was unable to recall. Lastly, Huang repeats that he has **never** sought improper, selfish payments for withdrawing his objections but without any meaningful benefits to the Class. Should any counsel improperly launch *ad hominem* attack by accusing improper conducts, such frivolous acts will be likely to be simply self-inflicting.

### Involvements as a class member

1) I successfully objected *In re Optical Disk Drive Prods. Antitrust Litig.,* No. 3:10-md-2143 (N.D. Cal.). The Court agreed with my objection in part, and **reduced Hagens Berman's attorney's fee by $18 million because "Hagens Berman's initial fee application fell short of meeting its full duty of candor".** *In re ODD,* 2021 WL 3502506, at *10 (N.D. Cal. Jul. 2, 2021) (Seeborg, C.J.). **I was awarded $500, in full, despite fierce opposition from Hagens Berman,** because the result ($18 million fee reduction to the benefit of Class) "would have been basically the same had [all other objectors] dropped out, and *only* Huang had been making the arguments." *ODD,* ECF No. 3067.

2) I successfully objected in *Kukorinis v. Walmart Inc.,* No. 1:19-cv-20592, ECF No. 98 at 7 & n.4 (S.D. Fla. Sep. 21, 2021) (noting Huang solely discovered class counsel's "double counting" of litigation costs, and that Huang's objection led to class counsel's re-filed

attorney's fee motion for $1.25 million lower). The Court additionally reduced about $225,000 of the fee, totaling **$1.5 million more money to class members.** I moved for and was **awarded $1.00** (yes, only one single dollar) for my work saving the Class $1.25 million.

3) I successfully opposing sealing of documents and re-attempted final approval of class-action settlement in *Briseno v. Conagra Foods, Inc.,* No. 2:11-cv-5379 (C.D. Cal.), on remand from the Ninth Circuit in *Briseno v. Henderson,* 998 F.3d 1014 (9th Cir. 2021). The Court granted my opposition and unsealed documents in part, and denied the Settlement approval. Class Counsel currently sought reconsideration of the Court's denial of final approval.

4) I moved for extension of objection deadline in *Hesse v. Godiva Chocolatiers, Inc.,* No. 19-cv-972 (S.D.N.Y), ECF No. 74 (Jan. 26, 2021).

5) I filed opposition to preliminary approval in *Hadley v. Kellogg Sales Co.,* No. 16-cv-04955 (N.D. Cal.). The Court denied preliminary approval for reasons resembling Huang's argument that that case was a coupon settlement. 2020 WL 836673 (N.D. Cal. Feb. 20, 2020). The parties altered the Settlement class definition afterwards, and I did not object afterwards.

6) I filed a letter to class counsel, **in support of attorney's fee motion** as a class member. *Yamagata v. Reckitt Benckiser LLC,* No. 3:17-cv-3529-VC, ECF No. 236 at 3 (N.D. Cal. Oct. 21, 2021) (counsel repeatedly cites Huang's support as an "experienced class action objector" for reasonableness of their fee request).

7) I objected, appealed, and filed a cert petition with the United States Supreme Court in *In re Equifax,* 999 F.3d 1247 (11th Cir. 2021), *cert. denied,* No. 21-336 (U.S. Nov. 1, 2021) (Another cert. petition was filed by another Objector. No. 21-638 (Jan. 10, 2022) (denied)) My appeal was covered by Reuters.com. *See* Frankel, *11th Circuit's strict new rule for data breach standing will figure in Equifax appeal.* Reuters.com  https://reut.rs/2N5LZD9

3

(profiling my **Article III standing** arguments in detail). *Equifax* Class Counsel told the Eleventh Circuit that "the district court has never found [Huang] to be a serial objector." *See* Plaintiffs' Response, *Huang v. Spector,* No. 20-10249, at *15 (11th Cir. May 27, 2020).

8) I objected, appealed, and filed a cert petition with the United States Supreme Court arising from *Schultz v. Edward Jones Co., LLP.,* 791 Fed. Appx. 638 (8th Cir. 2020), *cert denied,* 141 S. Ct. 252 (2020). The **Article III standing** issues I petitioned for was subsequently touched on in *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2208 n.4 (2021).

9) I moved to intervene in *Schwartz v. Yahoo! Inc.,* No. 20-16633 (9th Cir.), arising from the Yahoo! Data Breach. I did not object in the district court, but intervened on appeal for **Article III standing** issues in light of *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021) (reversing Ninth Circuit precedents).

10) I objected to *In re Pork Antitrust Litig.,* No. 18-cv-1776 (D. Minn.). I presented oral arguments to the Court in the fairness hearing solely regarding **Rule 23 class certification's evidentiary standards**, and the motion is pending.

11) I objected to *In re Broiler Chicken Antitrust Litig.,* No. 1:16-cv-8637 (N.D. Il.). I objected to **service awards, fee requested by plaintiffs' counsel, after a contested class certification request with disputed admissibility regarding experts' testimonies**. The proceedings remain pending.

4

**Involvements as a non-class member**

1) I filed a motion to brief as *amicus curiae* in support of rehearing in *In re Google Inc. Street View Electronic Communications Litigation,* --F.4th--, No. 20-15616, 2021 WL 6111383 (9th Cir. Dec. 27, 2021), *granted* (9th Cir. Jan. 19, 2022).

2) I filed a motion to brief as *amicus curiae* in support of vacating **"service awards"** in support of objectors-appellants in *In re Apple Inc. Device Performance Litig.,* No. 21-15758 (9th Cir.)

3) I filed a motion to determine Plaintiffs' Article III standing in *In re Capital One Customer Data Sec. Breach Litig.,* 1:19-md-2915 (E.D. Va.). The motion has not been docketed yet, as of the date I prepared this filing.

4) I filed *amicus* briefs in *Smith v. Costa Del Mar, Inc.,* No. 3:18-cv-1011 (M.D. Fla.), solely on (a) impermissibility to withhold jurisdiction to decide **service awards** issues under *Johnson v. NPAS Sols., Inc.,* 975 F.3d 1244 (11th Cir. 2020) and (b) assisting the Court to decide how it intends to distribute $4 million arising from the Court's decision to reduce counsel's fee awards (Huang did not argue for any fee amounts).

5) I filed a motion to brief as *amicus curiae,* in *In re Blue Cross Blue Shield Antitrust Litig.,* MDL 2406, 2:13-cv-20000 (N.D. Ala.). The motion was denied but the Court agreed with Huang that it will review Article III jurisdiction. I opted out of my class membership and thus sought leave instead to appear as *amicus curiae.*

4) I moved to appear as *amicus curiae* in *Larson v. Allina Health Sys.,* 17-cv-3835 (D. Minn.). The motion was denied.

    5. **The name and contact information of any and all attorneys representing, advising, or assisting you, including any counsel who may be entitled to compensation for any reason related to your objection or comment;**

5

None. If Huang were to become represented by attorney(s) in future, Huang will disclose all such usual and customary information at the earliest opportunity.

6. **Whether any attorney will appear on your behalf at the Final Approval Hearing, and if so the identity of that attorney;**

None. *See* response to question #5.

7. **The identity of any persons who wish to be called to testify at the Final Approval Hearing; and**

None.

8. **Your handwritten or electronically imaged written (e.g., "DocuSign") signature. An attorney's signature, or a typed signature, is not sufficient.**

Huang provides the following scribble as his "electronically imaged written signature" He duly complies with the requirement but **OBJECTS** to Plaintiffs' pointless and burdensome demand, to undermine meritorious objections with such booby-traps for procedural noncompliance.

DATE: January 27, 2022                                  /s/Shiyang Huang
                                                         Shiyang Huang

6

# EXHIBIT B

1

2

3

4

5

6

7                           UNITED STATES DISTRICT COURT

8                          NORTHERN DISTRICT OF CALIFORNIA

9

10

11    IN RE OPTICAL DISK DRIVE                    Case No. 10-md-02143-RS
      PRODUCTS ANTITRUST LITIGATION               MDL No. 2143
12

13                                                **ORDER DIRECTING PAYMENT TO**
                                                  **OBJECTOR HUANG**
14    This document relates to: ALL INDIRECT
      PURCHASER ACTIONS
15

16

17

18

19        Objector Shiyang Huang seeks an "incentive" award of $500, to be paid from the fees

20    awarded to class counsel Hagens Berman, for the role he contends his post-remand objections

21    played in increasing the fund to be distributed to the class by nearly $22 million. While no party

22    has pointed to clear authority for making "incentive" awards to objectors who appear without

23    counsel, it would be inequitable to treat such objectors categorically differently from those who

24    are represented by counsel, and who are sometimes given such awards, as objector Conner Erwin

25    was in this case.

26        Indeed, Hagens Berman acknowledges the circumstances here "do not categorically

27    preclude an objector award." Hagens Berman argues, however, that Huang's efforts were not the

28    *cause* of the increase in the class fund and that he did not meaningfully benefit the class in any

1    way. Hagens Berman points out that Huang played no role in the Ninth Circuit's decision to

2    vacate the original fee awards and to remand. Hagens Berman contends Huang's arguments after

3    remand were either duplicative of those advanced by Erwin, rejected by the court, or in some

4    instances both. Counsel also faults Huang for making "groundless motions and other requests."

5        To be sure, not every argument presented by Huang was accepted, and some were

6    completely without merit. The same, however, could be said of the arguments presented by Erwin,

7    who Hagens Berman conceded was entitled to an incentive award as well as attorney fees.[1]

8    Although Huang's successful contentions certainly paralleled those presented by Erwin, Huang

9    did not merely ride on Erwin's coattails, or parrot his arguments. Rather, Huang conducted his

10   own research and analysis, which he presented articulately and, for the most part, respectfully.

11       Although Huang is entitled to no credit for the remand, in the post-remand proceedings his

12   work and Erwin's work both contributed to the ultimate result. While the final conclusions likely

13   would have been nearly identical had Huang not participated, they also would have been basically

14   the same had Erwin dropped out, and *only* Huang had been making the arguments. Thus, while

15   both objectors presented largely the same successful arguments, the result is that they are both

16   entitled to an incentive award—not that one cannot recover for lack of causation.

17       Under the specific and unusual circumstances in this prolonged litigation, an award of

18   $500 to Huang, to be paid from the attorney fees previously awarded to Hagens Berman is

19   warranted. Hagens Berman shall make payment within 30 days of the date of this order.

20

21

22

23

24

25

26

---

[1] Hagens Berman challenged only the amount of fees Erwin requested, and the adequacy of his
evidentiary showing to support that or any other amount.

27

28

1   **IT IS SO ORDERED**.

2

3   Dated: October 18, 2021

4                                              _____

5                                              RICHARD SEEBORG
                                              Chief United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

CASE No. 10-md-02143-RS

# EXHIBIT C

Case No. 21-8005

---

IN THE

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

THE NATIONAL ATM COUNCIL, INC.; ATMS OF THE SOUTH, INC.;
BUSINESS RESOURCE GROUP, INC.; CABE & CATO, INC.; JUST ATMS,
INC.; WASH WATER SOLUTIONS, INC.; ATM BANKCARD SERVICES,
INC.; MEINERS DEVELOPMENT COMPANY OF LEE'S SUMMIT,
MISSOURI, LLC; MILLS-TEL, CORP.; SELMAN TELECOMMUNICATIONS
INVESTMENT GROUP, LLC; SCOT GARDNER; TURNKEY ATM
SOLUTIONS, LLC; TRINITY HOLDINGS LTD, INC.; T&T
COMMUNICATIONS, INC.;
AND RANDAL N. BRO, PLAINTIFFS-RESPONDENTS

v.

VISA INC.; VISA U.S.A. INC.; VISA INTERNATIONAL SERVICE
ASSOCIATION; PLUS SYSTEM, INC.; MASTERCARD INC.; AND
MASTERCARD INTERNATIONAL INC., DEFENDANTS-PETITIONERS

---

ANDREW MACKMIN; BARBARA INGLIS;
AND SAM OSBORN, PLAINTIFFS-RESPONDENTS

v.

VISA INC.; VISA U.S.A. INC.; VISA INTERNATIONAL SERVICE
ASSOCIATION; PLUS SYSTEM, INC.; MASTERCARD INC.; AND
MASTERCARD INTERNATIONAL INC., DEFENDANTS-PETITIONERS

---

PETER BURKE; KENT HARRISON; MARIN P. HEISKELL;
AND BRYAN BYRNES, PLAINTIFFS-RESPONDENTS

v.

VISA INC.; VISA U.S.A. INC.; VISA INTERNATIONAL SERVICE
ASSOCIATION; PLUS SYSTEM, INC.; MASTERCARD INC.; AND
MASTERCARD INTERNATIONAL INC., DEFENDANTS-PETITIONERS

On Petition for Interlocutory Appeal From an Order of
The United States District Court for the District of Columbia
(Civ. Nos. 11-1803, 11-1831, 11-1882)
The Honorable Richard J. Leon, District Judge

**PETITION OF DEFENDANTS FOR PERMISSION TO APPEAL ORDER
GRANTING CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(f)**

MATTHEW A. EISENSTEIN
ROSEMARY SZANYI
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001
(202) 942-5000

KENNETH A. GALLO
JUSTIN ANDERSON
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 223-7300

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

QUESTION PRESENTED .....................................................................................3

RELIEF SOUGHT .................................................................................................3

STATEMENT OF THE FACTS ............................................................................4

REASONS FOR GRANTING THE PETITION...................................................11

    A.    It Was Manifestly Erroneous to Certify a Class Without
        Scrutinizing Evidence of Uninjured Class Members .........................12

    B.    The Decision Below Creates Unwarranted Pressure to Settle
        Plaintiffs' Claims...............................................................................21

    C.    Special Circumstances Warrant Interlocutory Review of the
        Certification Decision Below .............................................................22

CONCLUSION .....................................................................................................23

Pursuant to Federal Rule of Civil Procedure 23(f), petitioners Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc. (collectively, "Visa") and Mastercard Incorporated and Mastercard International Incorporated (collectively, "Mastercard") respectfully petition for permission to appeal the order of the district court (Leon, J.) certifying three classes in these consolidated cases.

## INTRODUCTION

In these three consolidated antitrust matters, plaintiffs claim to have been injured by non-discrimination rules that prevent ATM operators from imposing discriminatory fees on consumers who withdraw cash through Visa's or Mastercard's ATM network. The district court's decision to certify these classes was flawed, making this a paradigmatic case for interlocutory review under Rule 23(f).

Specifically, this Court recently stated in *In re Rail Freight Fuel Surcharge Antitrust Litigation* that the predominance requirement cannot be met (and a class cannot be certified) if the proposed class includes a significant number of uninjured members. 934 F.3d 619, 624 (D.C. Cir. 2019) ("*Rail Freight II*"). At least one other circuit has reached the same conclusion, reversing certification where thousands of unidentified class members were likely uninjured. *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53–54 (1st Cir. 2018) ("*Asacol*").

1

Here, petitioners adduced unrebutted evidence that each of the three proposed classes contains substantial numbers of uninjured members.  In the two cases involving consumer plaintiffs, petitioners identified tens of thousands of uninjured class members and demonstrated the near-certain existence of hundreds of thousands more.  In the third case involving ATM operator plaintiffs, petitioners presented evidence to show that, by definition, plaintiffs' proposed class necessarily contained a substantial number of uninjured class members.  The district court nevertheless certified each class, in a decision that did not scrutinize, or even discuss, this evidence.  The decision made no finding that plaintiffs can prove common injury without sweeping in uninjured class members.  Rather, the court determined that plaintiffs' theories of classwide injury were "colorable," and further inquiry was "better suited for adjudication of plaintiffs' injury and damages on the merits, not at the class certification stage."  Opinion, No. 1:11-cv-01882-RJL, ECF No. 154 at 12–14 (D.D.C. Aug. 4, 2021) ("Opinion").

Certifying a class notwithstanding evidence of uninjured class members was manifestly erroneous, particularly where the evidence was not scrutinized prior to certification.  The issue of uninjured class members cannot be deferred until the merits stage of the case.  The Supreme Court "require[s] a determination that Rule 23 is satisfied, even when that requires inquiry into the merits of the claim." *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 35 (2013) (citation omitted).  As this

Court reaffirmed in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, "[i]t is now indisputably the role of the district court to scrutinize the evidence before granting class certification."  725 F.3d 244, 253 (D.C. Cir. 2013) ("*Rail Freight I*").  None of plaintiffs' proposed classes, much less all three, should have been certified, particularly without first scrutinizing the evidence of uninjured class members.  This erroneous ruling also warrants immediate correction because of its potential to sound the death knell for this litigation in light of the magnitude of the claimed damages (subject to trebling and joint and several liability), effectively foreclosing this Court's ability to get involved at a later point.  The petition for interlocutory review therefore should be granted, and the order granting plaintiffs' motions for class certification should be reversed.

## QUESTION PRESENTED

Whether Federal Rule of Civil Procedure 23 requires a district court to scrutinize the record and deny class certification where the plaintiffs have failed to show that they can prove, through common evidence, that all or virtually all members of the proposed class suffered injuries caused by the challenged conduct.

## RELIEF SOUGHT

The petition for permission to appeal should be granted, and the order granting plaintiffs' motions for class certification should be reversed.

plaintiff group had come forward with a model of injury and damages that was

"colorable." *Id.* at 12–14.

## REASONS FOR GRANTING THE PETITION

Interlocutory review of a district court's class certification order is

appropriate when: (i) a certification decision is manifestly erroneous; (ii) a "death-

knell situation" arises after a "questionable" certification decision; or (iii) a

certification decision presents an unsettled and fundamental issue of class-action

law that is likely to evade review at the end of the case. *In re Lorazepam &*

*Clorazepate Antitrust Litig.*, 289 F.3d 98, 105 (D.C. Cir. 2002). This Court may

also grant permission to appeal in "special circumstances." *Rail Freight I,* 725

F.3d at 250, 253–54.

A certification decision that does not apply the correct standard or that is

squarely foreclosed by the cases upon which the petitioner relies is manifestly

erroneous. *See In re Johnson*, 760 F.3d 66, 72 (D.C. Cir. 2014). A certification

decision creates a "death-knell situation" when it "exert[s] substantial pressure on a

defendant to settle rather than incur the costs of defending a class action and run

the risk of potentially ruinous liability," especially in the instance of

"nonmeritorious or marginal claims." *Amgen Inc.* v. *Conn. Ret. Plans & Trust*

*Funds*, 568 U.S. 455, 474 (2013) (internal quotation marks and citation omitted);

*Rail Freight I*, 725 F.3d at 252 (internal quotation marks and citation omitted).

11

And while this Court has not fully defined "special circumstances," it has observed that a certification decision creates special circumstances when it implicates multiple justifications for immediate review. *See Rail Freight I*, 725 F.3d at 250.

Under those standards, interlocutory review of the district court's class certification order is warranted.

### A.    It Was Manifestly Erroneous to Certify a Class Without Scrutinizing Evidence of Uninjured Class Members

This Court held in *Rail Freight I* and *II* that district courts must analyze plaintiffs' ability to exclude uninjured class members using common proof before certifying a class, even when that analysis requires inquiry into the merits of plaintiffs' claims. But the decision below certified each of the three classes here without any scrutiny of the evidence showing significant numbers of uninjured class members. *See* Opinion at 12–14. Instead, the decision below improperly deferred to the merits stage of litigation petitioners' evidence and expert analysis regarding the scope of uninjured class members. *See id.* That evidence showed significant numbers of uninjured members in each proposed class, which precludes certification. The decision to certify a class despite that evidence constitutes manifest error.

Rule 23(b)(3) requires plaintiffs to show that questions of law or fact common to class members "predominate" over individual questions. As with all Rule 23 factors, courts must conduct a "rigorous analysis" at the class certification

stage to determine if plaintiffs have met the predominance requirement, even when

that analysis overlaps with merits analysis.  *Comcast Corp.*, 569 U.S. at 33–35

(quotation omitted); *accord Rail Freight I*, 725 F.3d at 253.

 To meet the predominance requirement, plaintiffs must show at the class-

certification stage that they can prove, through common evidence, that all or nearly

all members of each putative class were injured by the alleged illegal conduct.

*Rail Freight I*, 725 F.3d at 252.  Common questions of fact cannot predominate

where plaintiffs' proffered methodology "detects injury where none could exist."

*Id.*; *accord Asacol*, 907 F.3d at 51–54 (1st Cir. 2018).  In other words, common

proof of antitrust conspiracy is not sufficient; a putative class must also present a

valid methodology for excluding all or nearly all uninjured class members.

 At the class certification stage, it is "indisputably" the district court's role to

"scrutinize" expert evidence before certifying a class to ensure the class does not

include uninjured members, even when doing so "requires inquiry into the merits

of the claim."  *Rail Freight I*, 725 F.3d at 253; *see also Blades* v. *Monsanto Co.*,

400 F.3d 562, 567 (8th Cir. 2005).  Weighing conflicting expert testimony at the

certification stage not only is permissible, it is integral to the rigorous analysis that

Rule 23 demands.  *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184,

192–93 (3d Cir. 2020); *see also Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442,

13

454–55 (2016) (focusing on the reliability of expert evidence at the certification stage).

The certification-stage inquiry into the scope of uninjured class members is especially critical where, as here, the unrebutted evidence demonstrates that each of the three putative classes includes an abundance of *uninjured* members.  Opp'n 29–38, 43–56.  Although this Court has not resolved the question whether there may be an exception for some *de minimis* number of uninjured class members, such an exception would involve a number of uninjured class members much smaller than the numbers at issue here.  *See Rail Freight II*, 934 F.3d at 625–26.

Yet, the court below expressly postponed considering the scope of uninjured class members for the merits stage.  Because the decision below expressly did not scrutinize this issue, certifying each of the three putative classes was manifestly erroneous.  In fact, none of the classes should have been certified on the record below.

1.    First, the proposed *Mackmin* class includes consumers who conducted foreign ATM withdrawals solely at banks that did not raise surcharges during the relevant time period—a group that includes at least ***hundreds of thousands*** of consumers and millions of transactions.

Professor Carlton, expert for the *Mackmin* Plaintiffs, theorized that all class members suffered injury because all bank operators pass on as increased

surcharges to consumers any costs resulting from decreasing net interchange. *See* Opp'n at 30. But that is demonstrably not true. Professor Carlton's opinion was based on his conclusion that a single bank ATM operator appeared to have increased its ATM surcharges during a seven-year period when net interchange was decreasing. *Id.* at 30–31. But petitioners' expert, Professor Hubbard, refuted Professor Carlton's theory by demonstrating, with unrebutted evidence, that other bank ATM operators did *not* increase their surcharges following decreases in net interchange during the same seven-year time period. *See id.*; Visa and Mastercard Defs.' Sur-Reply in Opp'n to Pls.' Mots. for Class Cert., No. 1:11-cv-01831-RJL, ECF No. 220 Ex. 5 ("Sur-Reply") at 4–6. Consumers solely transacting at the ATMs owned by banks that did not raise surcharges during this period—all of whom are included in the *Mackmin* Plaintiffs' class definition—were not injured. Even looking at transaction data from just one issuing bank, Professor Hubbard identified at least 50,000 uninjured consumers. Opp'n at 33–34; Sur-Reply at 3–6. Professor Hubbard further explained that similar analyses of other issuing banks would reveal uninjured class members of a similar magnitude. Opp'n at 34.

Despite petitioners' unrebutted expert evidence, which confirmed the near-certain existence of *hundreds of thousands of uninjured class members*, the decision below did not include a "rigorous analysis" of the *Mackmin* Plaintiffs' proffered theories of classwide injury. *Rail Freight I*, 725 F.3d at 255. It did not

15

address petitioners' evidence at all, concluding it "is better suited for adjudication

of plaintiffs' injury and damages on the merits, not at the class certification stage."

Opinion at 13.

That is not permitted.  This Court has made clear that it is "indisputably" the

role of the district court to scrutinize the evidence before certifying a class to

ensure the class does not include uninjured members, even when doing so

"requires inquiry into the merits of the claim." *Rail Freight I*, 725 F.3d at 253

(quoting *Comcast*, 569 U.S. at 35).  The decision below did not analyze, but

instead postponed considering, petitioners' evidence of uninjured class members

because that inquiry overlapped with merits issues.  Certifying the *Mackmin* class

notwithstanding that evidence was manifestly erroneous.

2.     Second, the *Burke* class also includes a substantial number of

uninjured class members.

Like Professor Carlton, the *Burke* Plaintiffs' expert Dr. Lehr theorized that,

under the economic principles of near-perfect competition, all independent ATM

operators must pass through decreases in net interchange to consumers as increases

in surcharges.  Opp'n at 34–35.  Dr. Lehr did not support or otherwise test this

assumption with any analysis of data from ATM operators, instead relying

exclusively on his assumption of how markets—*in theory*—should work.  *Id.*  In

contrast, petitioners' expert Professor Hubbard demonstrated with actual and

unrebutted data that numerous independent ATM operators did *not* raise their surcharges in the five years following the largest decreases in Visa/Plus and Cirrus net interchange during the class period. *Id.* at 34–35, Sur-Reply at 10–11.

Putative *Burke* class members who made withdrawals only from independent ATMs that did not raise surcharges in response to decreased net interchange suffered no injury under plaintiffs' theory. Although *Burke* Plaintiffs did not provide any data with which to establish the number of uninjured consumers, Professor Hubbard opined that a reasonable estimation would likely be substantial given the number of independent ATM operators that fall into this category. Opp'n at 37.

Despite the near-certainty that *Burke* Plaintiffs' proposed class contains a substantial number of uninjured class members, the district court nevertheless certified the class. As with the *Mackmin* class, the decision below did not rigorously analyze whether the *Burke* Plaintiffs have met the requirements of *Rail Freight I* and *II.* Once again, the decision improperly deferred any analysis of the prevalence of uninjured class members until the merits stage of the litigation. Opinion at 12–13. Certifying the *Burke* class notwithstanding the evidence of uninjured class members was manifest error.

3.      Finally, the Operator class also includes uninjured class members. Worse, the Operator Plaintiffs have provided no meaningful information to determine which putative class members were and were not allegedly injured.

The Operator Plaintiffs assert that all class members were overcharged the same per-transaction amount for every authorized and surcharged ATM transaction over Visa/Plus and Cirrus because the rules prevented their proposed class members from making network-specific adjustments to surcharge rates. *See* Opinion at 14.  However, petitioners presented unrefuted evidence that any number of independent ATM operators were contractually or technologically *incapable* of making these corresponding surcharge adjustments.

For example, even if Visa/Plus and Cirrus had permitted differential surcharging, certain independent ATM operators:  (i) would still be subject to the rules of other networks (none of which are parties here), some of which predate the Visa/Plus and Cirrus rules or are more stringent (*e.g.*, requiring uniform surcharging) or both, Opp'n at 51–53; (ii) would not be able to adjust surcharges at ATMs where they had ceded surcharging authority to merchants or landlords, *id.* at 53–55; (iii) would not have purchased the software or hardware necessary to differentially surcharge, *id.* at 55; or (iv) would not have been able to differentially surcharge because of routing incentive contracts with Visa/Plus and Cirrus, *id.* at 56.  Those operators suffered no injury compared to the but-for world in which

18

Visa/Plus and Cirrus did not impose their rules.  Notably, Professor Hubbard found that at least 70% and up to 98% of independent ATM operators fall into at least one of these categories.  Hubbard Rep. ¶¶ 145, 275, 278–79.

Moreover, the Operator class methodology covers all "independent ATM Operators"—a term that, as defined by Operator Plaintiffs, includes multiple types of entities that are involved in operating and servicing independent ATMs.  Opp'n at 44–45.  A single ATM may involve various firms that own the ATM, service and maintain the ATM, load cash into the ATM, or engage in some combination of those activities—and each such entity may be an "independent ATM operator" under the class definition.  *Id.* at 45–46.  Because of the complex and variable business arrangements between these entities, some of these entities are "operators" under the relevant class definition *but do not directly or indirectly receive or pay any components of net interchange.  Id.* at 46–47; Sur-Reply at 15.[5] Indeed, although Operator Plaintiffs claim that damages can be properly limited to the transactions at issue, Operator Plaintiffs cannot dispute that their methodology

---

[5]   For example, a retail store may own or load cash into an ATM on its premises, but contract with an independent sales organization ("ISO") to connect its ATM to banks and payment networks.  Under the store's agreement with the ISO, the ISO may be the only party responsible for receiving interchange revenue from and paying acquirer fees to the acquiring bank—even though the store itself is also an "Operator" under the Operator Plaintiffs' class definition.  *See* Opp'n at 47–49.

does not exclude proposed class members that do not receive or pay any
components of the alleged overcharge, and are thus, by definition, uninjured.
Opp'n at 50.

 Here too, the decision below deferred analysis of the existence of uninjured
class members to the merits stage of the litigation.  Opinion at 14.  As with the
*Mackmin* and *Burke* classes, the court did not conduct a rigorous analysis or take a
hard look at the inclusion of uninjured class members before certifying the
Operator class.  The court simply noted the petitioners "contest[ed] the merits of
plaintiffs' injury and damages models" but concluded that "plaintiffs have met
their burden here of demonstrating a colorable method by which they intend to
prove class-wide impact."  *Id.*  But *Rail Freight I* requires that the district court
resolve the extent to which a putative class contains uninjured class members, not
merely a determination that plaintiffs' theories are "colorable."  *See* 725 F.3d at
250, 255 (vacating class certification where district court determined that plaintiff
expert's models were "plausible" and "workable" but did not consider defendants'
arguments that the models were flawed).  This determination to certify a class that
includes a substantial number of uninjured class members was manifestly
erroneous.

*  *  *

 In sum, all three classes were certified without resolving whether plaintiffs

can prove common injury without sweeping in uninjured class members.  The

evidence showed they cannot.  Certifying classes that contain substantial numbers

of uninjured class members was manifest error requiring reversal.

**B.     The Decision Below Creates Unwarranted Pressure to Settle
         Plaintiffs' Claims**

It has been long recognized that orders granting class certification "can exert

substantial pressure on a defendant to settle rather than incur the costs of defending

a class action and run the risk of potentially ruinous liability." *Amgen*, 568 U.S. at

474 (internal quotation marks and citation omitted); *accord* Fed. R. Civ. P. 23(f),

1998 Advisory Committee Notes.  That risk is particularly acute when plaintiffs

"demand a vast sum in damages, which, because [it] is an antitrust case, are subject

to trebling." *Rail Freight I*, 725 F.3d at 251.

To warrant further review, "[a] party need not risk utter destitution"; "it is

enough that certification generate[s] unwarranted pressure to settle nonmeritorious

or marginal claims." *Id.* at 252 (internal quotation marks and citation omitted).

Courts have frequently granted interlocutory review of orders granting class

certification where the potential damages would amount to billions. *See, e.g., id.* at

251–52; *In re Petrobras Sec.*, 862 F.3d 250, 256, 260 (2d Cir. 2017); *In re New

Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 8 (1st Cir. 2008);

*Regents of Univ. of Cal.* v. *Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 379

(5th Cir. 2007).

# EXHIBIT D

Case No. 21-8005

IN THE

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

THE NATIONAL ATM COUNCIL, INC.; ATMS OF THE SOUTH, INC.;
BUSINESS RESOURCE GROUP, INC.; CABE & CATO, INC.; JUST ATMS,
INC.; WASH WATER SOLUTIONS, INC.; ATM BANKCARD SERVICES,
INC.; MEINERS DEVELOPMENT COMPANY OF LEE'S SUMMIT,
MISSOURI, LLC; MILLS-TEL, CORP.; SELMAN TELECOMMUNICATIONS
INVESTMENT GROUP, LLC; SCOT GARDNER; TURNKEY ATM
SOLUTIONS, LLC; TRINITY HOLDINGS LTD, INC.; T&T
COMMUNICATIONS, INC.;
AND RANDAL N. BRO, PLAINTIFFS-RESPONDENTS

v.

VISA INC.; VISA U.S.A. INC.; VISA INTERNATIONAL SERVICE
ASSOCIATION; PLUS SYSTEM, INC.; MASTERCARD INC.; AND
MASTERCARD INTERNATIONAL INC., DEFENDANTS-PETITIONERS

ANDREW MACKMIN; BARBARA INGLIS;
AND SAM OSBORN, PLAINTIFFS-RESPONDENTS

v.

VISA INC.; VISA U.S.A. INC.; VISA INTERNATIONAL SERVICE
ASSOCIATION; PLUS SYSTEM, INC.; MASTERCARD INC.; AND
MASTERCARD INTERNATIONAL INC., DEFENDANTS-PETITIONERS

PETER BURKE; KENT HARRISON; MARIN P. HEISKELL;
AND BRYAN BYRNES, PLAINTIFFS-RESPONDENTS

v.

VISA INC.; VISA U.S.A. INC.; VISA INTERNATIONAL SERVICE
ASSOCIATION; PLUS SYSTEM, INC.; MASTERCARD INC.; AND
MASTERCARD INTERNATIONAL INC., DEFENDANTS-PETITIONERS

———————————

On Petition for Interlocutory Appeal From an Order of
The United States District Court for the District of Columbia
(Civ. Nos. 11-1803, 11-1831, 11-1882)
The Honorable Richard J. Leon, District Judge

———————————

**REPLY IN SUPPORT OF PETITION OF DEFENDANTS
FOR PERMISSION TO APPEAL ORDER GRANTING CLASS
CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(f)**

———————————

MATTHEW A. EISENSTEIN
ROSEMARY SZANYI
ARNOLD & PORTER KAYE
SCHOLER LLP
*601 Massachusetts Avenue, N.W.*
*Washington, DC 20001*
*(202) 942-5000*

KENNETH A. GALLO
JUSTIN ANDERSON
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
*2001 K Street, N.W.*
*Washington, DC 20006*
*(202) 223-7300*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

REASONS FOR GRANTING THE PETITION ........................................................ 3

A.    The Significant Number of Uninjured Members in Each Class Bars
Class Certification Here ................................................................................. 3

        1.    The District Court Erroneously Concluded that Evidence of
Uninjured Class Members Was Relevant Only to the Merits ............... 3

        2.    Evidence that Each Class Swept in Significant Numbers of
Uninjured Class Members Defeats Predominance .............................. 5

B.    The Decision Below Creates Unwarranted Pressure to Settle .................... 10

C.    Special Circumstances Weigh in Favor of Review ..................................... 10

CONCLUSION ................................................................................................... 12

## INTRODUCTION

Across three separate briefs, plaintiffs fail to present any cogent defense of a manifestly erroneous class certification order that sweeps in substantial numbers of uninjured class members.  Plaintiffs' arguments emphasize their experts' credentials (not challenged below or on appeal), the quantity of ink spilled by the parties on class certification below (which has no legal significance on appeal), the manifest-error and abuse-of-discretion standards (which are well-settled and met here), and their ability years ago to withstand dismissal under Rule 12(b)(6) (which is irrelevant to class certification).  Plaintiffs even urge the Court to deny the Petition because Visa and Mastercard are so-called "recidivists" not worthy of supposedly "disfavored notions of fairness and proportionality."  Operator Opp'n 8.  These arguments do nothing but deflect and distract.  None excuses the district court's decision to treat evidence of uninjured class members as a "merits" issue to be addressed at a later stage of the case.

That decision was manifestly erroneous.  In the district court, petitioners presented evidence that, using the injury models plaintiffs' experts proffered, each putative class contains substantial numbers of uninjured class members.  The district court needed to scrutinize that evidence before certifying any class to determine whether plaintiffs could winnow out those uninjured class members.  The decision below not only omitted the required scrutiny—the decision *expressly*

1

*deferred* it, concluding that it was "better suited for adjudication of plaintiffs'

injury and damages on the merits, not at the class certification stage."  Opinion 12–

14.[1]  And the evidence in fact showed that plaintiffs had no ability to winnow out

the uninjured members in each class.  No class, much less three, should have been

certified on this record.

Plaintiffs barely mention, let alone defend, the district court's decision to

defer adjudicating uninjured class members—and for good reason.  This Court

recently held that a proposed class action that sweeps in a significant number of

uninjured class members cannot be certified.  *In re Rail Freight Fuel Surcharge*

*Antitrust Litig.*, 934 F.3d 619, 623–24 (D.C. Cir. 2019) ("*Rail Freight II*").  It also

held that courts must address and resolve the issue prior to certification.  *Id.* at 626.

Deferral of this question to the merits phase is manifest error.

Plaintiffs also illustrate (inadvertently) that the class certification decision

presents a classic "death knell" situation.  *Mackmin* Plaintiffs' brief reveals that

those plaintiffs are seeking $3 billion in damages post-trebling.  Taking that figure,

and multiplying it against the three cases pending here, yields a sum that would

wipe out (or nearly wipe out) plaintiffs' estimate of each petitioner's 2020 net

---

[1]  All defined terms used herein have the meaning assigned to them in the
Petition.

income. That certainly creates substantial and unwarranted pressure to settle,

thereby providing a further basis for appellate review.

For these reasons and those set forth in the Petition, this Court should grant

review and reverse the class certification order.

## REASONS FOR GRANTING THE PETITION

### A.    The Significant Number of Uninjured Members in Each Class Bars Class Certification Here

#### 1.    The District Court Erroneously Concluded that Evidence of Uninjured Class Members Was Relevant Only to the Merits

The decision below certified plaintiffs' putative classes notwithstanding

evidence of significant numbers of uninjured class members within plaintiffs' own

injury models, and expressly deferred scrutinizing that evidence. That certification

contravenes this Court's precedent. *In re Rail Freight Fuel Surcharge Antitrust*

*Litig.*, 725 F.3d 244, 255 (D.C. Cir. 2013) ("*Rail Freight I*"); *Rail Freight II*, 934

F.3d at 623–24. Plaintiffs offer three arguments to dodge this conclusion.

*First*, plaintiffs point to the district court's statement that it conducted a

"careful review" of the record and its determination that plaintiffs' evidence was

"reasonable and well established." *Mackmin* Opp'n 14–15; *Burke* Opp'n 5–6;

Operator Opp'n 12–13. A statement by the district court that it undertook a

"careful review" of the record is not sufficient to discharge the scrutiny *Rail*

*Freight* requires. The decision needed to analyze and to resolve disputes over

evidence showing significant numbers of uninjured class members, not defer that

analysis until the merits stage.  *See Rail Freight I*, 725 F.3d at 255.

    *Second*, plaintiffs contend that evidence of uninjured class members, without

more, is insufficient to challenge classwide injury because *Rail Freight I* and *II*

require a court to resolve only whether plaintiffs' methodologies *can* establish

classwide injury through common proof—not whether those methodologies

*actually* exclude uninjured class members.  *Mackmin* Opp'n 15–17.  That

contention contradicts *Rail Freight II*.  Uninjured class members cannot prevail on

the merits, so plaintiffs' injury models must exclude all (or substantially all) of

them to satisfy predominance.  *See Rail Freight II*, 934 F.3d at 624.

    *Third*, plaintiffs insist that *Rail Freight II* permits evidence of uninjured

class members to defeat predominance only when plaintiffs concede that their

methodologies sweep in uninjured class members.  *Mackmin* Opp'n 17–18; *Burke*

Opp'n 17–19.  But such an interpretation would "reduce Rule 23(b)(3)'s

predominance requirement to a nullity."  *See Comcast Corp.* v. *Behrend*, 569 U.S.

27, 36 (2013).  After all, if that were the case, "*any* method" would be acceptable

so long as plaintiffs claim it excludes uninjured class members, "no matter how

arbitrary" the claim.  *Id.*  Petitioners must be permitted to introduce evidence that

plaintiffs' proffered methodologies include significant numbers of uninjured class

members, even if plaintiffs are unwilling to admit it.  And the district court must

consider that evidence before deciding class certification.

> 2.    Evidence that Each Class Swept in Significant Numbers of
> Uninjured Class Members Defeats Predominance

Unable to defend the class certification decision on its own terms, plaintiffs

rely on arguments the district court never endorsed as a basis for certification.  But

those arguments do not refute petitioners' evidence that each class sweeps in

significant numbers of uninjured class members.

a.    *Mackmin* Plaintiffs argue that petitioners "address" only one of four

"sources of classwide evidence" presented by their expert, Professor Carlton, and

that the other three "sources" support certification.  *Mackmin* Opp'n 19–20.  But

petitioners had no need to rebut separately each strand of "economic theory,"

"market analysis," and "employee statements" that Professor Carlton offered.

Professor Carlton's own empirical methodology demonstrates that tens of

thousands of uninjured class members exist, contrary to whatever inferences one

might draw from Professor Carlton's qualitative assumptions and theories.

*Mackmin* Plaintiffs do not dispute that Professor Carlton's sole empirical

methodology consisted of analyzing data over a seven-year period from one bank

ATM operator and observing an inverse relationship between ATM surcharges and

net interchange at that bank's ATMs.  *See id.* at 20.  Petitioners' expert, Professor

Hubbard, applied the same methodology over the same time period to other bank

ATM operators and found no such relationship between surcharges and net interchange.[2] In other words, Professor Hubbard demonstrated that the injury Professor Carlton detected based on surcharges that some consumers paid at *one* bank's ATMs did not exist for *all* transactions at *all* bank ATMs. Using Professor Carlton's own methodology, tens of thousands of consumers were uninjured.

On reply, Professor Carlton did not dispute the results of Professor Hubbard's analysis. Instead, he introduced a new bank-data analysis extending back further in time and purporting to show a universal relationship between net interchange and surcharges. *Id.* at 21–22. Yet even this alternative version of Professor Carlton's methodology still could not detect an inverse relationship (much less a statistically significant one) between surcharges and net interchange at all of the banks studied. *See Mackmin*, Expert Reply Rep. of Dennis W. Carlton, ECF No. 217, Ex. 19 ¶ 87.[3]

---

[2]   Even if there are limitations in other bank data, as *Mackmin* Plaintiffs allege, those limitations "describe[] a possible problem with their own evidence," and do not excuse a failure to assess whether their theory applies beyond a single ATM operator, let alone classwide. *See Rail Freight II*, 934 F.3d at 624.

[3]   *Mackmin* Plaintiffs also argue that much of petitioners' evidence is not part of the record because it was presented in an "improper" sur-reply. *Mackmin* Opp'n 20–21. Petitioners' arguments rest on points made in their opposition brief. The arguments presented on sur-reply adjusted those opposition arguments to the extent that plaintiffs modified their models on reply.

Petitioners do not merely argue that Professor Carlton's analysis was "unrepresentative or inaccurate," as *Mackmin* Plaintiffs claim.  *Mackmin* Opp'n 20 (citing *Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442, 457, 459 (2016)). Petitioners present evidence that Professor Carlton's methodology includes significant numbers of uninjured class members—an issue that district courts must resolve at the class-certification stage, even if that issue overlaps with considerations normally reserved for trial.

b.   *Burke* Plaintiffs claim that their expert, Dr. Lehr, put forth a "model" that is capable of proving classwide injury with common proof.  *Burke* Opp'n 9. But the only "model" Dr. Lehr presented concerns damages, not injury.  *See id.*  To prove classwide *injury*, *Burke* Plaintiffs rely on Dr. Lehr's theory, unsupported by any data, that lower net interchange could be considered an "industry-wide tax," in response to which independent ATM operators would raise surcharges.  *Id.* at 9–10.  Professor Hubbard's analysis of data demonstrated that Dr. Lehr's theory is not universally true.  Opp'n 35–37.

*Burke* Plaintiffs attempt to dismiss Professor Hubbard's analysis of independent ATM operators' behavior as of 2010 because they claim that net interchange has been suppressed since 1996, when the challenged rules first came into effect.  *Burke* Opp'n 10–13.  But *Burke* Plaintiffs cannot walk away from their own claim:  they say it is universally true that when net interchange decreases,

7

independent ATM operators increase surcharges. Their theory, if correct, should hold up as well in 2010 as in 1996. Professor Hubbard's analysis demonstrates it does not. When net interchange decreased, some independent ATM operators did not increase surcharges. Any cardholders solely transacting at independent ATMs that did not respond to changes in net interchange were not injured.

*Burke* Plaintiffs also claim that Professor Hubbard's analysis is flawed because it does not control for other factors that may affect surcharge pricing at independent ATMs. *Id.* at 14–15. On the contrary, that is a flaw with *Burke* Plaintiffs' theory. Petitioners agree that other pricing factors are relevant to surcharge pricing, and *Burke* Plaintiffs have offered no means of addressing them with common proof. The bottom line is that Professor Hubbard took *Burke* Plaintiffs' theory, tested it, and disproved it.

c.     Operator Plaintiffs claim that their class definition does not include uninjured class members because "[i]ndustry [p]articipants [k]now" who "originates" transactions at a given ATM. Operator Opp'n 15. Quite the opposite: several of Operator Plaintiffs' proposed class representatives testified that they were "[n]ot really sure" who originates the transactions at any given ATM. *See* Opp'n 74. The proposed representatives that did offer an explanation gave different and conflicting accounts. *Id.* at 74–75. If the meaning of "originate"

differs among the representatives (who presumably were prepared for their depositions on the subject), it ostensibly would across the broader industry.

What is more, this confusion exists because independent ATMs often feature complex contractual agreements under which an entity performs a function associated with "originating" transactions but does not actually pay or receive components of net interchange (the alleged overcharge here). *See id.* at 48–49; Sur-Reply 14–15. For example, an entity may input the ATM's encryption key but not pay network fees to or receive interchange from the associated acquiring bank. Sur-Reply 14–15. The same goes for entities performing other functions that might qualify those entities as class members. *See id.* That is why Operator Plaintiffs cannot provide an objective definition of "originate." If they were to credit any particular definition, they would include at least some entities that have not been injured under their theory of liability.

Operator Plaintiffs attempt to dodge this with the assertion that "[i]ndustry [p]articipants [k]now" whether they are class members. While that sort of analysis might work in some legal contexts, *see, e.g., Jacobellis* v. *Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring) (Regarding obscenity, "I know it when I see it."), it is surely insufficient under Rule 23. Operator Plaintiffs' class definition includes uninjured members, and the court below will have to undertake individualized inquiries to determine which "operators" actually paid the alleged overcharges.

To be opened by the addressee only

**UNITED STATES POSTAL SERVICE ®**

www.paypal.com

**US POSTAGE PAID** IMI
01/27/2022
0 lbs 11 ozs
Zone 5

Pitney Bowes
CommPrice
NO SURCHARGE

026W0004890087

**USPS FIRST-CLASS PKG**

SHIYANG HUANG
2800 SW ENGLER CT
TOPEKA, KS 66614

0027

USDC, DISTRICT OF COLUMBIA
333 CONSTITUTION AVENUE, N.W.
MACKMIN V. VISA, INC., 11-CV-1831-RJL
WASHINGTON DC 20001-2802

C003

USPS TRACKING #

9400 1282 0633 5589 3772 91

**FIRST CLASS**