**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW MACKMIN, *et al.*,<br><br>         *Plaintiffs*,<br><br>*v.*<br><br>VISA INC., *et al.*,<br><br>         *Defendants*. | Civil Action No. 1:11-cv-1831-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENTS
WITH THE BANK OF AMERICA, CHASE, AND WELLS FARGO DEFENDANTS AND
<u>RESPONSE TO OBJECTION</u>**

Pursuant to Fed. R. Civ. P. 23, at the Fairness Hearing scheduled for May 17, 2022, at 3:00 p.m., at the E. Barrett Prettyman Courthouse, 333 Constitution Avenue NW, Washington, D.C. 20001, the *Mackmin* Plaintiffs will and hereby do move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order:

(1)     Finally approving the proposed class action settlements with Bank of America, National Association; NB Holdings Corporation; Bank of America Corporation; Chase Bank USA, N.A.; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; Wells Fargo & Company; and Wells Fargo Bank, N.A.;

(2)     Certifying the proposed Settlement Class.

(3)     Approving of the proposed Plan of Allocation; and

(4)     Rejecting Shiyang Huang's objections and granting the fees, expenses, and services awards requested in Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards for Class Representatives (Dkt. 256).

The motion is based upon this notice, the attached memorandum of points and authorities and the exhibits attached thereto, the accompanying declaration of Eric Schachter, the pleadings and other papers on file in this action, such matters over which the Court may take judicial notice, and such arguments that may be presented at or before the hearing.

DATED this 25th day of March, 2022.          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   */s/ Steve W. Berman*
   Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Ben M. Harrington (*pro hac vice*)
Benjamin J. Siegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3034
benh@hbsslaw.com
bens@hbsslaw.com

Stephen R. Neuwirth (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
Viola Trebicka (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Steven A. Skalet
(D.C. Bar No. 359804)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
sskalet@findjustice.com

*Co-Lead Class Counsel for*
*Mackmin Consumer Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANDREW MACKMIN, *et al.*,

        *Plaintiffs*,

*v.*

VISA INC., *et al.*,

        *Defendants*.

Civil Action No. 1:11-cv-1831-RJL
Assign Date: 8/4/2015
Description: Antitrust – Class Action

## MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH THE BANK OF AMERICA, CHASE, AND WELLS FARGO DEFENDANTS AND RESPONSE TO OBJECTION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................................1

II.    THE SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE......................2

III.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ..................................3

IV.   THE APPROVED NOTICE program WAS ADEQUATE AND SATISFIED
DUE PROCESS ....................................................................................................5

V.    THE PROPOSED PLAN OF ALLOCATION IS FAIR AND ADEQUATE....................7

VI.   THE SOLE OBJECTION IS MERITLESS....................................................................8

      A.    Co-Lead Class Counsel's Request for Attorneys' Fees and Reimbursement
of Litigation Expenses Already Incurred Is Reasonable..........................................9

           1.    Mr. Huang's Arguments About the Size of the Amount Requested
Are Meritless...............................................................................................11

           2.    Mr. Huang's Arguments About the Lodestar Have Been Rejected
by Courts....................................................................................................13

           3.    Mr. Huang's Arguments About the "Approximation of the Market"
Are Meritless...............................................................................................13

      B.    Mr. Huang's Arguments About Service Awards Should Be Rejected .................15

      C.    Mr. Huang's Request for Sanctions Is Meritless ...................................................17

VII.  CONCLUSION.............................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................7

*In re Ampicillin Antitrust Litig.,*
526 F. Supp. 494 (D.D.C. 1981) ...........................................................................13

*In re Apple Inc. Device Performance Litig.,*
2021 WL 1022866 (N.D. Cal. Mar. 17, 2021)........................................................16

*In re Auto. Refinishing Paint Antitrust Litig.,*
617 F. Supp. 2d 336 (E.D. Pa. 2007) ....................................................................14

*In re Baby Prods. Antitrust Litig.,*
708 F.3d 163 (3d Cir. 2013)..................................................................................12

*In re BioScrip, Inc. Sec. Litig.,*
273 F. Supp. 3d 474 (S.D.N.Y. 2017)....................................................................13

*Bynum v. D.C.,*
412 F. Supp. 2d 73 (D.D.C. 2006) ........................................................................12

*Cent. R.R. & Banking Co. v. Pettus,*
113 U.S. 116 (1885).............................................................................................16

*Cobell v. Jewell,*
802 F.3d 12 (D.C. Cir. 2015) ................................................................................16

*Cohen v. Warner Chilcott Pub. Ltd. Co.,*
522 F. Supp. 2d 105 (D.D.C. 2007) ........................................................................3

*In re Credit Default Swaps Antitrust Litig.,*
2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016).........................................................11

*In re Domestic Airline Travel Antitrust Litig.,*
322 F. Supp. 3d 64 (D.D.C. 2018) .......................................................................6, 7

*In re Domestic Airline Travel Antitrust Litig.,*
378 F. Supp. 3d 10 (D.D.C. 2019) ...................................................................2, 3, 8

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
999 F.3d 1247 (11th Cir. 2021) ........................................................................13, 17

*In re Fannie Mae Sec., Derivative, & "ERISA" Litig.*,
    4 F. Supp. 3d 94 (D.D.C. 2013) ......................................................................9, 10

*Ferrer v. CareFirst, Inc.*,
    2019 WL 11320974 (D.D.C. Sept. 30, 2019) ........................................................12

*Grace v. Apple, Inc.*,
    2021 WL 1222193 (N.D. Cal. Mar. 31, 2021)........................................................16

*Huang v. Schultz*,
    141 S. Ct. 252 (2020) ...........................................................................................17

*Huang v. Spector*,
    142 S. Ct. 431 (2021) ...........................................................................................17

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ...................................................................................4

*Johnson v. NPAS Sols., LLC*,
    975 F.3d 1244 (11th Cir. 2020) .............................................................................16

*Kifafi v. Hilton Hotels Ret. Plan*,
    999 F. Supp. 2d 88 (D.D.C. 2013) ..........................................................................3

*Larson v. Allina Health Sys.*,
    2020 WL 583082 (D. Minn. Feb. 6, 2020) ............................................................17

*In re Linerboard Antitrust Litig.*,
    2004 WL 1221350 (E.D. Pa. June 2, 2004) ...........................................................14

*In re Lithium Ion Batteries Antitrust Litig.*,
    2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) .......................................................15

*In re Lloyd's Am. Trust Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)....................................................7, 8

*In re Lorazepam & Clorazepate Antitrust, Litig.*,
    2003 WL 22037741 (D.D.C. June 16, 2003) ...................................................11, 12

*McDonald v. Edward D. Jones & Co.*,
    791 F. App'x 638 (8th Cir. 2020) ..........................................................................17

*Melito v. Experian Mktg. Solutions, Inc.*,
    923 F.3d 85 (2d Cir. 2019).....................................................................................16

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015).....................................................................14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ........................................................7

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ................................................................................12

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010)................................................................................................13

*Phillips v. Mabus*,
   319 F.R.D. 36 (D.D.C. 2016)................................................................................17

*Pigford v. Glickman*,
   206 F.3d 1212 (D.C. Cir. 2000) .............................................................................2

*Pillsbury Co. v. Conboy*,
   459 U.S. 248 (1983)..............................................................................................11

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) .............................................................................12

*Ramirez v. DeCoster*,
   142 F. Supp. 2d 104 (D. Me. 2001) .......................................................................4

*Smith v. Costa Del Mar, Inc.*,
   2022 WL 252397 (M.D. Fla. Jan. 27, 2022).......................................................17

*Somogyi v. Freedom Mortg. Corp.*,
   495 F. Supp. 3d 337 (D.N.J. 2020) ......................................................................16

*Stewart v. Rubin*,
   948 F. Supp. 1077 (D.D.C. 1996) ..........................................................................3

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993)............................................................................9, 15

*In re TFL-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 7575004 (N.D. Cal. Dec. 27, 2011).......................................................8

*Thomas v. Albright*,
   139 F.3d 227 (D.C. Cir. 1998) ...............................................................................3

*Trombley v. Nat'l City Bank*,
   826 F. Supp. 2d 179 (D.D.C. 2011) ................................................................3, 12

*Trustees v. Greenough*,
   105 U.S. 527 (1881).............................................................................................16

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D. N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v.
  Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................................................13

*Vista Healthplan, Inc., v. Warner Holdings Co. III, Ltd.*,
  246 F.R.D. 349 (D.D.C. 2007) ...............................................................................10

*In re Vitamins Antitrust Class Actions*,
  215 F.3d 26 (D.C. Cir. 2000) ....................................................................................2

*In re Vitamins Antitrust Litig.*,
  2001 WL 34312839 (D.D.C. July 16, 2001) ...........................................................12

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) .......................................................................................4

## OTHER AUTHORITIES

2 William B. Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed. 2018) ....................................5

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................5, 6

Fed. R. Civ. P. 23(e)(1)(B) ...............................................................................................5

Fed. R. Civ. P. 23, Notes of Advisory Comm., Subdivision (c)(2) (2018)....................................6

Manual for Complex Litigation § 21.634 (4th ed. 2021)................................................2

## I.      INTRODUCTION

In November 2021, this Court preliminarily approved the settlements ("Settlements") reached with the Bank of America Defendants, the Chase Defendants, and the Wells Fargo Defendants (collectively, the "Bank Defendants").[1] Dkt. No. 252. The Court designated Andrew Mackmin and Sam Osborn as Class Representatives for the Settlement Class, and designated Hagens Berman Sobol Shapiro LLP, Quinn Emanuel Urquhart & Sullivan, LLP, and Mehri & Skalet, PLLC, as Class Counsel for the Settlement Class. *Id*. The Court also approved the form and content of the proposed notice forms, which have now been provided to members of the Settlement Class as directed. Plaintiffs respectfully request that the Court now grant final approval to the Settlements because they represent an outstanding recovery for the Settlement Class: the Bank Defendants will provide $66.74 million in cash payments to Plaintiffs (***57.5%*** of the *maximum* single damages estimated for class transactions at the Bank Defendants' ATMs), while leaving the non-Bank Defendants joint and severally liable for the remainder of Class Plaintiffs' damages.

The events since preliminary approval have only confirmed that the Settlements are an excellent result. Plaintiffs have implemented a notice program that has reached tens of millions of class members by direct email notice alone. In addition to this extensive direct email notice effort, the Settlement Administrator, A.B. Data, engaged in a state-of-the-art publication notice campaign. Thus far, 271,669 claims have been received. The notice and claims administrator has also sent a reminder email to potential class members to encourage claim filing through the deadline of May 11, 2022. The reaction to the settlement has been overwhelmingly positive with

---

[1] All defined terms have the same meaning as in Plaintiffs' Renewed Motion for Preliminary Approval (Dkt. No. 250, "Preliminary Approval Motion") and the Court's Order granting preliminary approval (Dkt. No. 252, "Preliminary Approval Order") unless otherwise noted.

only *one* objection and *seventeen* opt-out requests. And the sole objection to the settlement is meritless—it does not challenge the substance of the settlements, and only raises misguided attacks on Class Counsel's fee request and request for modest service awards for the two class representatives.

Plaintiffs respectfully request that the Court certify the proposed Settlement Class, grant final approval to the Settlements, and overrule the lone objection.

## II.     THE SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE

To obtain final approval, Plaintiffs must show that the proposed settlements are "fair, reasonable, and adequate." Manual for Complex Litigation § 21.634 (4th ed. 2021); *see also In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000); *Pigford v. Glickman*, 206 F.3d 1212, 1215 (D.C. Cir. 2000). In the Preliminary Approval Motion submitted on October 25, 2021, Plaintiffs discussed the traditional factors considered by courts in this Circuit in making this determination, as well as the Rule 23(e)(2) factors that were added in 2018. Because the relevant facts have largely not changed since the Preliminary Approval Motion, and because there are no objections to the settlements themselves (only Plaintiffs' motion for fees, costs, and service awards), Plaintiffs will not burden the Court with a repetitive discussion, and respectfully refer to the Court to that pleading. *See* Dkt. 250 at 15-25.

Here, Plaintiffs discuss the execution of the notice plan and the only factor that could not be assessed at preliminary approval—the reaction of the class. "In approving class action settlements, courts gauge the reaction of the class by looking at the number of objections as compared to the overall size of the class." *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 23 (D.D.C. 2019). Here, there are approximately 200 million class members, but only 17 opt-outs and just *one* class member (Shiyang Huang) objected. *See* Declaration of Eric Schachter in Support of Motion for Final Approval of Settlement ("Schacter Decl."), ¶¶ 19-20,

concurrently submitted herewith. As discussed below, Mr. Huang is a repeat objector. With no objection to the substance of these Settlements, Mr. Huang instead launches only misguided attacks on Class Counsel's attorney and service fee requests. The lack of objection to the Settlements confirms they should be approved. *See Domestic Airline*, 378 F. Supp. 3d at 23 (approving settlement where "the objectors are but a tiny fraction of the class").[2]

### III.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

For final approval of a class action settlement, the proposed settlement class must satisfy the Rule 23(a) requirements referred to as "numerosity, commonality, typicality, and adequacy of representation." *Cohen*, 522 F. Supp. 2d at 113. Additionally, the proposed class must meet one of the Rule 23(b) requirements. Here, Plaintiffs seek certification of the proposed settlement class pursuant to Rule 23(b)(3). *Id*. In the Preliminary Approval Motion, Plaintiffs discussed at length why the Settlement Class should be certified. *See* Dkt. No. 250 at 14-21. Because the facts relevant to certification have not changed, Plaintiffs do not repeat that discussion here.

One point is worth emphasizing. The Court need not apply the Rule 23 requirements to the proposed Settlement Class as stringently as it would in reviewing an opposed class certification motion. "[I]f the case is surely going to be settled, then the 'district court need not inquire whether the case, if tried, would present intractable management problems.'" *Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *see also Stewart v. Rubin*, 948 F. Supp. 1077, 1091 (D.D.C. 1996)

---

[2] *See also Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 101 (D.D.C. 2013) (out of a class of 23,000 persons, five objected, and this weighed in favor of approval); *Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 119 (D.D.C. 2007) (finding the small number of objections weighed in favor of approval); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 200-01 (D.D.C. 2011) (approving settlement where there were only 10 objections out of over 13 million class members).

(recognizing that "manageability and efficiency of a class action settlement is quite different than that in a litigated case").

Thus, the pending appeal of this Court's class certification decision offers no reason to delay final approval of this proposed Settlement Class. It is common for a settlement class to be certified before the certification of a litigation class (as to non-settling defendants) is resolved. Indeed, courts have recognized that certain classes certified for settlement purposes might not be appropriate to certify as litigation classes in light of management problems that arise in litigation. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) ("A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable.").[3] Courts have certified settlement classes after declining to certify the same class for litigation purposes. *See, e.g.*, *Ramirez v. DeCoster*, 142 F. Supp. 2d 104, 111 n.9 (D. Me. 2001) (reaching that conclusion because "the difficulties of managing the resulting jury trial . . . are not presented in a settlement").

Objector Huang, whose arguments are discussed in more detail in Part VI, *infra*, does not provide any substantive arguments as to why the Rule 23 requirements are not met for the settlement class, but he suggests that due to the appeal, "class certification is likely defective." Dkt. No. 254 at 9. Class certification is not "defective," for the reasons explained in the Preliminary Approval Motion and above. But even if the D.C. Circuit were to later hold that the predominance requirement is not met for the litigation class (the only issue on appeal), that will

---

[3] *See also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) ("Although Appellants' concerns about the manageability of a multistate class of consumers and TPPs . . . did not pose a problem for the certification of a settlement class, there is a significant risk that such a class would create intractable management problems if it were to become a litigation class, and therefore be decertified.").

not affect approval of the settlements. The case management concerns that ground the predominance inquiry have no bearing on the certification of a settlement class. *See also* 2 William B. Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed. 2018) ("Courts . . . regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.").

## IV.    THE APPROVED NOTICE PROGRAM WAS ADEQUATE AND SATISFIED DUE PROCESS

Notice to the class must be made "in a reasonable manner to all class members who would be bound by the" proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). For a proposed Rule 23(b)(3) Settlement Class, the court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Here, the Court approved, and Plaintiffs then implemented, a state-of-the-art notice program designed by an experienced notice and claims administrator, A.B. Data.

The notice and claims administrator delivered ***direct*** email notice successfully to approximately 59,271,528 unique email addresses of potential settlement class members. Schachter Decl., ¶ 7. Specifically, after receiving approximately 100 million email addresses of potential settlement class members from the Bank Defendants, the administrator sent emails to 87,685,557 unique email addresses after data review and validation efforts, with the administrator's records showing that emails were successfully delivered to 59,271,528 (67%) of these unique email addresses. *Id.*, ¶¶ 3-7.  This robust direct email notice campaign was explicitly endorsed by the 2018 Amendments to Rule 23, which explain that "notice may be by

one or more of the following: United States mail, electronic means, or other appropriate means."
Fed R. Civ. P. 23(c)(2)(B).[4]

In addition to a massive direct email notice effort, A.B. Data also engaged in a robust
publication notice campaign. The campaign included (i) a digital advertising campaign on
numerous digital and social media platforms; (ii) a news release disseminated via *PR Newswire*;
(iii) a publication notice in *People* magazine; and (v) a toll-free telephone number and case-
specific website to address potential Settlement Class Member inquiries. *See* Schacter Decl., ¶¶
8-16 (discussing scope of publication campaign in detail).

Courts in this District recognize that individual notice by email, in combination with
publication notice, as was done here, may be the best way to provide notice to large settlement
classes. *See In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 69-72 (D.D.C.
2018) (approving of proposed settlement program by publication notice and individual notice by
email).[5] As the court in *Domestic Airline* explained:

> No single formula can be derived which will anticipate the myriad of
> circumstances that may confront class action litigants attempting to identify
> absentee class members of a 23(b)(3) action and resolve whether the effort is
> reasonable. . . . . Instead, this Court must examine the available information and
> possible methods of identification before deciding what amounts to reasonable
> efforts under the circumstances. The Court must balance between protecting class
> members and making Rule 23 workable, with consideration of the circumstances,
> size of the class, and cost of providing notice compared to the total settlement
> fund.

---

[4] *See also* Fed. R. Civ. P. 23, Notes of Advisory Comm., Subdivision (c)(2) (2018)
(discussing technological changes that may provide opportunities for better notice).

[5] *See also Domestic Airline*, 322 F. Supp. 3d at 70 (citing, among other cases: *In re
Livingsocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 8 (D.D.C. 2013) (involving a class of
10.9 million persons contesting gift certificates sold via the internet, in which notice was given
through e-mail); *In re Sony PS3 "Other OS" Litig.*, 2017 WL 5598726 (N.D. Cal. Nov. 21,
2017) (involving breach of contract claims by purchasers of computer entertainment consoles,
where dissemination of settlement information was to be completed by giving notice "to Class
Members via email for those Class members for whom an email address is available")).

*Id.* at 70-71 (internal citation and quotation marks omitted).

Here, as in *Domestic Airline*, the combination of "e-mail and publication" notice (*id.* at 71), was the best notice practicable given the large size of the class, which is further shown by the Administrator's estimate that notice reached approximately 80% of potential members of the Settlement Class. Schachter Decl., ¶ 21. This is consistent with recommendations by the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, which considers reach exceeding 70% to be reasonable. *See* Dkt. 222-3, ¶ 30.

As of this date, a total of 271,669 claims have been received. The number of claims is a reflection of the extensive and multifaceted notice campaign in this case. Moreover, because Settlement Class members may submit claims until May 11, 2022, the number of claimants is likely to *increase* during the next two months. That is particularly likely in this case because the administrator sent an email reminder to file claims to millions of potential Settlement Class members with a valid email. Schachter Decl., ¶ 18. Plaintiffs can update the Court about the number of claims at the final approval hearing, scheduled for May 17, 2022.

## V.     THE PROPOSED PLAN OF ALLOCATION IS FAIR AND ADEQUATE

A plan of allocation "must be fair and adequate," but it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *20 (E.D.N.Y. Dec. 16, 2019); *accord In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014).

Plaintiffs propose to distribute settlement funds *pro rata* to qualifying class members based on the number of approved claims submitted. *See* Schachter Decl., Ex. E ¶ 8 (proposing *pro rata* allocation in notice to class). Such *pro rata* allocations are routinely approved, and have been called "the fairest method of allocating the settlement benefits." *See In re Lloyd's Am. Trust*

*Fund Litig.*, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to the fairest method of allocating the settlement benefits"); *see also In re TFL-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *4 (N.D. Cal. Dec. 27, 2011) (approving a *pro rata* plan and citing several cases for this holding, including *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000)). No objector has challenged the proposed plan of allocation.

Here, Plaintiffs respectfully submit that it makes the most sense to distribute settlement proceeds to claimants at a later date, after the claims against the Non-Settling Defendants (Visa and MasterCard) are also resolved, and to submit a detailed distribution plan at that time. That would allow Plaintiffs to combine the distribution of the funds from the current settlements with any later recovery in the case, maximizing efficiency and minimizing administrative costs. These types of deferrals are often approved and do not stand in the way of final approval of the Settlements or an award of attorneys' fees. *See, e.g.*, *Domestic Airline*, 378 F. Supp. 3d at 22 ("In a case such as this, involving a large number of Class Members and two Non-Settling Defendants, it would be inefficient to distribute and process claims until the entire case has been resolved through litigation or otherwise and the Total Funds Available for Distribution are known.").

However, if the Court would prefer Plaintiffs to distribute funds after final approval of the settlements with the Bank Defendants, Plaintiffs will do so. In that case, Plaintiffs will submit a motion for distribution of these settlement funds following final approval.

## VI.    THE SOLE OBJECTION IS MERITLESS

Mr. Huang is the sole objector to the Settlements. His arguments concern Class Counsel's attorney and service fee application, not the merits of the Settlements. *E.g.*, Dkt. No. 254 at 1 ("Huang files his Objection to chiefly focus on only one key issue pending here: **Every Named**

**Plaintiffs' $10,000 service awards [*sic*] must be denied under *stare* decis**.") (emphasis in original); *see generally* Dkt. 257 (in Mr. Huang's "supplemental objection," he focuses on Class Counsel's fee application).[6] Huang also spends 5.5 pages of his 12-page supplemental objection arguing that his motivations are benign and that he is not a "serial objector," as well as maligning the motivations of Class Counsel. *See* Dkt. 257 at 6-11. These discussions are an unfortunate distraction from the only thing that matters. Mr. Huang's arguments are incorrect and contrary to controlling law, as many courts have held.

A.   **Co-Lead Class Counsel's Request for Attorneys' Fees and Reimbursement of Litigation Expenses Already Incurred Is Reasonable**

As detailed in Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards for Class Representatives (Dkt. No. 256, "Fee Motion"), Plaintiffs' attorneys' fee request is reasonable. To begin with, Huang downplays that in the D.C. Circuit, "a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993); *accord In re Fannie Mae Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 110 (D.D.C. 2013) (Leon, J.). The fee request for 30 percent of the common settlement fund, or $20,022,000, is well within the range of awards in comparable cases, and it is reasonable when considering the factors courts in this District examine when scrutinizing fee requests. *See* Dkt. 256 at 15-25 (citing cases and discussing factors). Mr. Huang objects to the fee request, but he does not apply these factors when doing so. Moreover, although not required,

---

[6] Huang's arguments are also procedurally improper and untimely. His original objection was styled as "Class Member Shiyang Huang's Response/Objection to Motion for Settlement Approval [ECF No. 250]." Dkt. 254 (dated February 10, 2022). However, the docket number Mr. Huang referenced was Plaintiffs' Preliminary Approval Motion, which was granted on November 11, 2021 (Dkt. 252), months before Mr. Huang's brief. Thus, his objection, ostensibly to preliminary approval, is untimely. Regardless, his arguments fail on the merits, both as to his original objection and his "supplemental objection."

performing a lodestar cross-check also confirms the reasonableness of the request because: (1) the lodestar utilized for the cross-check includes a 5% across-the-board reduction (*id.* at 13 n.4); (2) is calculated based on historical billing rates, rather than the current, higher billing rates, as many courts, including this Court, have utilized (*id.* at 13 n.4 & 26 n.10); and (3) even with these adjustments, the fee request represents a very modest lodestar multiplier of 1.22 (*id.* at 2; *see also id.* at 27 (citing cases showing that a 1.22 multiplier is well within the range of multipliers granted in other cases, and lower than many)).[7]

Mr. Huang also ignores this Court's holding that "'*[i]n addition to being entitled to reasonable attorneys' fees*, class counsel in common fund cases are also entitled to reasonable litigation expenses from that fund." *In re Fannie Mae*, 4 F. Supp. 3d at 113 (quoting *In re Lorazepam & Clorazepate Antitrust, Litig.*, 2003 WL 22037741, at *10 (D.D.C. June 16, 2003) (emphasis added)); *see also Vista Healthplan, Inc., v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 365 (D.D.C. 2007) ("[T]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund."). Here, Class Counsel has litigated this case for eleven years, and advanced out-of-pocket costs of approximately $3.24 million more than the $10 million requested in reimbursement. Dkt. 256-1 at 27-30. Counsel has done so while facing the prospect of recovering ***nothing*** for this significant investment if the case was unsuccessful. Huang ignores the practical realities of Class Counsel's efforts and focuses instead on inapt arguments that misapply the law.

---

[7] Indeed, if Class Counsel used current billing rates as many Courts do, without any billing judgment adjustment, its lodestar would be $23,722,023, leading to a *negative* multiplier of 0.84. *See* Dkt. 256-1 at 26 n.10.

1.      **Mr. Huang's Arguments About the Size of the Amount Requested Are Meritless**

Huang's primary argument is that the Class Counsel's request is "eye-popping" and "excessive." Dkt. No. 257 at 1-2. Huang goes so far as to state that Class Counsel "should get just" the expenses they advanced in the case and *no fees*. *Id.* But that would be grossly unfair, because it would mean Class Counsel would not recover a dime for over a decade of work on this case, including in obtaining the Bank Settlements. Huang calls the attorneys' fee request a 30% "commission" on top of the amount requested for expense reimbursement (*id.* at 1), distorting the fact that Class Counsel already spent $13.24 million on litigation expenses, and the fee request is for counsel's work on the case, while the expense reimbursement is just that, a request to recoup a portion of the costs already spent by counsel out-of-pocket to litigate this case, with no guarantee of recovery at all.

The law does not support Mr. Huang's objection. Rather, courts award reasonable attorneys' fees in common fund cases, like those requested here, because they incentivize private law firms to undertake the risks and costs of litigating antitrust class actions that ultimately benefit consumers. *E.g.*, *In re Lorazepam*, 2003 WL 22037741, at *9 (approving 30% fee award in part because "this class action was vigorously litigated for a protracted period of time, raised novel and complex issues, [and] involved a substantial risk of absolute non-payment"); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17-18 (S.D.N.Y. Apr. 26, 2016) (approving $257 million fee request and noting: "[T]here are significant public policy considerations that weigh in favor of approval. It is important to encourage top-tier litigators to pursue challenging antitrust cases such as this one."); *see also Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) (emphasizing "the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws").

Huang also argues (Dkt. No. 257 at 1-2) that the fee award should be calculated as a percentage of the *net* settlement fund (*i.e.*, the total settlement fund, minus the requested $10 million in expense reimbursement) as opposed to the *gross* settlement fund (*i.e.*, the total settlement fund, before expenses are deducted). However, courts often use the gross settlement fund as a benchmark for determining Class Counsel's fee award because "the costs of litigation and claims administration" are "treated as a benefit to the class," just like the rest of the settlement fund. *Ferrer v. CareFirst, Inc.*, 2019 WL 11320974, at *7 (D.D.C. Sept. 30, 2019). The $10 million requested for expense reimbursement is a portion of the amount ($13.24 million) that Class Counsel incurred to obtain the Settlements; it is neither fair nor logical to subtract that from the settlement amount for purposes of calculating Class Counsel's fees. *Trombley*, 826 F. Supp. 2d at 207 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). For this reason, courts in this District routinely base fee awards on the gross settlement fund, rather than the net settlement fund. *See, e.g.*, *In re Lorazepam*, 2003 WL 22037741, at *9; *Bynum v. D.C.*, 412 F. Supp. 2d 73, 81 (D.D.C. 2006); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *9 (D.D.C. July 16, 2001) (awarding attorneys' fees equal to 33.7% of $365 million settlement fund, minus payments to opt outs). This Court should do the same here.[8]

In any event, it does not matter which method is used, because the fee request is reasonable under either benchmark given the long-running and complex nature of this case. *See Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) ("the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the

---

[8] Huang's cited cases are inapposite. In *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014), the settlement "yield[ed] total compensation for the class members of less than $1 million," meaning the awarded attorney's fees were "an outlandish 69 percent" of the settlement. And *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013), concerned a class settlement whereby some of the funds would be distributed to *cy pres* recipients. Neither circumstances—an "outlandish" fee request nor a novel *cy pres* scheme—is present here.

end result is reasonable"); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 n.34 (E.D. N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) (rejecting objector's assertion that the judge "should award attorneys' fees calculated on the net recovery to the Class, excluding costs and expenses"); *see also In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (noting that several courts have awarded more than 40 percent of the settlement fund in antitrust cases).

### 2. Mr. Huang's Arguments About the Lodestar Have Been Rejected by Courts

Mr. Huang also argues that the Supreme Court's decision in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554-55 (2010), prevents Class Counsel from recovering anything more than a 1x lodestar multiple. Dkt. No. 257 at 2. But "the *Perdue* presumption against a lodestar enhancement does not apply" in cases like this, "when a court awards fees from a common fund created after a settlement." *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 480-90 (S.D.N.Y. 2017). To ignore this distinction would upend decades of precedent awarding lodestar multiples in antitrust common fund cases, and it would undermine the strong policy arguments in favor of granting reasonable fee awards in such cases. *See* Section IV.A.1, *supra*. Indeed, the *Perdue* argument Mr. Huang raises here was recently rejected in a case involving Mr. Huang. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1279 (11th Cir. 2021) ("Nothing in *Perdue* considered the appropriate method for calculating attorney's fees in a common fund case. The percentage method therefore remains the proper method to apply when awarding attorney's fees in common fund settlement cases.").

### 3. Mr. Huang's Arguments About the "Approximation of the Market" Are Meritless

Mr. Huang also asserts that the fee request does not "approximate the market" based on (1) a 2020 NERA study of securities class actions and (2) two bids Hagens Berman submitted in

unrelated cases. Huang ignores that private contingency fee arrangements frequently result in lawyers obtaining fee awards between 30-40% of the recovery, which confirms that the 30% requested here is consistent with the market. *See* Dkt. 256-1 at 17. In any event, neither of Mr. Huang's cited sources supports his argument.

**NERA Study:** Mr. Huang cites a NERA study purportedly showing that Class Counsel's fee *and* expense award should be limited to $19.272 million, or 29.2% of the gross settlement fund. Dkt. No. 257 at 4. But that study is inapposite for at least two reasons.

*First*, NERA surveyed securities cases, not antitrust cases, and the "antitrust class action is arguably the most complex action to prosecute." *See In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *10 (E.D. Pa. June 2, 2004) (quoting *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000) (internal quotation marks omitted)).[9] Confirming that the requested fee award is reasonable for an antitrust class action, Plaintiffs' Fee Motion cited a study showing that among antitrust class action settlements surveyed between 2009 and 2020, the median fee awarded for settlements between $50 million and $99 million was 30 percent—the amount requested here as a portion of the $66.74 million in settlements. *See* Dkt. No. 256-1 at 16 (citing 2021 study by Professor Joshua Davis that was published in the 2020 Antitrust Annual Report); *see also id.* at 16-17 (citing cases showing that the requested amount is well within the range of fee awards granted in analogous class actions, including in this District).

*Second*, the cases NERA surveyed are poor comparisons to this lawsuit. "[A] signification proportion" of the cases in the NERA survey were "resolved in under four years";

---

[9] *See also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 669 (S.D.N.Y. 2015) (antitrust cases are "notoriously complex, protracted, and bitterly fought"); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007) (the "antitrust class action is arguably the most complex action to prosecute[;] [t]he legal and factual issues involved are always numerous and uncertain in outcome" (internal quotation marks and citation omitted)).

"more than 80% of suits are resolved within four years"; and "[t]he most common resolution periods in the data are between one and two years (28% of cases) and between two and three years (23% of cases)."[10] Obviously, that is not what happened here: this case took almost ***twice as long to settle*** as nearly every case surveyed by NERA, and it cost Class Counsel nearly $13.24 million in expenses (not including fees) to do so. Because the fee inquiry is case specific, the unique circumstances here weigh in favor of the requested fee award. *See Swedish Hosp. Corp.*, 1 F.3d at 1265.

    ***Bids In Unrelated Lawsuits***: Bids that Hagens Berman submitted in unrelated lawsuits are just that: bids submitted in different cases, in different courts, with different facts. They have no bearing on the reasonableness of the fee request here. Indeed, the same argument Mr. Huang raises here was rejected in one of his own cited cases, which determined that even the bid submitted at the outset *in that case*, which was *not* actually accepted by that court, was not "relevant to . . . determin[ing] the reasonableness of the request for attorneys' fees" post settlement. *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *21 (N.D. Cal. Dec. 10, 2020). That is all the more true in this case, where no bid was presented at any point, and Mr. Huang points only to bids submitted in other lawsuits in which two of the three firms representing Plaintiffs (Quinn Emanuel and Mehri & Skalet) were not even involved.

## B.    Mr. Huang's Arguments About Service Awards Should Be Rejected

    Mr. Huang also objects to the request for $10,000 service awards (also called incentive awards) to each of the two Class Representatives, Andrew Mackmin and Sam Osborn. But as

---

[10] NERA, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (Jan. 25, 2021), https://www.nera.com/content/dam/nera/publications/2021/PUB_2020_Full-Year_Trends_012221.pdf.

shown in Plaintiffs' Fee Motion, such service awards are routinely granted and are particularly well deserved here. Dkt. No. 256-1 at 30-31.

Ignoring decades of precedent, Mr. Huang insists that service awards "**must be denied under *stare decisis***," citing two Supreme Court cases from the 1800s that predate both Rule 23 and the antitrust laws. Dkt. No. 254 at 1 (emphasis in original). Mr. Huang is wrong. The D.C. Circuit has described service awards as "entirely appropriate" and has noted that they "have often been used to compensate a class representative for incurring expenses or taking on financial risk." *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015). And other courts have rejected Mr. Huang's argument that these pre-Rule 23 Supreme Court cases bar service awards to class representatives. *See Grace v. Apple, Inc.*, 2021 WL 1222193, at *7 (N.D. Cal. Mar. 31, 2021) (rejecting same argument based on "novel reading of old Supreme Court decisions" as inconsistent with more recent precedent).[11]

While the Eleventh Circuit has held that service awards are not appropriate, *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), that decision does not bind this Court. *Johnson* also has not been followed by other district courts because it is out of step with current class action practice. *See, e.g.*, *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *11 (N.D. Cal. Mar. 17, 2021) ("This Court declines to follow *Johnson* and finds that the requested service awards are appropriate in this case."); *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 353-54 (D.N.J. 2020) (declining to follow *Johnson*; "Until and unless the Supreme Court or Third Circuit bars incentive awards or payments to class plaintiffs, they will

---

[11] The two cases, *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885), and *Trustees v. Greenough*, 105 U.S. 527 (1881), concerned starkly different facts than modern class action practice and have been distinguished by other courts granting service awards on the grounds that they do not apply in this context. *E.g.*, *Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 96 (2d Cir. 2019) (finding both cases "inapposite" and rejecting argument that service awards are "unlawful").

be approved by this Court if appropriate under the circumstances"). Plaintiffs respectfully submit that this Court likewise should not follow *Johnson* and should grant the requested awards because they appropriately compensate the class representatives for a decade of service to the Class that made the Settlements possible. Dkt. No. 256-1 at 30-31.

## C.     Mr. Huang's Request for Sanctions Is Meritless

Finally, Mr. Huang objects to Plaintiffs' description of him as a "serial objector" and seeks unspecified sanctions for what he calls a "false ad hominem." Dkt. No. 257 at 6. Mr. Huang appears to take offense to the term "serial objector," which he wrongly equates to being accused of extortion. No one has accused Mr. Huang of extortion. But the Court should be aware that Mr. Huang has a history of objecting to class action settlements and, in many cases, Mr. Huang's objections have been found meritless.[12] Class Counsel's description of Mr. Huang and his arguments was and remains accurate, and it certainly is not a basis for sanctions.

In any event, Mr. Huang failed to comply with any of Rule 11's procedural requirements, which independently warrants denying his sanctions request. *E.g.*, *Phillips v. Mabus*, 319 F.R.D. 36, 40 (D.D.C. 2016) (denying sanctions requests that were "not stand-alone motions but rather

---

[12] *See, e.g.*, *Huang v. Spector*, 142 S. Ct. 431 (2021) (denying Huang's petition for certiorari to the United States Supreme Court); *Huang v. Schultz*, 141 S. Ct. 252 (2020) (same); *In re Equifax*, 999 F.3d at 1264 ("We are aware of no court that has adopted Mr. Huang's idea that a district court is somehow divested of jurisdiction (and thus lacks authority to approve the settlement) once parties agree to settle a class action."); *McDonald v. Edward D. Jones & Co.*, 791 F. App'x 638 (8th Cir. 2020) (affirming class action settlement; overruling Huang's objections); *Smith v. Costa Del Mar, Inc.*, 2022 WL 252397, at *3 n.3 (M.D. Fla. Jan. 27, 2022) (denying Huang's motion; "Huang is not a member of the class, has not stated a cognizable interest in these proceedings, and filed what is essentially an objection well past the objection deadline"); *Larson v. Allina Health Sys.*, 2020 WL 583082, at *2 (D. Minn. Feb. 6, 2020) (Huang's "Motion for Leave to File Amicus Curiae seeks to 'correct [the] use of [the] class-action device[ ] so that absentee will see less abuse while settling[.] (sic)'"; "Ultimately, the Court does not consider Huang's proposed involvement to be timely, useful, or otherwise helpful to the Court.").

are tacked on to their briefs in opposition to the motions to strike, and the requests were not served … 21 days prior to the requests being presented to the Court").

These assertions are an unfortunate distraction from the relevant questions of whether the proposed settlements and fee motion should be approved. Because, on the substance, Mr. Huang's objections are without merit, Plaintiffs submit that they should be rejected.[13]

## VII.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court: (1) certify the proposed Settlement Class; (2) grant final approval of the proposed class action settlements with Bank of America, Wells Fargo, and Chase; (3) approve of the proposed Plan of Allocation; and (4) reject Mr. Huang's objections and grant the attorneys' fees, expenses, and services awards requested in Plaintiffs' Fee Motion (Dkt. No. 256).

DATED this 25th day of March, 2022.         Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   */s/ Steve W. Berman*
     Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

---

[13] Because Class Counsel have now responded to the only objection to Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards for Class Representatives (Dkt. No. 256), that motion is now ripe for adjudication as well, and Plaintiffs respectfully request that it be granted. *See* Dkt. No. 265-25, [Proposed] Order Granting *Mackmin* Consumer Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards for Class Representatives.

Ben M. Harrington (*pro hac vice*)
Benjamin J. Siegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3034
benh@hbsslaw.com
bens@hbsslaw.com

Stephen R. Neuwirth (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
Viola Trebicka (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Steven A. Skalet
(D.C. Bar No. 359804)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
sskalet@findjustice.com

*Co-Lead Class Counsel for
Mackmin Consumer Plaintiffs*