## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| *Mackmin, et al. v. Visa Inc., et al.* | Case No. 1:11-cv-01831 (RJL) |
| | **DECLARATION OF ERIC SCHACHTER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH VISA AND MASTERCARD DEFENDANTS** |
| This Document Relates to:<br>All Plaintiff Actions | |

I, Eric Schachter, hereby declare as follows:

1.      I am a Senior Vice President with A.B. Data, Ltd. ("A.B. Data"). I am fully familiar with the facts contained herein based upon my personal knowledge, and if called as a witness, could and would testify competently thereto. I submit this Declaration at the request of Class Counsel in connection with the above-captioned action (the "Action").

2.      A.B. Data has been acting as the Court-appointed Settlement Administrator for the class action settlements previously reached in this Action with the Bank Defendants (Bank of America, Chase, and Wells Fargo). A.B. Data has also been appointed as Notice, Claims, and/or Settlement Administrator in hundreds of class actions and related matters, administering some of the largest and most complex notice and claims administration programs of all time, involving all aspects of media, direct, and third-party notice programs, data management and analysis, claims administration, and settlement fund distribution. An updated profile of A.B. Data's background and capabilities is attached as **Exhibit A**.

3.      I have over 20 years of experience in legal administration that includes implementing and maintaining notice plans and claims administration programs in hundreds of class action cases and related proceedings, including complex consumer, antitrust, and securities class actions; Securities and Exchange Commission settlements and related distributions; and civil rights, employment, and insurance class actions.

4.      At the request of Class Counsel, and in consultation with A.B. Data's media experts, I prepared a proposed notice plan for the Settlement with Visa Inc., Visa U.S.A. Inc., Visa International Service Association, Plus System, Inc. ("Visa") and Mastercard Incorporated and Mastercard International Incorporated d/b/a Mastercard Worldwide ("Mastercard") that is substantially similar to the successful notice plan that was previously used to provide notice of Plaintiffs' previous settlements with the Bank Defendants. This Declaration will describe the proposed notice plan and how it will meet Federal Rule of Civil Procedure 23 and due process requirements.

5.      The objective of the proposed notice plan is to provide the best practicable notice, under the circumstances, of the proposed Settlements to potential Settlement Class Members. The Settlement Class is defined as:

> All individuals and entities that paid an unreimbursed ATM Access Fee directly to any Bank Defendant or Alleged Bank Co-Conspirator for a Foreign ATM Transaction using an ATM card issued by a financial institution in the United States to withdraw cash at an ATM located in the United States at any time from October 1, 2007 to the date of the Preliminary Approval Order.

**DIRECT NOTICE**

6.      A.B. Data currently maintains a database of approximately 100 million potential Settlement Class Member email addresses previously provided by the Bank Defendants to facilitate settlement notice. A.B. Data also maintains approximately 400,000 potential Class Member email addresses derived from claims submitted in the settlements with the Bank Defendants. Accordingly, the proposed notice plan will feature robust direct notice via email to all previously identified potential Settlement Class Member email addresses.

7.      Direct notice will be provided via a Short-Form Notice, attached as **Exhibit B**, that will be formatted as an email and sent to all known potential Settlement Class Member email addresses. Email notice is the most practicable form of direct notice here as mailed notice to potential Settlement Class Members would incur millions or tens of millions of dollars in print and postage costs and, thus, would be cost prohibitive. A Long-Form Notice, attached as **Exhibit C**, will be posted on the case-specific website, www.ATMClassAction.com, in English and Spanish. With appropriate updates, these notice documents track the information and organization of the notice documents approved for the prior Bank Defendant settlements, and the website on which the Long-Form Notice can be accessed is the same case-specific website that was used for those settlements.

8.      The Short-Form Notice and Long-Form Notice will include summary information about the proposed Settlement with Visa and Mastercard, including: this is a class action; the Class definition in plain and engaging language ("Used an ATM Card and were Assessed a Surcharge? You Could Get Money From a $197.5 Million Class Action

Settlement."); the Class alleges antitrust violations related to ATM surcharges; Settlement Class Members may appear through an attorney; Settlement Class Members can ask to be excluded, or if they remain in the Settlement Class, may object to the Settlements' terms; Settlement Class Members who submitted claims and/or who received a payment in the previous settlements do not need to file another claim to be eligible to get a payment; the deadlines to submit a claim (for those who did not do so previously), request exclusion, and object; and the binding effect of a Class judgment.

9.      When sending email notice, A.B. Data implements certain best practices to maximize deliverability. For example, the subject line, the sender, and the body of the message will be designed to overcome SPAM filters and encourage readership. The email notice will be in an embedded html text format without graphics, tables, images, attachments, and other elements that would increase the likelihood that the message could be blocked by email service providers. The email notice will also be transmitted with a digital signature to the header and content of the email notice, which will allow providers to programmatically authenticate that the email notices are from A.B. Data's authorized mail servers. The email notice will also include an embedded link to the case-specific website, www.ATMClassAction.com, so Settlement Class Members can easily access frequently asked questions, important dates and deadlines, and other relevant documents and information about the case.

**DIGITAL MEDIA**

10.     To supplement direct notice efforts, targeted digital banner and newsfeed advertisements will be placed on various websites and applications.

11.     Digital advertising allows the viewer to click on a banner or newsfeed advertisement and instantly be directed to the Settlement website. A.B. Data's digital media experts will analyze syndicated data from Comscore[1] and MRI-Simmons[2] to place digital banner, text, and/or newsfeed ads through popular digital networks and social media platforms. Digital advertisements will appear on Google Display Networks, Google AdWords, YouTube, Facebook, Instagram, and X (formally known as Twitter). The banner ads will be translated into Spanish and appear on websites specifically serving the Hispanic community. These advertisements will appear across devices, including desktop/laptop, tablet, and mobile platforms. Samples of the proposed digital banner and newsfeed ads are attached as **Exhibit D**.

12.     Digital impressions will be highly targeted, specifically delivered to the social media feeds of Settlement Class Members using their known contact information and digital users who have expressed an interest in information relevant to the subject of this case, such as information concerning ATM withdrawals.

---

[1] Comscore is a global internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and internet data usage. Comscore maintains a proprietary database of more than 2 million consumers who have given Comscore permission to monitor their browsing and transaction behavior, including online and offline purchasing.

[2] MRI Simmons is the leading provider of insights on the American consumer.  This nationally accredited media and marketing research firm provides syndicated data on audience size, composition, and other relevant factors pertaining to major media, including broadcast, magazines, newspapers, and outdoor advertising. The firm's multidimensional database is the largest and most reliable source for integrated media planning. Data from its Survey of the American Consumer is used in the majority of media and marketing plans written in the United States. It provides a single source for in-depth consumer demographic and lifestyle/psychographic characteristics, including how consumers use major media, products, and services.  The annual study collects information from tens of thousands of adults in two waves a year and measures approximately 500 product/service categories, 6,000 brands, and various lifestyle activities.

13.     Several campaign optimization strategies will be utilized to deliver targeted ads including:

- Mobile In-App - Target individuals, including those from available data, while they are using relevant mobile applications that fit into our data pool;

- Mobile websites - Target phones and tablets whose users are visiting websites that are contextually relevant or websites being visited by relevant users;

- Contextual targeting - Target individuals who visited websites with relevant content and context;

- Behavioral targeting - Target user IDs across the Internet whose owners have shown activity (e.g., clicked through to the website) in the past or filed a claim; and

- Predictive Modeling - Use "look alike" modeling to target ads to user IDs whose owners have strong similarities to users who previously "clicked through" to the case website.

14.     All banner and newsfeed ads will include embedded and trackable links to the case-specific website, www.ATMClassAction.com, providing a way to optimize ad placement based on traffic and conversions. A.B. Data employs a fully staffed digital buying team to manage all digital and social media programs in-house for the greatest control and oversight. A.B. Data's digital media experts will monitor the success, conversions, and activity associated with the digital and social media and will optimize the number of impressions delivered across each platform to achieve maximum engagement and efficiency.

15.     To make it easier for potential Settlement Class Members to locate the case-specific website, sponsored search listings will be purchased on Google, the most visited search engine and other search engine partners. When a person uses certain identified target phrases and keywords relevant to the Settlements in the Google search engine, links to the case-specific website may appear on the search result pages.

16.     The digital and social media ad campaign will run 60 days to ensure ample time to deliver targeted impressions and drive Settlement Class Members to the website. We expect a minimum of 500 million impressions to be delivered on digital networks and social media enabling maximum exposure and delivering the reach required to satisfy due process. The proposed digital and social media ad campaign is flexible and will be adjusted as necessary to provide sufficient notice coverage. Thus, the number of impressions ultimately served will depend on how many Settlement Class Members are successfully sent direct notice by email and will be adjusted accordingly to provide sufficient reach. Notably, over 630 million impressions, resulting in over 540,000 clicks, were delivered as part of the notice plan in the Bank Defendant settlements.

## PRINT MEDIA

17.     To reach older Settlement Class Members and other light digital and social media users, the Short-Form Notice will be published one time as a 1/3-page ad in *People* magazine. *People* is a trusted source for celebrity and entertainment news; captivating human-interest stories; and beauty, food, and style trends. This weekly publication has a broad national readership, reaching over 96 million consumers.

**EARNED MEDIA**

18.     A.B. Data will disseminate the Short-Form notice as a news (press) release via *PR Newswire*'s US1 and Hispanic Newsline distribution lists to help the case gain more attention from the media and potential Settlement Class Members. The press release will reach traditional media outlets (television, radio, newspapers, magazines), news websites, and journalists nationwide.

19.     News about the Settlements will also be broadcast to the news media via X (formerly known as Twitter). It will be tweeted from *PR Newswire*'s and A.B. Data's X accounts to thousands of media outlets, journalists, and other followers.

**TOLL-FREE TELEPHONE NUMBER**

20.     A.B. Data will update and continue to maintain the dedicated toll-free telephone number with an automated interactive voice response system to assist potential Settlement Class Members in understanding the terms of the Settlements and their rights. The toll-free telephone number will appear on the Short-Form Notice and Long-Form Notice. The automated interactive voice response system presents callers with a series of choices to hear prerecorded information about the Settlements. If callers need further help, they have an option to leave a voicemail to receive a call back.

**WEBSITE**

21.     As noted above, A.B. Data will also update and continue to maintain the case-specific website, www.ATMClassAction.com. Many members of the Settlement Class have accessed this website already in connection with the Bank Defendant settlements. The website address will appear on the Short-Form Notice and Long-Form

Notice and be hyperlinked from the digital and social media ads and email. The website will provide, among other things, a downloadable version of the Long-Form Notice, a detailed summary of the Settlement's terms, functionality for Settlement Class Members to submit their claims online, all relevant documents, important dates, and any pertinent updates concerning the litigation or settlement process. The website is secure, with a "https" designation.

## EXCLUSION PROCESSING

22.     The notices will provide that the Court will exclude any Settlement Class Member who timely sends a written, mailed request to the Notice Administrator asking to be excluded from the Settlement Class. A.B. Data will promptly circulate copies of all such requests to the parties and provide a report that tracks each request and whether the required information was included.

## CLAIMS AND DISTRIBUTION

23.     Settlement Class Members who submitted a claim or received a payment in the previous settlements will not be required to submit another claim. Such Settlement Class Members may, however, submit an updated claim at their election and any such updated claim may include additional qualifying ATM transactions occurring after submission of the prior claim form.

24.     Settlement Class Members who did not submit a claim in the previous settlements must submit a timely, valid claim to receive monetary compensation from the Settlement with Visa and Mastercard. These Settlement Class Members will be permitted to submit claims online through a secure website or by mail. Attached as **Exhibit E** is the

proposed Claim Form. This is substantially the same claim form that was used for the Bank Defendant settlements. The only difference is that the instructions have been updated to advise Settlement Class Members that if they submitted a claim previously, and do not wish to claim additional transactions, they do not need to submit another claim form to receive a payment. As with the Bank Defendant settlements, The Net Settlement Fund will be distributed to valid claimants *pro rata* based on the number of claims that are submitted. A.B. Data will process each claim in accordance with the Court-approved Plan of Allocation and/or relevant Court orders.

25.     Settlement payments will be digitally sent to each eligible claimant using the email address they provide on their submitted Claim Form. At the time of distribution, each eligible claimant will be provided with a number of digital options to instantaneously receive their payment, such as a virtual debit card, PayPal, or other ecommerce platforms. Given the large size of this Settlement Class and the expected payment amounts, a digital distribution is again recommended to reduce administrative costs and provide convenience and efficiency for claimants (who will be able to receive their funds without having to deposit a check or visit a bank). Settlement Class Members can also request a traditional paper check payment by mail.

## ESTIMATED ADMINISTRATIVE COSTS

26.     A.B. Data estimates total administrative costs to provide notice, process claims, and to distribute funds to eligible claimants, as described above, to be in the range of $1 million to $1.25 million. These costs include out-of-pocket expenses, such as media

placements; postage; and our professional fees associated with disseminating notice, processing claims, and effectuating payment to eligible claimants.

## **CONCLUSION**

27.     It is my opinion, based on my individual expertise and experience and that of my A.B. Data colleagues, that the proposed notice plan is the best notice practicable under the circumstances. The plan tracks the plan that was approved and successfully implemented to deliver notice of the prior Bank Defendant settlements. It is designed to effectively reach potential Settlement Class Members, will feature robust direct notice, and will deliver plain language notices that capture readers' attention and provide relevant information about their rights and options in an informative and easy to understand manner.

28.     A.B. Data estimates that notice of the prior Bank Defendant settlements reached over 80% of the target audience, and thus potential Settlement Class Members. Because it uses the same multi-channel approach as the previous settlement notice program, including direct notice, paid media (digital, social, and print advertising), and earned media, A.B. Data's notice program for the current settlement with Visa and Mastercard should have the same reach.[3] The proposed notice plan provides a reach similar to not only the Bank Defendant settlements, but also notice programs that courts have approved previously and the range recommended and considered reasonable by The

---

[3] Reach is the estimated percentage of a target audience reached through a specific media vehicle or combination of media vehicles.

Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.[4]

    29.    This proposed notice plan conforms to the standards employed by A.B. Data in notification plans designed to reach potential class members of settlement groups or classes that are national in scope. For all these reasons, in my opinion, the proposed notice plan satisfies the requirements of Federal Rules of Civil Procedure Rule 23 and due process.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of May 2024 in Milwaukee, Wisconsin.

        ERIC SCHACHTER

---

[4] The *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* states: "The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70-95%."

# EXHIBIT A



**Headquarters**
600 A.B. Data Drive
Milwaukee, WI 53217
P:  866-217-4470
F:  414-961-3099

**New York**
One Battery Park Plaza
32nd Floor
New York, NY 10004
P:  646-290-9137

**Washington DC**
915 15th St., NW, Ste. 300
Washington, DC 20005
P:  202-618-2900
F:  202-462-2085

**Florida**
5080 PGA Boulevard, Ste. 209
Palm Beach Gardens, FL 33418
P:  561-336-1801
F:  561-252-7720

**Israel**
19 Weissburg Street
Tel Aviv 69358
Israel
P:  +972 (3) 720-8782



# CAPABILITIES

## About A.B. Data

Founded in 1981, **A.B. Data has earned a reputation** for expertly managing the complexities of class action administration in consumer, antitrust, securities, Securities and Exchange Commission (SEC) enforcement actions, and ERISA, Attorneys General, employment, civil rights, insurance, environmental, wage and hour, and other class action cases. **A.B. Data's work in all aspects of class action administration** has been perfected by decades of experience in hundreds of class action cases involving billions of dollars in total settlements. Dedicated professionals deliver **A.B. Data's all-inclusive services,** working in partnership with its clients to administer their class action cases effectively, efficiently, and affordably, regardless of size or scope.

**A.B. Data offers unmatched resources and capacity** and is capable of expertly administering any class action notice, settlement, and/or fund administration. Whether notifying millions of class members in the United States or throughout the world, processing millions of claims, distributing payments digitally via A.B. Data's Digital PayPortal℠, or printing and distributing millions of checks, **A.B. Data matches its talent and technology** to the specific needs of its clients, delivering unparalleled service on time and on budget without ever compromising quality.

## Location, Ownership Structure

**A.B. Data is an independently owned**, more than 40-year-old, Milwaukee, Wisconsin-based company that prides itself on its vast expertise and industry-leading innovations. We like to remind our clients and partners that we're not just a class action administration company, but a group of experienced, dedicated professionals who believe that relationships are just as important as the accurate and timely management of class action administrations. In other words, we are people who do business with people.

## Services

**Every A.B. Data client is deserving of the best job we can put forward**. A.B. Data makes class action administration easy for our clients with clarity, convenience, and efficiency. Our priority is to navigate the intricacies of our clients' matters and deliver successful results by using our solid expertise, advanced technology, and top-quality products and services. We pay attention to the details and get it right the first time.

We aim to provide our clients the full experience of a truly collaborative working relationship. It is why we believe much of our success originates from our philosophy of "people doing business with people."



## Services

### All Digital — From Notice to Distribution

**A.B. Data is uniquely positioned to design, implement, and maintain notice and settlement administration programs** using an innovative, "all-digital" approach that replaces the more traditional and less efficient methods of administration, such as newspaper ads, mailed notices, and paper checks. Many of our recent proposed notice plans and claim programs utilize the latest technologies such as microtargeted digital ads for notice, streamlined online claims, and distributing settlement funds electronically using a digital paywall. These methods provide significant cost savings, are consistent with the amendments to Rule 23 that are now in effect, and importantly provide much-needed alignment of class action notice and administration with current consumer behaviors.

### Pre-Settlement Consultation

**The pre-settlement consultation is a collaborative session** designed to help A.B. Data clients prepare a stronger case. Our support teams simplify the task of sorting through a maze of documents during investigation and discovery, streamlining the process and preserving fund assets. From there, we assist with fully interactive media packages for court presentations and settlement negotiations. A.B. Data works closely with our clients, offering expert testimony on documents, processing, class and notice manageability, and proposed plans of allocation.

### Media Services

**A.B. Data continues to earn our reputation** as the early innovator in integrating advanced micro-targeting techniques, including contextual targeting, behavioral targeting, and predictive modeling. Coupled with inventive digital media strategies to drive claims, case-specific banner ad development, class member research, and comScore analysis services, our multi-tiered media programs are designed to cost-effectively deliver notice to potential class members and increase claims rates.

### Notice Administration

**In A.B. Data, clients have a comprehensive resource** with a depth of experience in direct notice. Our compliance and understanding of Rule 23 of the Federal Rules of Civil Procedure are crucial in meeting the "plain language" legal requirements for any campaign. From our sophisticated digital media capabilities and extensive global experience with class member research, our experts create notice documents that are easily understandable and cost-efficient to produce. We consult with our clients to deliver notice documents from multi-page, mailed, or emailed notice packets to concise postcards that establish the most influential and cost-effective means of communicating with potential claimants.



## Claims Processing

**A.B. Data continues to bring game-changing technologies** to improve the speed and precision in claims processing. Our robust system for online claims submissions allows us to meticulously verify data and documentation, preserve and authenticate claims, and calculate and verify settlement amounts. In addition, our data network infrastructure includes on-site data storage, backup, contingency plans, and security for electronic and hard copy claim filings. It is all part of a total commitment to be the most innovative and comprehensive resource in the industry. At A.B. Data, we take pride in having the in-house capacity to process millions of pages, as well as the organizational integrity to treat every claim as if it were the only one.

## Contact Center

**A.B. Data's Contact Center is comprised of a full staff** that is trained on and equipped with online and telecommunication systems to monitor and connect with class members. Associates routinely monitor class member communication for all class action administrations, including antitrust, consumer, and securities.

Utilizing monitoring software, associates watch multiple social media channels simultaneously, allowing for instantaneous routing of inquiries and interaction with claimants. Detailed and concise analytical reports outlining Contact Center activities are always provided.

Our Contact Center and case websites are capable of handling millions of class member engagements, as recently displayed in a campaign which garnered over 1.2 million website visits in two months and had more than 72,500 Facebook engagements. Facebook comments and threads are monitored and claimants are guided to the website for more information. Google AdWords and display advertising have also brought hundreds of thousands of visitors to various case websites.

A.B. Data's Contact Center also has Spanish language associates in-house and we can accommodate any language, given proper lead time. Traditional call center facilities are also available, if needed.

## Case Websites

**We offer a state-of-the-art technology platform** that supports every step of our class action administration process. Our expert marketing professionals design customized case-specific websites that provide potential class members easy access to case information, critical documents, important deadlines, as well as the capability to file claim forms and register for future mailings about the case. Claimants can use the website to elect to receive their settlement payments by mail or by one of several digital payment options, all accessible by mobile devices.

## Settlement Fund Distribution

**From complete escrow services to establishment of qualified settlement funds**, check printing and mailing, electronic cash or stock distribution and tax services, A.B. Data has always provided a full-service solution to Settlement Fund Distribution. Our IT team has decades of experience in developing and implementing fast, secure databases and claims administration systems that ensure class members receive the correct amount in their settlement disbursement. Today's digital capabilities allow even greater convenience for class members. In certain instances, claimants can now elect to

instantaneously receive settlement payments through popular digital-payment options, such as PayPal, Amazon, and virtual debit cards.

## A.B. Data's Leadership

 A.B. Data's administration team is composed of the following key executives, who collectively have decades of experience settling and administering class actions:

**Bruce A. Arbit, Co-Managing Director** and one of the founders of the A.B. Data Group, serves as Chairman of the Board and oversees the day-to-day operations of the A.B. Data Group of companies, employing almost 400 people in the United States and Israel. Mr. Arbit is also  Chairman of the Board of Integrated Mail Industries, Ltd. and has served as a member of the Board of Directors of University National Bank and State Financial Bank. He is the past Chairman of Asset Development Group, Inc., Home Source One, and American Deposit Management and is a member of the National Direct Marketing Association, the Direct Marketing Fundraising Association, and the American Association of Political Consultants. He was named 1996 Direct Marketer of the Year by the Wisconsin Direct Marketing Association.

A.B. Data's work in class action litigation support began with the Court selecting A.B. Data to oversee the restitution effort in the now-famous Swiss Banks Class Action Case, the International Commission on Holocaust Era Insurance Claims, and every other Holocaust Era Asset Restitution program, in which it was the company's job to identify, contact, and inform survivors of the Holocaust. A.B. Data delivered by reaching out to millions of people in 109 countries who spoke more than 30 languages. Since those days, Mr. Arbit has guided the class action division through phenomenal growth and success. Today, A.B. Data manages hundreds of administrations annually that distributes billions of dollars to class members.

**Thomas R. Glenn, President**, Mr. Glenn's management of A.B. Data's Class Action Administration Company includes designing and implementing notice plans and settlement administration programs for antitrust, securities, and Securities and Exchange Commission settlements and SEC disgorgement fund distributions, as well as consumer, employment, insurance, and civil rights class actions. Mr. Glenn previously served as Executive Vice President at Rust Consulting and has more than 30 years of executive leadership experience.

**Eric Miller, Senior Vice President**, as a key member of A.B. Data's Class Action Administration Leadership Team, oversees the Case Management Department and supervises the operations and procedures of all of A.B. Data's class action administration cases. Mr. Miller is recognized in the class action administration industry as an expert on securities, SEC, consumer, product recall, product liability, general antitrust, pharmaceutical antitrust, and futures contract settlements, to name a few settlement types. Prior to joining A.B. Data, Mr. Miller served as the Client Service Director for Rust Consulting, responsible there for its securities practice area. He has more than 20 years of operations, project management, quality assurance, and training experience in the class action administration industry. In addition, Mr. Miller manages A.B. Data's office in Palm Beach Gardens, Florida.

**Eric Schachter, Senior Vice President**, is a member of A.B. Data's Class Action Administration Leadership Team. He has over 15 years of experience in the legal settlement administration services industry. Mr. Schachter's responsibilities include ensuring successful implementation of claims administration services for A.B. Data's clients in accordance with settlement agreements, court orders, and service agreements. He also works closely with Project Managers to develop plans of administration to provide the highest level of effective and efficient delivery of work product. A frequent speaker on claims administration innovation and best practices at industry events nationwide, Mr. Schachter has a bachelor's degree in sociology from Syracuse University, earned his law degree at Hofstra University School of Law, and was previously an associate at Labaton Sucharow LLP in New York City.

**Elaine Pang, Vice President, Media**, oversees the Media Department and is responsible for the direction, development, and implementation of media notice plans for A.B. Data's clients. Ms. Pang brings more than 15 years of experience in developing and implementing multifaceted digital and traditional media for high profile complex legal notice programs. She uses her experience in class actions and advertising to provide the best practicable notice plans for large scale campaigns across domestic and international regions, and she leverages her expertise to better understand the evolving media landscape and utilize cutting-edge technology and measurement tools. Prior to entering the class action industry, Ms. Pang worked with many leading reputable brands, including General Mills, Air Wick, Jet-Dry, Comedy Central, Madison Square Garden, Radio City Music Hall, and Geox. She earned her MBA from Strayer University and holds a BS in Marketing from Pennsylvania State University.  Ms. Pang's credentials include Hootsuite Social Marketing Certification, Google Adwords and Analytics Certification, and IAB Digital Media Buying and Planning Certification.

**Paul Sauberer, Vice President of Quality**, is responsible for overseeing quality assurance and process management, working diligently to mitigate risk, ensure exceptional quality control, and develop seamless calculation programming. Mr. Sauberer brings more than 20 years of experience as a quality assurance specialist with a leading claims-processing company where he developed extensive knowledge in securities class action administration. He is recognized as the class action administration industry's leading expert on claims and settlement administrations of futures contracts class actions.

**Justin Parks, Vice President**, is a member of A.B. Data's Class Action Administration Leadership Team. Mr. Parks brings extensive experience in client relations to A.B. Data's business development team. Mr. Parks has over 15 years of experience in the legal settlement administration services industry and has successfully managed and consulted on notice plans and other administrative aspects in hundreds of cases. Mr. Parks is uniquely experienced in Data Privacy matters, having consulted with clients on numerous matters stemming from data breaches as well as violations of the Illinois Biometric Information Privacy Act (BIPA), including some of the first ever Biometric Privacy related settlements in history. Mr. Parks' knowledge and understanding of the class action industry, as well as his client relationship skills, expand A.B. Data's capacity to achieve its business development and marketing goals effectively.

**Steve Straub, Senior Director of Operations**, started with A.B. Data in 2012 as a Claims Administrator. He moved through the ranks within the company where he spent the past five years as Senior Project Manager managing many of the complex commodities cases such as *In re LIBOR-Based Financial Instruments Antitrust Litigation*, *In re London Silver Fixing, Ltd. Antitrust Litigation*, and *Laydon v. Mizuho Bank, Ltd., et al.* Mr. Straub's performance in these roles over the past ten years, along with his comprehensive knowledge of company and industry practices and first-person experience leading the project management team, has proven him an invaluable member of the A.B. Data team.

In his role as Claimant Operations Director, his responsibilities include developing efficiencies within the operations center, which includes mailroom, call center, and claims processing areas. His areas of expertise include business process development, strategic/tactical operations planning and implementation, risk analysis, budgeting, business expansion, growth planning and implementation, cost reduction, and profit, change, and project management. Mr. Straub is well-versed in the administration of securities, consumer, and antitrust class action settlements. He earned his Juris Doctor degree from Seton Hall University School of Law in Newark, New Jersey.

**Jack Ewashko, Director of Client Services**, brings twenty years of industry and brokerage experience to his role with A.B. Data. He is an accomplished client manager adept at facilitating proactive communications between internal and outside parties to ensure accurate and timely deliverables. Mr. Ewashko previously held positions at two claim administration firms where he oversaw the securities administration teams and actively managed numerous high-profile matters, including the $2.3 billion foreign exchange litigation. He notably served as Vice President, FX and Futures Operations at Millennium Management, a prominent global alternative investment management firm. As he progressed through trading, analytic, management, and consultancy roles at major banks and brokerage firms, Mr. Ewashko gained hands-on experience with vanilla and exotic securities products, including FX, commodities, mutual funds, derivatives, OTC, futures, options, credit, debt, and equities products. In the financial sector, he also worked closely with compliance and legal teams to ensure accuracy and conformity with all relevant rules and regulations regarding the marketing and sale of products, as well as the execution and processing of trades. He has held Series 4, Series 6, Series 7, and Series 63 licenses, and has been a member of the Futures Industry Association (FIA) and Financial Industry Regulatory Authority (FINRA). Mr. Ewashko earned his Bachelor of Business Administration from Long Island University, Brooklyn, New York.

**Brian Devery, Director of Client Services**, brings more than a decade of experience in class action administration and project management, as well as over two decades of experience as an attorney (ret.). Mr. Devery currently focuses on consumer, antitrust, employment, and other non-securities based administrations. In addition to driving project administration, he is focused on the implementation of process improvement, streamlining, and automation. Mr. Devery is admitted to practice law in State and Federal Courts of New York with his Juris Doctorate earned from the Maurice A. Deane School of Law at Hofstra University, Hempstead, New York.

**Adam Walter, PMP, Director of Client Services**, has nearly fifteen years of experience managing the administration of securities class action settlements and SEC disgorgements totaling more than $4 billion. He has managed settlement programs in engagements involving some of the largest securities class action settlements and is a key contributor to the development of administration strategies that meet the evolving needs of our clients. His responsibilities include developing case administration strategies to ensure that all client and court requirements and objectives are met, overseeing daily operations of case administrations, ensuring execution of client deliverables, providing case-related legal and administration support to class counsel, overseeing notice dissemination programs, implementing complex claims-processing and allocation methodologies, establishing quality assurance and quality control procedures, and managing distribution of settlement funds. Mr. Walter holds a bachelor's degree in business administration from Florida Atlantic University, Boca Raton, Florida. He also has been an active member of the Project Management Institute since 2010 and is PMP®-certified.

**Eric Nordskog, Director of Client Services**, started with A.B. Data in 2012 on the operations team, managing dozens of team leads and claims administrators in the administration of legal cases and actions. In 2017, Mr. Nordskog was promoted to Project Manager, due in part to his proven ability to add consistency and efficiency to the e-claim filing process with new streamlined processes and audit practices. Today, as Senior Project Manager, he directs many of A.B. Data's securities, insurance, and

consumer cases. He regularly oversees the administration of large insurance cases, such as two recent Cigna Insurance matters that involved complex calculations and over one million class members each. He is also the primary hiring and training manager for new project managers and coordinators. Mr. Nordskog earned his Juris Doctor degree from Marquette University Law School, Milwaukee, in 2001.

**Eric Schultz, MCSE, Information Technology Manager and Security Team Chairperson**, has been with A.B. Data for more than 19 years, and is currently responsible for overseeing all information technology areas for all A.B. Data divisions across the United States and abroad, including network infrastructure and architecture, IT operations, data security, disaster recovery, and all physical, logical, data, and information systems security reviews and audits required by our clients or otherwise. As a Microsoft Certified Systems Engineer (MCSE) with more than 25 years of experience in information technology systems and solutions, Mr. Schultz has developed specializations in network security, infrastructure, design/architecture, telephony, and high-availability network systems.

## Secure Environment

 **A.B. Data's facilities provide the highest level of security** and customization of security procedures, including:

- A Secure Sockets Layer server
- Video monitoring
- Limited physical access to production facilities
- Lockdown mode when checks are printed
- Background checks of key employees completed prior to hire
- Frequency of police patrol – every two hours, with response time of five or fewer minutes
- Disaster recovery plan available upon request

## Data Security

**A.B. Data is committed to protecting the confidentiality, integrity, and availability of personal identifying information** and other information it collects from our clients, investors, and class members and requires that its employees, subcontractors, consultants, service providers, and other persons and entities it retains to assist in distributions do the same. A.B. Data has developed an Information Security Policy, a suite of policies and procedures intended to cover all information security issues and bases for A.B. Data, and all of its divisions, departments, employees, vendors, and clients. A.B. Data has also recently taken the necessary, affirmative steps toward compliance with the EU's General Data Protection Regulation and the California Consumer Privacy Act.

A.B. Data has a number of high-profile clients, including the Securities and Exchange Commission (SEC), the United States Department of Justice, the Attorneys General of nearly all 50 states, other agencies of the United States government, and the Government of Israel, as well as direct banking and payment services companies with some of the most recognized brands in United States financial services and some of the largest credit card issuers in the world.

We are therefore frequently subjected to physical, logical, data, and information systems security reviews and audits. We have been compliant with our clients' security standards and have also been determined to be compliant with ISO/IEC 27001/2 and Payment Card Industry (PCI) data-security standards, the Gramm-Leach-Bliley Act (GLB) of 1999, the National Association of Insurance Commissioners (NAIC) Regulations, the Health Insurance Portability and Accountability Act (HIPAA) of 1996, and the Health Information Technology for Economic and Clinical Health Act (HITECH).

The Government of Israel has determined that A.B. Data is compliant with its rigorous security standards in connection with its work on Project HEART (Holocaust Era Asset Restitution Taskforce).

A.B. Data's fund distribution team has been audited by EisnerAmper LLP and was found compliant with class action industry standards and within 99% accuracy. EisnerAmper LLP is a full-service advisory and accounting firm and is ranked the 15th-largest accounting firm in the United States.

In addition, as part of PCI compliance requirements, A.B. Data has multiple network scans and audits from third-party companies, such as SecurityMetrics and 403 Labs, and is determined to be compliant with each of them.

## Fraud Prevention and Detection



**A.B. Data is at the forefront of class action fraud prevention.**

A.B. Data maintains and utilizes comprehensive proprietary databases and procedures to detect fraud and prevent payment of allegedly fraudulent claims.

We review and analyze various filing patterns across all existing cases and claims. Potential fraudulent filers are reported to our clients as well as to the appropriate governmental agencies where applicable.

## Representative Class Action Engagements

**A.B. Data and/or its team members have successfully administered** hundreds of class actions, including many major cases. Listed below are just some of the most representative or recent engagements.

### Consumer & Antitrust Cases

- *In re EpiPen Marketing, Sales Practices and Antitrust Litigation*
- *In re Broiler Chicken Antitrust Litigation - Commercial (Indirect)*
- *In re Broiler Chicken Antitrust Litigation – Indirect*
- *In re Broiler Chicken Antitrust Litigation – Direct*
- *In re Pork Antitrust Litigation – Directs*
- *In re Pork Antitrust Litigation – Indirects*



- *Peter Staley, et al. v. Gilead Sciences, Inc., et al.*
- *In re: Opana ER Antitrust Litigation*
- *In re Ranbaxy Generic Drug Application Antitrust Litigation*
- *In re Valeant Pharmaceuticals Int'l, Inc. Third-Party Payor Litigation*
- *Staley, et al., v. Gilead Sciences*
- *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation – Direct Purchasers*
- *Beef Direct Purchaser Antitrust Litigation*
- *BCBSM, Inc. v. Vyera Pharmaceuticals, et al.* (Daraprim)
- *In re Automobile Antitrust Cases I and II*
- *Olean Wholesale Grocery Cooperative, Inc., et al. v. Agri Stats, Inc., et al.* (Turkey)
- *Integrated Orthopedics, Inc., et al. v. UnitedHealth Group, et al.*
- *In Re: Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*
- *Vista Healthplan, Inc., et al. v. Cephalon, Inc., et al.* (Provigil)
- *Jeffrey Koenig, et al. v. Vizio, Inc.*
- *Wit, et al. v. United Behavioral Health*
- *Weiss, et al. v. SunPower Corporation*
- *Smith, et al. v. FirstEnergy Corp., et al.*
- *Resendez, et al. v. Precision Castparts Corp. and PCC Structurals, Inc.*
- *Julian, et al. v. TTE Technology, Inc., dba TCL North America*
- *Eugenio and Rosa Contreras v. Nationstar Mortgage LLC*
- *Phil Shin, et al. v. Plantronics, Inc.*
- *In re: Qualcomm Antitrust Litigation*
- *In re Resistors Antitrust Litigation*
- *The Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee v. Momenta Pharmaceuticals, Inc. and Sandoz Inc.* ("Lovenox Antitrust Matter")
- *William Kivett, et al. v. Flagstar Bank, FSB, and DOES 1-100, inclusive*
- *Adelphia, Inc. v. Heritage-Crystal Clean, Inc.*
- *LLE One, LLC, et al. v. Facebook, Inc.*
- *Bach Enterprises, Inc., et al. v. Advanced Disposal Services South, Inc., et al.*
- *JWG Inc., et al. v. Advanced Disposal Services Jacksonville, L.L.C., et al.*
- *State of Washington v. Motel 6 Operating L.P. and G6 Hospitality LLC*
- *In re GSE Bonds Antitrust Litigation*
- *Wave Lengths Hair Salons of Florida, Inc., et al. v. CBL & Associates Properties, Inc., et al.*
- *In re Loestrin 24 FE Antitrust Litigation*
- *Office of the Attorney General, Department of Legal Affairs, State of Florida v. Pultegroup, Inc. and Pulte Home Company, LLC*
- *In re Cigna-American Specialties Health Administration Fee Litigation*
- *In re: Intuniv Antitrust Litigation*
- *High Street, et al. v. Cigna Corporation, et al.*
- *Gordon Fair, et al. v. The Archdiocese of San Francisco, San Mateo, and Marin County*
- *Bizzarro, et al. v. Ocean County Department of Corrections, et al.*
- *Meeker, et al. v. Bullseye Glass Co.*
- *MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance Company*
- *Tennille v. Western Union Company - Arizona*
- *Garner, et al. v. Atherotech Holdings, Inc.* and *Garner, et al. v. Behrman Brothers IV, LLC, et al.*
- *Robinson, et al. v. Escallate, LLC*
- *Josefina Valle and Wilfredo Valle, et al. v. Popular Community Bank f/k/a Banco Popular North America*
- *Vision Construction Ent., Inc. v. Waste Pro USA, Inc. and Waste Pro USA, Inc. and Waste Pro of Florida, Inc.*



- *Plumley v. Erickson Retirement Communities, et al.*
- *In re London Silver Fixing, Ltd. Antitrust Litigation*
- *Ploss v. Kraft Foods Group, Inc. and Mondelēz Global LLC*
- *In re Mexican Government Bonds Antitrust Litigation*
- *In re Ready-Mixed Concrete Antitrust Litigation*
- *In re: Marine Hose Antitrust Litigation*
- *Iowa Ready Mixed Concrete Antitrust Litigation*
- *In re Potash Antitrust Litigation (II)*
- *In re Evanston Northwestern Healthcare Corp. Antitrust Litigation*
- *In re Polyurethane Foam Antitrust Litigation*
- *In re LIBOR-Based Financial Instruments Antitrust Litigation*
- *In re Lorazepam and Clorazepate Antitrust Litigation*
- *In re Cardizem CD Antitrust Litigation*
- *Vista Healthplan, Inc., and Ramona Sakiestewa v. Bristol-Myers Squibb Co., and American BioScience, Inc.*
- *In re Lupron Marketing and Sales Practices Litigation*
- *In re Terazosin Hydrochloride Antitrust Litigation*
- *In re Warfarin Sodium Antitrust Litigation*
- *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation*
- *Carpenters and Joiners Welfare Fund, et al. v. SmithKline Beecham*
- *New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, et al. v. Purdue Pharma L.P.*
- *In Re Pharmaceutical Industry Average Wholesale Price Litigation*
- *Alma Simonet, et al. v. SmithKline Beecham Corporation, d/b/a GlaxoSmithKline*
- *In re Relafen Antitrust Litigation*
- *In Re Remeron Direct Purchaser Antitrust Litigation*
- *In re TriCor Indirect Purchasers Antitrust Litigation*
- *Nichols, et al., v. SmithKline Beecham Corporation*
- *In re: DDAVP Indirect Purchaser Antitrust Litigation*

## Securities Cases

- *Plymouth County Retirement Association v. Spectrum Brands Holdings, Inc., et al.*
- *Tung, et al. v. Dycom Industries, Inc., et al.*
- *Bouchard., et al. v. Gandhi, et al.* ("Tower/e-Minis")
- *MAZ Partners LP v. First Choice Healthcare Solutions, Inc.*
- *SEB Investment Management AB, et al. v. Symantec Corporation, et al.*
- *In re Impinj, Inc. Securities Litigation*
- *In re Netshoes Securities Litigation*
- *Yellowdog Partners, LP, et al. v. Curo Group Holdings Corp., et al.*
- *In re Brightview Holdings, Inc. Securities Litigation*
- *In re Obalon Therapeutics, Inc. Securities Litigation*
- *In re Willis Towers Watson PLC Proxy Litigation*
- *In re Blue Apron Holdings, Inc. Securities Litigation*
- *In re: Qudian Inc. Securities Litigation*
- *Plymouth County Contributory Retirement System v. Adamas Pharmaceuticals, et al.*
- *In re Perrigo Company PLC Securities Litigation*
- *Enriquez, et al. v. Nabriva Therapeutics PLC, et al.*
- *Teamsters Local 456 Pension Fund, et al. v. Universal Health Services, Inc., et al.*
- *Olenik, et al. v. Earthstone Energy, Inc.*



- *Shenk v. Mallinckrodt plc, et al.*
- *In re The Allstate Corp. Securities Litigation*
- *Christopher Vataj v. William D. Johnson, et al.* (PG&E Securities II)
- *Kirkland v. WideOpenWest, Inc.*
- *Oklahoma Police Pension and Retirement System v. Sterling Bancorp, Inc.*
- *In re Uxin Limited Securities Litigation*
- *City of Hallandale Beach Police Officers' & Firefighters' Personnel Retirement Trust v. Ergen, et al.* (Echostar)
- *Lewis v. YRC Worldwide Inc., et al.*
- *Tomaszewski v. Trevena, Inc., et al.*
- *In re Restoration Robotics, Inc. Securities Litigation*
- *Public Employees' Retirement Systems of Mississippi, et al. v. Treehouse Foods, Inc., et al.*
- *Ronald L. Jackson v. Microchip Technology, Inc., et al.*
- *In re Micro Focus International plc Securities Litigation*
- *In re Dynagas LNG Partners LP Securities Litigation*
- *Weiss, et al. v. Burke, et al.* (Nutraceutical)
- *Yaron v. Intersect ENT, Inc., et al.*
- *Utah Retirement Systems v. Healthcare Services Group, Inc., et al.*
- *In re PPDAI Group Inc. Securities Litigation*
- *In re: Evoqua Water Technologies Corp. Securities Litigation*
- *In re Aqua Metals, Inc. Securities Litigation*
- *St. Lucie County Fire District Firefighters' Pension Trust Fund v. Southwestern Energy Company*
- *In re CPI Card Group Inc. Securities Litigation*
- *Arkansas Teacher Retirement System, et al. v. Alon USA Energy, Inc., et al.*
- *In re TAL Education Group Securities Litigation*
- *GCI Liberty Stockholder Litigation*
- *In re SciPlay Corporation Securities Litigation*
- *In re Allergan Generic Drug Pricing Securities Litigation*
- *In re Vivint Solar, Inc. Securities Litigation*
- *In re YayYo Securities Litigation*
- *In re JPMorgan Treasury Futures Spoofing Litigation*
- *Searles, et al. v. Crestview Partners, LP, et al.* (Capital Bank)
- *In re Lyft, Inc. Securities Litigation*
- *In re Aegean Marine Petroleum Network, Inc. Securities Litigation*
- *In re JPMorgan Precious Metals Spoofing Litigation*
- *In re Pivotal Software, Inc. Securities Litigation*
- *Longo, et al. v. OSI Systems, Inc., et al.*
- *In re Homefed Corporation Stockholder Litigation*
- *Pierrelouis v. Gogo Inc., et al.*
- *Pope v. Navient Corporation, et al.*
- *In re Merit Medical Systems, Inc. Securities Litigation*
- *In re Frontier Communications Corporation Stockholder Litigation*
- *Holwill v. AbbVie Inc.*
- *Budicak, Inc., et al. v. Lansing Trade Group, LLC, et al.* (SRW Wheat Futures)
- *Yannes, et al. v. SCWorx Corporation*
- *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*
- *In re Myriad Genetics, Inc. Securities Litigation*
- *In re Chicago Bridge & Iron Co. N.V. Securities Litigation*
- *The Arbitrage Fund, et al. v. William Petty, et al.* (Exactech)
- *In re Columbia Pipeline Group, Inc. Merger Litigation*



- *Martinek v. AmTrust Financial Services, Inc.*
- *City of Pittsburgh Comprehensive Municipal Pension Trust Fund, et al. v. Benefitfocus, Inc., et al.*
- *In re: Evoqua Water Technologies Corp. Securities Litigation*
- *Laydon v. Mizuho Bank, Ltd., et al.*
- *Lomingkit, et al. v. Apollo Education Group, Inc., et al.*
- *In re Caraco Pharmaceutical Laboratories, Ltd. Shareholder Litigation*
- *Norfolk County Retirement System, et al. v. Community Health Systems, Inc., et al.*
- *Chester County Employees' Retirement Fund v. KCG Holdings, Inc., et al.*
- *Oklahoma Law Enforcement Retirement System, et al. v. Adeptus Health Inc., et al.*
- *Di Donato v. Insys Therapeutics, Inc., et al.*
- *Lundgren-Wiedinmyer, et al. v. LJM Partners, Ltd, et al.*
- *Martin, et al. v. Altisource Residential Corporation, et al.*
- *Stephen Appel, et al. v. Apollo Management, et al.*
- *In re Medley Capital Corporation Stockholder Litigation*
- *Forman, et al. v. Meridian BioScience, Inc., et al.*
- *Public Employees' Retirement System of Mississippi, et al. v. Endo International PLC, et al.*
- *In Re Flowers Foods, Inc. Securities Litigation*
- *Jiangchen, et al. v. Rentech, Inc., et al.*
- *In re Liberty Tax, Inc. Stockholder Litigation*
- *In re RH, Inc. Securities Litigation*
- *Lazan v. Quantum Corporation, et al.*
- *Nabhan v. Quantum Corporation, et al.*
- *Edmund Murphy III, et al. v. JBS S.A.*
- *Public Employees' Retirement System of Mississippi, et al. v. Sprouts Farmers Market, Inc., et al.*
- *In re Starz Stockholder Litigation*
- *Judith Godinez, et al. v. Alere Inc., et al.*
- *Rahman and Giovagnoli, et al. v. GlobalSCAPE, Inc., et al.*
- *Arthur Kaye, et al. v. ImmunoCellular Therapeutics, Ltd., et al.*
- *In re CPI Card Group Inc. Securities Litigation*
- *Daniel Aude, et al. v. Kobe Steel, Ltd., et al.*
- *In re Quality Systems, Inc. Securities Litigation*
- *Cooper, et al. v. Thoratec Corporation, et al.*
- *Washtenaw County Employees' Retirement System, et al. v. Walgreen Co., et al.*
- *Elkin v. Walter Investment Management Corp., et al.*
- *In Re CytRx Corporation Securities Litigation*
- *Ranjit Singh, et al. v. 21Vianet Group, Inc., et al.*
- *In re PTC Therapeutics, Inc. Securities Litigation*
- *Securities and Exchange Commission v. Mark A. Jones*
- *In re Sequans Communications S.A. Securities Litigation*
- *In re Henry Schein, Inc. Securities Litigation*
- *Ronge, et al. v. Camping World Holdings, Inc., et al.*
- *Oklahoma Firefighters Pension & Retirement System v. Lexmark International, Inc.*
- *Christakis Vrakas, et al. v. United States Steel Corporation, et al.*
- *Emerson et al. v. Mutual Fund Series Trust, et al.* ("Catalyst")
- *In re Fannie Mae 2008 Securities Litigation*
- *In re Anadarko Petroleum Corporation Class Action Litigation*
- *Ge Dandong, et al., v. Pinnacle Performance Limited, et al.*
- *In Re: Rough Rice Commodity Litigation*
- *Xuechen Yang v. Focus Media Holding Limited et al.*
- *In re Massey Energy Co. Securities Litigation*



- *In re Swisher Hygiene, Inc.*
- *The City of Providence vs. Aeropostale, Inc., et al.*
- *In re Metrologic Instruments, Inc. Shareholders Litigation*
- *Public Pension Fund Group v. KV Pharmaceutical Company et al.*
- *Pension Trust Fund for Operating Engineers, et al. v. Assisted Living Concepts, Inc., et al.*
- *In re Lehman Brothers Equity/Debt Securities Litigation*
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Physical Action)
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Futures Action)
- *In re General Electric Co. Securities Litigation*
- *In re CNX Gas Corporation Shareholders Litigation*
- *Oscar S. Wyatt, Jr. et al. v. El Paso Corporation, et al.*
- *In re Par Pharmaceutical Securities Litigation*
- *In re Par Pharmaceutical Companies, Inc. Shareholders Litigation*
- *In re Delphi Financial Group Shareholders Litigation*
- *In re SLM Corporation Securities Litigation*
- *In re Del Monte Foods Company Shareholder Litigation*
- *Leslie Niederklein v. PCS Edventures!.com, Inc. and Anthony A. Maher*
- *In re Beckman Coulter, Inc. Securities Litigation*
- *Michael Rubin v. MF Global, Ltd., et al.*
- *Allen Zametkin v. Fidelity Management & Research Company, et al.*
- *In re BP Prudhoe Bay Royalty Trust Securities Litigation*
- *Police and Fire Retirement System of the City of Detroit et al. v. SafeNet, Inc., et al.*
- *In re Limelight Networks, Inc. Securities Litigation*
- *In re Gilead Sciences Securities Litigation*
- *In re ACS Shareholder Litigation, Consolidated C.A. No. 4940-VCP*
- *Lance Provo v. China Organic Agriculture, Inc., et al.*
- *In re LDK Solar Securities Litigation*

## Labor & Employment Cases

- *Verizon OFCCP Settlement*
- *Alvarez, et al. v. GEO Secure Services, LLC*
- *Sartena v. Meltwater FLSA*
- *Carmen Alvarez, et al. v. Chipotle Mexican Grill, Inc., et al.*
- *Turner, et al. v. Chipotle Mexican Grill, Inc.*
- *Long, et al. v. Southeastern Pennsylvania Transportation Authority*
- *Matheson, et al. v. TD Bank, N.A.*
- *Ludwig, et al. v. General Dynamics Information Technology, Inc., et al.*
- *Bedel, et al. v. Liberty Mutual Group Inc.*
- *Irene Parry, et al. v. Farmers Insurance Exchange, et al.*
- *Maldonado v. The GEO Group, Inc.*
- *Alderman and Maxey v. ADT, LLC*
- *Albaceet v. Dick's Sporting Goods*
- *Rodriguez v. The Procter & Gamble Company*
- *Adekunle, et al. v. Big Bang Enterprises, Inc. d/b/a The Revenue Optimization Companies*
- *Gorski, et al. v. Wireless Vision, LLC*
- *Lopez, et al. v. New York Community Bank, et al.*
- *Hamilton, et al. v. The Vail Corporation, et al.*
- *Eisenman v. The Ayco Company L.P.*
- *Matheson v. TD Bank, N.A.*



- *Simon v. R.W. Express LLC, d/b/a Go Airlink NYC*
- *Perez v. Mexican Hospitality Operator LLC, d/b/a Cosme*
- *Shanahan v. KeyBank, N.A.*
- *Loftin v. SunTrust Bank*
- *Alvarez v. GEO Secure Services, LLC*
- *Weisgarber v. North American Dental Group, LLC*
- *Talisa Borders, et al. v. Wal-mart Stores, Inc.*
- *Reale v. McClain Sonics Inc., et al.*
- *Larita Finisterre and Songhai Woodard, et al. v. Global Contact Services, LLC*
- *Adebisi Bello v. The Parc at Joliet*
- *Garcia, et al. v. Vertical Screen, Inc.*
- *Brook Lemma and Matthieu Hubert, et al. v. 103W77 Partners LLC, et al.* ("Dovetail Settlement")
- *American Federation of Government Employees, Local 1145 v. Federal Bureau of Prisons, U.S. Penitentiary, Atlanta, Georgia*
- *Lisa Ferguson, Octavia Brown, et al. v. Matthew G. Whitaker, Acting AG, DOJ Bureau of Prisons* ("USP Victorville")
- *American Federation of Government Employees, Local 2001 v. Federal Bureau of Prisons, Federal Correctional Institution, Fort Dix, New Jersey*
- *American Federation of Government Employees, Local 506 v. U.S. Department of Justice, Federal Bureau of Prisons, U.S. Penitentiary Coleman II, Coleman, Florida*
- *Vargas v. Sterling Engineering*
- *Rosenbohm v. Verizon*
- *Alex Morgan, et al. v. United States Soccer Federation, Inc.*
- *Iskander Rasulev v. Good Care Agency, Inc.*
- *Kyndl Buzas, et al., v. Phillips 66 Company and DOES 1 through 10*
- *American Federation of Government Employees, Local 408 v. U.S. Dept. of Justice, Federal Bureau of Prisons, Federal Correctional Complex, Butner, NC*
- *In re 2014 Avon Products, Inc. ERISA Litigation*
- *In re Eastman Kodak ERISA Litigation*
- *Taronica White, et al. v. Attorney General Loretta Lynch, Department of Justice*
- *Lisa Ferguson, et al. v. Acting Attorney General Matthew Whitaker, Department of Justice*
- *Melissa Compere v. Nusret Miami, LLC, et al.*
- *Abelar v. American Residential Services, L.L.C., Central District of California*
- *Flores, et al. v. Eagle Diner Corp., et al., Eastern District of Pennsylvania*
- *Michael Furman v. Godiva Chocolatier, Inc., 15th Judicial Circuit, Palm Beach County, Florida*
- *Finisterre et. al v. Global Contact Services, LLC, New York State Supreme Court, Kings County*
- *McGuire v. Intelident Solutions, LLC, et al., Middle District of Florida, Tampa Division*
- *Duran De Rodriguez, et al. v. Five Star Home Health Care Agency, Inc. et al., Eastern District of New York*

## Data Breach/BIPA Cases

- *Hunter v. J.S.T. Corp. BIPA Settlement*
- *Atkinson, et al. v. Minted, Inc.*
- *Rosenbach, et al. v. Six Flags Entertainment Corporation and Great America LLC*
- *Pratz, et al. v. MOD Super Fast Pizza, LLC*
- *The State of Indiana v. Equifax Data Breach Settlement*
- *In re: Vizio, Inc. Consumer Privacy Litigation*
- *In re: Google, Inc. Street View Electronic Communications Litigation*
- *Devin Briggs and Bobby Watson, et al. v. Rhinoag, Inc.* ("Briggs Biometric Settlement")
- *Trost v. Pretium Packaging L.L.C.*



- *In re: Barr, et al. v. Drizly, LLC f/k/a Drizly, Inc., et al.*

## Telephone Consumer Protection Act (TCPA) Cases

- *Perrong, et al. v. Orbit Energy & Power, LLC*
- *Baldwin, et al. v. Miracle-Ear, Inc.*
- *Floyd and Fabricant, et al. v. First Data Merchant Services LLC, et al.*
- *Hoffman, et al. v. Hearing Help Express, Inc., et al.*
- *Lowe and Kaiser, et al. v. CVS Pharmacy, Inc., et al.*
- *Johansen v. HomeAdvisor, Inc., et al.*
- *Charvat, et al. v. National Holdings Corporation*
- *Hopkins, et al. v. Modernize, Inc.*
- *Diana Mey vs. Frontier Communications Corporation*
- *Matthew Donaca v. Dish Network, L.L.C.*
- *Matthew Benzion and Theodore Glaser v. Vivint, Inc.*
- *John Lofton v. Verizon Wireless (VAW) LLC, et al.*
- *Lori Shamblin v. Obama for America, et al.*
- *Ellman v. Security Networks*

## For More Information

For more detailed information regarding A.B. Data's experience, services, or personnel, please see our website at **www.abdataclassaction.com**.

# EXHIBIT B

# Used An ATM Card And Were Assessed A Surcharge?
# You Could Get Money From a $197.5 Million Class Action Settlement

Records show you could be affected by a new Settlement in a class action lawsuit that says Defendants violated federal antitrust laws by adopting restraints that inflated the automated teller machine ("ATM") surcharges (also called ATM access fees) that some people and businesses paid. The Defendants deny these allegations. The Court has not decided who is right.

Previously, you may have seen a notice in this case about $67 million in settlements with JPMorgan & Chase Co. ("JP Morgan"); Wells Fargo & Co. and Wells Fargo Bank ("Wells Fargo"); and Bank of America, N.A., NB Holdings Corp., and Bank of America Corp. ("Bank of America"). You can no longer file a claim in the previous settlements. Payments were made to eligible class members in June 2023.

Now, the remaining Defendants in this case, Visa Inc., Visa U.S.A. Inc. Visa International Service Association, Plus System, Inc. ("Visa") and Mastercard Incorporated and Mastercard International Incorporated ("Mastercard") have agreed to a Settlement to resolve the claims against them.

## What are the related lawsuits?

This notice is about the case known as *Mackmin v. Visa Inc*. No. 1:11-cv-01831 in the United States District Court for the District of Columbia. There are two related (or parallel) lawsuits in the same court called *Burke v. Visa Inc.*, No. 1:11-cv-01882 and *National ATM Council v. Visa Inc*., No. 1:11-cv-01803 that are proceeding at the same time. Each case involves different groups with similar claims against the Defendants. You may receive other notices if you are included in more than one lawsuit. The choices you make in this case will not affect your rights in the other related lawsuits.

## Am I included?

Generally, you are included if, at any time between October 1, 2007 and [Date of Preliminary Approval Order], you paid a surcharge to withdraw cash from a bank ATM in the United States. You are not included if all of your surcharged ATM transactions were (a) reimbursed, or (b) conducted on cards issued by financial institutions located outside of the United States. Visit the website, www.ATMClassAction.com, for more information and the exact Settlement Class definition.

## What does the Settlement provide?

The Settlement provides for a total of $197.5 million to resolve the claims. Visa will pay $104,675,000 and Mastercard will pay $92,825,000 into a Settlement Fund. After deductions for attorneys' fees, litigation costs, and other expenses, the Settlement Fund will be distributed proportionally (or *pro rata*) to each valid claimant. Any money remaining in the Settlement Fund after all claims are paid will be directed to a court-approved "next best" recipient.

## How can I get a payment?

If you filed a valid claim and received a payment in the previous settlements, you will automatically be eligible to get a payment from the Settlement with Visa and Mastercard and you <u>do not</u> need to submit another claim unless you paid additional ATM surcharges after submitting your prior claim form and wish to claim these additional transactions.

If you did not previously file a valid claim, you must complete a Claim Form to receive money from this Settlement. The Claim Form asks you to state under oath that you were assessed ATM surcharges. You are not

required to provide documentation with the Claim Form, but the Settlement Administrator has the right to ask you to provide your bank statements or other documents to support your claim.

Visit www.ATMClassAction.com/claims to fill out a Claim Form online or download one that can be mailed. To be eligible for payment, Claim Forms must be submitted electronically or postmarked no later than [**Month 00, 2024**].

Please note your Notice ID Number is <<Unique ID>>. You will be asked to provide your Notice ID Number on your Claim Form to make it faster to validate your claim.

### What are my rights?

If you are a Settlement Class Member, even if you do nothing, you will be bound by the Court's decisions and judgments concerning this Settlement.

If you want to keep your right to sue Visa or Mastercard regarding the claims in this lawsuit, you must exclude yourself from the Settlement Class in writing by [**Month 00, 2024**]. If you previously submitted a request to exclude yourself from the prior settlements in 2022, and do not want to stay in the Settlement with Visa and Mastercard, you need to separately exclude yourself from this Settlement Class.

If you stay in the Settlement Class, you may object to the Settlement in writing by [**Month 00, 2024**]. The Settlement Agreement and more details about how to exclude yourself or object, are available at www.ATMClassAction.com.

The U.S. District Court for the District of Columbia is scheduled to hold a hearing on [**Month 00, 2024**], at X:00 p.m., at 333 Constitution Avenue N.W., Courtroom 18, Washington D.C. 20001, to consider whether to approve the Settlement with Visa and Mastercard.

Class Lead Counsel will also ask the Court at the hearing, or at a later date, for attorneys' fees of up to 33% of the Settlement Fund, plus reimbursement of costs and expenses, for investigating the facts, litigating the case, and negotiating the Settlement and service award payments up to $10,000 for each of the individual Class Representatives.

You or your own lawyer may appear and speak at the hearing at your own expense, but you don't have to. The hearing may be conducted electronically or moved to a different date or time without additional notice, so it is a good idea to check www.ATMClassAction.com for additional information. Please do not contact the Court about this case.

**For more information:  1-877-311-3724**                    **www.ATMClassAction.com**
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

# EXHIBIT C

<u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

---

**Used An ATM Card And Were Assessed A Surcharge?**
**You Could Get Money From a $197.5 Million Class Action Settlement**

---

- Please read this Notice and the Settlement Agreement available at www.ATMClassAction.com carefully. Your legal rights may be affected whether you act or do not act. This Notice is a summary. To obtain more specific details concerning the Settlement, please read the Settlement Agreement.

- There is a new Settlement in a class action lawsuit that says Defendants violated federal antitrust laws by adopting restraints that inflated the automated teller machine ("ATM") surcharges (also called ATM access fees) that some people and businesses paid. The Defendants deny these allegations. The Court has not decided who is right.

- Previously, three Defendants in this case, including JPMorgan & Chase Co. ("JP Morgan"); Wells Fargo & Co. and Wells Fargo Bank ("Wells Fargo"); and Bank of America, N.A., NB Holdings Corp., and Bank of America Corp. ("Bank of America") agreed to settle the lawsuit. Those Settlements totaled $67 million. **You may have seen a previous notice, filed a claim, or received a payment for these settlements.**

- Now, the remaining Defendants in this case, Visa Inc., Visa U.S.A. Inc. Visa International Service Association, Plus System, Inc. ("Visa") and Mastercard Incorporated and Mastercard International Incorporated ("Mastercard") have agreed to a Settlement resolving the claims against them.

- Visit www.ATMClassAction.com to make a claim. You can also opt out of, comment on, or object to the Settlement.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM FORM FOR PAYMENT** | If you filed a claim and received a payment in the previous settlements, you will automatically be eligible to get a payment from the new Settlements with Visa and Mastercard based on the Claim Form you previously submitted.  If you paid additional ATM surcharges after submitting a claim in the previous settlements, and wish to claim those additional transactions, you will need to submit another Claim Form.<br><br>If you did not previously file a valid claim, you must submit a valid claim to receive a payment in this Settlement. | **[Month 00, 2024]** |
| **EXCLUDE YOURSELF** | You can exclude yourself from the Settlement with Visa and Mastercard by mailing a letter to the Settlement Administrator saying you want to opt out. This is the only option that allows you to keep your legal right to sue Visa or Mastercard for claims related | **[Month 00, 2024]** |

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

1

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS | | DEADLINE |
|---|---|---|
| | to this case. If you exclude yourself, you will <u>not</u> be eligible to receive a payment from the new Settlement. | |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | You can write the Court about why you like or do not like the Settlement or object to Court approval, but you can't ask the Court to change the Settlement. You can also ask to speak to the Court at the hearing about the fairness of the Settlement, with or without your own attorney. | **[Month 00, 2024]** |
| **DO NOTHING** | If you take no action, you give up your legal right to continue to sue Visa and Mastercard for the claims related to this case. If you filed a claim and received a payment in the previous settlements, you will be automatically eligible to get a payment based on the Claim Form you previously submitted. If you did not previously file a valid claim and do not submit a claim now, you will not get any money from this Settlement. | No Deadline |

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ..............................................................................................5

    1.   Why is there a notice?.........................................................................................5

    2.   What is this lawsuit about? ..................................................................................5

    3.   Why is this a class action? ...................................................................................5

    4.   Why is there a Settlement? ..................................................................................6

    5.   What are the other related lawsuits? Why did I get other notices?........................6

**SETTLEMENT CLASS MEMBERSHIP** ...................................................................7

    6.   How do I know if I can participate in the Settlement?.........................................7

    7.   Who is not included in the Settlement Class?......................................................7

**THE SETTLEMENT BENEFITS** ..............................................................................8

    8.   What does the Settlement provide?......................................................................8

    9.   How much money can I get from the Settlement? ...............................................8

**HOW TO GET A PAYMENT—MAKING A CLAIM** ...............................................8

    10.  How can I get a payment?...................................................................................8

    11.  What is the deadline to submit a Claim Form?...................................................9

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

2

12.   If I previously filed a valid claim, do I need to submit another claim? ...........................................9

13.   When and how will I get my payment? ..........................................................................................9

14.   What happens if my contact information changes? .......................................................................10

15.   What happens if some of the money from this Settlement is not claimed? ..................................10

16.   Can I file a claim in this Settlement if I excluded myself previously? .........................................10

17.   Can I file a claim in the previous settlements in this case?...........................................................10

**LEGAL RIGHTS RESOLVED THROUGH THE SETTLEMENT** ..................................................................**10**

18.   What am I giving up if I stay in the Settlement Class?..................................................................10

**THE LAWYERS REPRESENTING YOU** ........................................................................................................**11**

19.   Do I have a lawyer in the case? .....................................................................................................11

20.   Should I get my own lawyer? ........................................................................................................11

21.   How will the lawyers be paid?.......................................................................................................11

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...................................................................................**12**

22.   How do I exclude myself from the Settlement?.............................................................................12

23.   If I don't exclude myself, can I sue the Visa and Mastercard for the same thing later? ...............13

24.   What happens if I exclude myself? ................................................................................................13

25.   If I exclude myself, am I still represented by Class Lead Counsel? .............................................13

26.   If I excluded myself from the previous settlements, am I still part of the Settlement Class?........13

27.   Can I exclude myself from the previous settlements? ...................................................................14

**COMMENTING ON OR OBJECTING TO THE SETTLEMENT** ........................................................................**14**

28.   How do I tell the Court that I like or don't like the Settlement?....................................................14

29.   Can I object to the previous settlements?.......................................................................................15

30.   What's the difference between excluding yourself and objecting?................................................15

**DOING NOTHING** ......................................................................................................................................**15**

31.   What happens if I do nothing at all?..............................................................................................15

**THE COURT'S FAIRNESS HEARING** ........................................................................................................**15**

32.   When and where will the Court decide whether to approve the Settlements?...............................15

33.   Do I have to come to the Fairness Hearing? ..................................................................................16

34.   May I speak at the hearing? ...........................................................................................................16

**GETTING MORE INFORMATION** ..............................................................................................................**16**

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

35.   How do I get more information?.................................................................................................... 16

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

4

# BASIC INFORMATION

| 1.  Why is there a notice? |
| --- |

A Court authorized this notice because you have a right to know how a new proposed Settlement may affect your rights.

Judge Richard J. Leon, of the United States District Court for the District of Columbia, is currently overseeing this lawsuit. This case is known as *Mackmin v. Visa Inc*. No. 1:11-cv-01831. The people who filed the class action case are called the Plaintiffs. The companies they sued are called the "Defendants."

Previously, you may have received a notice about the settlements in this case with Defendants JP Morgan, Wells Fargo, and Bank of America. These prior settlements received final approval from the Court on August 22, 2022. Payments to eligible class members were made in June 2023.

Now, the remaining Defendants in this case, Visa and Mastercard, have agreed to a proposed Settlement resolving the claims against them. This notice explains the nature of the litigation, the general terms of this proposed Settlement, and what it may mean to you. This notice also explains the ways you may participate in, or exclude yourself from, this Settlement.

| 2.  What is this lawsuit about? |
| --- |

This lawsuit was brought on behalf of ATM cardholders who used a bank ATM owned by an entity (or bank) different from the entity (or bank) that issued their ATM card and paid an ATM surcharge. The lawsuit says the Defendants violated federal antitrust laws by participating in an unlawful agreement that allegedly had the effect of increasing the amount of the ATM surcharges paid by the Class. The Defendants deny these allegations. The Court has not decided who is right.

| 3.  Why is this a class action? |
| --- |

In a class action, one or more people called "class representatives" sue on behalf of themselves and people who have similar claims. All of these people are a "class" or "class members." One court and one case resolve the issues for all class members, except for those people who exclude themselves from the class.

In this case, two persons (Andrew Mackmin and Sam Osborn) who were assessed ATM surcharges are named as Plaintiffs in a class action complaint against the Defendants. They serve as Settlement Class Representatives and represent their personal interests and the interests of all the Settlement Class Members.

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

Even if you have not filed your own lawsuit against Defendants about the claims in this one, you can obtain the benefits provided by this Settlement because the litigation is a class action.

## 4.  Why is there a Settlement?

Settlements avoid the costs and uncertainty of a trial and related appeals, while providing benefits to Settlement Class Members when Settlements become final. The Court has not decided in favor of Plaintiffs or Defendants Visa and Mastercard. The Settlement Class Representatives and Class Lead Counsel think the proposed Settlement is in the best interests of everyone affected.

## 5.  What are the other related lawsuits? Why did I get other notices?

There are three related (or parallel) lawsuits that were filed in October 2011. They each involve different Classes with similar claims against the Defendants and are proceeding at the same time. You may receive notices about these other cases.

This Notice is about the case known as *Mackmin v. Visa Inc*. No. 1:11-cv-01831. This case involves individuals and entities who were charged unreimbursed access fees to withdraw cash at bank-operated ATMs (see Question 2). You may have received a previous notice about the settlements in this case that were with JP Morgan, Wells Fargo, and Bank of America.  The previous settlements were approved on August 22, 2022 and totaled $67 million.  You may have filed a claim and/or received a payment from these previous settlements.

There is now a new proposed Settlement with the remaining Defendants, Visa and Mastercard. That is why you are getting a new notice in this case.

Another related case is known as *Burke v. Visa Inc.*, No. 1:11-cv-01882. It involves people who were charged an unreimbursed access fee to withdraw cash at an independent (non-bank) ATMs. The Court recently approved this lawsuit to proceed as a class action against Visa and Mastercard.

The last related case is known as *National ATM Council v. Visa Inc.*, No. 1:11-cv-01803. It involves entities or businesses that own and/or operate independent ATMs.

**You may be included in more than one Class, so it is important to read this Notice and any other notices you receive carefully, so you can understand your rights and options**. The choices you make to act on your rights in this case (*Mackmin v. Visa*) will not affect your rights in the other related lawsuits.

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

6

# SETTLEMENT CLASS MEMBERSHIP

| **6.   How do I know if I can participate in the Settlement?** |
|---|

You are a Settlement Class Member, and you are affected by this Settlement, if you are:

- An individual or entity that paid an unreimbursed ATM Access Fee directly to any Bank Defendant or Alleged Bank Co-Conspirator for a Foreign ATM Transaction using an ATM card issued by a financial institution in the United States to withdraw cash at an ATM located in the United States at any time from October 1, 2007 to [Date of Preliminary Approval Order].

ATM Access Fee means the fee assessed by an ATM operator to a cardholder for completing a Foreign ATM Transaction. ATM Access Fees are also referred to as "surcharges."

Bank Defendant means JP Morgan, Wells Fargo, or Bank of America. Alleged Bank Co-Conspirator means a bank that is a member of the Visa and/or Mastercard ATM networks.

Foreign ATM Transaction means an ATM transaction in which the cardholder uses an ATM that is owned by an entity different from the entity that issued the ATM card used for that ATM transaction. For example, when a customer of one bank withdraws money from their account by using an ATM owned and/or operated by another bank.

| **7.   Who is not included in the Settlement Class?** |
|---|

The Class does **not** include:
- The Defendants;
- The Released Parties;
- The Defendants and Released Parties' officers, directors, or employees;
- Entities in which the Defendants and Released Parties have a controlling interest;
- The Defendants and Released Parties affiliates, legal representatives, heirs, or assigns;
- Any person acting on behalf of any Defendant or Released Party;
- Federal, state, or local government entities;
- Lead lawyers for the Class (Class Lead Counsel);
- Any judge assigned to this case, the judge's staff, and any member of the judge's immediate family; and
- Anyone that excludes themselves from the Class (see Question 22).

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*
7

# THE SETTLEMENT BENEFITS

| 8.   What does the Settlement provide? |
|---|

Visa and Mastercard will collectively pay approximately $197,500,000—Visa ($104,675,000) and Mastercard ($92,825,000)—into a Settlement Fund. After deductions for attorneys' fees, litigation costs, and other expenses, the Fund will be distributed to Class Members who submit valid claims.

| 9.   How much money can I get from the Settlement? |
|---|

If you filed a claim and received a payment in the previous settlements, you will automatically be eligible to get a payment from the Settlement with Visa and Mastercard based on the Claim Form you previously submitted.  If you paid additional ATM surcharges after submitting your prior claim, and wish to claim those additional transactions, you will need to submit another Claim Form including them.

If you did not previously file a valid claim, you must file a timely, valid claim now in order to receive a payment.

Each claim will be eligible to receive a *pro rata* (or proportional) share of the Net Settlement Fund, after deductions for attorneys' fees, litigation costs, and other Court-approved expenses, based on the number of valid claims. Because the amount of each payment depends on the number of approved claims, nobody can know in advance how much the payment will be.

# HOW TO GET A PAYMENT—MAKING A CLAIM

| 10. How can I get a payment? |
|---|

If you filed a claim and received a payment in the previous settlements, you do not need to submit another claim to get money from the Settlement, as you will be entitled to a payment based on the Claim Form you previously submitted.  If you paid additional ATM surcharges after submitting that prior Claim Form, and wish to claim those additional transactions, you will need to submit another claim form including them.

If you did not previously file a valid claim, you must complete a Claim Form to receive money from this Settlement. The Claim Form asks you to state under oath that you were assessed ATM surcharges.

You can fill out a Claim Form online at www.ATMClassAction.com.

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

8

If you prefer a paper Claim Form, you can ask for one by contacting the Settlement Administrator by telephone at 877-311-3724; email at info@ATMClassAction.com; or U.S. Mail at ATM Surcharge Settlement, P.O. Box 170500, Milwaukee, WI 53217.

## 11. What is the deadline to submit a Claim Form?

To be eligible for payment, Claim Forms must be submitted electronically or postmarked no later than [**Month 00, 2024**].

## 12. If I previously filed a valid claim, do I need to submit another claim?

No. If you submitted a claim and received a payment in the previous settlements, you will automatically be eligible to get money from the Settlement with Visa and Mastercard based on the Claim Form you previously submitted.  You need to submit another claim only if you paid additional ATM surcharges after submitting your prior claim and wish to claim these additional transactions.

## 13. When and how will I get my payment?

The Court is scheduled to hold a hearing on [**Month 00, 2024**], to decide whether to approve the Settlement. The hearing may be held electronically or moved to a different date or time without additional notice, so it is a good idea to check www.ATMClassAction.com for additional information.

If the Court approves the Settlement, that decision may be appealed. It is hard to estimate how long it might take for any appeals to be resolved. If the Settlement are approved and no appeals are filed, the Settlement Administrator anticipates that payments will be sent out within 6 months.

Settlement payments will be digitally sent to you via email. Please make sure you provide a current, valid email address on the Claim Form. When you receive the email notifying you about your payment, you will be provided with a number of digital payment options to select from, such as PayPal or a virtual debit card. For many people, this is the easiest and quickest option to receive money.

You will also have the opportunity to request that a check be mailed to you by the Settlement Administrator.

Updates regarding the Settlement and when payments will be made will be posted on the website, www.ATMClassAction.com.

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

9

**14. What happens if my contact information changes?**

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. Notify the Settlement Administrator of any changes to your mailing address or email address by writing:

ATM Surcharge Settlement
P.O. Box 170500
Milwaukee, WI 53217
info@ATMClassAction.com

**15. What happens if some of the money from this Settlement is not claimed?**

Settlement Funds that are not paid out or distributed as part of the Settlement administration will not be returned to Visa or Mastercard for any reason.  To the extent, if any, that an unpaid or undistributed part of the Settlement Fund is held by the Settlement Administrator at the completion of the administration of the Settlement, such remaining funds will be directed to a court-approved "next best" recipient.

**16. Can I file a claim in this Settlement if I excluded myself previously?**

Yes. If you excluded yourself from the previous settlements with JP Morgan, Wells Fargo, or Bank of America, you are still in the Settlement Class for the proposed Settlement with Visa and Mastercard.  If you do not exclude yourself (see Question 22), you can submit a claim for monetary compensation from the Settlement with Visa and Mastercard even if you excluded yourself from the previous settlements.

**17. Can I file a claim in the previous settlements in this case?**

No. The deadline to submit a claim in the previous settlements has passed, and you cannot submit a claim for a payment from them. Payments to eligible class members were made in June 2023.

# LEGAL RIGHTS RESOLVED THROUGH THE SETTLEMENT

**18. What am I giving up if I stay in the Settlement Class?**

If you are a Settlement Class Member and you make a claim, or if you do nothing, you will be releasing all of your legal claims relating to the Visa and Mastercard's conduct described in this notice and will be bound by the Court's decisions and judgments concerning the Settlement. The

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

10

Released Parties are Visa and Mastercard and each entity's past, present, and future direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in Securities and Exchange Commission Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934, as amended), divisions, predecessors, successors, assigns, and members (including, without limitation, all past, present, and future financial institutions authorized or licensed to issue or acquire Visa- or Mastercard-branded ATM Cards and transactions), and each of their respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, members and assigns.

This notice provides only a summary of the claims being released. The specific details of the claims being released by Settlement Class Members who do not exclude themselves from the Settlement with Visa and Mastercard are set forth in the Settlement Agreement, which may be viewed at www.ATMClassAction.com.

# THE LAWYERS REPRESENTING YOU

## 19. Do I have a lawyer in the case?

Yes. The Court appointed the law firms of Hagens Berman Sobol Shapiro LLP, Quinn Emanuel Urquhart & Sullivan, LLP, and Mehri & Skalet PLLC to represent you and the other Settlement Class Members. These attorneys are called Class Lead Counsel. You will not be charged for their services.

| **HAGENS BERMAN SOBOL SHAPIRO LLP** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** | **MEHRI & SKALET, PLLC** |
|---|---|---|
| STEVE BERMAN | ADAM WOLFSON | STEVEN A. SKALET |
| 1301 Second Avenue | 865 S. Figueroa St., | 1250 Connecticut Avenue, |
| Suite 2000 | 10th Floor | NW, Suite 300 |
| Seattle, WA 98101 | Los Angeles, CA 90017 | Washington, DC 20036 |
| Telephone: 206-623-7292 | Telephone: 213-443-3000 | Telephone: (202) 822-5100 |

## 20. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Lead Counsel is working on your behalf. If you want your own lawyer, you may hire one, but you will be responsible for paying that lawyer. For example, you can ask your own lawyer to appear in Court for you if you want someone other than Class Lead Counsel to speak for you. You may also appear for yourself without a lawyer.

## 21. How will the lawyers be paid?

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

11

You do not have to pay Class Lead Counsel. They will seek an award of attorneys' fees out of the Settlement Fund, as well as reimbursement for litigation costs they advanced in pursuing the claims. The fees will compensate Class Lead Counsel for investigating the facts, litigating the case, and negotiating and administering the Settlement. Class Lead Counsel's attorneys' fee request will not exceed 33 percent of the Settlement Amount of $197,500,000. Additionally, Class Lead Counsel will seek reimbursement of their out-of-pocket litigation expenses as part of their application for attorney's fees, which will be posted to the website 14 days before the objection deadline.

Class Lead Counsel will also ask the Court to approve service award payments not to exceed $10,000 to each of the individual Class Representatives, Andrew Mackmin and Sam Osborn.

The costs of providing this notice and administering the Settlement are being paid from the Settlement Fund.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the Settlement, and you want to keep your right, if any, to sue Visa and Mastercard on your own about the legal issues in this case, then you must take steps to get out of the Settlement. This is called excluding yourself from—or "opting out" of—the Settlement Class.

| 22. How do I exclude myself from the Settlement? |
| --- |

If you want to keep the right to sue or continue to sue the Visa and Mastercard based on claims this Settlement resolves, you must take steps to exclude yourself from the Settlement Class. This is sometimes called "opting out." If you exclude yourself, however, you will not be eligible to receive a payment from the Settlement with Visa and Mastercard.

You may opt out of the Settlement by mailing a letter to the Settlement Administrator with the following information:

- Your full name and mailing address, telephone number, and/or email address;
- The statement, "I wish to exclude myself from the Settlement Class and do not wish to participate in the Settlement with Visa and Mastercard in *Mackmin v. Visa Inc*. No. 1:11-cv-01831" or substantially similar clear and unambiguous language; and
- Your handwritten signature. (An attorney's signature, or a typed signature, is not sufficient.)

Your letter must be sent First Class mail, postmarked by [**Month 00, 2024**], to:

ATM Surcharge Settlement
ATTN: EXCLUSIONS
P.O. Box 173001
Milwaukee, WI 53217

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

12

Your exclusion letter must be signed by you, personally, and not your lawyer or anyone else acting on your behalf. "Mass" or "class" opt-outs made on behalf of multiple persons or classes of persons will be deemed invalid.

You cannot exclude yourself by mailing a notification to any other location or after [**Month 00, 2024**]. You cannot exclude yourself by telephone or by email.

| |
|---|
| **23. If I don't exclude myself, can I sue the Visa and Mastercard for the same thing later?** |

No. Unless you opt out, you give up the right to sue Visa and Mastercard for the claims this Settlement resolves. You must exclude yourself from the Settlement Class if you want to try to pursue your own lawsuit.

| |
|---|
| **24. What happens if I exclude myself?** |

If you exclude yourself, you will not have any rights as a Settlement Class Member under the Settlement with Visa and Mastercard; you will not receive any payment as part of the Settlement; you will not be bound by any further orders or judgments in this case; and you will keep the right, if any, to sue Visa and Mastercard about the claims alleged in the case, at your own expense.

| |
|---|
| **25. If I exclude myself, am I still represented by Class Lead Counsel?** |

No. Class Lead Counsel represents the members of the Settlement Class. If you exclude yourself from the Settlement Class, you are not represented by Class Lead Counsel.

| |
|---|
| **26. If I excluded myself from the previous settlements, am I still part of the Settlement Class?** |

Yes. If you excluded yourself from the previous settlements, you will still be part of the Settlement Class in the Settlement with Visa and Mastercard unless you exclude yourself (see Question 22).

If you want to keep your right to sue or continue to sue Visa and Mastercard for the claims in this lawsuit, you must exclude yourself from the Settlement Class. If you exclude yourself, you will not get any money from the Settlement with Visa and Mastercard.

If you want to remain in the Settlement Class, you do not need to take any action. You can submit a claim for a payment from the Settlements with Visa and Mastercard.

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

13

| 27. Can I exclude myself from the previous settlements? |
|---|

No.  You can no longer exclude yourself from the previous settlements, as that exclusion deadline has passed.

# COMMENTING ON OR OBJECTING TO THE SETTLEMENT

| 28. How do I tell the Court that I like or don't like the Settlement? |
|---|

If you're a Settlement Class Member and do not opt out of the Settlement with Visa and Mastercard, you can comment on or object to the Settlement, including telling the Court that you like or don't like the Settlement. By filing an objection, however, you are asking the Court to deny approval of the Settlement. You can't ask the Court to order larger a Settlement or change its terms; the Court can only approve or deny the Settlement.

If the Court denies approval, no Settlement payments will be sent out and the lawsuit against Visa and Mastercard will continue. If that is what you want to happen, you must object.

To comment on or object to this Settlement, you must mail a letter containing the following information:

- The name and case number of this lawsuit, *Mackmin v. Visa Inc*. No. 1:11-cv-01831;
- Your full name and mailing address, and email address or telephone number;
- An explanation of why you believe you are a Settlement Class Member;
- If you are objecting, a statement whether the objection applies only to you, or to a specific subset of the Settlement Class, or to the entire Settlement Class;
- All reasons for your objection or comment, stated with specifics;
- A statement identifying the number of class action settlements you have objected to or commented on in the last five years;
- Whether you intend to personally appear and/or testify at the Final Approval Hearing;
- The name and contact information of any and all attorneys representing, advising, or assisting you, including any counsel who may be entitled to compensation for any reason related to your objection or comment;
- Whether any attorney will appear on your behalf at the Final Approval Hearing, and if so the identity of that attorney;
- The identity of any persons who wish to be called to testify at the Final Approval Hearing; and
- Your handwritten or electronically imaged written (e.g., "DocuSign") signature. An attorney's signature, or a typed signature, is not sufficient.

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

14

Your objection must be submitted directly to the Court either by mailing it to the United States District Court for the District of Columbia, 333 Constitution Avenue N.W., Washington D.C. 20001, or by filing it in person at the United States District Court for the District of Columbia. To be considered, the objection must be filed or postmarked by [**Month 00, 2024**].

| 29. Can I object to the previous settlements? |
| --- |

No.  The deadline to object to the previous settlements has passed.

| 30. What's the difference between excluding yourself and objecting? |
| --- |

Excluding yourself from the Settlement Class means that you are no longer a Settlement Class Member and don't want the Settlement with Visa and Mastercard to apply to you. Once you are excluded, you lose any right to receive any benefits from this Settlement or to object to any aspect of the Settlement because the case no longer affects you.

You object to the Settlement when you disagree with some aspect of the Settlement and think the Court should not give Final Approval. An objection, like a comment, allows your views to be heard in Court.

# DOING NOTHING

| 31. What happens if I do nothing at all? |
| --- |

If you do nothing and the Court grants Final Approval, you'll be a member of the Settlement Class and you won't be able to sue Visa or Mastercard for the conduct alleged in this case. If you filed a claim and received a payment in the previous settlements, you will be automatically eligible to get a payment from this Settlements based on the Claim Form you previously submitted. If you did not previously file a valid claim and do not submit a Claim Form by [**Month 00, 2024**], you will not get any money from these Settlements.

# THE COURT'S FAIRNESS HEARING

| 32. When and where will the Court decide whether to approve the Settlements? |
| --- |

The Court will hold a Fairness Hearing at **X:00 p.m.** on [**Month 00, 2024**], at the U.S. District Court for the District of Columbia 333 Constitution Avenue N.W., Washington D.C. 20001, Courtroom 18. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them.

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

15

The Court may also decide how much to pay to Class Lead Counsel in fees and expense reimbursements and if it will approve service award payments to the Class Representatives. After the hearing, the Court will decide whether to approve the Settlement with Visa and Mastercard.

The Court may hold the Fairness Hearing electronically, reschedule the Fairness Hearing, or change any of the deadlines described in this notice. The date of the Fairness Hearing may change without further notice to the Settlement Class Members. Be sure to check the website, www.ATMClassAction.com, for news of any such changes. You can also access the case docket via the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.dcd.uscourts.gov.

**33. Do I have to come to the Fairness Hearing?**

No. Class Lead Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**34. May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must include a statement in your written objection that you intend to appear at the hearing. Be sure to include your name, address, and signature as well.

You cannot speak at the hearing if you exclude yourself from the Settlement Class.

# GETTING MORE INFORMATION

**35. How do I get more information?**

This notice summarizes the proposed Settlement—more details are in the Settlement Agreement and other important case documents. You can get a copy of the Settlement Agreement, view other case documents, and get additional information and updates by visiting www.ATMClassAction.com.

All of the case documents that have been filed publicly in this case are also available online through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.dcd.uscourts.gov. This case is called *Mackmin v. Visa* and the case number is No. 1:11-cv-01831. You may also obtain case documents by visiting the office of the Clerk of the Court for the United States District Court for the District of Columbia, 333 Constitution Avenue N.W.,

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*
16

Washington D.C. 20001, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding court-observed holidays.

You can get additional information or request a copy of the Settlement Agreement by calling toll-free 877-311-3724 or writing to the Settlement Administrator by email at info@ATMClassAction.com or mail to ATM Surcharge Settlement, P.O. Box 170500, Milwaukee, WI 53217.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO ASK ABOUT THESE SETTLEMENTS OR THE CLAIMS PROCESS.

This Settlement affects your legal rights even if you do nothing.
Questions? Go to www.ATMClassAction.com or call 877-311-3724
*Para recibir una notificación en español, llama al o visita nuestro sitio web.*

17

# EXHIBIT D



# EXHIBIT E

# ATM SURCHARGE SETTLEMENT

## CLAIM FORM

### <u>INSTRUCTIONS</u>

This class action alleges Defendants violated federal antitrust laws by adopting restraints that inflated the automated teller machine ("ATM") surcharges (also called ATM access fees) that some people and businesses paid. The Defendants deny these allegations.

Generally, you are a Settlement Class Member if, at any time between October 1, 2007 and [Date of Preliminary Approval Order], you paid a surcharge to withdraw cash from a bank ATM in the United States. You are not included if all of your surcharged ATM transactions were (a) reimbursed, or (b) conducted on cards issued by financial institutions located outside of the United States.

 **If you filed a claim or got a payment in the previous settlements, you will automatically be eligible to get money from the Settlement with Visa and Mastercard based on the claim you submitted previously.  If you paid additional unreimbursed ATM surcharges after submitting a claim form in the previous settlements, you will need to submit an updated claim by [Month 00, 2024] to claim those transactions.**

**If you did not file a claim in the previous settlements, you must submit a claim no later than [Month 00, 2024].**

**Settlement payments will be sent to you digitally via email.** Please provide a current, valid email address and mobile phone number on your Claim Form. If the email address or mobile phone number you include with your submission becomes invalid for any reason, it is your responsibility to provide accurate contact information to the Settlement Administrator to receive a payment. When you receive the email and/or mobile phone text notifying you of your Settlement payment, you will be provided with a number of digital payment options, such as PayPal or a virtual debit card, to immediately receive your Settlement payment. At that time, you will also have the option to request a paper check.

The information you provide on this Claim Form will be used solely by the Court-approved Settlement Administrator to administer the Settlements and will not be provided to any third party or sold for marketing purposes.

You do not need to provide any documentation at this time. However, the Settlement Administrator may ask for additional documentation or proof supporting your claim.

## CLAIM FORM

**NOTICE ID NUMBER (IF EMAIL NOTICE WAS SENT TO YOU)**

**NAME***

*FIRST NAME LAST NAME*

**STREET ADDRESS***                                    **APT**

**CITY***                              **STATE***      **ZIP***

**MOBILE PHONE NUMBER***

XXX-XXX-XXXX

**EMAIL ADDRESS***                    **VERIFY EMAIL ADDRESS***

Please ensure you provide a current, valid email address and mobile phone number on this Claim Form. If the email address or mobile phone number you provided becomes invalid for any reason, it is your responsibility to provide the Settlement Administrator with a current, valid email address and mobile phone number for payment.

## ATM SURCHARGE INFORMATION

**HAVE YOU PAID AN UNREIMBURSED SURCHARGE TO WITHDRAW CASH FROM AN ATM IN THE UNITED STATES AT ANY POINT ON OR AFTER OCTOBER 1, 2007?***
- o **YES**
- o **NO**

**[IF YES] WERE ANY OF THESE SURCHARGES PAID TO A BANK TO USE AN ATM OPERATED BY THAT BANK?***
- o **YES**
- o **NO**

**[IF YES] WERE ANY OF THESE SURCHARGED BANK ATM TRANSACTIONS CONDUCTED WITH AN ATM CARD ISSUED BY A FINANCIAL INSTITUTION (INCLUDING ANY BANK OR CREDIT UNION) IN THE UNITED STATES?***
- o **YES**
- o **NO**

**[IF YES] ESTIMATE THE NUMBER OF TIMES BETWEEN OCTOBER 1, 2007 AND [DATE OF PRELIMNMARY APPROVAL] THAT YOU PAID AN UNREIMBURSED SURCHARGE TO**

**WITHDRAW CASH FROM A BANK ATM IN THE UNITED STATES USING AN ATM CARD ISSUED BY A UNITED STATES FINANCIAL INSTITUTION.***
- **[4 DIGIT INTEGER]**

**[DROP DOWN]**
**"AS STATED BELOW, THIS CLAIM FORM IS SUBMITTED UNDER PENALTY OF PERJURY, AND THE SETTLEMENT ADMINISTRATOR HAS THE RIGHT TO ASK YOU TO PROVIDE BANK STATEMENTS OR OTHER DOCUMENTS TO SUPPORT YOUR CLAIM."**

*Denotes required field

## <u>CERTIFICATION</u>

By signing this claim submission, I certify, under penalty of perjury, that the information included with this claim submission is accurate and complete to the best of my knowledge, information, and belief. If I am submitting this claim submission on behalf of a claimant, I certify that I am authorized to submit this claim submission on the individual's behalf. I am, or the individual on whose behalf I am submitting this claim submission is, a member of the Settlement Class, and have not submitted a request to exclude myself, or "opt-out of," the Settlement with Visa and Mastercard. I agree and consent to be communicated with electronically via email and/or mobile phone text (message & data rates may apply). I agree to furnish additional information regarding this claim submission if so requested to do so by the Settlement Administrator.

| SIGNATURE | DATE |
|---|---|
|  | mm/dd/yyyy |