**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ANDREW MACKMIN, *et al.*,<br><br>          *Plaintiffs*,<br><br>*v.*<br><br>VISA INC., *et al.*,<br><br>          *Defendants*. | Civil Action No. 1:11-cv-1831-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |

*MACKMIN* **CONSUMER PLAINTIFFS' NOTICE OF MOTION AND**
**MOTION FOR AUTHORIZATION TO DISTRIBUTE VISA AND MASTERCARD**
<u>**SETTLEMENT FUNDS**</u>

Pursuant to Federal Rules of Civil Procedure 23, the *Mackmin* Consumer Plaintiffs hereby move the Court for an Order authorizing the distribution of settlement funds. This Motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the declaration of Mark Cowen in support of the motion, any papers filed in reply, such oral and documentary evidence as may be presented at any hearing of this motion, and all papers and records on file in this matter.

DATED this 18th day of November, 2025.    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:    */s/ Steve W. Berman*
    Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Ben M. Harrington (*pro hac vice*)
Benjamin J. Siegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3034
benh@hbsslaw.com
bens@hbsslaw.com

Adam B. Wolfson (*pro hac vice*)
Viola Trebicka (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Steven A. Skalet
(D.C. Bar No. 359804)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
sskalet@findjustice.com

*Co-Lead Class Counsel for*
*Mackmin Consumer Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

ANDREW MACKMIN, *et al.*,

        *Plaintiffs*,

*v.*

VISA INC., *et al.*,

        *Defendants*.

</td><td>

Civil Action No. 1:11-cv-1831-RJL
Assign Date: 8/4/2015
Description: Antitrust – Class Action

</td></tr>
</table>

**MEMORANDUM IN SUPPORT OF *MACKMIN* CONSUMER PLAINTIFFS'**
**MOTION FOR AUTHORIZATION TO DISTRIBUTE VISA AND MASTERCARD**
**SETTLEMENT FUNDS**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...............................................................................................................1

II.   BACKGROUND ...............................................................................................................3

    A.    General Procedural Background...............................................................................3

    B.    Notice to the Settlement Class ................................................................................4

    C.    Claims Processing and Fraud Review......................................................................4

    D.    Proposed Distribution Plan .....................................................................................7

III.  ARGUMENT.....................................................................................................................8

    A.    The Proposed Distribution Plan is an Efficient and Effective Means of
        Distributing Net Settlement Funds to Class Members..............................................8

    B.    Administrative Costs Have Been Reasonably Incurred and Spent in Line
        with Settlement Agreement, and A.B. Data Will *Not* Request Additional
        Funds Beyond Those Already Approved by the Court...........................................10

IV.   CONCLUSION.................................................................................................................11

## I.        INTRODUCTION

By this Motion, *Mackmin* Consumer Plaintiffs respectfully move the Court for an order authorizing distribution to eligible claimants the net settlement funds received from the settlement reached with the Network Defendants, Visa and MasterCard.[1] *See* Dkt. 304. The gross settlement fund totals $197.5 million.

This Court has issued orders (1) granting final approval of the settlement with the Network Defendants; (2) granting in part and denying in part Plaintiffs' motion for attorneys' fees, expenses, and service awards for the class representatives; and (3) issuing final judgments for the two Network Defendants. Dkt. Nos. 303-305. There have been no appeals of any of these orders, and the time to appeal has expired.

This Motion also follows the Court-ordered notice program and a claims administration process directed by the court-appointed Settlement Administrator, A.B. Data, Ltd. ("A.B. Data"), undertaken for the purpose of identifying eligible claimants and excluding fraudulent claims. To maximize the number of eligible claimants who can recover from this settlement, Settlement Class Members who submitted valid claims in connection with the prior settlements with the Bank Defendants were not required to submit a claim in this Settlement to be included in the distribution. Settlement Class Members who needed to complete new claims, or who wanted to update prior claims, were required to submit a properly executed claim form by mail or online, or by email, to be eligible to receive settlement funds.

---

[1] The Network Defendants are Mastercard Inc. and Mastercard International Inc. d/b/a Mastercard Worldwide ("MasterCard Defendants" or "MasterCard"), as well as Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc. ("Visa Defendants" or "Visa").

Following claims submissions, culling fraudulent claims has been a significant part of the administrative process. A.B. Data employed a variety of advanced, proven techniques to cull fraudulent claims, and it engaged ClaimScore, LLC ("ClaimScore") to assist. ClaimScore is an experienced legal technology firm specializing in identifying fraudulent claims submitted in class action settlements. *See* Declaration of Mark Cowen Regarding Settlement Administration ("Cowen Decl."), ¶¶ 13-14, concurrently submitted herewith. Following this process, close to 297,000 valid claims were identified, which tracks closely with the 314,231 valid claims submitted in connection with the Bank Settlements. (And again, those who previously submitted valid claims after the Bank Settlements were not required to do so again here.) *Id.*, ¶¶ 12, 16. A.B. Data is in the process of completing a deficiency and validation process for claims for which there was insufficient information to determine validity. *Id.*, ¶ 17.

Plaintiffs now seek approval to distribute the net settlement funds to eligible claimants, following the final portion of the deficiency and validation process, which A.B. Data anticipates completing within the next 45 to 60 days. Cowen Decl., ¶¶ 17-25. Class Counsel agrees with the recommendations of A.B. Data concerning how to complete the distribution process, which tracks the successful program used to distribute funds after the Bank Settlements. In sum, within 90 days of a Court order approving the proposed distribution plan, A.B. Data will commence distributing the net settlement fund on a *pro rata* basis to eligible Settlement Class Members. In accordance with information provided in the Court-approved notice and claim documents, A.B. Data will send settlement payments digitally to each eligible Settlement Class Member using the email address provided on the claim form, but claimants will also have an opportunity to request a paper check. After providing Settlement Class Members with 60 days to redeem their digital payments or cash their checks, A.B. Data will redistribute unclaimed net settlement funds *pro*

*rata* to those Settlement Class Members who redeem their digital payments or cash their checks in the first distribution. This process will repeat if there are sufficient settlement funds to make another cost-effective redistribution to class members. If remaining settlement funds are not sufficient to make a cost-effective redistribution to class members, Class Counsel will inform the Court and propose an alternative means of distributing any remaining settlement funds, such as to an appropriate *cy pres* recipient.

Based on the foregoing and the extensive claims administration process, *Mackmin* Consumer Plaintiffs respectfully request entry of an order authorizing final distribution of the net settlement funds according to the plan proposed herein and in Mr. Cowen's declaration. A proposed order consistent with this plan has been concurrently submitted with this Motion.

## II.    BACKGROUND

The Court is familiar with the details of this decade-plus long action, so in this brief Plaintiffs discuss only what is relevant to the instant Motion.

### A.    General Procedural Background

After many years of litigation, including class certification, multiple trips to the D.C. Circuit Court of Appeals (and to the Supreme Court), and several attempts at settlement, Plaintiffs reached a settlement agreement with the Network Defendants, Visa and MasterCard, in May 2024. Under the settlement agreement, the Network Defendants agreed to collectively make cash payments totaling $197.5 million. Dkt. 288-2, Ex. A at ¶ 2(nn). That $197.5 million, coupled with the $66.74 million Plaintiffs secured under previously approved settlements with the Bank Defendants (namely Chase, Wells Fargo, and Bank of America), will result in a total recovery of $264.24 million for the Settlement Class.

Following Plaintiffs' motion for preliminary approval and to direct notice to the Settlement Class, this Court granted Plaintiffs' preliminary approval motion on July 26, 2024, and appointed A.B. Data as Settlement Administrator. Dkt. 292.

**B.      Notice to the Settlement Class**

Notice to the class began on August 23, 2024. As ordered by this Court, A.B. Data successfully implemented the Court-approved Notice Plan, which included (i) direct email notice to potential Settlement Class Members; (ii) a digital advertising campaign on numerous digital and social media platforms; (iii) a news release disseminated via *PR Newswire*; (iv) a publication notice in *People* magazine; and (v) a toll-free telephone number and case-specific website to address potential Settlement Class Member inquiries. *See* Cowen Decl., ¶ 3.

More specifically, A.B. Data's direct notice program included sending the email notice to 77,497,144 unique email addresses for potential Settlement Class Members. Supplemental notice included banner ads encompassing over 555,800,000 digital impressions being placed on various digital and social networks, advertisements placed with Google AdWords such that links to the Settlement website appeared on the search result pages for relevant searches, and a news release disseminated over *PR Newswire*. A.B. Data also published a printed advertisement in a national edition of *People* magazine. Cowen Decl., ¶ 4. In the Court's Order Granting *Mackmin* Consumer Plaintiffs' Motion for Final Approval of Settlements with the Visa and Mastercard Defendants (the "Final Approval Order," Dkt. 304), the Court found that the Notice Plan was the best notice practicable under the circumstances and satisfied the requirements of the Federal Rules of Civil Procedure. Dkt. 304, ¶ 8.

**C.      Claims Processing and Fraud Review**

Pursuant to this Court's orders, the Settlement Administrator has undertaken an extensive claims review process, which involved a detailed review and exclusion of fraudulent claims. To

begin with, given the largely overlapping Settlement Class and to maximize the number of eligible Settlement Class Members with valid claims who will recover, Settlement Class Members who submitted valid claims in connection with the prior settlements with the Bank Defendants were not required to submit a claim in this Settlement to be included in the settlement distribution. Cowen Decl., ¶ 18. Settlement Class Members who wished to complete new or revised claims were required to submit to A.B. Data a properly executed claim form postmarked or submitted online no later than January 22, 2025. *Id*., ¶ 6. In preparation for receiving and processing the submitted claim forms, A.B. Data created a unique database to store claim form details, images of claims forms, and any supporting documentation, and trained staff in the specifics of the project so that claim forms would be properly processed. *Id.*, ¶ 7.

Ultimately, over 63 million claim forms were received by A.B. Data through the online filing portal on the case-specific website (www.atmclassaction.com), by email, or by mail. Cowen Decl., ¶ 8. Each claim form was assigned a unique claim form number. The information from each claim form, including the claimant's name, address, email address, and information related to purported ATM surcharged transactions during the settlement class period, was captured into a database developed by A.B. Data to process claim forms. *Id*.

In connection with administering the settlements with the *Bank Defendants*, A.B. Data ultimately determined that approximately 314,231 valid claims had been filed. Cowen Decl., ¶ 12. Because of the large disparity between that number and the number of putative claim forms submitted in the present claims process, A.B. Data determined there was a substantial likelihood that a very high percentage of these claims were fraudulent. Mr. Cowen explains that this has become common "[i]n the current technology climate with AI and Machine Learning so readily accessible, fraudulent claim filing has become a business model for many bad actors and the

methodology utilized, including valid data from data breaches and synthetic data, makes the identification of fraudulent claims difficult. Furthermore, where fraudulent claims originally numbered in the tens or maybe hundreds, bad actors now, utilizing technology, are able to submit *millions* of fraudulent claims." *Id*.

To ensure that settlement funds would only be distributed to valid claimants, A.B. Data's fraud prevention and culling process using several well-established techniques, including advanced CAPTCHA, Web Access Firewalls, and proprietary internal programs and algorithms, all aimed at detecting fraudulently filed claims. Cowen Decl., ¶ 13. A.B. Data also engaged ClaimScore to assist with the fraud detection process and to effectively identify fraudulent claims so that only valid claimants would receive distributions from the settlement fund. *Id.*, ¶ 14. ClaimScore is a legal technology company focused on complex data analysis and pattern recognition services used to identify fraudulent claims in class action settlements. *Id*. ClaimScore has been utilized to identify and cull fraudulent claims in connection with several large settlement class actions in federal and state courts. *Id*.

ClaimScore applied its fraud detection program to the claims submitted in this case, including as noted, adjusting for the specifics of this case and settlement. According to their fraud-detection analysis, of the claims submitted, 296,877 claims did not exhibit substantial evidence of fraud and were recommended as "Approved." Cowen Decl., ¶ 16. Mr. Cowen explains in his declaration that A.B. Data "reviewed the analysis, processes employed, and application of determinations utilized by ClaimScore and adopt[ed] ClaimScore's recommendations related to the *denial* of claims based on fraud markers located in the review process." *Id*.

Mr. Cowen further explains that according to ClaimScore's evaluation, the percentage of fraudulent and valid claims observed in this case were on par with the levels of fraud ClaimScore has observed in similar cases. Cowen Decl., ¶ 16. That the fraud detection analysis was properly executed is also supported by the fact that, as explained, in connection with the Bank Settlements, A.B. Data ultimately determined that approximately 314,231 valid claims were filed. *Id.*, ¶ 12. Thus, the number of claims recommended for approval here is in line with the previously identified number of valid claimants. And as noted, approved claimants from the Bank Settlements were not required to file claims to receive a distribution from the current Network Settlement.

ClaimScore found that 77 claims did not contain sufficient information to constitute as a claim and were therefore not analyzed. Cowen Decl. ¶ 16. A.B. Data's Cowen explains that "[a]ny claim that was not recommended to be rejected in ClaimScore's analysis for fraud, but where the claim is deficient, is being sent a notification via email and/or mail to provide the Settlement Class Member with an opportunity to resolve any issues identified related to their claim." *Id.*, ¶ 17. A.B. Data estimates the deficiency and validation process will be completed in approximately 45 to 60 days from the date deficiency notices are sent, with deficiency notices being sent no later than November 24, 2025. *Id.*

D.    **Proposed Distribution Plan**

In the Final Approval Order, this Court found that the proposed Plan of Allocation to pay Settlement Class Members on a *pro rata* basis based on the number of valid claim forms submitted was fair, reasonable, and adequate. Dkt. 304, ¶ 10. The Court held that this Plan of Allocation does not unfairly favor any Class Member, or group of Class Members, to the detriment of others. *Id.* In line with the Court's Final Approval Order, Plaintiffs and A.B. Data propose that the Net Settlement Funds be distributed on a *pro rata* basis to eligible Settlement

Class Members based on the claimed surcharges during the Settlement Class Period as reflected on the claim forms. Cowen Decl., ¶¶ 5, 19.

Subject to the Court's approval, A.B. Data can begin distribution of the Net Settlement Funds within 90 days of the Court issuing an order approving the distribution process. Cowen Decl., ¶ 19. Additional details about the distribution plan are discussed in Section III.A, *infra*.

## III.   ARGUMENT

**A.   The Proposed Distribution Plan is an Efficient and Effective Means of Distributing Net Settlement Funds to Class Members**

Plaintiffs believe that the proposed distribution plan is the most efficient and effective means available to distribute the net settlement funds to eligible Settlement Class Members and is consistent with prior orders of this Court. The Distribution Plan also tracks the successful distribution program approved and implemented for the settlements with the Bank Defendants. Additionally, the proposed distribution plan follows the Court-approved Plan of Allocation, wherein the Court directed Plaintiffs to pay Settlement Class Members on a *pro rata* basis based on the number of valid claims that have been submitted. Dkt. 304, ¶ 10; Dkt. 261, ¶ 10; *see* Cowen Decl. ¶¶ 5, 19.

In addition to being consistent with the Distribution Plan this Court approved after the Bank Settlements, such *pro rata* plans have been called "the fairest method of allocating the settlement benefits." *See In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to the fairest method of allocating the settlement benefits"); *see also In re TFL-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *4 (N.D. Cal. Dec. 27, 2011) (approving a *pro rata* plan and citing several cases for this decision, including *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000)).

If the Court approves the Distribution Plan, A.B. Data will send settlement payments digitally to Settlement Class Members approved as eligible using the email address provided, with several digital payment options such as prepaid virtual debit cards, ACH, PayPal/Venmo, or digital retail cards. Cowen Decl., ¶ 20. As the time of distribution, claimants can also choose to receive a traditional paper check, and any settlement class member who does not have a valid email will be sent a paper check. *Id.* This primarily digital distribution plan, with an option to receive a paper check, conforms to the plan approved by Court in connection with the Bank Defendant settlements (*see* Dkt. 267, approving plan in Dkt. 266) and is consistent with the information provided to the Settlement Class in the Court-approved notice and claim forms. *See* Dkt. 292, ¶ 6; Dkt. 288-3, Ex. C at ¶ 13, Ex. E.[2]  A.B. Data explains that "[p]rior to sending payments by email, A.B. Data will run all email addresses through a verification process to confirm the email address is valid and functional." Cowen Decl., ¶ 20

Plaintiffs propose that digital payment links be valid for a period of 60 days. To encourage each Settlement Class Member to redeem their digital payments, A.B. Data will send a number of reminder emails to any claimants who do not initially redeem their digital payment over the 60-day period. The traditional paper checks sent by request or due to an invalid email address will also be valid for a period of 60 days. To encourage Settlement Class Members to deposit their payments promptly, all checks will bear a notation: "CASH PROMPTLY. VOID

---

[2] Other courts also have recognized that digital payment options are a cost-effective means of effectively distributing funds to class members. *See, e.g.*, *Edwards v. Nat'l Milk Producers*, 2017 WL 3623734, at *2 (N.D. Cal. June 26, 2017) (granting final approval of class action settlement where cash claimants would "receive an electronic notification via email that will permit them to choose an online account, *e.g.*, an Amazon, PayPal, or Google Wallet account, into which money be can distributed," "in order to maximize the settlement funds going to class members, and minimize administrative expenses and uncashed checks").

AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 60 DAYS AFTER ISSUE DATE]." Cowen Decl., ¶¶ 21-22.

Plaintiffs and A.B. Data propose that residual funds that are not deposited or redeemed be redistributed during a second distribution. The residual funds will be reallocated to all Settlement Class Members who submitted a valid claim and successfully redeemed or cashed their initial distribution payment. Cowen Decl., ¶¶ 23-24.

At the conclusion of the second distribution, A.B. Data, in conjunction with Class Counsel, will determine whether any further distributions of the funds remaining in the Net Settlement Fund are cost-effective and feasible. If feasible, additional rounds of distribution will be conducted in a similar manner as the initial and second distributions. Cowen Decl., ¶ 25. If net settlement funds remain following additional redistributions and it is not cost-effective or feasible to distribute these funds to class members, Class Counsel will inform the Court and propose a means of distributing the remaining settlement funds, such as to an appropriate *cy pres* recipient.

**B.      Administrative Costs Have Been Reasonably Incurred and Spent in Line with Settlement Agreement, and A.B. Data Will *Not* Request Additional Funds Beyond Those Already Approved by the Court**

The Preliminary Approval Order authorized the Settlement Administrator, A.B. Data, to expend funds from the escrow account to pay for "administrative costs as set forth in the Settlement Agreement." Dkt. 292, ¶ 7. The Settlement Agreement authorized up to $1.5 million for payments related to the administration of the settlement, including through "soliciting, reviewing, and evaluating proofs of claim or release forms, or both; and administering the settlement and disbursing the Settlement Fund." Dkt. 288-2, Ex. A at ¶ 12(e)(ii). Under the Settlement Agreement, additional amounts may be used for these administrative costs with agreement by the settling parties and approval by the Court. *Id.*

A.B. Data states that it has, to date, spent close to $1.42 million on administering the settlement, including in connection with the fraud review. Cowen Decl., ¶ 26. Mr. Cowen believes that the remaining administrative costs, including in distribution of the settlement, will exceed the remaining amount of the already authorized $1.5 million for administrative costs. *Id.*, ¶ 27.

*However*, and importantly, A.B. Data has agreed to cap all administrative costs related to this settlement, including during the distribution process, at the $1.5 million identified in the settlement agreement and approved in this Court's Preliminary Approval Order. *See* Cowen Decl., ¶ 27. In other words, "[a]ny in-scope amount that A.B. Data incurs beyond the remaining funds [i.e., anything that exceeds $1.5 million] will not be billed." *Id.* Thus, Plaintiffs are not requesting that any additional funds be allocated for administration of the settlement.

## IV. CONCLUSION

For the foregoing reasons, *Mackmin* Consumer Plaintiffs respectfully request that the Court grant their motion for distribution of the net settlement funds according to the Distribution Plan proposed herein and in the Cowen Declaration.

DATED this 18th day of November, 2025.    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:  */s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Ben M. Harrington (*pro hac vice*)
Benjamin J. Siegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3034
benh@hbsslaw.com
bens@hbsslaw.com

Adam B. Wolfson (*pro hac vice*)
Viola Trebicka (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Steven A. Skalet
(D.C. Bar No. 359804)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
sskalet@findjustice.com

*Co-Lead Class Counsel for*
*Mackmin Consumer Plaintiffs*